**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PLANET MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:19-cv-00066-JRG <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS COUNT VIII OF PLAINTIFFS'
COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    Plaintiffs' FRAND Commitments ...........................................................2

    B.    Plaintiffs' FRAND Claim .......................................................................3

    C.    Plaintiffs' Parallel Action In The United Kingdom ................................4

III.    ARGUMENT .........................................................................................................5

    A.    Count VIII—Which Is Predicated On Foreign Patents—Should Be
        Dismissed For Lack Of Jurisdiction. ......................................................6

        1.    This Court Lacks Jurisdiction To Adjudicate Count VIII As To
            Foreign Patents.............................................................................6

        2.    Even If The Court Had Jurisdiction Over Count VIII As To
            Foreign Patents, The Court Should Decline To Exercise It.........8

        3.    Upon Dismissal Of Count VIII As To Foreign Patents, The
            Plaintiffs Have Alleged No Controversy Limited To U.S. Patents. ...........9

    B.    Alternatively, Count VIII Should Be Dismissed Because It Fails To Set
        Forth A Justiciable Cause Of Action. ....................................................11

IV.    CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) ................................................................................5, 10, 13

*Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*,
  149 F.3d 371 (5th Cir. 1998) ...............................................................................11

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ...............................................................................................10

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
  No. 15-cv-00154-JD, 2015 WL 1802467, (N.D. Cal. Apr. 20, 2015) ...................14

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971) .............................................................................................13

*Brown v. Duchesne*,
  60 U.S. 183 (1857) .................................................................................................6

*Calderon v. Ashmus*,
  523 U.S. 740 (1998) ...............................................................................11, 12, 13

*Celestine v. Nat'l Union Fire Ins. Co.*,
  115 F. App'x 658 (5th Cir. 2004) .........................................................................11

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
  No. 6:12-CV-100-JRG, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015) .........................3, 12, 14

*Ericsson, Inc. v. D-Link Sys.*,
  No. 6:10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part,
  rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) .....................................................13

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004) ............................................................................................8, 9

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*,
  589 F. Supp. 2d 84 (D. Me. 2008) .........................................................................6

*Fujitsu Ltd. v. LG Elecs., Inc.*,773
  620 F.3d 1321 (Fed. Cir. 2010) ...........................................................................3, 4

*Hewitt v. Helms*,
   482 U.S. 755 (1987) .......................................................................................................11, 12

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   No. 2:16-CV-00715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Feb. 22, 2017) .......................12

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
   No. 13-CV-00009, 2014 WL 2206218 (D. Del. May 28, 2014)................................12, 13, 14

*Kamdem-Ouaffo v. PepsiCo Inc.*,
   657 F. App'x 949 (Fed. Cir. 2016) ............................................................................................6

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   No. 11-CV-01036, 2011 WL 13152817 (N.D. Cal. July 14, 2011).........................................7

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)..........................................................................................................5, 10

*Morse v. Commonwealth Land Title Ins. Co.*,
   No. 12-cv-375, 2013 WL 5372395 (E.D. Tex. Sept. 25, 2013)..............................................12

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
   No. 2:17-CV-00123-JRG, 2019 WL 1244707 (E.D. Tex. Mar. 18, 2019)..............................10

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
   No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018) ...................7, 9

*Pellegrini v. Analog Devices, Inc.*,
   375 F.3d 1113 (Fed. Cir. 2004)................................................................................................6

*Preiser v. Newkirk*,
   422 U.S. 395 (1975).................................................................................................................10

*Public Affairs Assocs., Inc. v. Rickover*,
   369 U.S. 111 (1962)...................................................................................................................8

*Sherwin-Williams Co. v. Holmes Cnty.*,
   343 F.3d 383 (5th Cir. 2003) ...................................................................................................11

*Torch, Inc. v. LeBlanc*,
   947 F.2d 193 (5th Cir. 1991) .................................................................................................8, 9

*Urban Health Care Coalition v. Sebelius*,
   853 F. Supp. 2d 101 (D.D.C. 2012) ........................................................................................13

