**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:19-cv-00066-JRG <br><br> **JURY TRIAL DEMANDED** <br><br> **ORAL ARGUMENT REQUESTED** |

**APPLE INC.'S MOTION TO PRECLUDE EXPERT TESTIMONY AND
<u>OPINIONS OF JOHANNA DWYER</u>**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................2

      A.    Plaintiffs' ETSI Commitments ...................................................................2

      B.    Ms. Dwyer's Opinion That Plaintiffs' Pre-Suit Offers Were FRAND....................3

      C.    Apple's Non-Disclosure Defense And Ms. Dwyer's Opinion That Alternatives
            Were Covered By Patents/Patent Applications.........................................................6

III.  ARGUMENT.........................................................................................................8

      A.    Ms. Dwyer's FRAND Opinion Should Be Excluded Because She Is Not Qualified
            To Opine On The Propriety Of License Negotiations Or Royalties.......................8

      B.    Ms. Dwyer's FRAND Opinion Should Be Excluded Because It Rests on The
            Analysis of an Undisclosed Fact Witness—Not Ms. Dwyer's Own Analysis ......11

      C.    Ms. Dwyer's Opinion That Alternatives To The Patents-in-Suit Are Covered By
            IPR Should Be Excluded As Conclusory And Unsupported.................................14

IV.   CONCLUSION....................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
No. 6:12-CV-100-JRG, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015)...............................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)........................................................................................................1

*Elder v. Tanner*,
205 F.R.D. 190 (E.D. Tex. 2001).................................................................................12, 15

*Fujitsu Ltd. v. LG Elecs., Inc.*,
620 F.3d 1321 (Fed. Cir. 2010).........................................................................................3

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688 (E.D. Tex. Jan. 7, 2016).........................15

*HVLPO2, LLC v. Oxygen Frog, LLC*,
949 F.3d 685 (Fed. Cir. 2020)........................................................................................13

*Izumi Prod. Co. v. Koninklijke Philips Elecs. N.V.*,
140 F. App'x 236 (Fed. Cir. 2005) ..................................................................................15

*Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)..............................................................................14

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
472 F.3d 398 (6th Cir. 2006) ..........................................................................................14

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
410 F. Supp. 2d 529 (S.D. Tex. 2006) .............................................................................15

*Orthoflex, Inc. v. ThermoTek, Inc.*,
986 F. Supp. 2d 776 (N.D. Tex. 2013) ............................................................................12

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ........10, 11, 12, 13

*Russell v. Wal-Mart Stores, Inc.*,
No. 1:06-CV-408, 2007 WL 9725179 (E.D. Tex. July 12, 2007) .....................................8

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*,
200 F.3d 358 (5th Cir. 2000) ..........................................................................................11

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
   No. 2:18-CV-00366-JRG-RSP, 2019 WL 6896674
   (E.D. Tex. Dec. 18, 2019) ...................................................................................................11

*United States v. Brownlee*,
   741 F.3d 479 (7th Cir. 2014) ..............................................................................................12

*Unwired Planet Int'l Ltd. v. Huawei Techs Co. Ltd.*,
   [2017] EWHC 711 (Pat) (Ch.) ..............................................................................................4

*Wilson v. Woods*,
   163 F.3d 935 (5th Cir. 1999) ................................................................................................8

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 702 ....................................................................................................1, 8, 12

██████████████████████████████
████████████████████

## I.    INTRODUCTION

Apple moves to exclude the opinions of Plaintiffs' expert Johanna Dwyer as unreliable under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Ms. Dwyer offers two main opinions: ████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

For both, Ms. Dwyer did no meaningful analysis of her own.  Instead, her opinions are either wholly conclusory or rely on channeling the analysis of others—██████████████████████████

███████████████████████████████.[1]  Neither her conclusory analysis nor her channeling makes her opinions sufficiently reliable or relevant, and they should be excluded.

*First*, Plaintiffs seek a declaration that they "negotiated in good faith and otherwise complied with FRAND" with respect to "a global license to Plaintiffs' [declared] essential patents."  ECF No. 26 at 109.  In support of that claim, Ms. Dwyer—a former engineer with no licensing experience—offers a conclusory and unsubstantiated opinion that is concededly well outside her expertise and does little more than parrot Plaintiffs' Amended Complaint.  Instead of offering an opinion on the subject matter of analyzing whether patents are essential, on which she claims to be an expert, Ms. Dwyer accepts and relies on ████████████████████████

███████████████████████████████████████████

███████—in a plain attempt to circumvent the pre-trial disclosure requirements of Rule 26.

