# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC,<br><br>                      Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>                      Defendant. | Civil Action No. 2:19-cv-00066-JRG<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT APPLE INC.'S MOTION TO CONTINUE TRIAL

Apple hereby moves to continue trial by approximately two months, from August 3, 2020 to October 5, 2020.  Apple has been preparing for trial and had not intended to seek a change of the trial date, but the increasing COVID-19 caseload in Texas and other parts of the United States has forced Apple to bring this motion.  Holding the trial at this time would create undue risks to all involved in the trial—as well as the local communities in and around the Marshall Division and the communities to which all participants would be returning after trial.  Continuing the trial until October 5 would allow the Court and the parties to re-assess the situation at that time, and determine whether conditions have improved enough to safely hold the trial.

Apple respectfully asks that the Court order that continuance.

### I.      **INTRODUCTION**

The COVID-19 pandemic represents one of the most serious threats to public health and safety that the nation has ever experienced.  To date, more than three million Americans have contracted COVID-19, and more than 135,000 have died.  Texas and other states are currently experiencing large spikes in COVID-19.  The COVID-19 pandemic continues to significantly worsen (1) locally in the six counties from which jurors are drawn for trials in the Marshall Division of the Eastern District of Texas, (2) in Texas metropolitan areas, including Dallas/Fort Worth, Houston, Austin, and San Antonio, and (3) in the United States as a whole.

The scheduled trial will bring together more than 100 people, at least on August 3 when potential jurors arrive at the courthouse.  Those 100 people, in turn, will surely interact with hundreds more people throughout the trial week.  According to the "COVID-19 Event Risk Assessment Planning Tool" published by researchers at Georgia Tech, there is greater than a 90% likelihood of at least one person having COVID-19 in a group of 100 people gathered in Harrison

County.[1]  And unfortunately, even diligent, conscious efforts to wear masks, regularly disinfect, and maintain social distance may not be sufficient to meaningfully prevent infection.[2]

According to Dr. Robert Haley, Professor of Internal Medicine and Director of the Division of Epidemiology in the Internal Medicine Department at UT Southwestern Medical Center, proceeding with trial under the current circumstances would present a substantial risk to the health and safety of:

- the parties and their witnesses and litigation teams;
- the jury and those summonsed for possible jury duty;
- the Court and the courthouse staff; and
- all those in both local and distant communities who will interact with those participating in the trial.

*See* Declaration of Robert Haley, attached as Exhibit A.  As Dr. Haley explains: "At this very moment we are in the most dangerous period for getting people together in groups in our lifetime." *Id.* ¶ 23.

Neither side would be prejudiced by the requested continuation, which would be comparatively short when viewed in the context of the overall duration of the parties' dispute, whereas proceeding with trial under the current circumstances will limit the parties' opportunity to present a full case as multiple European-based expert witnesses will be unable to enter the U.S.

---

[1] Chande, A.T., et al., *Interactive COVID-19 Event Risk Assessment Planning Tool*, https://covid19risk.biosci.gatech.edu (last visited on July 13, 2020).

[2] For example, it was recently reported that 85 children and counselors were infected with COVID-19 at a YMCA camp in Georgia despite having followed safety guidelines.  *See* Mitchell Willetts, *85 kids, counselors infected with coronavirus in YMCA camp outbreak, GA officials say*, The Telegraph, July 10, 2020,  https://www.macon.com/news/coronavirus/article244158667.html.

to attend trial in person due to Presidential proclamation.[3] Continuing the trial until October will allow an opportunity for public health interventions to improve the situation, and permit the Court to reassess the situation at that time.

II.   **PROCEEDING WITH TRIAL WOULD JEOPARDIZE THE HEALTH AND SAFETY OF COUNSEL, CLIENTS, WITNESSES, THE COURT AND ITS STAFF, AND THE LOCAL COMMUNITY.**

   A.   **The Number Of New Cases Is On A Sharp Rise, And Experts Warn That The Risk Of COVID-19 Transmission Is Higher Than Previously Thought.**

The number of new COVID-19 cases is rising rapidly throughout the country,[4] and Texas is one of the states experiencing an especially large surge.[5] On July 12, 2020 alone, there were 62,918 new cases and 906 new deaths in the United States,[6] and Texas reported over 8,000 new cases and 80 new deaths.[7]

