# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, | Civil Action No. 2:19-cv-00066-JRG **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| APPLE INC., | |
| Defendant. | |

**DECLARATION OF DR. ROBERT HALEY, M.D., IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO CONTINUE TRIAL**

**Background and Qualifications**

1.      I am professor of medicine and epidemiology and chief of the Division of Epidemiology in the Department of Internal Medicine at the University of Texas Southwestern Medical Center in Dallas, a position I have held since founding the division in 1983.  In this position, I spend most of my time doing epidemiologic and clinical research on infectious diseases and environmental hazards.  I also care for patients at Dallas County's public hospital Parkland Health and Hospital System, where I supervise and teach medicine to a team of medical students and medical residents.  Finally, I lecture on infectious diseases, teach epidemiology and statistics to medical students, teach a semester course on how to design and conduct research to young faculty members, and lecture medical audiences worldwide.

1

2.      I received my M.D. in 1971 from the University of Texas Southwestern Medical

School in Dallas.  After completing my residency in Internal Medicine at Dallas Parkland

Hospital, I accepted a commission in the U.S. Public Health Service to join the U.S. Centers for

Disease Control and Prevention (CDC) for 10 years where served in CDC's Epidemic

Intelligence Service and rose to the position of Director of the Hospital Infections Division in the

Bureau of Epidemiology before retiring in 1983 with a rank of naval captain 06.  During my

tenure at CDC I designed and led the Study on the Efficacy of Nosocomial Infection Control,

still the largest study of an infectious disease ever done by CDC and declared one of its four

most important achievements.  I am board certified in General Preventive Medicine and Public

Health and a fellow of the American College of Physicians and the American College of

Epidemiology.  Earlier this year I received the Texas Medical Association's lifetime

achievement award for contributions to public health in Texas.

3.      I have authored or co-authored more than 120 peer-reviewed research articles on

topics related to infectious diseases and other environmentally caused conditions as well as close

to 100 review articles, editorials, clinical practice guidelines, and textbook chapters.

4.      Since February of this year, relieved of hospital practice duties due to age-related

risk of Covid-19, I have served as co-editor along with Dr. James Luby, our senior virologist, of

the university's weekly *Covid-19 Action Newsletter*, summarizing the latest developments in

epidemiology and research findings on the pandemic.

5.      During the Covid-19 pandemic, I have served on the Dallas County Medical

Society's Emergency Response Committee for the pandemic and on the Public Health Advisory

Subcommittee of Dallas County's Economic Reopening Committee, developing guidance

documents to residents and business on staying safe from the pandemic in the process of trying to return to normal life and commerce, and advising the County Judge and the County Commissioner's Court on epidemic mitigation strategies.  I am being compensated for my time preparing this declaration at $500/hour.

## Current Covid-19 Situation in Texas and the United States

6.      The United States is now facing the largest increase in the number of new cases and new deaths since the start of the pandemic.  On July 12, 2020, there were 62,918 new cases and 906 new deaths compared to the previous day in the United States.  *See* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html  Texas is part of this national surge.  On July 12, 2020, Texas reported over 8,000 new cases and 80 new deaths.

7.      Harrison County is experiencing a surge in new cases similar to the rest of the state.  There were 24 new cases reported in Harrison County on July 6, 20 new cases reported on July 7, and 24 new cases reported on July 12—all exceeding the previous high of 19 on April 30.[1]  When graphed on a seven-day rolling average, the numbers show that the increase in the number of new cases is outpacing the previous period of increase in April and May[2]:

---

[1]      Texas COVID-19 Data, Texas Health and Human Services, available at https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 11, 2020).
[2]      Graph created from data available at Texas COVID-19 Data, Texas Health and Human Services, available at https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 11, 2020).



8.    The number of active cases in Harrison County tells the same story.  The current

number of active cases has surged to 138 as of July 12, 2020[3], exceeding the peak of 119 active

cases on May 10.  The seven-day rolling average shows that the number of active cases is

increasing at a much more rapid pace than in April and May[4] and shows no sign of leveling off:



[3] https://www.marshallnewsmessenger.com/covid-19/harrison-county-reports-nine-new-covid-19-cases/article_30846b48-c2f2-11ea-b04f-539a463da997.html.
[4] Graph created from data available at Texas COVID-19 Data, Teas Health and Human Services, available at https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 11, 2020);

9.      I understand that the Eastern District of Texas continued all jury trials on March 16, 2020 and extended the continuance on April 22, 2020 due to the public health and safety concerns stemming from the Covid-19 pandemic.  The current number of new and active cases and the rate of increase in new and active cases in Harrison County now far exceed the numbers when the Eastern District of Texas previously ordered a continuance of all jury trials.

