# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant. | Civil Action No. 2:19-cv-66-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO CONTINUE TRIAL**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 3 |
| | A. Apple Has Already Attempted To Indefinitely Delay This Case | 3 |
| | B. There is No Evidence That The Public Health In The District Will Be Materially More Favorable Beginning In October | 3 |
| | C. Apple Already Proposed Remote Video Testimony From E.U. Witnesses | 5 |
| | D. The Court Has Already Proposed Appropriate Safety Measures To Address The Limited Local COVID-19 Infection Risks | 8 |
| | E. Delay Would Not Alleviate the Concern, and Would Prejudice Plaintiffs | 13 |
| III. | CONCLUSION | 15 |

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*,
  Case No. 2:20-CV-00050-JRG (June 29, 2020 Order) ............................................................. 1, 2

*Maryland v. Craig*,
  497 U.S. 836 (1990) ................................................................................................................... 3

*VirnetX Inc. et al. v. Apple Inc.*,
  Case No. 6:12-cv-00855-RWS ............................................................................................ 6, 7, 11

**Rules**

Fed. R. Civ. P. 43(a) ......................................................................................................................... 3

I.  **INTRODUCTION**

This is Defendant Apple's second attempt to indefinitely stay this trial, with the Court revisiting the stay in two months. Apple sought the same stay in March 2020. Dkt. 115 at 1. Apple's motion should be denied.

First, there is no factual or scientific basis to conclude that the state of public health in the Eastern District of Texas will be materially better in October than it is today. The declaration of Apple's expert, Dr. Haley, does not contain any indicia of a reliable scientific study. It does not contain evidence that the data presented is statistically significant. Nor does it contain any concrete evidence that the infection rate in Harrison County, which is extremely low at 0.2%, will become any lower by October. Indeed, national modeling by the Institute for Health Metrics and Evaluation at the University of Washington predicates a second wave of infections beginning in the fall and increasing deaths through the fall with universal masking.[1]

Moreover, the opinion Dr. Haley expresses in his declaration is contrary to advice he has given publicly. Dr. Haley told the Rotary Club of Longview, Texas on June 24, 2020, that even precautions such as masks were not really necessary in Texas' more rural environments given the low local infection rates: "I don't think every part of the state needs to (wear masks) … There are smaller towns and places where people live far apart and don't get together often."[2]

Second, Apple premises its motion on alleged prejudice because three expert witnesses living in Europe will have to testify by video. But it was Apple that proposed video remote testimony from those European witnesses, and Plaintiffs agreed. Apple did not disclose this to the Court in its motion. A day later, Apple changed tactics and decided that video testimony from three minor

---

[1] https://covid19.healthdata.org/united-states-of-america.

[2] https://www.news-journal.com/news/coronavirus/epidemiologist-urges-masks-vitamins-to-fight-covid-19/article_45968458-b582-11ea-8786-6b85fa71e52e.html/. Of note, Longview is in Gregg County, which has a slightly higher case count than Harrison County.

1

witnesses is outrage to "due process." *See* Mot. at 14-15.  For Apple to argue that the procedure it unilaterally proposed without prompting is a basis to stay the case is perplexing.

Third, when it has suited Apple's tactical needs, Apple has shown no interest whatsoever in witness or attorney safety.  For example, Apple insisted that one of Plaintiffs' attorneys fly to London to defend two third-party fact witness depositions, and then after it had taken advantage of the obtaining the live testimony, four days later refused to offer its own witnesses in the United States live.  As another example, Dr. Virdis—a non-testifying consultant who testifying expert that Dr. Madisetti instructed to perform simulations—has just had a baby with his wife.  In the last few days, Apple has insisted on threat of a motion for sanctions that he travel to Belgium for his "deposition" even though Dr. Virdis is willing to sit for a video interview in Italy, with Plaintiffs agreeing that the interview will have the same force.