*Vantage Trailers, Inc. v. Beall Corp.*,
   567 F.3d 745 (5th Cir. 2009) .....................................................................................................5

*Voda v. Cordis Corp.*,
   476 F.3d 887 (Fed. Cir. 2007) ....................................................................................6, 7, 8, 9

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ....................................................................................................8, 9

*Zenith Elecs., LLC v. Sceptre, Inc.*,
   No. CV14-05150-JAK, 2015 U.S. Dist. LEXIS 33560 (C.D. Cal. Feb. 5,
   2015) .......................................................................................................................14

## STATUTES

35 U.S.C. § 281 ........................................................................................................13

## I.    INTRODUCTION

Plaintiffs Optis Wireless Technology, LLC ("Optis Wireless"), Optis Cellular Technology, LLC ("Optis Cellular"), Unwired Planet, LLC, Unwired Planet International Limited, and PanOptis Patent Management, LLC ("PanOptis") (collectively, "Plaintiffs") sued defendant Apple Inc. ("Apple") for infringement of seven patents alleged to be "essential" to the 4G (LTE) cellular standard (Counts I through VII of Plaintiffs' Complaint, ECF No. 1).

Unlike Counts I through VII, Count VIII of the Complaint does not assert that Apple infringes any particular patent or violates any particular law or statute. Instead, Count VIII seeks a declaration that Plaintiffs' unspecified "offers to Apple for a global license to the Plaintiffs' essential patents compl[y] with the Plaintiffs' commitment to license their essential patents on [fair, reasonable, and non-discriminatory ('FRAND')] terms." Compl. ¶ 139. In essence, Plaintiffs seek a ruling from this Court advising the parties that Plaintiffs' global license offers to Apple satisfy Plaintiffs' FRAND obligations—with the apparent aim of obtaining judicial leverage to force Apple into accepting a global portfolio license without any scrutiny of the underlying patents. Plaintiffs' approach should not be sanctioned by this Court for two reasons.

***First***, Count VIII should be dismissed because it is predicated on an adjudication of rights as to foreign patents and foreign FRAND obligations—rights that are outside the operation of U.S. law and the jurisdiction of this Court. Plaintiffs seek a declaration that its offers for a "***global***" patent license comply with its FRAND obligations. But as this Court recently acknowledged when Optis Wireless, Optis Cellular, and PanOptis brought a similar claim against Huawei, claims that implicate foreign patent rights are outside the reach of U.S. courts. And because Plaintiffs make no allegation of having made offers limited to U.S. patents or the existence of a dispute about U.S. patents, there is no justiciable basis for this Court to adjudicate Count VIII once foreign patents are properly excluded. And even if there were, this Court should nonetheless decline to do so.

***Second***, setting aside the issue of foreign and U.S. patents, Count VIII is nothing more than a request that this Court issue an advisory opinion—a declaration that Plaintiffs have complied with their FRAND obligations.  But courts do not decide legal disputes in the absence of a case or controversy, particularly where, as here, doing so would not alter the legal rights of the parties.  Tellingly, Plaintiffs do not request that the Court order Apple to do ***anything***.  There is no request that Apple be ordered to pay Plaintiffs' (unspecified) offer if it is found to be FRAND.  Nor is there a request that Apple be compelled to take a license at all.  This Court should thus decline to entertain Plaintiffs' impermissible request for an advisory opinion.

Apple respectfully requests that the Court dismiss Count VIII of Plaintiffs' Complaint with prejudice.

## II.      BACKGROUND

### A.      Plaintiffs' FRAND Commitments

The European Telecommunications Standards Institute ("ETSI") is an independent, non-profit standard setting organization that sets standards for the telecommunications industry, including the LTE cellular communication standards.  Compl. ¶ 23.  These standards help to ensure interoperability of devices supplied by companies across the industry.  *Id.*

Under the ETSI Intellectual Property Rights ("IPR") Policy, members are required to disclose to ETSI patents and patent applications that are alleged to be essential or potentially-essential to ETSI standards ("SEPs").  *See* ETSI Rules of Procedure Annex 6 § 4 (Apr. 3, 2019), *available at* http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (Declaration of Mark D. Selwyn ("Selwyn Decl.") Ex. 01).  Members of ETSI use "one of the ETSI IPR Licensing Declaration forms . . . to make their IPR licensing declarations."  *Id.* § 6bis.  The IPR Policy also requires an IPR owner to give "an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions

under such IPR."  *See id.* § 6.1.