*Second*, in attempting to rebut Apple's defense that the patents-in-suit were disclosed to ETSI too late—in breach of the applicable ETSI rules—███████████████████████

---

[1] Apple is separately discussing with Plaintiffs their failure to disclose material witnesses to Apple, while at the same time connecting Ms. Dwyer with those same witnesses.  Additional motion practice may be necessary to address Plaintiffs' discovery conduct.

1

███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████—but the key point here is that Ms. Dwyer offers no evidence, analysis, or explanation of her own for her conclusions.

Apple respectfully requests that the Court exclude Ms. Dwyer's opinions, which fail to provide the independent analysis of a true expert qualified to testify at trial.

## II.    BACKGROUND

### A.    Plaintiffs' ETSI Commitments

ETSI is an independent standard setting organization that establishes standards for the telecommunications industry, including the LTE cellular communication standards. ECF No. 26 ¶ 23. Under the ETSI Intellectual Property Rights ("IPR") Policy, members must disclose patents and patent applications that may become essential to ETSI standards (standard-essential patents or "SEPs"). *See* Ex. 1 (ETSI Rules of Procedure Annex 6 § 4.1 (APL-UPPO_002588572-577)). The IPR Policy also requires an IPR owner to give "an undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions under such IPR." *Id.* § 6.1.

Thousands of patents have been declared as essential to the LTE standard. *See* Ex. 2 (Expert Report of M. Ray Perryman, Ph.D. ¶ 249); Ex. 3 (Initial Expert Report of Johanna Dwyer ("Dwyer Rpt.") ¶ 67). "As a general principle," however, "ETSI does not perform any check on the status and validity of any Essential IPRs notified to ETSI." Ex. 4 (ETSI Guide on IPRs § 3.2.1 (APL-UPPO_000032627-645)). Thus, ETSI "cannot confirm, or deny, that the patents/patent applications are, in fact, essential, or potentially essential." *Id.* § 3.2; *see* Ex. 5 (Apr. 17, 2020 Deposition of Ray Warren at 109:23-110:24) ████████████████████████████

2

████████████████████████████████████
████████████████████████

████████████ *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *1 (E.D. Tex. Aug. 11, 2015) ("ETSI does not review" whether a declared-essential patent "is actually essential").  To determine if a SEP is actually essential *and infringed* by an accused product supporting the standard, its claims must be compared to that product.  *See Fujitsu Ltd. v. LG Elecs., Inc.*, 620 F.3d 1321, 1327-1328 (Fed. Cir. 2010).

**B.    Ms. Dwyer's Opinion That Plaintiffs' Pre-Suit Offers Were FRAND**

Plaintiffs seek a declaration that Plaintiffs' "negotiations toward a FRAND license with Apple were conducted in good faith, comply with the ETSI IPR Policy, and were consistent with competition law requirements."  ECF No. 26 ¶ 145.  To support that claim, Plaintiffs offer Ms. Dwyer, who opines that Plaintiffs ███████████████████████████████████ Ex. 3 (Dwyer Rpt. ¶ 18).

Ms. Dwyer is a former engineer for Research In Motion (now, BlackBerry) turned consultant.  *Id*. ¶ 9.  As Ms. Dwyer conceded, she is ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████ (*id.* at 64:14-17[3]).  Rather, Ms. Dwyer claims to have technical expertise ████████████████████████████████████

████████████████████████████ *Id.* at 64:20-65:3; *see also id.* at 38:13-18 ████

████████████████████████████████████

---

[2] *See also* Ex. 6 (Dwyer Tr. 59:9-11) ████████████████████████
████████████████████████████████████ *id.* at 287:21-288:3

[3] *See also* Ex. 6 (Dwyer Tr. 92:23-93:1) ████████████████████
████████████████████████████

3

ActiveUS 180170444v.9



Despite her lack of expertise in analyzing patent licenses or royalty rates or assessing license negotiations, Ms. Dwyer opines that Plaintiffs ███████████ and their ██████ ████████████ Ex. 3 (Dwyer Rpt. ¶ 18); *see also id.* ¶ 105. In reaching that conclusion, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.[4] Ms. Dwyer proceeds in two steps.