Local, state, and federal officials continue to warn about the rapid spread of COVID-19. On July 2, 2020, Texas Governor Greg Abbott issued Executive Order No. GA-29 requiring, with limited exceptions, every person in Texas to wear a mask covering the nose and mouth in most

---

[3] Proclamation No. 9993, 85 Fed. Reg. 15045 (March 11, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-2019-novel-coronavirus/; *Travelers Prohibited from Entry to the United States*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/travelers/from-other-countries.html (last visited on July 13, 2020).
[4] Allison Prang, et al., *As Covid-19 Cases Hit Records in U.S., Deaths Begin Trending Higher*, Wall St. J., July 10, 2020, https://www.wsj.com/articles/coronavirus-latest-news-07-10-2020-11594368064.
[5] *COVID-19 Hospitalizations in Texas Continue to Rise*, NBCDFW, July 6, 2020, https://www.nbcdfw.com/news/local/texas-news/covid-19-hospitalizations-in-texas-continue-to-rise/2401942.
[6] *Cases in the U.S.*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited on July 13, 2020).
[7] Heather Osbourne, *More than 8,000 new coronavirus cases, 80 new deaths in Texas Sunday*, July 12, 2020, https://www.statesman.com/news/20200712/more-than-8000-new-coronavirus-cases-80-new-deaths-in-texas-sunday.

public venues.[8] On the same day, Governor Abbott amended paragraph 12 of his June 26, 2020 Executive Order No. GA-28 to generally prohibit groups of more than ten people within the State of Texas: "Except as provided in this executive order or in the minimum standard health protocols recommended by DSHS, found at www.dshs.texas.gov/coronavirus, people shall not be in groups larger than ten and shall maintain six feet of social distancing from those not in their group."[9] In announcing his mask order, Governor Abbott issued the following warning: "If we do not slow the spread of COVID-19 . . . the next step would have to be a lockdown."[10] He also warned that [t]he worst is yet to come as we work our way through that massive increase in people testing positive."[11]

Governor Abbott's Executive Orders are consistent with the guidance on group gatherings issued by the U.S. Centers for Disease Control and Prevention.[12] One of the "guiding principles" that the CDC provides is the following: "The *more people* an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."[13] The CDC describes a "highest risk" category for group gatherings: "Large in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."[14] This is precisely the

---

[8] Exec. Order No. GA-29, *Relating to the use of face coverings during the COVID-19 disaster*, July 2, 2020, https://open.texas.gov/uploads/files/organization/opentexas/EO-GA-29-use-of-face-coverings-during-COVID-19-IMAGE-07-02-2020.pdf.
[9] Proclamation Amending Exec. Order GA-28, July 2, 2020, https://open.texas.gov/uploads/files/organization/opentexas/DISASTER-proclamation-amending-GA-28-mass-gatherings-IMAGE-07-02-2020.pdf.
[10] Alex Samuels, *Gov. Greg Abbott warns if spread of COVID-19 doesn't slow, "the next step would have to be a lockdown,"* Texas Tribune, July 10, 2020, https://www.texastribune.org/2020/07/10/greg-abbott-shutdown-texas-mask-order/.
[11] https://www.texastribune.org/2020/07/10/greg-abbott-shutdown-texas-mask-order/.
[12] *Considerations for Events and Gatherings*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html (last visited on July 13, 2020).
[13] *Id.*
[14] *Id.*

scenario that a trial would create.

Harrison County is experiencing a surge in infections similar to the rest of the state. On July 6, 2020, Chad Sims, the County Judge for Harrison County, warned: "We are seeing significant community spread [in Harrison County] in addition to the long-term care facilities. Please be extra vigilant in personal hygiene and use the facial covering to protect others."[15] There were 24 new cases reported in Harrison County on July 6, 20 new cases reported on July 7, and 24 new cases reported on July 12—all exceeding the previous daily high of 19 on April 30.[16] When graphed on a 7-day rolling average, the numbers show that the increase in the number of new cases is outpacing the previous period of increase in April and May.[17]



The number of active cases in Harrison County tells the same story. The current number of active cases has surged to 138 as of July 12, 2020,[18] exceeding the peak of 119 active cases on

---

[15] Harrison County Judge, Facebook, July 6, 2020, https://www.facebook.com/harrisoncountyjudge/posts/1538204396382492.
[16] *Texas COVID-19 Data*, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).
[17] Graph created from data available at *Texas COVID-19 Data,* Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).
[18] *Texas COVID-19 Data*, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).