**Opinion On Risks of Conducting Jury Trial in Marshall, Texas Beginning August 3**

10.     I understand that trial in the case of *Optis Wireless Technology, LLC et al. v. Apple* is scheduled to begin on August 3, 2020 in the federal courthouse in Marshall, Texas. Counsel for Apple has informed me of the following likely process for the trial:

- The trial will be conducted over five days before a jury of eight jurors.  The trial day will last from approximately 9am to 5pm, and will include breaks.

- The courtroom measures approximately 36 by 70 feet.  I understand that the courthouse likely does not have a modern ventilation system equipped to deal with infectious diseases such as Covid-19.

- It is likely that more than 15 witnesses will testify live to the jury during the week and that most or all of these witnesses will travel.

- The jurors may be selected on August 3, 2020 from approximately 125 jurors who will be summonsed to the courthouse for jury service.  Those 125 jurors will be drawn from 6 counties.  During jury selection, approximately 40 potential jurors will be in the courtroom at any one time.

- Each side will have approximately five or six attorneys, paralegals, or other representatives in the court room each day during the trial.  Many, but likely not all, of those attorneys and other representatives will be the same from day to day.

- Others in the courtroom will include:

    ○ the presiding judge;

    ○ the presiding judge's courtroom deputy;

    ○ a court reporter (i.e., stenographer) – there will be two, who will rotate;

    ○ from time to time, a federal marshal.

- At any given time, there will ordinarily be between twenty and twenty-five people in the courtroom during trial.

- All people in the courtroom will wear masks, with the exception of the witness and the attorney who is asking questions of the witness.

- Each side will be supported by a "trial team" who will likely number more than twenty attorneys, paralegals, and client representatives.  Those in the courtroom will return after court each day to work with others on the trial team to prepare for the next day of trial.

- Attorneys, paralegals, witnesses, and client representatives will travel to Marshall, Texas from a variety of locations throughout the United States, including at least: San Francisco and Silicon Valley, California; San Diego, California; Boston, Massachusetts; Denver, Colorado; Washington, D.C.; Waco, Texas; Roanoke, Virginia; New Orleans, Louisiana.


11.    I have been asked whether, in my medical opinion, this trial would pose any meaningful risk to the participants, the local community, or public safety in general given the current situation with the Covid-19 pandemic, and, if so, to explain why.

12.    In my opinion as a physician epidemiologist with much experience in epidemic diseases, Covid-19 is an extremely dangerous threat to health and life which would pose an

extraordinary risk to those people who would be involved in a trial starting August 3, the surrounding community, and the communities to which the participants would be returning.

13.      Covid-19 is a very dangerous illness.  It is more contagious and far more serious and more deadly than seasonal influenza.  Nationally, the rate of death from Covid-19 is approximately 4%, and more than 135,000 deaths in the U.S. have been attributed to Covid-19 since March.  The rate of death increases steadily with age and other risk factors such as underlying medical conditions.  Even for those who do not die from Covid-19, many become severely ill and hospitalization is often required.  Currently in Texas, more than 10,000 people are hospitalized with Covid-19.  Treating Covid-19 patients is extremely challenging.  The average hospital stay for a Covid-19 patient who recovers and is discharged from the hospital is 10-13 days.

14.      In my lifetime, there has been no illness that has been as infectious and at the same time required such a high degree of intensive hospital care as Covid-19.  While many recover enough from Covid-19 infection to return home from the hospital, the extent of recovery varies and serious long-term, even permanent, effects are now starting to be appreciated.  It appears that many people continue to suffer from heart, lung, kidney, brain, and other organ ailments after they are no longer positive for the SARS-CoV-2 virus, and some patients may remain impaired for the rest of their lives.