If jurors do not want to accept their constitutional call to service because of health concerns, Plaintiffs respectfully believe that the Court will by sympathetic.  But, the right to jury is not just the right of the parties to this lawsuit, it is the right of the citizens of this Country to sit in judgment.  Apple has no right to decide for the citizens of the Eastern District when they can exercise their constitution duties.  Indeed, the logical conclusion of Apple's argument is voting, which also involves large groups of people congregating together, should also be suspended.

After this Court imposed a compressed schedule in which Apple's crucial fact witnesses and all expert witnesses had to be deposed by video (a significant tactical advantage for Apple that Plaintiffs argued against), after one of Plaintiffs' key expert witnesses stayed in the United States delaying her move to Canada so that she could testify live, after non-refundable deposits for hotels and facilities have been made, after the truck carrying all of the equipment for trial has left for Marshall, Apple has suddenly decided that the right to trial by jury should be suspended indefinitely.  Its latest delay tactic should be rejected.

## II. ARGUMENT

### A. Apple Has Already Attempted To Indefinitely Delay This Case

Near the start of the COVID-19 pandemic in Texas, the parties approached the Court to address logistical concerns of finishing discovery and preparing for trial given COVID-19. *See* Dkt. 115 (Joint Motion to Amend Docket Control Order). Like its current request, Apple asked for a 60-day delay of all case deadlines to "find ways to overcome these [COVID-19] hurdles and to prepare to make effective trial presentations." *Id.* at 10-12. The Court rejected Apple's 60-day delay, but adjusted the trial date from July 7, 2020 (which was reset from August 17, 2020) to August 3, 2020. Dkt. 127. The parties have thus been well aware of the challenges presented by COVID-19 for months and the Court's adjusted trial schedule already accounted for potential delays caused by COVID-19 logistical hurdles and the additional time needed to prepare for trial. Plaintiffs have used this time to take the necessary steps to ensure that Plaintiffs can proceed with trial safely as planned. Declaration of Jason Sheasby, ¶¶ 8-11. Presumably, Apple, a company with far more resources, has done the same.

### B. There is No Evidence That The Public Health In The District Will Be Materially More Favorable Beginning In October

While Apple couches its request as a two-month initial continuance, any continuance is likely to be far longer. As this Court recently noted in denying the continuance of the *IPT v. Samsung* trial, "the moving of a trial date for a civil jury trial is an arduous task." *Image Processing Technologies, LLC v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, Case No. 2:20-CV-00050-JRG, Dkt. 200 at *2 (June 29, 2020 Order). According to the Court, the "effect of the current pandemic … has drastically compacted and complicated the Court's trial schedule well into next year. Thus, the movement of a jury trial date at this late date would likely result in ***a delay of many months given the unavailability of open trial dates in the future***." *Id.* (emphasis added). The same reasoning would apply here.

Nor is Apple's delay request limited to 60 days. Apple asks that in two months, the Court "assess … whether conditions have improved enough to hold the trial." Mot. at 15. Given the current active infection rate in Harrison County is just 0.2% (as described below in Section III.D), Apple's request for improved conditions is actually a *de facto* request for an indefinite stay during the pendency of the COVID-19 pandemic.

The Institute for Health Metrics and Evaluation at the University of Washington, which, unlike Dr. Haley, is not retained by a party in this case, projects death in the US increasing in the fall with Universal masking and predicts increasing deaths through the end of the year:[3]



---

[3] https://covid19.healthdata.org/united-states-of-america.

It also predicts waves of increasing infections.[4] The Institute's recent press release reports a "second wave beginning September 15."[5]

Apple, by failing to provide crucial independent information regarding the projected course of the virus, is asking the Court to make decisions based upon incomplete and inaccurate information. If there are strict social distancing and masking requirements in place now because of the Governor's rules and infections are currently low in Harrison County, now is the best and safest time to hold a trial in the Eastern District. Apple hired a doctor to tell the Court to wait to start holding trials until flu seasons starts in the United States, and when independent modeling predicts virus infections and deaths will increase. This is not a credible position.