According to the Complaint, Plaintiffs are the assignees of "numerous patents . . . that are, and remain, essential . . . to practicing the LTE Standard."  Compl. ¶¶ 25-28.  Those patents include the seven patents-in-suit, which have "been declared to ETSI, by the original assignee, as essential to practicing the LTE Standard."  *Id.* ¶ 29.

"As a general principle," however, "ETSI does not perform any check on the status and validity of any Essential IPRs notified to ETSI."  ETSI Guide on IPRs (Sept. 19, 2013) § 3.2.1, *available at* http://www.etsi.org/images/files/IPR/etsi-guide-on-ipr.pdf (Selwyn Decl. Ex. 02). Rather, "IPR information reflected by ETSI is based on the information received.  ETSI has not checked the validity of the information, nor the relevance of the identified patents/patent applications to the ETSI standards and cannot confirm, or deny, that the patents/patent applications are, in fact, essential, or potentially essential."  *Id.* § 3.2.  As this Court has observed, "ETSI members can unilaterally propose that their patents be included in a particular standard and can declare their patents to be required to implement a particular standard; however, ETSI does not review whether a patent declared standards-essential by a member is actually essential to the standard."  *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *1 (E.D. Tex. Aug. 11, 2015).  To determine if a given SEP is actually essential and infringed by a given product practicing the standard, the claims of the SEP must be analyzed against the accused product.  *See Fujitsu Ltd. v. LG Elecs., Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("[I]n many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement.").

### B.    Plaintiffs' FRAND Claim

On February 25, 2019, Plaintiffs filed an eight-count Complaint against Apple.  Counts I through VII accuse Apple of infringing seven patents alleged to be "essential (as that term is

defined by ETSI) to practicing the LTE Standard."  Compl. ¶¶ 25-29.  Count VIII seeks a declaratory judgment against Apple.  Compl. ¶¶ 136-141.

As relevant to Count VIII, Plaintiffs contend that they "have repeatedly negotiated with Apple to reach an agreement for a global FRAND license to the Plaintiffs' patent portfolios."  *Id.* ¶ 1.  Plaintiffs allege that "[n]ot later than January 6, 2017, the Plaintiffs sent Apple correspondence initiating Plaintiffs' good faith efforts to license their essential patents to Apple on FRAND terms."  *Id.* ¶ 32.  According to the Complaint, "Apple has not reciprocated the Plaintiffs' good faith efforts," and "has instead declined to take a license to the Plaintiffs' valuable intellectual property, including the Patents-in-Suit."  *Id.* ¶ 34.  Plaintiffs therefore allege that "[t]here is a dispute between the Plaintiffs and Apple concerning whether the Plaintiffs' history of offers to Apple for a global license to the Plaintiffs' essential patents complies with the Plaintiffs' commitment to license their essential patents on FRAND terms" and "request a declaratory judgment . . . that negotiations toward a FRAND license with Apple were conducted in good faith, comply with the ETSI IPR Policy, and were consistent with competition law requirements."  *Id.* ¶¶ 139, 141; *see also id.* at 108 (Prayer for Relief D) (seeking "[a] declaration that Plaintiffs, in their history of negotiations with Apple in regard to a global license to the Plaintiffs' essential patents, have negotiated in good faith and otherwise complied with FRAND").