***First***, ███████████████████████████████████████████████ ███████████████. However, rather than computing Plaintiffs' share of the total number of *declared* essential patents (*i.e.*, applying Plaintiffs' declared-essential patents as the numerator and the total number of declared-essential patents in the denominator), ████████████████ ██████████████████████████████████████ But rather than independently analyzing the patents in Plaintiffs' portfolio, ████████████████ ████████████████████████████████████████████████████

Plaintiffs' counsel provided Ms. Dwyer with ███████████ for patents in Plaintiffs' portfolio. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████ Ms. Dwyer did not create the ███████████ or know who selected ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

█ ████████████████████████████████████

█ ████████████████████████████████████████

---

[4] Apple is separately moving *in limine* to exclude all evidence and argument regarding other cases, including the Birss Decision, which is irrelevant to the issues to be decided in this case and will only serve to confuse the fact-finder and prejudice Apple.

4



Ex. 6 (Dwyer Tr. 197:13-198:8, 198:25-199:19); *see also id.* at 200:11-15, 200:22-25.



Ms. Dwyer indicates that the ████████████████████████████ ████████████████████████████████████████████████████. Ex. 3 (Dwyer Rpt. ¶ 54); *see* Ex. 6 (Dwyer Tr. 125:19-126:10). However, she does not know ████ ████████████████████████████████████████████████████ ████████ *Id.* at 198:15-22; *id.* at 126:18-22; *see also id.* at 200:5-10. Nonetheless, according to Ms. Dwyer, she ██████████████████████████████████████ ███████████████████████████ *Id.* at 125:11-18. But Ms. Dwyer provides no independent analysis or assessment of the █████ patents. ██████████████████ ████████████████████████████████████████████████. *See* Ex. 3 (Dwyer Rpt. ¶¶ 54-55); *see also* Ex. 6 (Dwyer Tr. 125:11-18).

5

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████  In performing that calculation, ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████  Ex. 6 (Dwyer Tr. 107:4-13, 110:18-112:22); Ex. 3 (Dwyer

Rpt. ¶¶ 53, 56).  ████████████████████████████████████  Ex. 3

(Dwyer Rpt. ¶ 56); Ex. 6 (Dwyer Tr. 112:7-22).

*Second*, after determining Plaintiffs' share of alleged "true SEPs" ████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Ex. 3 (Dwyer Rpt. ¶ 58); Ex. 6 (Dwyer Tr. 127:6-128:25).  ████████████████████

██████████████████████████████████████████████

██████████████████████  Ex. 3 (Dwyer Rpt. ¶ 59); Ex. 6 (Dwyer Tr. 129:1-15).

Although ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████  Ms. Dwyer then compares the ████ rate against

Plaintiffs' offers and concludes that the offers were FRAND.  Ex. 3 (Dwyer Rpt. ¶ 100).[5]

**C.    Apple's Non-Disclosure Defense And Ms. Dwyer's Opinion That Alternatives Were Covered By Patents/Patent Applications**

---

[5] Ms. Dwyer also purports to conduct several ████████████████ on her computation of a FRAND rate.  *See* Ex. 3 (Dwyer Rpt. ¶¶ 66-89).  But in each case, Ms. Dwyer relied on the ████████████████████████████████████████

ActiveUS 180170444v.9

██████████████████████████████████████████
████████████████████████████

Apple asserts that Plaintiffs' infringement claims are barred, in whole or in part, by waiver, estoppel, and/or unclean hands based on the prior owners' failure to timely disclose the patents-in-suit to ETSI as the ETSI IPR Policy required. *See* ECF No. 110 at 26 (Seventh Defense); *see also* Ex. 1 (ETSI Rules of Procedure Annex 6 § 4.1 (APL-UPPO_002588572-577)). In support of that defense, Apple offers the expert testimony of Friedhelm Rodermund, former Secretary of the 3GPP Technical Specifications Group for ETSI. Mr. Rodermund opines that the prior owners of the patents-in-suit failed to timely disclose those patents as potentially essential to the LTE standard. Ex. 7 (Expert Report of Friedhelm Rodermund ("Rodermund Rpt.") ¶¶ 18-19). Mr. Rodermund explains that failure to timely disclose patents that may become essential in violation of the ETSI IPR Policy deprives members of the opportunity to adopt "an acceptable alternative technology . . . that is either not subject to any IPR or subject to IPR that will be provided on a royalty free basis or not enforced." *Id.* ¶ 98. Mr. Rodermund further explains, based on analysis conducted by Apple's technical experts, that there were viable alternatives that could have been adopted for five of the patents-in-suit. *Id.* ¶¶ 125-126, 146-147, 164, 181-183, 203-209.