May 10.  The seven-day rolling average shows that the number of active cases is increasing at a more rapid pace than in April and May:[19]



COVID-19 cases are also surging in other parts of East Texas.  Since the start of July, 107 new COVID-19 cases have been reported in the other five counties that make up the Marshall Division.[20]  In adjoining Gregg County, 416 new COVID-19 cases were reported in the first 11 days of July,[21] prompting state courts in Gregg County to cancel plans to resume jury trials on July 30.[22]  Other nearby parts of the Eastern District of Texas have also seen spikes in COVID-19 cases in July, including in Anderson County (764 new cases), Smith County (733 new cases), and Angelina County (267 new cases).[23]  In East Texas overall, 11,331 people have contracted

---

[19] Graph created from data available at *Texas COVID-19 Data*, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).
[20] Texas COVID-19 Data, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).
[21] Kristen Barton, *Gregg County COVID-19 numbers spiked 105% in first 11 days of July*, Kilgore News Herald, July 12, 2020, https://www.kilgorenewsherald.com/covid-19/gregg-county-covid-19-numbers-spiked-105-in-first-11-days-of-july/article_51df6a1e-2426-5e6b-8dee-f49ba415177e.html.
[22] *Gregg County reverses course after Covid-19 surge, cancels jury duty,* KLTV, July 10, 2020, https://www.kltv.com/2020/07/10/gregg-county-reverses-course-after-covid-surge-cancels-jury-duty.
[23] *Texas COVID-19 Data*, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 13, 2020).

COVID-19 and 201 patients have died.[24] The current number of new and active cases and the rate of increase in new and active cases far exceed the numbers on the date the Eastern District of Texas continued all jury trials on March 16, 2020 and when the Court extended the continuance on April 22, 2020.[25]

Studies released within the last few weeks provide new evidence that COVID-19 is even more contagious than previously thought. These recent studies indicate that COVID-19 is spread not only by contact with airborne respiratory droplets (e.g., coughing, sneezing, or talking), but also by droplets that have aerosolized—become fine particles suspended in the air, which linger in the air for longer periods and travel farther distances than droplets.[26] For example, a new study shows that lab-created aerosols of COVID-19 can remain viable for 125 minutes in indoor environments.[27] Other studies report that COVID-19 aerosols were carried on currents from air-conditioning units of a restaurant to infect ten diners from separate groups, and describe a person who was infected on a bus even though the rider entered and exited using a different door than the carrier and sat almost 15 feet away from the carrier.[28] These studies suggest that the risk for spread and infection is greater than previously thought.

### B. There Will Be A Health And Safety Risk For Everyone Who Participates In The Trial As Well As To The Local Communities.

Proceeding with the August 3 trial creates an undue risk of COVID-19 spread and infection for trial participants, courthouse staff, and the local communities in and around the Marshall

---

[24] *More than 11,300 people have contracted COVID-19 in East Texas; deaths top 200,* CBS19, July 13, 2020, https://www.cbs19.tv/article/news/local/monday-june-1-confirmed-cases-of-covid-19-in-east-texas-surpass-3000-deaths-top-100/501-bc692e6a-ae6f-4447-9842-317a644ddbfc.
[25] *See* Eastern District of Texas General Order 20-03, March 16, 2020; Eastern District of Texas General Order 20-09, April 22, 2020.
[26] *See, e.g., Mounting Evidence Suggests Coronavirus is Airborne — But Health Advice Has Not Caught Up*, Nature, July 8, 2020, https://www.nature.com/articles/d41586-020-02058-1.
[27] *Id.*
[28] *Id.*

7

Division.

As the CDC continues to warn, social distancing is the best way to reduce the spread of COVID-19.[29] While Apple understands and appreciates that the Court intends to take steps to socially distant those in the courtroom and require masks except for the witness and examining attorney, the trial would still require all participants—including the parties' litigation team, witnesses, jurors, the Court, the Court's staff, and the federal marshals[30]—to increase their risk of exposure and spread of COVID-19.

The trial would draw a large group of people together—with some in the courtroom, and many others in workspaces in Marshall preparing for the trial—most of whom will have recently traveled from outside the local area. On the first day of trial, for example, more than hundred potential jurors will be brought to the courthouse, and at any given time, approximately forty of them will be in the courtroom with at least ten to fifteen others (e.g., attorneys, client representatives, courtroom staff).