15.      One of the reasons that Covid-19 can spread so fast is that it is carried and efficiently transmitted to others by people who show no signs of the illness and feel perfectly fine.  Infected people are most infectious in the two days before the first symptoms and for the first several days after the first symptoms begin, when the symptoms are still mild and may be

mistaken for some other mild illness or even disregarded entirely.  Even more dangerous is the

fact that over 40% of people who are infected never show any signs or symptoms of infection

and yet may spread it to others unknowingly.  In fact, many experts, myself included, believe

that *most* infections are transmitted by people who at the time do not know they are infected.

These infection transmitters will pass temperature screens and can honestly answer in the

negative to a symptom screen.  Absent a test, there is no way to identify Covid-19 carriers who

are asymptomatic, and we know that even our best tests have significant rates of falsely negative

results, varying by the particular test, in which they fail to detect an infection that is present and

possibly capable of being transmitted.

16.     Covid-19 is extremely contagious.  There is a consensus among medical

professionals that bringing together people in groups significantly increases the risk of Covid-19

transmission – the larger the group, the greater the risk of transmission.  On July 2, 2020,

Governor Abbott amended paragraph 12 of his June 26, 2020 Executive Order GA-28 to

generally prohibit groups of more than ten people within the State of Texas: "Except as provided

in this executive order or in the minimum standard health protocols recommended by DSHS,

found at www.dshs.texas.gov/coronavirus, people shall not be in groups larger than ten and shall

maintain six feet of social distancing from those not in their group."

17.     The CDC has published guidelines on group gatherings as well:

https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-

gatherings.html.  One of the "guiding principles" that the CDC provides is the following: "The

more people an individual interacts with at a gathering and the longer that interaction lasts, the

higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."  I

believe that the trial would fall into the category that the CDC describes as the "highest risk":

"Large in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."

18.     I understand that this trial would draw a large group of people together into an enclosed space, many of whom would travel from outside the local area.  For example, on the first day of trial, for example, I understand that more than one hundred potential jurors will be brought to the courthouse, and at any given time, approximately forty of them will be in the courtroom with at least ten to fifteen others (e.g., attorneys, client representatives, courtroom staff).  I also understand that most of the attorneys, client representatives, and witnesses who will be participating in the trial will travel from outside the local area.

19.     It is my opinion that in a group of this size, given the present growth rate of the Covid-19 epidemic in Harrison County, there is a high likelihood that several would be carrying the SARS-CoV-2 virus that causes Covid-19, and they would be capable of transmitting it to others most likely while they are asymptomatic.  In Harrison County, 59.4 of 10,000 residents have tested positive for COVID-19.[5]  Some surrounding counties, such as Titus County, have significantly higher infection rates (230.2 per 10,000 residents).[6]  Moreover, these numbers do not account for untested cases (including of asymptomatic but infected individuals who have not sought testing), and it is well known that COVID-19 can by spread by persons without any symptoms.  According to the "COVID-19 Event Risk Assessment Planning Tool" published by researchers at Georgia Tech, there is greater than a 90% likelihood of at least one person having

---

[5]     Frank Heinz, *COVID-19 Tracker: What We Know About the Virus in DFW and Around Texas*, NBCDFW, July 13, 2020, https://www.nbcdfw.com/news/coronavirus/what-we-know-about-coronavirus-cases-in-north-texas-around-the-state/2335449.

[6]     *Id.*

COVID-19 from a group of 100 people gathered in Harrison County.[7]  In Texas, the positivity rate (i.e., the ratio of positive cases to the number of tests conducted) has generally exceeded 10% for the last several weeks up from around 1% just a month earlier.  Such a high positivity rate suggests these tests are not capturing milder or asymptomatic cases.[8]  Approximately 40% to 45% of all COVID-19 infections are asymptomatic, based on a review of available evidence, resulting in the silent spread of the virus.[9]

20.        I further understand that even after the jury is selected, the trial would continue to require a significant group of people to remain together in an enclosed space, with witnesses and most of the attorneys and client representatives having come from outside the local area. Furthermore, a courtroom in a courthouse without modern ventilation is an environment that would present a higher risk of Covid-19 transmission.  Not only would it be challenging to maintain social distance, but a trial, by its very nature, involves a large amount of speaking. Speaking is one of the main ways that Covid-19 is transmitted from person to person, because Covid-19 spreads by aerosols.  That is, Covid-19 can be transmitted in the air after a person speaks.  There is now strong evidence that Covid-19 remains in the air, in imperceptible aerosol form, after a person speaks.  The length of time that such particles remain in the air varies, but is longer in an enclosed space with lesser ventilation than outdoors.  Moreover, I understand that litigation teams in cases like this also need to work together in workspaces outside of court, and those interactions could also lead to disease transmission.