### C. <u>Apple Already Proposed Remote Video Testimony From E.U. Witnesses</u>

Apple argues that its request for a further delay of trial is necessary to accommodate "three expert witnesses" that live in Europe and cannot currently travel to the U.S. *See* Mot. at 2-3, 13-16 (Friedholm Rodermund for Apple, and Jean-Sebastian Borghetti and Antonio Virdis for Plaintiffs). Apple fails to inform that Court that on July 8, 2020, Apple raised this very issue with Plaintiffs: "it is likely that both sides' European witnesses (Borghetti, Virdis, Rodermund) will have problems traveling to Texas for the trial … We suggest that the parties explore the possibility of live testimony by videoconference." Exhibit 1 (7/8/2020 email).[6] Taking the Court's instruction that "[t]he Court further expects that parties will exhibit extraordinary levels of cooperation during this period" (Standing Order at 2-3) to heart, Plaintiffs agreed to Apple's "proposal that witnesses that the experts in this case who are located in Canada or Europe can testify live via video." Exhibit 2

---

[4] https://covid19.healthdata.org/united-states-of-america.

[5] http://www.healthdata.org/news-release/ihme-models-show-second-wave-covid-19-beginning-september-15-us.

[6] All exhibits are attached to the Declaration of Jason Sheasby filed herewith.

(7/13/2020 email). Despite Plaintiffs' agreement, the next day, Apple reneged on its offer and presented this to the Court as a live issue.

The European witnesses are a red herring. The only one of them who will testify in front of the jury is Mr. Rodermund, and this testimony will be short. Dr. Virdis is a consultant who assisted testifying expert Dr. Madisetti by running simulations. Plaintiffs have made clear that he will not be called at trial. The third witness is Mr. Borghetti, a French law expert. Plaintiffs anticipate that this Court will simply read the reports of the French law experts. Mr. Borghetti will certainly not be testifying before the jury.

Multiple other problems exist with Apple's argument. First, Apple has known of these issues for months. It committed back in March to "find ways to overcome these [COVID-19] hurdles and to prepare to make effective trial presentations." Dkt. 115 at 11. Yet, it now seeks to reject *its own proposal* of using remote testimony from witnesses in in E.U. *See* Mot. at 14-15.

This is not the first time Apple has engaged in such behavior. During discovery, Plaintiffs proposed taking depositions by video and phone, while reserving only two witnesses for live deposition when the situation allows. Dkt. 115-3 at 1 ("we can explore videoconferencing"), Dkt. 115-4 (identifying thirteen witnesses who could be deposed by video or telephonically). Instead of accepting this offer, immediately after Apple finished taking two depositions in London (which required one of Plaintiffs' lawyers to self-quarantine upon return), Apple informed Plaintiffs' counsel of its intent to unilaterally cancel all remaining scheduled depositions and requested that Plaintiffs agree to a sixty (60) day stay of all deadlines. Dkt. 115-2 at ¶¶ 6-8, Dkt. 115-7. More recently, Apple has insisted that Dr. Virdis travel to Belgium to sit for a deposition, even though his wife just had a baby, he is not testifying, and Plaintiffs' offered either a video deposition or interview without oath in Italy. *See* Dkt. 347 at ¶ 6. In this context, no trip to Belgium should be necessary as there is no oath being administered in Italy, Dr. Virdis is not providing any facts, or opinion, and Apple has

failed to point to a single Italian statute or regulation that prevents this video procedure from occurring in Italy.

Moreover, there is no indication that delaying trial for another 60 days will enable the three E.U. witnesses to come to trial live. As Apple notes, "due to the recent surge in COVID-19 in the U.S., the E.U. recently maintained its ban on nonessential travel from the U.S., and requires self-quarantine for E.U. citizens returning from the U.S." Mot. at 15. Given the acknowledged spike in COVID 19 cases countywide (Mot. at 3), it is unlikely that the E.U. will change its stance (or the U.S. will change its reciprocal stance) anytime soon.