C.    **Plaintiffs' Parallel Action In The United Kingdom**

As Plaintiffs' Complaint indicates, Plaintiffs are simultaneously "seeking relief in the United Kingdom ('UK') . . . in respect of Apple's infringement of certain UK patents," and "[a]s part of those proceedings the Plaintiffs have requested the UK Court to make a determination as to the FRAND license terms in respect of the Plaintiffs' worldwide portfolio."  *Id.* ¶ 140. Specifically, Plaintiffs have alleged infringement of seven UK patents—patents that would also be covered within the scope of Plaintiffs' proposed "global" offers—and, as here, seek to adjudicate

a global license to their declared-essential patents.  *See* Particulars of Claim, High Court of Justice, Business and Property Courts of England and Wales (Selwyn Decl. Ex. 03) at 2, 7.  The Apple defendants to the UK action have filed Applications challenging jurisdiction, which are currently pending.

## III.    ARGUMENT

Article III of the U.S. Constitution limits federal court jurisdiction to actual "'cases' and 'controversies'" and precludes judicial adjudication of cases involving "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937).  A party requesting a declaratory judgment must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation omitted).  "[T]he dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character."  *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

Count VIII of the Complaint seeks a declaration that Plaintiffs' "offers to Apple for a ***global license*** to the Plaintiffs' essential patents complies with the Plaintiffs' [FRAND] commitment."  Compl. ¶ 139.[1]  Even if Plaintiffs had adequately pled the existence of a dispute—and they have not—this Court would lack jurisdiction to adjudicate foreign patents, thus requiring dismissal of Count VIII.  Moreover, even if Count VIII were narrowed to U.S. patents only, it still would present no concrete justiciable controversy for resolution because the only dispute alleged by Plaintiffs is global in nature, and there are no allegations of a dispute concerning licensing offers

---

[1]      Emphases have been added throughout unless otherwise noted.

for U.S. patents only.  Further, even assuming that this Court *could* exercise jurisdiction over Count VIII as to foreign patents (or U.S. patents alone), Count VIII should independently be dismissed because Plaintiffs have failed to establish the existence of a redressable case or controversy.

### A.     Count VIII—Which Is Predicated On Foreign Patents—Should Be Dismissed For Lack Of Jurisdiction.

#### 1.     This Court Lacks Jurisdiction To Adjudicate Count VIII As To Foreign Patents.

Plaintiffs contend that "[t]here is a dispute between the Plaintiffs and Apple concerning whether the Plaintiffs' history of offers to Apple for a *global* license to the Plaintiffs' essential patents complies with the Plaintiffs' [FRAND] commitment" (Compl. ¶ 139), and seek a declaration that Plaintiffs' "history of negotiations with Apple in regard to a *global* license to the Plaintiffs' essential patents" satisfy Plaintiffs' FRAND obligations (*id.* at 108).  But "the U.S. Supreme Court explained nearly 150 years ago in *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 15 L.Ed. 595 (1857), that the U.S. patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'"  *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004) (quoting *Brown*, 60 U.S. at 195).  As the Federal Circuit warned in *Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007), exercising jurisdiction over "foreign patent claims could prejudice the rights of the foreign governments."  Thus, "it is almost always an abuse of discretion to [exercise jurisdiction over] infringement claims involving foreign patents."  *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 589 F. Supp. 2d 84, 91 (D. Me. 2008); *see, e.g.*, *Kamdem-Ouaffo v. PepsiCo Inc.*, 657 F. App'x 949, 953 n.5 (Fed. Cir. 2016) (noting that "the district court lacks jurisdiction to entertain" claims concerning "international patents or patent applications").

As this Court recently recognized in addressing a nearly identical claim, "[i]t is hard to see how the reasoning in *Voda* would not apply" to Plaintiffs' declaratory judgment claim.  *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192, (E.D. Tex. July 11, 2018), *adopted by* ECF No. 246 (E.D. Tex. Aug. 9, 2018); *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, No. 11-CV-01036, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (declining to exercise jurisdiction over declaratory judgment claim, noting that "adjudicating this claim with respect to the foreign patents would prejudice the rights of China and Taiwan and undermine the 'spirit of cooperation' that forms the basis of the comity doctrine").  Thus, under *Voda*, Plaintiffs' request for adjudication of Count VIII as to foreign patents must be dismissed.