Ms. Dwyer offers a report in response to Mr. Rodermund's analysis. Among other things, Ms. Dwyer claims that ███████████████████████████████████████

████████████████████ Ex. 8 (May 24, 2020 Rebuttal Report of Johanna Dwyer ("Dwyer Rebuttal") ¶ 227).[6] For several alternatives, ███████████████████████████

████████████████████████████████████ *See, e.g.*, *id.* ¶ 267 ███████████

██████████████████████████████████████████████████████

---

[6] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Ex. 8 (Dwyer Rebuttal ¶ 14, 145, 156, 173, 185-189, 209). As noted above, Apple is separately discussing with Plaintiffs the proper remedy for Plaintiffs' failure to disclose material witnesses to Apple. *See supra* n.1.

7



However, in each case,

*See id.*

¶¶ 267, 271, 278, 280, 284, 294, 297, 298, 301, 302, 306, 310, 313, 316, 320, 326, 358, 360.  She

conceded that

. *See*

Ex. 6 (Dwyer Tr. 266:3-267:13); *see also id.* at 262:10-265:22.

## III.    ARGUMENT

Under Rule 702, expert testimony is admissible only where: (1) "the expert's scientific, technical, and other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

### A.    Ms. Dwyer's FRAND Opinion Should Be Excluded Because She Is Not Qualified To Opine On The Propriety Of License Negotiations Or Royalties.

As the Fifth Circuit has explained, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education'" and "should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702); *see Russell v. Wal-Mart Stores, Inc.*, No. 1:06-CV-408, 2007 WL 9725179, at *3 (E.D. Tex. July 12, 2007).  Ms. Dwyer's                    and conclusion that                    should be excluded because both fall far outside the scope of her expertise.  Ex. 3 (Dwyer Rpt. ¶ 52).

Ms. Dwyer is a former engineer.  *Id.* ¶ 9.  She holds no degrees in accounting or economics, has no experience assessing patent licenses, no familiarity with patent license negotiations, and

ActiveUS 180170444v.9



does not consider herself to be an expert in patent licensing.  *See* Ex. 9 (Dwyer Rpt., Appx. A, at 4); Ex. 6 (Dwyer Tr. 66:23-67:1) ███████████████████████████

As reflected in her curriculum vitae, Ms. Dwyer purports to have expertise in various technical areas, but there is no mention of patent royalties, licenses, license negotiations, or even intellectual property valuation:



Ex. 9 (Dwyer Rpt., Appx. A, at 1).

Before this case, Ms. Dwyer had never ████████████████████████████

████ Ex. 6 (Dwyer Tr. 237:7-238:6).  In fact, ████████████████████

████████████████████ *Id.* at 67:8-11 ████████████

████████████████████████████████████

████████████████ Rather, as Ms. Dwyer unequivocally stated in her own words: ████████████ *Id.* at 44:19-22; *see also id.* at 39:9-12.

Rather than relying on her own expertise in analyzing licenses, royalty rates, or license negotiations (because she has none), Ms. Dwyer's testimony is instead an improper "regurgitation

9



of information she (or others) have collected." *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at \*9 (E.D. Tex. Apr. 10, 2017) (Bryson, J., sitting by designation).

*See id.* ¶¶ 52, 57-58; *see also id.* ¶ 19.  Yet despite acknowledging that the rate from the Birss Decision was derived from a "comparable" license analysis for Huawei's products (*id.* ¶ 57)),

(Ex. 6 (Dwyer Tr. 122:20-15)).[7]

Given Ms. Dwyer's conceded lack of expertise, she "cannot qualify as an expert on [Plaintiffs' negotiation conduct or license offers] simply by reading deposition testimony and

---

[7] Confirming the "comparable" license analysis of the Birss Decision has no applicability here, Justice Birss found the 2008 Apple-Ericsson license **not comparable** because of the difference in prices between Apple's devices and the Huawei devices at issue in that case. *See* Ex. 10 (Birss Decision at POAP_00124161-163) (noting that "Apple's selling prices per unit are very high and so a low rate expressed as a percentage of selling price may not readily equate to a percentage of another company's selling price" and declining to "place any weight" on the 2008 Apple-Ericsson license); *see also* Ex. 6 (Dwyer Tr. 166:21-167:4)

10

██████████████████████████

documents in a case" and then telling the factfinder that "the deposition testimony and documents show" that Plaintiffs' conduct was in good faith and offers were FRAND. *Robroy Indus.-Texas, LLC*, 2017 WL 1319553, at \*9; *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming exclusion of expert testimony, and concluding that the expert's "lack of formal training or education in accounting, and his failure to conduct an independent analysis of [the defendant's] sales figures were insurmountable obstacles for [the plaintiff] in its attempt to qualify him as an expert"); *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 6896674, at \*2 (E.D. Tex. Dec. 18, 2019) (excluding expert testimony that amounted to a "summation of various documents and testimony," where the expert did not employ his "expertise to help the jury understand facts or issues beyond a lay person's understanding"). Accordingly, her purported opinions on Plaintiffs' conduct during negotiations and whether Plaintiffs' offers were FRAND should be excluded.