"In a group of this size, given the present growth rate of the Covid-19 epidemic in Harrison County, there is a high likelihood that several would be carrying the SARS-CoV-2 virus that causes Covid-19, and they would be capable of transmitting it to others most likely while they are asymptomatic." Haley Decl., ¶ 19. In Harrison County, 59.4 of 10,000 residents have tested positive for COVID-19.[31] Some surrounding counties, such as Titus County, have significantly

---

[29] *Social Distancing*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited on July 13, 2020).
[30] Recently, it was reported that over 1,000 TSA agents have tested positive for COVID-19. *See* Ian Duncan, *More than 1,000 TSA employees have tested positive for coronavirus*, Wash. Post., July 9, 2020, https://www.washingtonpost.com/transportation/2020/07/09/more-than-1000-tsa-employees-have-tested-positive-coronavirus/.
[31] Frank Heinz, *COVID-19 Tracker: What We Know About the Virus in DFW and Around Texas*, NBCDFW, July 13, 2020, https://www.nbcdfw.com/news/coronavirus/what-we-know-about-coronavirus-cases-in-north-texas-around-the-state/2335449.

higher infection rates (230.2 per 10,000 residents).[32] These numbers do not account for untested cases, and it is well known that COVID-19 is spread by persons without any symptoms.

Further, in Texas, the positivity rate (i.e., the ratio of positive cases to the number of tests conducted) has generally exceeded 10% for the last several weeks.[33] Yesterday it was 17.7%.[34] Such a high positivity rate suggests these tests are not capturing milder or asymptomatic cases.[35] Approximately 40% to 45% of all COVID-19 infections are asymptomatic, based on a review of available evidence, resulting in the silent spread of the virus.[36]

Even after the jury is selected, the trial would continue to require a significant group of people to remain together in the courtroom. Furthermore, without testing and confirmation of the proper ventilation and filtration, the courtroom is an environment that would present a high risk of COVID-19 transmission. A trial, by its very nature, involves a large amount of speaking without masks, by counsel and witnesses. Speaking is one of the main ways that COVID-19 is transmitted from person to person, because COVID-19 spreads by aerosols or airborne droplets. That is, COVID-19 can be transmitted through the air long after a person speaks. The length of time that such particles remains in the air is still under study,[37] but the risk of transmission by such particles is significantly higher in an enclosed space without proper ventilation than outdoors. And, in addition to the courtroom, the litigation teams will need to have significant groups of lawyers, paralegals, and assistants—likely 15 or more—in other local workspaces, preparing for trial.

---

[32] *Id.*
[33] Heinz, *supra* fn. 31.
[34] *Daily State-by-State Testing Trends,* John Hopkins University, https://coronavirus.jhu.edu/testing/individual-states/texas (last visited on July 13, 2020).
[35] *Id.*
[36] Daniel P. Oran, et al., *Prevalence of Asymptomatic SARS-CoV-2 Infection*, Annals of Internal Medicine, June 3, 2020, https://www.acpjournals.org/doi/10.7326/M20-3012.
[37] A new study suggests that the pathogen and the etiologic agent of COVID-19 can retain infectivity and virion integrity for up to 16 hours in respirable-sized aerosols. *See* https://wwwnc.cdc.gov/eid/article/26/9/20-1806_article.

The risk of transmission is compounded because most of the attorneys, client representatives, and witnesses who will be participating in the trial will travel from outside the local area. Apple's attorneys, client representatives, and witnesses will travel from all over the country, including at least Boston, Denver, San Diego, San Francisco (and Silicon Valley), and Washington, D.C., to reach Marshall. Apple expects that several of Plaintiffs' counsel will travel from Southern California (including Los Angeles) to Marshall. California is itself experiencing an unprecedented spike in COVID-19 cases, prompting Governor Newsom yesterday to order a shutdown of additional sectors of the economy.[38] On July 11, 2020, California reported 8,525 new cases and 76 new deaths, much of which is concentrated in Southern California.[39] Further, travel to Marshall will require these people to pass through some of the country's busiest airports to DFW or through DFW (or Houston) to Shreveport, Louisiana.[40] Dallas/Fort Worth,[41] Houston,[42] and

---

[38] Noah Higgins-Dunn, *California closes indoor restaurants, movie theaters and all bars statewide as coronavirus cases rise*, CNBC, July 13, 2020, https://www.cnbc.com/2020/07/13/california-to-close-indoor-restaurants-movie-theaters-and-bars-statewide-as-coronavirus-cases-rise.html.