---

[7]      Chande, A.T., et al., *Interactive COVID-19 Event Risk Assessment Planning Tool*, https://covid19risk.biosci.gatech.edu (last visited on July 13, 2020).

[8]      *Id.*

[9]      Daniel P. Oran, et. al., *Prevalence of Asymptomatic SARS-CoV-2 Infection*, Annals of Internal Medicine, June 3, 2020, https://www.acpjournals.org/doi/10.7326/M20-3012.

21.        I believe the risk of transmission is made worse because most of the attorneys,

client representatives, and witnesses who will be participating in the trial will travel from outside

the local area.  I understand that many of the participants will be traveling through some of the

busiest airports in the country including, Boston, Denver, San Diego, San Francisco (and Silicon

Valley), and Washington, D.C., to reach Marshall.  Moreover, travel to Marshall would require

most people to pass through DFW or through DFW (or Houston) to Shreveport, Louisiana.  Both

Dallas/Fort Worth[10] and Shreveport[11] are undergoing surges of the virus.  The CDC has

continued to caution against air travel, warning that "social distancing is difficult on crowded

flights, and you may have to sit near others (within 6 feet), sometimes for hours."[12]  In fact,

recent reports show that over 1,000 TSA agents have tested positive for the virus, evidencing the

grave risk of contracting and spreading the virus while traveling through busy airports.[13]

22.        I believe that even though certain precautions may be taken to lower the chance of

spreading the virus, you cannot eliminate the risk of asymptomatic outsider unknowingly bring

COVID-19 to Marshall, such as by contracting it en route.  Because COVID-19 can be

---

[10]      Chris Blake, *Dallas County Reports 1,174 New COVID-19 Case, Adds 2 Virus-Related
Deaths*, NBCDFW, July 12, 2020, https://www.nbcdfw.com/news/coronavirus/dallas-county-
reports-1174-new-covid-19-cases-adds-2-virus-related-deaths/2405188/.

[11]      Scott Ferrell, *Number of positive COVID-19 cases in the northwest Louisiana keep
climbing*, Shreveport Times, June 29, 2020,
https://www.shreveporttimes.com/story/news/local/2020/06/29/coronavirus-louisiana-numbers-
keep-climbing-northwest-louisiana/3280428001 ("'Covid cases are on the rise in our area,'
Shreveport Mayor Adrian Perkins said in a social media post on Monday. 'This is not due to an
increase in testing. The rate of positive tests is increasing, which indicates spread.'").

[12]      *Considerations for Travelers—Coronavirus in the US*, CDC,
https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html ("Even if you don't
have symptoms, you can spread COVID-19 to others while traveling.") (last visited July 13,
2020)

[13]      Ian Duncan, *More than 1,000 TSA employees have tested positive for coronavirus*, Wash.
Post., July 9, 2020, https://www.washingtonpost.com/transportation/2020/07/09/more-than-
1000-tsa-employees-have-tested-positive-coronavirus/.

transmitted asymptomatically,[14] temperature and symptom screenings are not fully effective, and

if even one person has it, then everyone is at risk of infection, including everyone in the

courtroom, the courthouse, and the parties' hotels and conference rooms.  This also creates a risk

of spreading the disease throughout the community, which is already undergoing an increase in

the number of new cases.  Such an increase could further strain local hospitals and harm the local

economy, and stretch the resources of East Texas and surrounding metropolitan areas to deal

with this surge.[15]  Indeed, health officials are concerned that the recent COVID-19 spike appears

to be targeting smaller urban areas that are more vulnerable to COVID-19 and hospital

overload.[16]

23.     I am particularly concerned about the idea of gathering all these people together

for a trial at this critical moment in the Covid-19 epidemic in Texas.  We are presently in the

early stages of the greatest pandemic of a potentially fatal disease of the last 100 years, and for