Apple's due process arguments regarding its own proposal for remote testimony are a distraction. *See* Mot. at 14-15. The Federal Rules of Civil Procedure specifically allow videoconferencing for "good cause in compelling circumstances with appropriate safeguards." Fed. R. Civ. P. 43(a). The Supreme Court has weighed in on this issue in cases wherein a child testified against a defendant via closed-circuit television or another device. *See, e.g.*, *Maryland v. Craig*, 497 U.S. 836, 857 (1990). In *Craig*, the Supreme Court held that the Confrontation Clause reflects a "preference," not a requirement, for in-person confrontation, which can accordingly be limited to satisfy sufficiently important interests. *Id.*

In support of its motion, Apple points to an article (Mot. at 15, n. 54[7]) in which the Court is attributed the following quote: "[i]t's my opinion there's as much or more nonverbal communication in a bench or jury trial as there is verbal communication … I have real concerns about whether transitioning motions practice to a full-blown trial in that medium would be workable." The issue before the Court currently is not a full-blown trial by video, but likely a single

---

[7] Citing Daniel Siegal, *Why Gilstrap Is Getting Ready For Trial —And Not on Zoom*, Law360, May 15, 2020, https://www.law360.com/articles/1273188/whygilstrap-is-getting-ready-for-trial-and-not-on-zoom.

expert witness testifying remotely on ETSI disclosure issues.

### D. The Court Has Already Proposed Appropriate Safety Measures To Address The Limited Local COVID-19 Infection Risks

This Court noted just two weeks ago "Marshall has so far been substantially spared from the current spike in cases of COVID-19 that Dallas and Houston have experienced." *IPT* at *3. For example, in the last week there have been just 69 new cases reported in Harrison County.[8] Moreover, the active COVID-19 caseload in Harrison County is currently low. With a population of 66,553,[9] it has 134 cases as of July 15, 2020[10]--an active infection rate of just 0.2%. This is far less than the hard hit areas in Dallas and Houston:

| Location | Active Cases (as of July 15) |
| --- | --- |
| Houston (Harris County) | 31,768 |
| Dallas | 16,004 |
| Harrison | 134 |

To be clear, Plaintiffs' agree that the COVID-19 pandemic is a serious national issue. But, given the low local infection rates, the Court and the parties can take sufficient precautions to bring the risks to those involved down to a manageable level.

The Court has already indicated a number of measures to address COVID-19 related concerns, including, for example:[11]

---

[8] https://tabexternal.dshs.texas.gov/t/THD/views/COVIDExternalQC/COVIDTrends?%3AisGuestRedirectFromVizportal=y&%3Aembed=y.

[9] https://www.census.gov/quickfacts/harrisoncountytexas.

[10] https://dshs.texas.gov/coronavirus/additionaldata.aspx.

[11] Daniel Siegal, *Why Gilstrap Is Getting Ready For Trial —And Not on Zoom*, Law360, May 15, 2020, https://www.law360.com/articles/1273188/whygilstrap-is-getting-ready-for-trial-and-not-on-zoom.

- "potential jurors will have their temperature taken when they enter the courthouse"

- jurors "will be spaced out in the courtroom"

- jurors "will be provided with masks"

- "[i]nstead of one microphone, multiple microphones will be used during jury selection so that they can be disinfected between uses."

Moreover, there are additional steps that the Court and the parties can take to address Apple's remaining concerns, including:

- limiting the number of attorneys and staff who can be in the courtroom at any particular time;

- requiring that the trial teams self-isolate from the surrounding community by not frequenting dining establishments or stores, but instead using delivery services; and,

- conducting the first stage of voir dire staggered throughout the day so that only a limited number of people are together at any one point in time.