The Court recently reached that very conclusion in *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, which involved a claim seeking a "declaratory judgment that [the patentee] 'has complied with its obligations arising from declaring its patents essential to various standards, and any applicable laws, during their negotiations with Huawei concerning a worldwide license under the PanOptis standards essential patents.'"  2018 WL 3375192, at *7.  There, the Court observed that a claim concerning foreign patents would necessarily require it to pass judgment on issues properly addressed by foreign courts:

> [A] claim by [a potential licensee] that [a patentee] breached its FRAND obligations [with respect to foreign patents] . . . would require the court to decide whether [the patentee] breached a foreign FRAND obligation with respect to a foreign patent.  It would be similar to a foreign infringement claim in that a United States court would have to apply foreign law.  Courts in other countries apply their own law governing FRAND compliance and royalty rate determinations, and this law, like foreign infringement law, can be very different from United States law.

*Id.* at *8 (citations omitted).  Because the defendant's motion for dismissal of the patentee's claim for declaratory relief presented an even "easier" question, the Court dismissed the patentee's declaratory judgment claim as to foreign patents.  *Id.*

As in *Huawei*, Plaintiffs seek a declaration concerning Plaintiffs' offers for a license to its "global" SEP portfolio, which necessarily sweeps in foreign patents subject to foreign laws. Accordingly, adjudication of Count VIII would "prejudice the rights of the foreign governments." *Voda*, 476 F.3d at 901.  This is particularly true given that Plaintiffs acknowledge they are simultaneously "seeking relief in the United Kingdom ('UK') . . . in respect of Apple's infringement of certain UK patents."[2] Compl. ¶ 140.  Dismissal of Count VIII as to foreign patents is therefore warranted "to avoid unreasonable interference with the sovereign authority of other nations." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004); *see also Voda*, 476 F.3d at 901 (finding "no reason why American courts should supplant British, Canadian, French, or German courts in interpreting and enforcing British, Canadian, European, French, or German patents").

**2.     Even If The Court Had Jurisdiction Over Count VIII As To Foreign Patents, The Court Should Decline To Exercise It.**

Even were the Court to conclude that it has jurisdiction to adjudicate Count VIII as to foreign patents—and it should not—the Court should decline to exercise jurisdiction.  The Declaratory Judgment Act is "an authorization, not a command."  *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see also Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991) (describing the court's discretion to

---

[2]     Plaintiffs also note that they are requesting that the UK Court determine "FRAND terms for Plaintiffs' worldwide portfolios."  Compl. ¶ 140.  For the same reason that it would be improper for this Court to adjudicate non-U.S. patents, Apple has argued to the UK Court that it would be improper for that court to adjudicate Plaintiffs' request for a global license because doing so would encroach on the adjudication of non-UK patents in other countries, including before this Court.

entertain a declaratory judgment action as "broad"). Thus, as the Court explained in dismissing the plaintiffs' declaratory judgment claim as to foreign patents in *Huawei*:

> The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so. The text of the Declaratory Judgment Act has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. . . . At least under the Declaratory Judgment Act, the foreign part of [Plaintiffs'] claim should be dismissed for the reasons explained in *Voda*, even if jurisdiction *could* be exercised.

2018 WL 3375192, at *8 (citations and quotation marks omitted; emphases in original). The same is true here, as declining to exercise jurisdiction "'avoid[s] unreasonable interference with the sovereign authority of other nations.'"  *Voda*, 476 F.3d at 902 (quoting *Empagran*, 542 U.S. at 164). Accordingly, even if the Court concludes it has jurisdiction over Count VIII as to foreign patents (and it does not), it should nonetheless decline to exercise it here.

### 3.   Upon Dismissal Of Count VIII As To Foreign Patents, The Plaintiffs Have Alleged No Controversy Limited To U.S. Patents.