**B.    Ms. Dwyer's FRAND Opinion Should Be Excluded Because It Rests on The Analysis of an Undisclosed Fact Witness—Not Ms. Dwyer's Own Analysis.**

Separate and apart from Ms. Dwyer's lack of expertise in the subject matter on which she opines, Ms. Dwyer's opinion that Plaintiffs' offers were FRAND should be excluded because her opinion fails to satisfy *Daubert* in multiple ways. Ms. Dwyer's entire FRAND opinion turns on her alleged determination of the number of ████████████████████████████ ███████████████████████████ but ***Ms. Dwyer herself performed no analysis whatsoever*** on that question. Although Ms. Dwyer purports to be an expert ████████████ ████████████████████████████████████ (Ex. 6 (Dwyer Tr. at 64:20-65:3)), her expert report contains no such assessment for the patents that she claims are ████████ in this case. Instead, Ms. Dwyer relies on an assessment (in the form of ████████) performed by a ████████████████████████████████████████████

11

████████████████████████████████████
██████████████████████████████

███████ in an apparent attempt to side-step the Rule 26 disclosure requirements. Ms. Dwyer's opinion concerning the claim charts—and her ultimate determination of the amount of a FRAND royalty that turns on that opinion—cannot stand.

*First*, Ms. Dwyer's conclusory opinion regarding the claim charts she "reviewed" does nothing to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed R. Evid. 702; *see Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tex. 2001) (expert testimony inadmissible where expert simply "list[ed] the resources [the expert] utilized and then stat[ed] an ultimate opinion"). "[D]enominating a witness as an expert does not give that witness leave to simply read materials . . . in the case and then testify as to their contents. . . . Nor is it proper to use an expert witness simply to summarize the evidence proffered by the party that hired him." *Robroy Indus.-Tex.*, 2017 WL 1319553, at *9. Indeed, "[a]n expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *Id.* (quoting *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014)). "[A]n expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013). Allowing an expert to do so poses a substantial risk that "the expert will become a vehicle through whom the party can summarize its case" with the "imprimatur of the expert's asserted 'expertise.' Courts have regularly barred experts from testifying in that manner." *Robroy Indus.-Tex.*, 2017 WL 1319553, at *10. Yet that is precisely what Ms. Dwyer does here.

There is no dispute that Ms. Dwyer failed to create the ████████ she uses to offer her opinion on the number of Plaintiffs' "true SEPs." *See* Ex. 6 (Dwyer Tr. 199:6-12) ████████

███████████████████████████████████████████████████

████████████ ); *see also* Ex. 3 (Dwyer Rpt. ¶ 54) (███████████████████

12



Rather, the claim charts were prepared by [REDACTED]

[REDACTED][8]—and [REDACTED], none of whom served Rule 26 expert disclosures.

Ms. Dwyer's entire "opinion" on the essentiality of the patents is [REDACTED]

[REDACTED] Ex. 3 (Dwyer Rpt. ¶ 55). But Ms. Dwyer provided [REDACTED]

[REDACTED] *See* Ex. 6 (Dwyer Tr. 103:12-21); *id.* at 123:22-124:5

[REDACTED][9] But "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base [her] opinion.'" *Robroy Indus.-Texas, LLC*, 2017 WL 1319553, at *9 (citation omitted).

***Second***, Plaintiffs should be prohibited from relying on Ms. Dwyer's unsubstantiated and conclusory opinions to shirk their requirements under the Federal Rules of Civil Procedure. "Federal Rule of Civil Procedure 26 requires for example that experts be disclosed to the opposing party along with a written report which contains all opinions of the expert, the reasons and bases for those opinions, and all facts relied upon in the formation of the opinion." *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020). Plaintiffs seek to evade that requirement by shoehorning expert analyses from [REDACTED] into Ms.