[39] Luke Money and Leila Miller, *'Nothing can be off the table' as California coronavirus deaths surge toward 7,000*, Los Angeles Times, July 11, 2020, https://www.latimes.com/california/story/2020-07-11/nothing-can-be-off-the-table-as-california-coronavirus-deaths-surge-toward-7-000; *California Coronavirus Map and Case Count*, N.Y. Times., https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html#cases (last visited on July 13, 2020).

[40] The Court recently noted that parties may also fly into Little Rock, Arkansas and drive to Marshall, Texas. *See Image Processing Techs., LLC v. Samsung Elecs. Co., LTD., et al.*, No. 2:20-cv-00050-JRG, D.I. 200, at 1 n.1 (June 29, 2020). However, there are no direct flights to Little Rock from SFO, SJC, or BOS. Instead, all flights have layovers, requiring individuals to deplane and travel through the airport to catch a connecting flight. There are only a few direct flights to Little Rock from DEN and LAX available each week.

[41] Chris Blake, *Dallas County Reports 1,174 New COVID-19 Case, Adds 2 Virus-Related Deaths*, NBCDFW, July 12, 2020, https://www.nbcdfw.com/news/coronavirus/dallas-county-reports-1174-new-covid-19-cases-adds-2-virus-related-deaths/2405188/.

[42] Todd Ackerman, *Hospital patients waiting in ERs because COVID-19 is filling up beds*, Houston Chronicle, July 10, 2020, https://www.houstonchronicle.com/news/houston-texas/houston/article/Hospital-patients-waiting-in-ERs-because-COVID-19-15400962.php.

Shreveport[43] are each undergoing surges of infection.

The CDC has continued to caution against air travel, warning that "social distancing is difficult on crowded flights, and you may have to sit near others (within 6 feet), sometimes for hours."[44] In fact, recent reports show that over 1,000 TSA agents have tested positive for the virus, evidencing the grave risk of contracting and spreading the virus while traveling through busy airports.[45]

Apple's attorneys, witnesses, and other representatives would of course comply with this Court's safety procedures while at trial, and would comply with all local safety guidance while present in Marshall, Texas. However, this would not eliminate the risk that an asymptomatic individual could unknowingly bring COVID-19 to (or from) Marshall, such as by contracting it en route. The parties and their witnesses will necessarily have to interact with the local community while staying in Marshall for trial. Because COVID-19 can be transmitted asymptomatically,[46] temperature and symptom screenings are not fully effective, and if even one person has it, then everyone is at risk of infection, including everyone in the courtroom, the courthouse, and the parties' hotels and conference rooms. This also creates a risk of spreading the disease throughout the community, which is already undergoing an increase in the number of new cases. Such an

---

[43] Scott Ferrell, *Number of positive COVID-19 cases in the northwest Louisiana keep climbing*, Shreveport Times, June 29, 2020, https://www.shreveporttimes.com/story/news/local/2020/06/29/coronavirus-louisiana-numbers-keep-climbing-northwest-louisiana/3280428001 ("'Covid cases are on the rise in our area,' Shreveport Mayor Adrian Perkins said in a social media post on Monday. 'This is not due to an increase in testing. The rate of positive tests is increasing, which indicates spread.'").
[44] *Considerations for Travelers—Coronavirus in the US*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html ("Even if you don't have symptoms, you can spread COVID-19 to others while traveling.") (last visited July 13, 2020)
[45] Duncan *supra* n. 30.
[46] CDC *supra* n. 44; *'Silent transmission': COVID-19 largely spread by asymptomatic, presymptomatic carriers, study says*, Fox Television, July 11, 2020, https://fox6now.com/2020/07/11/silent-transmission-covid-19-largely-spread-by-asymptomatic-presymptomatic-carriers-study-says/.

increase could further strain local hospitals and harm the local economy, and stretch the resources of East Texas and surrounding metropolitan areas to deal with this surge.[47] Indeed, health officials are concerned that the recent COVID-19 spike appears to be targeting smaller urban areas that are more vulnerable to COVID-19 and hospital overload.[48]

The trial will include participants who are at higher risk for severe illness if they were to become infected. For example, Apple has three expert witnesses who are over 70, putting them in a particularly high-risk category.[49] Certain of Apple's witnesses and lawyers also are responsible for providing care to elderly parents or children with asthma.