---

[14]     *Considerations for Travelers—Coronavirus in the US*, CDC,
https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-in-the-us.html ("Even if you don't
have symptoms, you can spread COVID-19 to others while traveling.") (last visited July 13,
2020); *'Silent transmission': COVID-19 largely spread by asymptomatic, presymptomatic
carriers, study says*, Fox Television, July 11, 2020, https://fox6now.com/2020/07/11/silent-
transmission-covid-19-largely-spread-by-asymptomatic-presymptomatic-carriers-study-says/.
[15]     *See, e.g.*, Soo Kim, *DOD Medical Task Force Deployed as Texas Battles Rise in COVID-
19 Cases*, Newsweek, July 11, 2020, https://www.newsweek.com/military-medical-team-texas-
coronavirus-1517132; Paul J. Weber, *Texas Hits New Record for Virus Deaths as Hospitals
Scramble*, NBCDFW, July 9, 2020 https://www.nbcdfw.com/news/local/texas-news/texas-hits-
new-record-for-virus-deaths-as-hospitals-scramble/2403956/; Candance Sweat, *COVID-19
Cases Surge in North Texas, State and Local Leaders Monitor Hospital Capacity*, NBCDFW,
July 10, 2020, https://www.nbcdfw.com/news/coronavirus/covid-19-cases-surge-in-north-texas-
state-and-local-leaders-monitor-hospital-capacity/2404706/.
[16]     *Rural America Could Be the Region Hardest Hit by the COVID-19 Outbreak*, Healthline,
https://www.healthline.com/health-news/rural-america-hardest-hit-by-covid-19-outbreak (last
visited on July 13, 2020); David J. Peters, *Rural America was always more vulnerable to
COVID-19 than cities—and now it's starting to show*, Fast Company, June 20, 2020,
https://www.fastcompany.com/90518680/rural-america-was-always-more-vulnerable-to-covid-
19-than-cities-and-now-its-starting-to-show.

the past month the case counts across the state are increasing exponentially every week,

involving cities of all sizes.  Since almost half of new infections are asymptomatic and since

testing resources are limited, the case counts being reported only tell an incomplete story.  At this

very moment we are in the most dangerous period for getting people together in groups in our

lifetime.

**Prospects for substantial reductions of transmission risk in the next 60 days**

24.      Our governor issued an order just over a week ago requiring that most people

wear masks when around others and unable to social distance by 6 feet or more and allowed

fines of up to $250 for violations of the order.  I understand that compliance with this order has

varied throughout the state.

25.      Even if the governor issues a stay-at-home,  and masking is more consistently

followed, because of the up-to-two-week incubation period of the disease, the best we could

hope for in the two and a half weeks before the August 3 trial date is to see the increasing

trajectory of the epidemic start to level off at the highest point of risk so far.  Then we should

hopefully start seeing the epidemic curve starting to decline in August and return to the low

baseline level in September or October.

**Conclusion and recommendation**

26.      Thus, I believe it is likely that proceeding with a trial on August 3 is very likely to

cause transmission of the SARS-CoV-2 virus to the participants, the local community, and the

communities to which the trial participants return after the trial is over.  If even one person in the

courtroom has Covid, the risk that it will be transmitted to others is real.  All present in the

courtroom would be at risk of being infected.  That would create a risk to others in the

13

courthouse (e.g., marshals, staff), and others whom the participants contact outside the courthouse (e.g., the trial teams and those with whom they interact in the local community, such as hotel staff and food vendors), and to people in participants' local communities when they return home.

27.     From a medical epidemiologic perspective, I would strongly urge the Court to postpone the trial's opening date to a point when the current high infection risk has largely subsided.  The risks posed by proceeding with a trial now are substantial.

28.     Apple has requested a 60-day continuance.  Given the governor's mitigation orders, on the basis of experience we have seen in other states that imposed the same orders, I think this length is likely to be sufficient to see us back at baseline, relatively low risk.

29.     I declare that the foregoing is true and correct to the best of my knowledge after reasonable inquiry, and that I have executed this declaration on July 14, 2020.


Dated: July 14, 2020

Dr. Robert Haley, M.D.

15