Such practices are consistent with CDC recommendations of "personal prevention practices (such as handwashing, staying home when sick, maintaining 6 feet of distance, and wearing a cloth face covering) and environmental prevention practices (such as cleaning and disinfection) [as] … important ways to prevent the virus's spread."[12]

Apple's expert, Dr. Haley, agrees that masks and social distancing are sufficient when coupled with a low infection rate. Mot., Ex. A, ¶¶ 24-25 (Governor's "order … requiring that most people wear masks when around others and … to social distance by 6 feet or more" expected to impact infection rates). Indeed, Dr. Haley told the Rotary Club of Longview, Texas on June 24,

---

[12] https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html.

2020 that even precautions such as masks were not really necessary in Texas' more rural environments given the low local infection rates: "I don't think every part of the state needs to (wear masks) … There are smaller towns and places where people live far apart and don't get together often."[13]

There is no indication that the Court's proposed safeguards will be insufficient. Judge Mazzant of the Sherman Division conducted a three-day civil jury trial in a personal-injury case on June 8-10. Media coverage of the trial indicated that Judge Mazzant and counsel "all said they were surprised at just how little concern about the virus jurors expressed from voir dire to verdict, and said the trial itself went off without a hitch."[14] Other district courts, *e.g.,* the District or Oregon, Eastern District of Tennessee and Eastern District of Arkansas, are also holding in-person trials using similar safeguards. Exhibit 4 at 2 ("Civil and criminal jury selections, jury trials, and grand jury proceedings scheduled to begin after July 15, 2020, may proceed as long as they can be conducted in compliance with health advisories."); Ex. 5 at 2 ("Limited criminal and civil jury trials may resume after June 14, 2020, in the Court's discretion."); Ex. 6 at 1 ("In June, for example, two civil jury trials, one criminal trial, and many hearings were held."). As another example, even hard-hit Los Angeles County is restarting jury trials with masks and social distancing on August 10, 2020.[15]

One notable aspect of Dr. Haley's declaration is that it appears to be part of a concerted litigation tactic. Co-pending in this district is the retrial of the $502 million damages verdict in *VirnetX Inc. et al. v. Apple Inc.*, Case No. 6:12-cv-00855-RWS, pending before Judge Schroeder. Trial

---

[13] https://www.news-journal.com/news/coronavirus/epidemiologist-urges-masks-vitamins-to-fight-covid-19/article_45968458-b582-11ea-8786-6b85fa71e52e.html/. Of note, Longview is in Gregg County, which has a slightly higher case count than Harrison County.

[14] https://www.law360.com/articles/1282603/tough-texas-jurors-make-for-smooth-trial-during-pandemic.

[15] http://theavtimes.com/2020/07/10/jury-trials-in-criminal-cases-postponed-until-august/.

10

in the *VirnetX* matter is set for August 17, 2020 in Tyler. The very same day that Apple brought the present motion, Apple filed a motion detailing COVID-19 risks and seeking to hold the *VirnetX* pre-trial conference telephonically (Apple also indicated that it may seek a stay of that case, but has not yet done so). *See* Exhibit 3 at 7, n.3.

Dr. Haley's declaration appears to be in large part cut and pasted from Apple's attorney argument in the *VirnetX* motion:

| Attorney Argument In *VirnetX* Motion | Dr. Haley's Declaration |
| --- | --- |
| One of the "guiding principles" that the **C.D.C. provides is the following: "[t]he more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."** … The C.D.C. describes a "highest risk" category for group gatherings: **"[l]arge in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."** … This is the scenario that an in-person pretrial conference would create.<br><br>Exhibit 3 (*VirnetX* Mot.) at 4 | One of the "guiding principles" that the **CDC provides is the following: "The more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."** I believe that the trial would fall into the category that the CDC describes as the "highest risk": **"Large in-person gatherings where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."**<br><br>Mot., Ex. A (Haley Declaration at ¶¶ 16-17) |
| A conference, **by its very nature, involves a large amount of speaking. Speaking is one of the main ways that COVID-19 is transmitted from person to person because COVID-19 spreads by aerosols** or airborne droplets … Indeed, **COVID-19 can be transmitted through the air** long **after a person speaks**, and the risk of transmission by such particles is significantly higher in an enclosed space.<br><br>Exhibit 3 (*VirnetX* Mot.) at 7 | …a trial, **by its very nature, involves a large amount of speaking. Speaking is one of the main ways that Covid-19 is transmitted from person to person, because Covid-19 spreads by aerosols.** That is, Covid-19 can **be transmitted in the air after a person speaks.**<br><br>Mot., Ex. A (Haley Declaration at ¶ 20) |