Upon dismissal of Count VIII as to Plaintiffs' foreign patents and foreign FRAND obligations, there is no remaining justiciable controversy as to Count VIII. Plaintiffs seek "[a] declaration that Plaintiffs . . . in regard to a *global* license to the Plaintiffs' essential patents, have negotiated in good faith and otherwise complied with FRAND." Compl. at 108 (Prayer for Relief D); *see also id.* ¶ 1 ("Plaintiffs have repeatedly negotiated with Apple to reach an agreement for a *global* FRAND license to the Plaintiffs' patent portfolios . . . ."); *id.* ¶ 139 (alleging "a dispute between the Plaintiffs and Apple concerning whether the Plaintiffs' history of offers to Apple for a *global* license to the Plaintiffs' essential patents complies with the Plaintiffs' [FRAND] commitment"). Plaintiffs have pled no facts to suggest that they ever offered a license to their *U.S. patents only*, and so there is no allegation of a dispute for the Court to resolve.

Upon dismissal of Count VIII as to foreign patents, there will be no case or controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.  Instead, Count VIII (without foreign patents) would require this Court to issue an advisory opinion addressing an entirely hypothetical set of facts—the propriety of a (nonexistent) U.S. patents-only license offer—which cannot and will not resolve the alleged dispute set forth in Count VIII.  "[C]ourts have 'no business' deciding legal disputes or expounding on law in the absence of … a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).  "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks omitted).  Instead, "[a] justiciable controversy . . . must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co.*, 300 U.S. at 240-41.

An alleged dispute concerning a hypothetical license offer involving only U.S. patents—when Plaintiffs only attempt to allege a dispute as to a ***global*** patent license—is simply not justiciable.  This Court recently reached that very conclusion in *Huawei* after a bench trial in which Plaintiffs Optis Wireless, Optis Cellular, and PanOptis failed to present any evidence that they had offered a license to U.S.-only patents.  *See Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, No. 2:17-CV-00123-JRG, 2019 WL 1244707, at *6-7 (E.D. Tex. Mar. 18, 2019).  In doing so, the Court explained that because it could not "determine whether [the plaintiff] complied with its FRAND obligations as to the U.S. SEPs in its offer to Huawei, any declaration by the Court would amount to an advisory opinion."  *Id.* at *7.  The Court thus declined to grant the plaintiffs' requested relief.  *Id.*  The Court can and should reach the same conclusion here.  Plaintiffs do not

claim to have made an offer as to U.S. patents only, and granting Plaintiffs' requested relief as to only U.S. patents would do no more than "inject confusion and uncertainty into this area of both the law and commerce." *Id.*

Proceeding with Count VIII as to U.S. patents only will waste significant resources of the Court and leave the parties with nothing to show for it.  In determining whether to exercise declaratory judgment jurisdiction, courts should consider "whether retaining the lawsuit would serve the purposes of judicial economy."  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003); *see also Celestine v. Nat'l Union Fire Ins. Co.*, 115 F. App'x 658, 660 (5th Cir. 2004) (per curiam) ("[F]ederal courts should forego jurisdiction in declaratory judgment actions when considerations of judicial economy overwhelm." (citing *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 372 (5th Cir. 1998))).

As the *Huawei* case demonstrated, it would needlessly consume significant resources of the Court and the parties to adjudicate Count VIII as to U.S. only patents where Plaintiffs have alleged no dispute specific to U.S. patents.  Judicial economy therefore weighs in favor of dismissing Count VIII.  *Cf. Calderon v. Ashmus*, 523 U.S. 740, 747-48 (1998) (emphasizing "the need . . . to prevent federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute which must await another lawsuit for complete resolution").

## B.   Alternatively, Count VIII Should Be Dismissed Because It Fails To Set Forth A Justiciable Cause Of Action.

Even setting aside that Count VIII encompasses a non-justiciable claim concerning foreign patents, Count VIII should independently be dismissed because it seeks an impermissible advisory opinion that would have no effect on the legal rights between Plaintiffs and Apple.  Compl. ¶ 139. "[W]hat makes [a declaration] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion . . . is in the settling of some dispute *which affects the behavior of the defendant*