---

[8] *See, e.g.*, Ex. 11 (Plaintiffs' Apr. 22, 2020, Second Amended and Supplemented Disclosures).

[9] During Ms. Dwyer's deposition, [REDACTED] *See* Ex. 6 (Dwyer Tr. 103:22-104:19).

ActiveUS 180170444v.9

███████████████████████████████████████
██████████████████████████████████

Dwyer's testimony, thereby depriving Apple of the required expert disclosures under Rule 26.

Indeed, ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

*See* Ex. 6 (Dwyer Tr. 197:13-198:8, 198:25-199:19, 201:14-203:19); *see also id.* at 200:11-15,

200:22-25.[10]   Apple thus has no way to test through cross examination whether her testimony is

"based on sufficient facts or data," because not even *Ms. Dwyer* knows the facts or data underlying

████████ on which she relies.  *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664

(S.D.N.Y. 2007) (an expert "cannot simply be a conduit for the opinion of an unproduced expert");

*see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006).

In short, Ms. Dwyer's ███████████████████████████████

████████████████████ do not even begin to satisfy the standard imposed under *Daubert*.  Her

testimony on the ██████—and all opinions flowing therefrom—should be excluded.

**C.      Ms. Dwyer's Opinion That Alternatives To The Patents-in-Suit Are Covered By IPR Should Be Excluded As Conclusory And Unsupported.**

Ms. Dwyer's opinion that the alternatives that Apple identified ████████████████████

███████████████████████ is based on nothing more than her conclusory say-so.  *See*

Ex. 8 (Dwyer Rebuttal ¶ 227); *see also id*. ¶¶ 267, 271, 278, 280, 284, 294, 297, 298, 301, 302,

306, 310, 313, 316, 320, 326, 358, 360).  Although Ms. Dwyer concedes that ████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[10] Ms. Dwyer testified that she was provided with a ████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ *See*

Ex. 6 (Dwyer Tr. 201:14-203:19).

14

████████████████████████████████
██████████████████████████

████████████████████████████ (Ex. 6 (Dwyer Tr. 63:7-18)), Ms. Dwyer's report contains ***no analysis*** or explanation from which she can reliably conclude that ██

████████████████████████████████████████

██████ As Ms. Dwyer concedes, ███████████████████████████

████████████████████████████████████████

██████████████████████████████████ Ex. 6 (Dwyer Tr. 262:10-265:22, 266:3-267:13).  Her conclusory statements are plainly insufficient under *Daubert*.

"Conclusory opinions unsupported by 'facts or data' and based on no discernable 'principles and methods' are not admissible."  *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at *2 (E.D. Tex. Jan. 7, 2016); *see Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 140 F. App'x 236, 244 (Fed. Cir. 2005) (affirming exclusion of "conclusory" expert testimony that "immediately jumped to the conclusion" and "was missing the essential analysis").  "It is not sufficient simply to list the resources [the expert] utilized and then state an ultimate opinion without some discussion of their thought process."  *Elder*, 205 F.R.D. at 194 .  Yet that is precisely what Ms. Dwyer does here.  Where, as here, an expert "offers no facts to support [the] conclusion[s] in [her] report," the expert's testimony "is not sufficiently reliable under *Daubert* and is therefore inadmissible."  *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 548 (S.D. Tex. 2006).

## IV.    CONCLUSION

Ms. Dwyer's opinions on Plaintiffs' negotiation conduct and offers are outside her expertise and hinge on channeling the analyses of others, including ████████████████ Likewise, ████████████████████████████████████ fails to satisfy *Daubert*.  Accordingly, ████████████████████████████

████████████████████████████████ should be excluded.

15

████████████████████████████
████████████████████████

Dated:  June 18, 2020

/s/ *Mark D. Selwyn*

Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Mindy Sooter (*pro hac vice*)
mindy.sooter@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
Telephone:  (720) 274-3135
Facsimile:  (720) 274-3133

Joseph J. Mueller (*pro hac vice*)
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Brittany Blueitt Amadi (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

16

████████████████████████████
████████████████████████

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257


*Attorneys for Defendant Apple Inc.*

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiffs' counsel of record were served with a true and correct copy of the foregoing document by electronic mail on June 18, 2020.

*/s/ Melissa R. Smith*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), I hereby certify that on June 18, 2020, counsel for Defendant Apple Inc. met and conferred telephonically with counsel for Plaintiffs concerning the subject of this motion.  The parties have been unable to resolve their dispute.

*/s/ Melissa R. Smith*

18