For these reasons and others, Dr. Haley concludes: "In my opinion as a physician epidemiologist with much experience in epidemic diseases, Covid-19 is an extremely dangerous threat to health and life which would pose an extraordinary risk to those people who would be involved in a trial starting August 3, the surrounding community, and the communities to which the participants would be returning." Haley Decl. ¶ 12.

### C. There Will Be An Undue Risk To The Communities That The Parties And Witnesses Return To After the Trial.

Because of the current surge in Texas and in other states from which trial participants will

---

[47] *See, e.g.*, Soo Kim, *DOD Medical Task Force Deployed as Texas Battles Rise in COVID-19 Cases*, Newsweek, July 11, 2020, https://www.newsweek.com/military-medical-team-texas-coronavirus-1517132; Paul J. Weber, *Texas Hits New Record for Virus Deaths as Hospitals Scramble*, NBCDFW, July 9, 2020 https://www.nbcdfw.com/news/local/texas-news/texas-hits-new-record-for-virus-deaths-as-hospitals-scramble/2403956/; Candance Sweat, *COVID-19 Cases Surge in North Texas, State and Local Leaders Monitor Hospital Capacity*, NBCDFW, July 10, 2020, https://www.nbcdfw.com/news/coronavirus/covid-19-cases-surge-in-north-texas-state-and-local-leaders-monitor-hospital-capacity/2404706/.
[48] *Rural America Could Be the Region Hardest Hit by the COVID-19 Outbreak*, Healthline, https://www.healthline.com/health-news/rural-america-hardest-hit-by-covid-19-outbreak (last visited on July 13, 2020); David J. Peters, *Rural America was always more vulnerable to COVID-19 than cities—and now it's starting to show*, Fast Company, June 20, 2020, https://www.fastcompany.com/90518680/rural-america-was-always-more-vulnerable-to-covid-19-than-cities-and-now-its-starting-to-show.
[49] *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited on July 13, 2020).

be traveling, individuals from out of state—especially individuals traveling via air—will unduly risk transmitting the disease to their families and their communities when they return, and especially in cases where family members are at higher risk, will need to self-quarantine. Trial participants face a real risk of contracting the virus—especially considering exposure to hundreds of people in airports and through the course of trial. That means that when they return to their communities, they risk not only infecting family members but also of contributing to the spread of the virus in their home communities.[50]

## II.  A CONTINUANCE WILL NOT PREJUDICE THE PARTIES.

This civil patent case does not present issues that require immediate resolution during the current spike in COVID-19 cases. Plaintiffs seek only monetary damages from Apple for alleged patent infringement, and pre-judgment and post-judgment interest. Dkt. 26 at 109–10. If Plaintiffs succeed on their claims, a short continuance of the trial date will have no prejudice on plaintiffs' ability to be made whole through monetary damages.[51] *See Bianco v. Globus Med., Inc.*, No. 2:12-CV-147-JRG, 2012 WL 5611054, at *3 (E.D. Tex. Nov. 15, 2012) (Gilstrap, J.) ("Any harm suffered … by [Defendant's] continued exploitation of [the patent] during the pendency of this case can be remedied by an award of monetary damages."); *see also DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ("There can be no irreparable injury where money damages would adequately compensate a plaintiff."). Therefore, the risk of serious illness and spreading of the virus during the current COVID-19 spike far outweighs the need to accelerate the trial in this case.

---

[50] Karen Schwartz, *Thinking of Traveling in the U.S.? These States Have Travel Restrictions*, N.Y. Times., July 10, 2020, https://www.nytimes.com/2020/07/10/travel/state-travel-restrictions.html.

[51] Nor will there be any prejudice to Plaintiffs arising from a stay due to three IPR petitions that Apple has filed involving three of the patents-in-suit. If those petitions are instituted, the Final Written Decisions would not issue until approximately September 2021.

A continuance will also not create unreasonable delay. Plaintiffs filed their Complaint on February 25, 2019. Dkt. 1. This case will still reach trial in approximately 20 months, even if trial is continued for two months due to the unprecedented COVID-19 pandemic. And, even if the Court decided to further continue the trial at that time, such delay would not be "undue"—quite the contrary, given the extraordinary nature of this unfolding pandemic. A continuance will promote public safety during these unprecedented times but would not upset this Court's ability to resolve this dispute faster than the typical district court.