Plaintiffs agree with the Court's conclusion that "[t]his is a very difficult set of first

11

impression circumstances where you're trying to balance a constitutional mandate and an interest in speedy justice with real public health concerns."[16]  This balancing requires an objective view of the facts, not the skewed positions that Apple offers.  For example, while Apple and Dr. Haley point to infections across Texas and nationwide (Mot. at 3), this Court is not in Houston or Dallas, let alone New York or Miami.  As this Court previously noted in the *IPT* decision, "Texas is a large and diverse state, and … the circumstances in this division and district have not impacted the Court's operations, to date, as it has its sister Texas districts."  *IPT* at *3.

As another example, Apple (through Dr. Haley) calls out days with larger reports of confirmed COVID-19 cases in the last week, but ignores the days in between such spikes that have far fewer cases. Mot. Ex. A (Haley Declaration) at ¶ 6.  He also cites to the total number of confirmed cases and argues "there is a high likelihood that several [persons at trial] would be carrying the SARS-CoV-2 virus that causes Covid-19."  *Id.,* ¶ 19.  But nobody, including Dr. Haley, argues that people that have recovered are still infectious and should be included in such calculations.  Nor will individuals who are exhibiting symptoms be allowed in the courtroom.  As a result, what Dr. Haley needed to model, and did not do so, is how many asymptomatic cases could be present in the courtroom and what risk do any such cases pose with the safety measures outlined above.

As another example, Apple and Dr. Haley argue "travel to Marshall would require most people to pass through DFW or through DFW (or Houston) to Shreveport, Louisiana." *Id.,* ¶ 21.  Under their view, because an air traveler can "contract[] it en route," "you cannot eliminate the risk of asymptomatic outsider unknowingly bring COVID-19 to Marshall." *Id.,* ¶ 22.  First, as this Court

---

[16] Daniel Siegal, *Why Gilstrap Is Getting Ready For Trial —And Not on Zoom*, Law360, May 15, 2020, https://www.law360.com/articles/1273188/whygilstrap-is-getting-ready-for-trial-and-not-on-zoom.

has previously noted, there are options in air travel to avoid Dallas and Houston: travel from "the West Coast to Marshall, Texas can be accomplished by flying to Little Rock, Arkansas and making a three hour and twenty minute drive from there to Marshall, which does not require travel through airports in Dallas, Houston, or anywhere in Texas." *IPT,* at *1, n.1. Second, Apple's argument proves too much. If you wanted to "eliminate" all risks of an "outsider unknowingly bring COVID-19 to Marshall," all air travelers, or indeed any person from outside Marshall, would have to be banned.

Apple is one of the wealthiest companies in the world. Four different offices of attorneys from its outside counsel, in addition to its local counsel, have appeared for Apple in this case. If Apple is concerned about the risks associated with travel, it can arrange for private flights for its team members, exactly what it does for its Chief Executive.