*towards the plaintiff.*"  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).  Here, Plaintiffs request that the Court declare that they "negotiated in good faith and otherwise complied with FRAND."  Compl. at 108 (Prayer for Relief D).  But Plaintiffs have pled no facts—beyond that Apple has simply "declined to take a license" (*Id.* ¶ 34)— suggesting the existence of an actual case or controversy.[3]  Plaintiffs do not (and, as described below, cannot) ask this Court to order Apple to pay Plaintiffs' (unspecified) offer if it is found to be FRAND or to take a global portfolio license to Plaintiffs' declared-essential patents.[4]

A declaration here would thus amount to nothing more than "a data point from which the parties could continue negotiations."  *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-CV-00009, 2014 WL 2206218, at *3 (D. Del. May 28, 2014).  And as the Supreme Court has explained, declaratory judgment actions that merely seek to "gain a litigation advantage" by asking the court to "determine a collateral legal issue governing certain aspects of [a] pending or future suit[]" are

---

[3]     Although this Court found that a case or controversy existed as to the declaratory judgment claims in *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00715-JRG-RSP, 2017 WL 957720 (E.D. Tex. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 951800 (E.D. Tex. Mar. 10, 2017), the defendant there had provided "express statements regarding [the plaintiff's] alleged breach of FRAND obligations," which the Court found to be "analogous to the type of conduct required for subject-matter jurisdiction over a patent action seeking a declaration of noninfringement."  *Id.* at * 1.  Plaintiffs have not alleged such statements by Apple here.  And simply declining to take a license hardly "demonstrate[s] [Apple's] intent to pursue [a breach of contract] action."  *Id.*

[4]     While Plaintiffs demand "damages against Apple for the amount the Plaintiffs prove at trial with respect to the breach of contract, count," Plaintiffs have pled no claim for breach of contract, and this relief should be stricken.  *See* Compl. at 108 (Prayer for Relief E); *see also Morse v. Commonwealth Land Title Ins. Co*., No. 12-cv-375, 2013 WL 5372395, at *11 (E.D. Tex. Sept. 25, 2013) (dismissing breach of contract claim where plaintiff failed to identify "the contract(s) at issue [and] the provisions breached").  Nor could Plaintiffs show that FRAND commitments made by others impose contractual obligations on Apple.  *See Core Wireless*, 2015 WL 4775973, at *4 (declining to "present the question of whether Apple had breached this alleged contract to the jury," explaining that the plaintiff "had not presented a *prima facie* case of the existence of a contract—let alone a breach of said contract" (emphasis in original)); *cf.* Compl. ¶ 138 (alleging that "[t]he *original assignee* of the Plaintiffs' standard essential patents" entered into "a contract . . . under French law").

not allowed.  *Calderon*, 523 U.S. at 747; *see also Urban Health Care Coalition v. Sebelius*, 853 F. Supp. 2d 101, 113 (D.D.C. 2012) (dismissing action where only alleged benefit was improving a party's "bargaining leverage" in negotiations).

Indeed, as Judge Davis recognized in *Ericsson, Inc. v. D-Link Sys.*, No. 6:10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014), adjudication of whether a patentee's offer for a license to its worldwide portfolio of declared-essential patents satisfies its FRAND obligations "amount[s] to nothing more than an advisory opinion." *Id.* at *21.  That is particularly true where, as here, Plaintiffs have pled no injury that could be redressed by the Court's resolution of the alleged "dispute."  *See InterDigital*, 2014 WL 2206218, at *3 (refusing to exercise declaratory judgment jurisdiction to adjudicate a FRAND royalty where doing so "would have little utility and serve little to no useful purpose"); *see also Aetna Life Ins. Co.*, 300 U.S. at 240-41 ("justiciable controversy . . . must be a real and substantial controversy admitting of ***specific relief*** through a decree of a conclusive character").