A continuance will also not create a substantial hardship for the parties. Trial in this case is still three weeks away. None of the attorneys, witnesses, or other participants have traveled to Marshall yet for trial and are instead preparing remotely, although that travel will begin in less than two weeks, prior to the July 27 pre-trial conference. At this time, the parties can still adjust their travel and trial preparation plans at this date. Because the parties have yet to travel to Marshall, a continuance will ensure that the parties and their witnesses will not spread COVID-19 to the community.

### III. PROCEEDING UNDER THE CURRENT CIRCUMSTANCES WILL LIMIT THE PARTIES' ABILITY TO PRESENT A FULL CASE.

The Court should also balance the need for a prompt trial with the parties' due process rights to present a full case. Due process protects a civil defendant's "right to a full and fair opportunity to litigate an issue," *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir. 1982), and "to present evidence and argument on the contested facts and legal issues framed by the answer to the complaint." *Thompson v. Madison Cty. Bd. of Ed.*, 476 F.2d 676, 678 (5th Cir. 1973). Proceeding with the trial during the current COVID-19 spike will undermine the parties' rights to due process.

Three expert witnesses expected to testify at trial are currently prohibited from entering the U.S.[52] Friedholm Rodermund for Apple, and Jean-Sebastian Borghetti and Antonio Virdis for plaintiffs, reside in Germany, France, and Italy, respectively. Moreover, due to the recent surge in COVID-19 in the U.S., the E.U. recently maintained its ban on nonessential travel from the U.S., and requires self-quarantine for E.U. citizens returning from the U.S.[53] Even if the Court arranges for these witnesses to testify remotely from Europe (e.g., via videoconference), that procedure would not be a substitute for the face-to-face confrontation and in-person cross examination that is only possible with live witnesses present in the courtroom.[54] Apple's inability to present its witness, or cross examine plaintiffs' witness in-person, would impinge upon Apple's due process rights to fully contest plaintiffs' arguments.

### IV. CONCLUSION

For the reasons stated above, Apple respectfully requests the Court continue the August 3, 2020 trial until October 5, 2020, and assess at that time whether conditions have improved enough to hold the trial.

DATED: July 14, 2020

Respectfully submitted,

By: /s/ Mark D. Selwyn
Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP

---

[52] CDC *supra* fn. 3.
[53] *Travel and transportation during the coronavirus pandemic*, European Commission, https://ec.europa.eu/info/live-work-travel-eu/health/coronavirus-response/travel-and-transportation-during-coronavirus-pandemic_en (last visited on July 13, 2020).
[54] Even this Court has questioned whether videoconference technology "would be workable" for trial given "there's as much or more nonverbal communication in a bench or jury trial" and the medium's "unavoidable audio lag." Daniel Siegal, *Why Gilstrap Is Getting Ready For Trial — And Not on Zoom*, Law360, May 15, 2020, https://www.law360.com/articles/1273188/why-gilstrap-is-getting-ready-for-trial-and-not-on-zoom.

15

       950 Page Mill Road
       Palo Alto, CA 94304
       Telephone:  (650) 858-6000
       Facsimile:  (650) 858-6100

Joseph Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
   timothy.syrett@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   60 State Street
   Boston, MA 02109
   Telephone:  (617) 526-6000
   Facsimile:  (617) 526-5000

Mindy Sooter (*pro hac vice*)
   mindy.sooter@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   1225 Seventeenth Street, Suite 2600
   Denver, CO 80202
   Telephone:  (720) 274-3135
   Facsimile:  (720) 274-3133

Brittany Blueitt Amadi (*pro hac vice*)
   brittany.amadi@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   1875 Pennsylvania Avenue NW
   Washington, DC 20006
   Telephone:  (202) 663-6000
   Facsimile:  (202) 663-6363

Melissa R. Smith State Bar No. 24001351
   melissa@gillamsmithlaw.com
   GILLAM & SMITH, LLP
   303 South Washington Avenue
   Marshall, TX 75670
   Telephone:  (903) 934-8450
   Facsimile:  (903) 934-9257

***Attorneys for Defendant Apple Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2020 a true and correct copy of the above and foregoing document has been served by electronic mail upon all counsel of record.

/s/ Melissa R. Smith
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), I hereby certify that on July 14, 2020, counsel for Defendant Apple Inc. met and conferred with counsel for Plaintiffs concerning the subject of this motion. The parties have been unable to resolve their dispute.

/s/ Melissa R. Smith
Melissa R. Smith