Finally, Dr. Haley concludes that the "governor's mitigation orders" should "see us back at baseline, relatively low risk" in two months. Mot., Ex. A at ¶ 28. Dr. Haley cites no support and provides no analysis backing up his conclusion—a conclusion contrary to the anticipated second wave of independent researchers at the Institute for Health Metrics and Evaluation at the University of Washington.[17]

### E. Delay Would Not Alleviate the Concern, and Would Prejudice Plaintiffs

Apple's proposal for delay would unfortunately not alleviate the concern regarding COVID-19. There is nothing to suggest that two months from now the situation will be any different. Apple's proposal, with no trial date in sight, would (1) prejudice Plaintiffs' interest in vindicating its rights and (2) be prejudicial given the extensive trial preparation efforts the parties have undertaken. The parties are filing their pretrial disclosures today, the pretrial conference is in a little over a week

---

[17] http://www.healthdata.org/news-release/ihme-models-show-second-wave-covid-19-beginning-september-15-us.

13

away on July 27, and trial is scheduled to commence just over two weeks on August 3, 2020. Dkt 159 at 1-2. Plaintiffs' counsel and support staff, representatives and witnesses have expended extraordinary amounts of time and resources to be prepared to try this case as scheduled and in a safe manner.

Plaintiffs agree with Apple that the parties have a responsibility to take all reasonable measures to minimize the risk of infection for the jurors, trial participants, the Court and its staff and the community at large. To that end, Plaintiffs' counsel and support staff have been maintaining strict regimes for months to minimize the risk of COVID-19 infection prior to travelling to Marshall. Declaration of Jason Sheasby, ¶ 9. This includes safety training regarding COVID-19 prevention. *Id.* Plaintiffs have hired an industrial hygienist to provide protocols for safe travel and working environments, including properly distanced work areas in Marshall (*e.g.,* with Plexiglas dividers, individual air purifiers, etc.) and appropriate personal protective equipment (*e.g.,* masks and gloves). *Id.,* ¶¶ 9-10. Plaintiffs' trial participants and support staff will be using temperature monitoring on counsel and staff prior to travel, during the trial, and upon return. *Id.* In Marshall, Plaintiffs' trial team will undergo daily heath self-screenings (including temperature and a daily health survey). *Id.* Plaintiffs have also organized lodging, meals and workspace that will allow them to maintain limits on social interactions locally. *Id.,* ¶ 11.

Similarly, Plaintiffs' and their witnesses have made substantial accommodations for its witnesses to be available for trial. For example,

14

Plaintiffs' counsel, representative and other witnesses have also made accommodations. Sheasby Declaration, ¶ 11.

Plaintiffs have also agreed to "unconventional practices and accommodations that would not normally be accepted as appropriate" (Standing Order at 1) to allow trial to proceed. For example, as discussed above, Plaintiffs' agreed to Apple's proposal regarding remote testimony from E.U. witnesses. Exhibit 2.

Presumably, Apple has also arranged for its counsel and support staff, representatives and witnesses to be present for trial. Given Apple's size and resources, Plaintiffs expect that Apple will take comparable measures to ensure the trial can proceed safely.

## III. CONCLUSION

Apple's request to continue trial should be rejected.

Dated: July 17, 2020

Respectfully submitted,

*/s/ Samuel F. Baxter*
Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
McKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Phone: (903) 923-9000; Fax: (903) 923-9099

Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
McKOOL SMITH, P.C.
300 W. 6th Street Suite 1700
Austin, TX 78701
Phone: (512) 692-8700; Fax: (512) 692-8744

Jason Sheasby – Lead Counsel (pro hac vice)
jsheasby@irell.com

Hong Zhong, PhD (pro hac vice)
hzhong@irell.com
Andrew Strabone (pro hac vice)
astrabone@irell.com
IRELL & MANELLA LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064
Phone: (310) 203-7096; Fax: (310) 203-7199

M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Phone: (214) 954-4135; Fax: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, AND PANOPTIS PATENT MANAGEMENT, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served via electronic mail on all counsel of record on July 17, 2020.

                                              */s/ Samuel F. Baxter*
                                              Samuel F. Baxter

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that this document should be filed under seal because the document, and any exhibits, contain material covered by the Stipulated Protective Order approved and entered in this case on August 7, 2019 (Dkt. 57).

                                              */s/ Samuel F. Baxter*
                                              Samuel F. Baxter