Plaintiffs' failure in this regard is unsurprising.  Like any patent holder, if an SEP holder believes that another entity is infringing its patents, its judicial remedy is a suit for patent infringement under 35 U.S.C. § 281.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971) ("[T]he holder of a patent should not be insulated from the assertion of defenses and thus allowed to exact royalties for the use of an idea that is not in fact patentable or that is beyond the scope of the patent monopoly . . . .").  While Plaintiffs assert infringement of seven patents alleged to be essential to the LTE standard, their requested declaratory relief is much broader—seeking a declaration that Plaintiffs' "offers to Apple for a global license to the Plaintiffs' essential patents complies with" Plaintiffs' FRAND obligations.  Compl. ¶ 139.  But Plaintiffs have not asserted infringement of their global SEP portfolio and—in the absence of a

showing of infringement—Plaintiffs cannot allege (and have not alleged) any legal basis under which this Court could award Plaintiffs any relief, as this Court and others have recognized.

In *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, for example, this Court explained that a patent holder could not impose on a defendant the obligation to license a portfolio of claimed-essential patents.  Magistrate Judge Love rejected Core Wireless' attempt to adjudicate a portfolio royalty, instead directing the case to proceed focused only on the patents that had been actually asserted.  Order at 1, *Core Wireless*, No. 6:12-CV-100 (E.D. Tex. May 2, 2014), Dkt. No. 207 (Selwyn Decl. Ex. 04) ("[N]o expert may opine on any patents other than the eight remaining patents-in-suit until such a time as the aforementioned stay is lifted.").

Likewise, in *Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, the court declined to dismiss Apple's non-infringement declaratory judgment claims covering a handful of patents in favor of a case similar to that asserted by Plaintiffs here.  The court concluded that there "exists no legal basis" through which Ericsson could compel Apple to accept a portfolio-wide license:

> Even if the "actual controversy" were framed as Ericsson sees it—namely that the dispute is only about "the terms (particularly the royalty rate) on which Apple will take a license to Ericsson's portfolio of standard-essential patents"—Ericsson states a partial presentation of a business dispute, not the carving up of a legal claim.  And Ericsson notably uses the word "will," not "must."  ***This is because . . . there exists no legal basis upon which Apple may be compelled to take a license for Ericsson's patents on a portfolio-wide basis***, as much as Ericsson may be able to point to business realities that make such an outcome unlikely, imprudent or uneconomical on Apple's part.

No. 15-cv-00154-JD, 2015 WL 1802467, at *2 (N.D. Cal. Apr. 20, 2015); *see also Ericsson*, 2013 WL 4046225 at *21 (recognizing that the Court could not obligate the defendants to pay RAND royalties for patents they had not been found to infringe); *InterDigital*, 2014 WL 2206218, at *3 (refusing to exercise declaratory judgment jurisdiction over action seeking adjudication of a FRAND royalty for over 500 declared SEPs because doing so "would have little utility and serve little to no useful purpose").  *Cf. Zenith Elecs., LLC v. Sceptre, Inc.*, No. CV14-05150-JAK, 2015

U.S. Dist. LEXIS 33560, at *2-5 (C.D. Cal. Feb. 5, 2015) (rejecting a request for a "stay of all aspects . . . other than the determination of the [FRAND] license rate" because such a determination "could be entirely academic" since the defendant had "not admitted that it practices the patents-in-suit or that they are in fact essential").  There is thus no relief that this Court could order even if it were to adjudicate Plaintiffs' claim.

Simply put, a declaration regarding Plaintiffs' alleged compliance with their FRAND obligations would only serve as a negotiation tool, would not redress any alleged injury, and is therefore not justiciable by this Court.

## IV.  CONCLUSION

For the reasons stated above, Apple respectfully requests that the Court dismiss, with prejudice, Count VIII of Plaintiffs' Complaint.

Date: April 22, 2019        By:    */s/ Melissa R. Smith*
                                   Melissa R. Smith
                                   State Bar No. 24001351
                                   GILLAM & SMITH, LLP
                                   303 South Washington Avenue
                                   Marshall, Texas 75670
                                   Telephone: (903) 934-8450
                                   Facsimile: (903) 934-9257
                                   Email: melissa@gillamsmithlaw.com

**COUNSEL FOR DEFENDANT**
**APPLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 22, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                   */s/ Melissa R. Smith*
                                   Melissa R. Smith