# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 2:19-CV-0066-JRG <br><br> **JURY TRIAL REQUESTED** |

## PROPOSED JURY INSTRUCTIONS
[1]

---

[1] Submissions that are agreed to by both Plaintiffs and Apple are not highlighted.

Submissions proposed by Plaintiffs that are not agreed to by Apple are bracketed and highlighted in green.  Submissions proposed by Apple that are not agreed to by Plaintiffs are bracketed and highlighted in yellow.  The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

## JURY CHARGE

## INTRODUCTION

## PRELIMINARY INSTRUCTIONS[2]

## 1      DUTY OF JURY[3]

Ladies and Gentlemen, you are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

## 2.      OVERVIEW OF APPLICABLE LAW[4]

In deciding the issues in this case, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

---

[2] The Court has standard instructions it gives at the beginning of trial and Plaintiffs do not believe that the parties need to propose preliminary instructions to the Court.  Indeed, much of this material is cumulative of the FJC Patent Process video.  As such, Plaintiffs object to each of these preliminary instructions.

[3] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at § 1.1.

[4] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § A.4.

The first issue you will be asked to decide is whether Plaintiffs have shown, by a preponderance of evidence, that Apple has infringed any asserted claims of the asserted patents. Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  [There are a few different ways that a patent may be infringed.  I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.  In general, however,] Apple may infringe the asserted patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product meeting all the requirements of an asserted apparatus claim or by using a method meeting all the requirements of an asserted method claim.  Apple may also indirectly infringe the asserted patents by contributing to infringement by another person or entity, or by inducing another person or entity to infringe.  I will provide you with more detailed instructions on the requirements for each type of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the claims of the asserted patents are invalid.  A patent may be invalid for a number of reasons, including because the subject matter of the claim invention is not new or is obvious.  For a claim to be invalid because it is not new, Apple must show, by clear and convincing evidence, that all of the elements of a claim are present in a single [previous] device or method, or sufficiently described in a single previous printed publication or patent [that existed before the effective filing date of the claimed invention].  We call these "prior art."  [I will provide you with the effective filing date of each of the claimed inventions for each of the asserted patents in your final jury instructions][5].  If a claim is not new, it is said to be anticipated.

---

[5] [**Apple Objection:**  The language "each of the claimed inventions for each of the asserted patents" is confusing and may suggest that different claims have different effective filing dates.]

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid [if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention] [if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time]. You will need to consider a number of questions in deciding whether the invention(s) claimed in the asserted patents are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the asserted patents has been infringed and is not invalid, you will then need to decide [the amount of money damages] [any money damages] to be awarded to Plaintiffs to compensate them for the infringement.  A damages award should [in no event] [put Plaintiffs in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award] be less than what Plaintiffs would have received had it been paid a reasonable royalty [from the time that Apple first received an actual or constructive notice of infringement from Plaintiffs].  I will instruct you later on the meaning of a reasonable royalty and the date from which damages are to be calculated.  The damages you award are meant to compensate Plaintiffs and not to punish Apple. [You may not include in your award any additional amount as a fine or penalty, above what is

[**Plaintiffs' Response:** This instruction is appropriate, as the prior instructions refer to whether the "claimed inventions" are new or obvious.]

==necessary to compensate Plaintiffs for the infringement==.][6]   I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

### 3.      CONDUCT OF JURY[7]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or

---

[6] [**Plaintiffs' objection**: Plaintiffs object to the inclusion of this sentence as repetitive of the prior sentence and thus putting too much emphasis on this portion of the instructions.]

[7] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at § 1.2 (modified).

anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTIONS AT CLOSE OF EVIDENCE**

## 4. INTRODUCTION[8]

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have [your own printed copies] [a copy] of these final jury instructions that I'm giving you now[, so there's really no need for you to take notes unless you just particularly want to.] [.]

[Ladies and Gentlemen, as I've said previously,] [It's your duty to follow the law as I give it to you. On the other hand,] you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You're about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence, and they are not instructions on the law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

---

[8] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

## 5.    [CONMENTAL WITNESS TESTIMONY][9]

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them.  You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

[As I've told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question.  If, on the other hand, the objection was overruled, then you're to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.]

[In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

Attorneys representing clients in courts have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules

---

[9] Plaintiffs believe creating many artificial headings for jury instructions is unnecessary and distracting to jurors.  [**Apple Response:** The use of headings is commonplace to assist the Court, the parties, and jurors to navigate the instructions.]

of evidence.  The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

You should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, then ignore the question.  If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question. [10]]

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room. This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

### 6.	[HOW TO EXAMINE THE EVIDENCE][11]

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

---

[10] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[11] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at §§ 2.3; 2.8; 2.13; 3.3; 3.4 (all modified).

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular mobile devices.

[Now, unless I instruct you otherwise, you may properly determine that the] [The] testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if, after considering all of the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule,  the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties have stipulated or agreed to some facts in the case.  When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness.  Demonstrative exhibits are

not evidence.  They are a party's picture or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.  [The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.]

## 7.      [EXPERT WITNESSES][12]

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters [to the jury].  However, you're not required to accept that opinion. As with any other witness, it is [solely] up to you to decide [who you believe and who you don't believe and whether or not you want to rely on their testimony] [whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether  to rely upon it.  In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.][13]

## 8.      [BURDENS OF PROOF][14]

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof.  The burden of proof in this case is on the Plaintiffs for some issues, and it is on

---

[12] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at § 3.5 (modified).

[13] Plaintiffs object to the introduction of bias in instructions, as it will create a presumption that expert witnesses are biased.  [**Apple Response:** An instruction as to the bias of expert witnesses is not improper, and is an instruction this Court has given in other cases.  *See, e.g.*, Jury Charge, *EON Corp. IP Holdings, LLC v. Silver Spring Networks, Inc.*, No. 6:11-CV-317-JDL, Dkt. No. 620 (E.D. Tex. June 10, 2014), Instruction No. 7 ["Expert Witnesses"].  Moreover, Plaintiffs' concern that this instruction will create a presumption of bias is unfounded because this instruction will be given after the close of evidence and after the parties' experts have testified.]

[14] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at §§ 3.1; 4.1.

Apple for other issues.  There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.

The Plaintiffs have the burden of proving patent infringement by a preponderance of the evidence.  [The Plaintiffs also have the burden of proving willful patent infringement by a preponderance of the evidence.][15]   The Plaintiffs also have the burden of proving damages for any patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Apple has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind [an abiding] [firm] conviction that the truth of the party's factual contentions are highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind [an abiding] [a firm] conviction in the truth of the matter, then the clear and convincing evidence standard has been met.[16]

[These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end

---

[15] [**Apple Objection:** Any instruction as to willful infringement is improper because Plaintiffs have not established a case for willfulness.  *See* Dkt. 182 (Apple's Motion for Summary Judgment on Plaintiffs' Claims of Pre-Suit Damages").]

[16] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018). ECF No 498.

beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.][17]

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

---

[17] **[Apple Objection:** The criminal standard has no application in a civil trial, and an instruction referencing the standard in criminal proceedings is unnecessary and likely to confuse the jury.] **Plaintiffs' Response:** It is important for jurors to understand the burdens of proof they will apply in this case.  The jury is encouraged (and indeed, expected), to consider the facts of this case in light of their common experience and common sense, and that includes understanding how the "beyond a reasonable doubt" standard compares to the standards they will apply in this case.

## 9.    CONTENTIONS OF THE PARTIES[18]

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns six United States Patents, those being U.S. Patent Nos. 8,005,154; 8,019,332; 8,385,284; 8,411,557; 9,001,774; and 8,102,833, which you've consistently heard referred to throughout the trial as the '154, '332, '284, '557, '774, and '833 patents.  I will refer to them as the patents-in-suit.  I may also refer to them as the asserted patents.

Plaintiffs seek money damages from Apple for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States [the smartphones, tablets, smartwatches that operate over the "LTE" cellular standard.   Sometimes in these instructions I will refer to these as the accused products.  The Plaintiffs contend that the accused products infringe the following claims:

'154 Patent claims 33, 37;
'332 Patent claims 1, 6, 7, 10
'284 Patent claims 1, 14, 27
'557 Patent claims 1, 5, 10
'774 Patent claims 6, 10, and
'833 Patent claims 1, 8

These claims are sometimes referred to as the asserted claims.  The Plaintiffs allege that the accused products infringe the asserted claims either literally or through the Doctrine of

---

[18] Trial Tr., *Whirlpool Corp. v. TST Water LLC,* No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017).  ECF No. 166.; Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

Equivalents.   The Plaintiffs also allege that Apple's infringement is and has been willful. Plaintiffs seek damages in the form of a reasonable royalty for Apple's alleged infringement.][19]

[certain iPhones, iPads, and Apple Watches.

Plaintiffs contend that Apple made, used, offered to sell, sold, or imported products that infringe at least one of the following apparatus, or product, claims:

- Claim 37 of the '154 patent;
- Claims 6, 7, and 10 of the '332 patent;
- Claim 1 of the '284 patent;
- Claims 1 and 5 of the '557 patent; and
- Claim 8 of the '833 patent.

Plaintiffs also contend that Apple, its customers, and/or other users of the accused products infringe[20] by performing each step required by at least one of the following method claims:

---

[19] [**Apple Objection:**  Plaintiffs' instruction does not precisely describe the categories of products that Plaintiffs accuse, and their generic reference to products "that operate over the 'LTE' cellular standard" is likely to confuse the jury.  Plaintiffs also fail to distinguish between the apparatus and method claims they allege are infringed, and identify with precision the alleged infringer(s).  In addition, for the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

**Plaintiffs' Response:** This instruction will come after all of the evidence has been put on at trial. The jury will understand the infringement theories for the asserted claims, and will understand how those theories apply to Apple's relevant products.  .

[20] [**Plaintiffs' Objection:**  Plaintiffs believe it is unnecessarily argumentative to instruct the jury of infringement by customers or third parties.  As to method claims, Plaintiffs are accusing Apple of direct infringement and indirect infringement.  For indirect infringement, Plaintiffs must show that all elements are practiced by an entity and that Apple either contributes or induces this act.  There will be no reference to customers infringing.]  [**Apple Response:** Plaintiffs' September 25, 2019 Supplemental P.R. 3-1 and 3-2 Disclosure states "For the method claims in the claim charts, when Apple, *its customers, retailers, or servicers, and/or other users* turn on and use the Accused  Instrumentalities in the U.S., or when the Accused Instrumentalities are tested in the U.S., for cellular LTE transmissions, the claimed methods are performed in the

- Claim 33 of the '154 patent;

- Claim 1 of the '332 patent;

- Claims 14 and 27 of the '284 patent;

- Claim 10 of the '557 patent;

- Claims 6 and 10 of the '774 patent; and

- Claim 1 of the '833 patent.

These apparatus and method claims are sometimes referred to as the asserted claims.]

Apple denies that [the accused products infringe the][21] [it has infringed any] asserted claims of the '154, '332, '284, '557, '774, and '833 patents.  [Apple further denies the Plaintiffs' allegation that it willfully infringed][22].  [In other words, Apple contends that Apple did not make, use, sell, offer for sale, or import products that infringe any of the asserted apparatus claims. Apple further contends that its products do not perform each step required by any of the asserted method claims.]

[Apple also contends that the asserted claims are invalid.] [Separately, Apple also contends that the asserted claims of Plaintiffs' patents are invalid.  Apple contends that the

---

U.S. and thus directly infringed under 35 U.S.C. §271(a). The claimed methods are also performed and thus directly infringed under 35 U.S.C. §271(a) when the Accused Instrumentalities are activated as part of design and development activities (e.g. interoperability, compliance, certification, reliability and quality control testing), and/or otherwise operated by Apple *or other users of the Accused  Instrumentalities*, for cellular LTE transmissions. Apple is liable therefor directly and indirectly." (emphasis added).]

[21] [**Apple Objection:** Products themselves do not infringe.  *See* 35 U.S.C. § 271.]

**Plaintiffs' Response:** The Court frequently uses this construction in patent infringement cases. *See, e.g.,* Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166 at 15.

[22] [**Apple Objection:**  For the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

---

asserted claims of Plaintiffs' patents were anticipated or rendered obvious by prior art that existed before Plaintiffs' alleged invention and therefore Plaintiffs' asserted patent claims are invalid.  Invalidity is a defense to infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.]

[Apple denies it owes the Plaintiffs any damages in this case].

[Your job is to decide whether the asserted claims of the asserted patents have been infringed and whether any of the asserted claims of those patents are invalid.]

If you decide that any claim [of a patent] has been infringed and [that claim] is not invalid, then you will need to decide [whether Apple's infringement has been willful, and to decide the amount of][23] [any] money damages to be awarded to Plaintiffs as compensation for [that] [the] infringement.

## 10.    ESTABLISHED FACTS

I will now instruct you on a number of established facts.  You must take these facts as true when deciding the issues in this case.

1.     The Plaintiffs are the record assignee and owner of the '154, '332, '284, '557, '774, and '833 patents.[24]

---

[23] [**Apple Objection:**  For the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

[24] [**Apple Objection:**  Plaintiffs' ownership of the asserted patents is not an established fact. Plaintiffs are a collective of corporate entities, some of whom are the owners of record to certain asserted patents.  PanOptis does not appear to own any of the patents-in-suit.  Indeed, the "Uncontested Facts" portion of the parties Joint Pretrial Order does not address ownership of any individual asserted patent, much less suggest that Plaintiffs, collectively, own the asserted patents.]

[**Plaintiffs' Response:** Apple has not contested Plaintiffs' ownership of the asserted patents at any point in this litigation, and there is no actual dispute here regarding ownership.]

2.      The '154 patent was filed for on December 26, 2007 and issued on August 23, 2011 by the U.S. PTO.  The '154 patent has the effective filing date of December 22, 2006.

3.      The '332 patent was filed for on December 8, 2010 and issued on September 13, 2011 by the U.S. PTO.  The '332 patent has the effective filing date of March 7, 2008.

4.      The '833 patent was filed for on September 11, 2008 and issued on January 24, 2012 by the U.S. PTO.  The '833 patent has an effective filing date of November 13, 2007.

5.      The '284 patent was filed for on August 16, 2010 and issued on February 26, 2013 by the U.S. PTO.  The '332 patent has the effective filing date of December 20, 2007.

6.      The '557 patent was filed for on December 21, 2011 and issued on April 2, 2013 by the U.S. PTO.  The '557 patent has an effective filing date of March 20, 2006.

7.      The '774 patent was filed for on November 12, 2013 and issued on April 7, 2015 by the U.S. PTO.  The '774 patent has an effective filing date of April 21, 2005.

8.      [The asserted claims of the '154 Patent are claims 33 and 37.

9.      The asserted claims of the '332 Patent are claims 1, 6, 7, 10.

10.     The asserted claims of the '284 Patent are claims 1, 14, 27.

11.     The asserted claims of the '557 Patent are claims 1, 5, 10.

12.     The asserted claims of the '774 Patent are claims 6 and 10.

13.     The asserted claims of the '833 Patent are claims 1 and 8.]

14.     [Placeholder for additional facts after summary judgment]

## 11.     PATENT CLAIMS[25]

Before you can decide many of the issues in this case, you'll need to understand the role of the patent claims.

The claims of a patent are numbered sentences at the end of the patent.  The claims define the patent owner's rights under the law.  The claims are important, because it is the words of the claims themselves that define what the patent covers.  The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

[Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim.] Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## 12.     CLAIM CONSTRUCTION[26]

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.  And the first step is to understand the meaning of the words used in the patent claim.  The law says that it is [my] [the Court's] role to define the terms of the claims, but it is your role to apply [my] [these] definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, [I've] [the Court has] determined the meaning of certain claim language. I have provided the definitions of those claim terms in your jury notebooks. You must accept [my] [the] definitions of these words in the

---

[25] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

[26] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

claims as being correct, and it is your job to take these definitions [that I have supplied] and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

[For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention in light of the specification.  The meanings of the words of the patent claims must be the same when deciding both the issues of infringement and validity.]

[For any words in a claim for which you have not been provided with a definition, you should apply their common meaning.  You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide.]

### 13.    PATENT CLAIMS AND LIMITATIONS

I'll now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device [or method] satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  [Claims may describe apparatuses, devices, or products, such as machines. I will call such claims "apparatus" claims. Claims may also describe processes or methods for

making or using a product.  I will call such claims "method" claims.  In this case, Plaintiffs have asserted both apparatus and method claims for the asserted patents.[27]]

When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to cover that product; and that product is said to fall within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

[If a product is missing even one limitation or element of a claim, the product is not covered by that claim unless an equivalent of the limitation is present.  If the product is not covered by the claim, the product does not infringe the claim.][28]

[With respect to apparatus claims, if a product is missing even one limitation or element of a claim, the product is not covered by that apparatus claim.  If the product is not covered by the apparatus claim, the product does not infringe the claim.  Similarly, with respect to method claims, if an entity does not perform even one required step of the process, the entity's actions

---

[27] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[28] [**Apple Objection:** Plaintiffs' instruction fails to separately address the requirements for method claims, and thus is likely to confuse the jury.  Plaintiffs' proposed language "unless an equivalent of the limitation is present" is also improper, imprecise, and likely to confuse the jury because Plaintiffs do not have theories under the doctrine of equivalents for all the claims they assert, much less for all limitations of all the asserted claims.]

[**Plaintiffs' Response:**  Plaintiffs believe that there is no need for separate instructions for apparatus and method claims.  This is consistent with the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1a, AIPLA Model Patent Jury Instructions (2019-11-13) at § 3.2, and Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at § 3.2, all of which contain a unified instruction for direct infringement of method and apparatus claims.  With respect to the "equivalent of the limitation" language, Plaintiffs' instruction is an accurate recitation of the law, and it is more helpful to the jury to include the doctrine of equivalents here, since they will be applying the doctrine of equivalents in this case.

are not covered by that method claim.  If the actions are not covered by the method claim, the actions do not infringe the method claim.]

## 14.    INDEPENDENT VS. DEPENDENT CLAIMS[29]

This case involves two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. Thus, it is not necessary to look to any other claim to determine what an independent claim covers.

By contrast, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

The law considers a dependent claim to incorporate all the requirements of the claim or claims to which it refers or depends, as well as the additional claims set forth in the dependent claim itself.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Taking the '557 patent as an example, claim 1 of the '557 patent is an independent claim. Claim 5 of the '557 patent is a dependent claim that refers back to independent claim 1. Therefore, dependent claim 5 includes all the requirements of claim 1 as well as all of the requirements of claim 5.

**[MEANS FOR[30]**

---

[29] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1a.

Certain claims use the phrase "means for."  This "means for" phrase has a special meaning in patent law.  It's called a means-plus-function requirement.  It does not cover all the structures that could perform the function set forth in the claim.  Instead, it covers a structure or set of structures that performs that function and that is either identical or equivalent to the structures described in the patent for performing the function.

The issue of whether two structures are identical or equivalent is for you to decide.  I'll explain to you later how to decide whether two structures or two sets of structures are equivalent to one another.]

## 15.    COMPRISING

[The] [Certain] claims of the patent-in-suit use the word "comprising."  Comprising means including or containing.  A claim that includes the word "comprising" is not limited to the methods or devices having only the elements recited in the claim but also covers methods or devices that add additional elements.[31]

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  That's a

---

[30] Taken directly from *Optis v. Huawei*, where Claim 1 of the '284 patent was also asserted. Trial Tr., *Optis Wireless Tech. v. Huawei Techs. Co., Ltd.* No. 2:17-cv-123-JRG-RSP (E.D. Tex. Aug. 24, 2018), ECF. No. 310

[31] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

simple example using the word "comprising" and what it means.  But, in other words, it can have other features, in addition to those that are covered by the patent.[32]

[If a product is missing even one limitation or element of a claim, it does not meet all of the requirements of a claim and is not covered by the claim. If a product is not covered by the claim, it does not infringe the claim.][33]

## 16.    INFRINGEMENT[34]

[Now, in determining infringement, once the patent is issued, the owner of a patent] [A patent owner] has the right to stop others from making, using or selling the patented invention [throughout] [in] the United States for the life of the patent.  If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

[For any claim of infringement, an accused infringer's ownership of its own patent is not a defense to infringement.[35]][36]

---

[32] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

[33] Plaintiffs object to the inclusion of this instruction as repetitive and unnecessary in light of the inclusion of this instruction in the preceding and later paragraphs, and therefore placing an unnecessary focus on this instruction.  [**Apple Response:**  This instruction is not repetitive and one this Court has given in other cases.  *See* Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.]

[34] Trial Tr., *Whirlpool Corp. v. TST Water, LLC.*, No. 2:15-cv-01528-JRG, (E.D. Tex. Mar. 23, 2017), ECF No. 166.; Trial Tr., Core Wireless Licensing S.A.R.L. v. Apple Inc., No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[35] *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[36] [**Apple Objection:**  Plaintiffs' instruction is unnecessary and confusing.  Apple does not contend that ownership of its own patent is a defense to infringement.]

To determine whether there is infringement, you must compare the asserted patent claims, as I've defined each of them, to the accused products [or methods]. You should not compare the accused products [or methods] with any specific example set out in the patent or with the prior art in reaching your decision on infringement.  [The specific examples set out in a patent, however, may inform you as to the reasonableness of the application of the plain and ordinary meaning of claim terms[37]].[38]   [The only correct comparison is between the accused product [or method] and the language of the claim itself.]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.  [Remember that the issue of infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another claim in the patent.][39]

---

[**Plaintiffs' Response:** There is nothing confusing about this instruction.  The jury is likely aware that Apple owns its own patents.  It is important for the jury to know that this is not relevant to the determination of infringement.]

[37] Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005)

[38] [**Apple Objection:**  Apple objects to Plaintiffs' instruction to the extent it invites the jury to conduct claim construction.

**Plaintiffs' Response**: Apple's objection is baseless, Plaintiffs are setting out settled Federal Circuit law.

[39] Plaintiffs object to the inclusion of this instruction as repetitive and unnecessary in light of the instructions in the previous and later paragraphs, and therefore placing an unnecessary focus on this instruction.  [**Apple Response:**  This language, which is taken directly from the Federal Circuit Bar Association's model instructions, is not unnecessary and instructive for the jury.  *See* FCBA Model Patent Jury Instructions (May 2020) at § 3.1.  Moreover, Plaintiffs include similar language in their proposed instruction regarding literal infringement.  *See* p. 24, *infra* ("In making your determination, you must consider each claim separately.  Not all of the claims of a patent must be infringed for infringement to exist.")]

---

[I'll now instruct you on the specific rules that you must follow to determine whether the Plaintiffs have proven that Apple has infringed one or more of the patent claims involved in this case.]   In this case, there are two possible ways that a claim may be infringed. I'll explain the requirements of each of these types of these types of infringement to you.   The two types of infringement are called direct infringement and indirect infringement.

### [LITERAL INFRINGEMENT[40]

In order to infringe a patent claim, the accused device must include each and every element of the claim.  In determining whether Apple infringes the Plaintiffs' asserted claims, you must determine if the accused products contain each and every element recited in a claim of the asserted patent.  A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.  In making your determination, you must consider each claim separately.  Not all of the claims of a patent must be infringed for infringement to exist.  The Plaintiffs need only establish by a preponderance of the evidence that one claim is infringed.  If you find that each and every element of a patented claim is found in the accused product then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[41]

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the

---

[40] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[41]  *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

claim.[42] A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.[43]]

## DOCTRINE OF EQUIVALENTS

[If you find that the accused product does not literally infringe a claim of the asserted patents, then you must determine whether the product infringes that claim under the doctrine of equivalents. Under the doctrine of equivalents, if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the product.  You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.][44]

---

[42] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[43] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018); *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[44] [**Apple Objection:**  Plaintiffs' instruction fails to identify the claims they allege are infringed under the doctrine of equivalents.  Apple's instruction provides this information, which will be instructive for the jury.]

[**Plaintiffs' Response:** The jury will hear the parties' infringement theories at trial.  There is no need to include this information in the jury instructions that do not inform the jury of the law.

[Even if an accused product does not literally satisfy every requirement of a claim, there may be infringement under the "doctrine of equivalents" if it meets a missing requirement by including an equivalent of the claimed requirement. You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have found that the structure: (1) performs substantially the same function, (2) works in substantially the same way, and (3) achieves substantially the same result as the requirement of the claim.

Plaintiffs contend that Apple infringes the following claims under the doctrine of equivalents:

- Claims 1 and 10 of the '557 patent; and
- Claims 6 and 10 of the '774 patent.][45]

## 17.   [LITERAL INFRINGEMENT [-- APPARATUS CLAIMS][46],[47]

In order to prove literal infringement of an apparatus--or product--claim, the Plaintiffs must show by a preponderance of the evidence that an accused product includes each and every element of that claim exactly.   In determining whether Apple infringes the Plaintiffs' asserted

---

This Court has previously determined that giving doctrine of equivalents instructions without identifying claims alleged under DOE is appropriate. *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).]

[45] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1c.

[46] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[47] Plaintiffs object that there is no need for separate instructions for apparatus and method claims. This is consistent with the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1a, AIPLA Model Patent Jury Instructions (2019-11-13) at § 3.2, and Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at § 3.2, all of which contain a unified instruction for direct infringement of method and apparatus claims.

claims, you must compare the accused product with each and every element recited in a claim to determine whether the accused product contains each and every requirement recited in the claim. A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.  If an accused product does not possess any element recited in a claim, then you must find that that particular product does not literally infringe that claim.

In making your determination, you must consider each claim separately.  Not all the claims of a patent must be infringed for infringement to exist.  For apparatus, or product, claims, if you find that each and every element of a patented apparatus or product is found in the accused product, then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[48]  Conversely, if a product is missing even one element of an apparatus claim, it does not meet all the requirements of the claim and is not covered by the claim.  If a product is not covered by the claim, it does not infringe the claim.[49]  For method claims, if you find that each and every element of a patented method is practiced by the accused product then the claim is infringed.[50]  Conversely, if a product does not practice even one step of a method claim, it does not meet all of the requirements of a claim and is not covered by the claim.  If a product is not covered by the claim, it does not infringe the claim.

---

[48] Trial Tr., *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498.

[49] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[50] *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:14-cv-33-JRG, 2016 WL 5480908, at *5 (E.D. Tex. Sept. 29, 2016).

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[51] A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.[52]

### 18.    DIRECT INFRINGEMENT -- METHOD CLAIMS[53]

In order to prove direct infringement of a method--or process--claim, the Plaintiffs must show by a preponderance of the evidence that Apple itself performs each and every step of the claimed method. ]

### 19.    [INFRINGEMENT OF DEPENDENT CLAIMS[54, 55]

The asserted patents also contain dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of a dependent claim of any of the asserted patents, you must first determine whether any of the independent claims has been infringed.  If you decide that the independent claim has not been infringed then the dependent claim cannot have been infringed.  If you decide that the independent claim has been infringed, you must then separately

---

[51] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[52] Trial Tr., *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498; *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[53] *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:14-cv-33-JRG, 2016 WL 5480908, at *5 (E.D. Tex. Sept. 29, 2016).

[54] Adapted from Jury Charge in *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019), ECF No. 335.

[55] Plaintiffs object that there is no need for an instruction on infringement of dependent claims given the previous instructions regarding independent vs. dependent claims.

---

determine:  (1) for apparatus claims, whether each additional requirement of the dependent claim has also been included in the accused product; or (2) for method claims, whether Apple itself performs each additional step required by the dependent claim.  If each additional product requirement has been included, or each additional method is performed, then the dependent apparatus or method claim has been infringed.  Conversely, if Apple's products or conduct omits any additional requirement recited in a dependent claim, then Apple does not infringe that claim.]

### 20.      [DIRECT INFRINGEMENT -- ] MEANS-PLUS-FUNCTION CLAIMS

[The two "processing unit" terms in asserted claim 1 of the '284 patent are the so-called means-plus-function claim limitations.  To demonstrate that these limitations are literally met, Plaintiffs must prove by a preponderance of evidence (that is, it is more likely than not) that Apple's products contains a structure that (1) performs the recited function; and (2) is identical or equivalent to the structure that is disclosed in the patent specification and drawings for performing the recited function. I have set forth in my claim construction order both the recited function that is to be performed by the structure, and the structure that is disclosed in the patent specification that performs the recited function.  Those constructions are included under Tab ___ of your Juror Notebook.

Whether the structure of the accused product is equivalent to a structure disclosed in the patent specification and drawings is decided from the perspective of a person of ordinary skill in the art.  The structure in the accused product and that disclosed in the patent are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to show this is to demonstrate that the structure in the accused product

performs the identical function in substantially the same way to achieve substantially the same result as would be achieved by the element that is disclosed in the patent specification.

Equivalency in structures can also be demonstrated by showing that people of ordinary skill in the art would have known that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent issued.

Further, in determining structural equivalency, the range of permissible equivalents depends upon the extent and nature of the invention.[56]   More particularly, when in the claimed "processing unit" limitation the disclosed physical structure is of little or no importance to the claimed invention, there may be a broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention.[57]   That the structure in the accused products may perform additional functions not disclosed in the patent specification does not mean the structure is not identical or equivalent to the structure that I identified in my claim construction order.  For example, if the disclosed structure in the patent is a summation algorithm while the structure in the accused products for performing the recited function has, in addition to summation functions, also logical functions and multiplication functions, the accused structure may nevertheless still satisfy the requirement that it is a summation algorithm or equivalent.[58]  This is the case even if the accused structure purports to have a different objective from or achieves better performance than that is disclosed in the patent specification.[59]   It bears noting that even when two structures would not have been considered equivalent structures in other contexts, e.g., if performing

---

[56] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304 (Fed. Cir. 2011).

[57] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304 (Fed. Cir. 2011).

[58] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1305 (Fed. Cir. 2011).

[59] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011).

functions other than the claimed function, they may nevertheless be equivalent for the means-plus-function term when performing the same function.[60]][61]

[Some patent claim requirements may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way an inventor may claim the table is to require the tabletop, four legs, and glue between the legs and the tabletop. Another way to claim the table is to require the tabletop and the legs, but instead of stating "glue," the inventor states a "means for securing the legs to the tabletop." This second type of claim requirement is called a "means-plus-function" requirement. It describes a means for performing the function of securing the legs to the tabletop, rather than requiring the glue.

When a claim requirement is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim and also any structure equivalent to the described structures. In my example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure to glue that performs the function of securing the legs to the tabletop.

Asserted claim 1 of the '284 patent includes means-plus-function claim limitations identified in my claim construction. In instructing you about the meaning of a means-plus-

---

[60] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1305 (Fed. Cir. 2011).

[61] [**Apple Objection:** Plaintiffs' instruction regarding means-plus-function is an improper recitation of Plaintiffs' infringement theories with respect to claim 1 of the '284 patent. Plaintiffs' instruction is argumentative, prejudicial to Apple, and likely to confuse the jury.]

[**Plaintiffs' Response:** Apple has not identified any way in which Plaintiffs' instruction is incorrect or otherwise does not accord with the law. To the contrary, Plaintiffs' instruction is directly drawn from Federal Circuit precedent.]

function claim requirement, I will tell you, first, the function that is performed, and second, the structure disclosed in the patent specification that corresponds to that function.  Those constructions are included under Tab __ of your Juror Notebook.

To establish literal infringement of a claim that includes means-plus-function requirements, Plaintiffs must prove two things:

1.  The relevant structure in the accused device performs the identical function I identified in my claim construction for the means plus function requirement, and

2.  The accused device employs a structure identical or equivalent to the structure identified in my claim construction for the means plus function requirement.

Where the structure in the accused device and the structure identified in my claim construction are not identical, Plaintiffs have the burden of proving by a preponderance of the evidence that the relevant structure in the accused device is equivalent to the structure identified in my claim construction.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial for performing the required function.  One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether people of ordinary skill in the art believed that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent was issued by the Patent Office.][62]

---

[62] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.3a.

## [INDIRECT INFRINGEMENT[63]

In addition to direct infringement, a party can be liable for infringement if it actively induces the direct infringement of a patent claim by another, or if it contributes to the direct infringement of a patent claim by another.  To show inducement, the Plaintiffs must prove by a preponderance of the evidence that someone has directly infringed a patent claim.  If you find that someone has directly infringed the asserted claims, it is not necessary to show that Apple itself has directly infringed if the Plaintiffs prove by a preponderance of the evidence that Apple actively and knowingly aided and abetted that direct infringement.  The Plaintiffs must show that Apple actually intended to cause the acts that constitute direct infringement and that Apple knew or should have known that its actions would induce actual infringement.

Now, if you find that someone has directly infringed the asserted claims and you find that Apple knew or should have known that its actions would induce direct infringement, you may find that Apple induced another to infringe the asserted patents if it provided instructions and directions to perform the infringing act.

To show contributory infringement, the Plaintiffs must prove by a preponderance of the evidence that:[64]

    1. Apple sold, offered to sell, or imported within the United States a component or group of components of a product, during the time the asserted patents were in force;

---

[63] Based on *Golden Hour Data Systems, Inc. v. emsCharts, et al.*, No. 2:06-cv-381 (E.D. Tex. Nov. 25, 2008).

[64] *Pabst Licensing GMBH & Co. KG, v. Samsung Elecs. Co., Ltd., et al.*, No. 6:18-cv-388-RWS Dkt. 291 (E.D. Tex. Nov. 6, 2018).

2. the component or group of components of a product had no substantial, non-infringing use;

3. the component or group of components of a product constituted a material part of the invention;

4. Apple (a) was aware of the patent and knew that the products were covered by a claim of the patent; or else (b) was willfully blind to the infringement of the patent. Willful blindness requires that Apple subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and Apple took deliberate actions to avoid learning of the infringement; and

5. the use of that product directly infringed the claim.]

[22.    INDIRECT INFRINGEMENT --INDUCED INFRINGEMENT[65],[66]

Plaintiffs also allege that Apple has actively induced another to infringe the asserted claims of the asserted patents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To show inducement, Plaintiffs must show by a preponderance of evidence that:

1.       the acts are actually carried out by Apple's customers using the accused products and directly infringe that claim;

---

[65] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.2.

[66] Plaintiffs object to breaking out indirect infringement in this manner as unnecessary and potentially confusing to the jury.  [**Apple Response:** Plaintiffs contend that Apple is separately liable for induced infringement and contributory infringement.  Each of these theories of indirect infringement has a different standard, and accordingly Apple's instructions are more likely to provide clarity to the jury.]

2.     Apple took action during the time the patent was in force, intending to cause the infringing acts by Apple's customers using the accused products; and

3.     Apple was aware of or willfully blind to the patent and knew that the acts, if taken, would constitute infringement of the patent or that Apple was willfully blind to that infringement.

If you find that Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, Apple cannot be liable for inducement.

In order to establish active inducement of infringement, it's not sufficient that the other party or parties themselves directly infringe the claim, nor is it sufficient that Apple was aware of the acts by its customers using the accused products that allegedly constitute the direct infringement.

Rather, you must find that Apple specifically intended its customers, using the accused products, to infringe the patent or that Apple believed there was a high probability that its customers would infringe the patent but deliberately avoided learning the infringing nature of its customers' acts.[67]

## 22.     INDIRECT INFRINGEMENT -- CONTRIBUTORY INFRINGEMENT[68]

Plaintiffs also contend that Apple is liable for contributory infringement by contributing to the direct infringement of the asserted claims of the asserted patents.   As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To show contributory infringement, the Plaintiffs must prove by a preponderance of the evidence that:[69]

---

[67] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.2.

[68] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.3.

4.    Apple sold, offered to sell, or imported within the United States a component or group of components of a product, during the time the asserted patents were in force;

5.    the component or group of components of a product had no substantial, non-infringing use;

6.    the component or group of components of a product constituted a material part of the invention;

7.    Apple was aware of the patent and knew that the product or method is especially made or adapted for use as an infringement of the claim; and

Apple's customers used the product to directly infringed the claim.]

[**WILLFULNESS**[70]

In this case, the Plaintiffs contend that Apple willfully infringed its patent. If you decided that Apple has infringed, you must go on and separately address the additional issue of whether or not Apple's infringement was willful.

The Plaintiffs must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that Apple willfully infringed.You may not determine that the infringement was willful just because Apple knew of the Asserted Patents and infringed them. However, you may find that Apple willfully infringed if you find that it acted

---

[69] Jury Instr., *Pabst Licensing GMBH & Co., KG, v. Samsung Elecs. Co.*, No. 6:18-cv-388-RWS (E.D. Tex. Nov. 6, 2018), ECF No. 291.

[70] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

---

PROPOSED JURY INSTRUCTIONS

egregiously, willfully, or wantonly.[71] You may find Apple's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of the Plaintiffs.[72]  A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position. Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial. Willfulness can be established by circumstantial evidence.[73]

Knowledge of the existence of a patent or patent family can be relevant to the question of willful infringement.[74]  For example, if Apple knew of the existence of a patent or subjectively believed that there was a high probability that a patent existed and took deliberate actions to avoid learning of the patent, you may take this into account when considering willfulness.  You may also take into account whether Apple had knowledge of a patent family.[75]][76]

---

[71] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[72] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[73] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[74] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[75] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[76] [**Apple Objection:**  For the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

## 24.   VALIDITY

I will now instruct you on the rules that you must follow in deciding whether or not Apple has proven by clear and convincing evidence that the asserted claims of the patent are invalid.

[Patent invalidity is a defense to patent infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.[77]]

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. In order to overcome this presumption, Apple must establish by clear and convincing evidence that the Plaintiffs' patent or any claim in the patent is not valid.[78][79]

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid.[80]

---

[77] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[78] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[79] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[80] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

## [DATE OF THE INVENTION[81]

Under the patent laws, the date of invention is generally the date that the patent application was filed.  This is also referred to as constructive reduction to practice.  Ordinarily, art dated before the application filing date is prior art to the patents claims.  There are, however, circumstances under which art dated before the application filing date is not prior art.  When the inventor was the first to conceive of the invention and exercised reasonable diligence in reducing the invention to practice, then art dated after the inventor's conception is not prior art.

There are two parts of making an invention.  The inventor has the idea of the invention.  This is referred to as conception of the invention.   A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and it can be made without the need for any further inventive effort.

The actual making of the invention is referred to as reduction to practice.  An invention is said to be reduced to practice when it is made and shown to work for its intended purpose.][82]

---

[81] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[82] [**Apple Objection:** Plaintiffs' instruction does not identify any factual issues to be decided that necessitate an instruction as to date of invention, and is thus unnecessary and likely to confuse the jury.]

**Plaintiffs' Response**: Plaintiffs believe a Date of Invention instruction is appropriate, given that the jury will need to determine the date of invention for purposes of its invalidity determination.  For example, Dr. Madisetti has said the '557 patent was conceived and reduced to practice by March 3, 2006.  March 3, 2006 was 17 days before the agreed-to effective filing date of March 20, 2006.

## [PRIORITY DATE OF ASSERTED PATENT REFERENCE[83]

If Apple alleges that a prior art patent is entitled to the priority date of an earlier-filed provisional application, Apple must show, by clear and convincing evidence, both that (1) at least one issued or pending claim is supported by written description of the priority application such that the relied on patent was entitled to the benefit of the alleged priority application; and (2) the disclosure relied on in the prior art patent or application is also disclosed in the alleged priority application. [84]][85]

## 25.     PERSON WITH ORDINARY SKILL IN THE ART[86],

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including:

1.      the levels of education and experience of the inventors and other persons working in the field;

2.      the types of problems encountered in the field;

3.      prior art solutions to those problems;

4.      rapidity with which innovations are made; and

5.      the sophistication of the technology.

---

[83] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[84] *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.* 800 F.3d 1375 (Fed. Cir. 2015)

[85] [**Apple Objection:** Plaintiffs' instruction overstates the application of *Dynamic Drinkware*, which is limited to provisional applications, and not any "earlier application" as Plaintiffs suggest.  Accordingly, this instruction is overbroad and lacks authority.]

[86] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## 26.    ANTICIPATION[87]

[In order for someone to be entitled to a patent, the invention must actually be "new."]

Apple contends in this case that the asserted claims of the '774 and '332 patents are invalid because the claimed inventions are anticipated.  [If an invention is not new, we say that it was anticipated by the prior art. An invention that is anticipated by the prior art is not entitled to patent protection.] Apple bears the burden of proving anticipation by clear and convincing evidence.  [Apple also bears the burden of proving that the art it asserts qualifies as prior art, including that it is entitled to the priority date that Apple alleges.  ]

[In patent law, a previous system, publication, or patent that predates the claimed invention is generally called "prior art."[88] To qualify as prior art, it must have been public before the date of the invention or more than one year before the effective filing date of the asserted patent.[89] You may not find that the prior art anticipates a patent claim by combining two or more items of prior art. In deciding whether or not a single item of prior art anticipates a patent claim, you should consider only what is expressly stated or present in the prior art and inherently present. Something is inherent in an item of prior art only if it necessarily results from the practice of the prior art and if a skilled person would recognize that to be the case. The prior art must clearly and unequivocally disclose the elements as arranged in the claim, without needing to pick, choose, and combine various disclosures from the prior art. You cannot combine

---

[87] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 4.3b-1.

[88] *Optis Wireless Tech. LLC v. Huawei Device (Shenzen) Co.*, Case No. Case 2:17-cv-00123-JRG Dkt. 284 (E.D. Tex. Aug. 24, 2018).

[89] 35 U.S.C. § 102.

separate embodiments disclosed in the prior art unless the prior art actually teaches or suggests combining those embodiments.][90]

Anticipation must be determined on a claim-by-claim basis.  Apple must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim[.  Not only must all] [, but all] of the requirements of the claim must have been disclosed [within the four corners of the reference, but the disclosures must also be] [and] arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently[—that is, necessarily implied—]such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.  [Inherent disclosure means that the missing element is necessarily present in the prior art.  Probability and possibility, no matter how high, is not sufficient for anticipation.  That is, even if there may be a 99% probability that an event may occur based on the disclosures of the reference, that is insufficient to show anticipation by inherency.][91]

Where Apple is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant

---

[90] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[91] [**Apple Objection:** Plaintiffs' proposed language is redundant, vague, and likely to confuse the jury.  Plaintiffs also fail to cite any authority for their references to "probability" (including "99% probability") and "possibility" as proper standards.]

[**Plaintiffs Response:** This instruction is not redundant of any previous instruction, nor is it vague.  To the contrary, it expressly explains inherent disclosure to the jury.  Further, this proposition is settled Federal Circuit law.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) ("Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.").

than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.   [Conversely, if an independent claim is anticipated, its dependent claims, which have more limitations, may not be anticipated.]

## 27.     OBVIOUSNESS[92]

Apple contends in this case that the asserted claims of the '154, '332, '284, '557, '774, and '833 patents are invalid as obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference, the invention [may still be invalid if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention][93] [may have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.]   Apple bears the burden of establishing obviousness by clear and convincing evidence.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building

---

[92] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[93] [**Apple Objection:**  Plaintiffs' proposal is vague and likely to confuse the jury.]
**Plaintiffs' Response**:  This is the direct language of 35 U.S.C 103.  Apple's proposed language leaves out a critical part of the 103 analysis, which is both the invention and the prior art need to be analyzed as a whole.

blocks of prior art.[94]  [A patent may combine old elements in a new way.  However, if Apple cannot establish that all elements are disclosed in prior art, then Apple fails in its burden of proof.[95]  Where a limitation is missing from the asserted combination of references, Apple may not resort to common sense, institution, or bare assertion of obviousness to establish that reference.[96]  Only when Apple has managed to show that each and every element of the claim was disclosed in prior art do you need to go to the next step of determining whether there is a reason for a person of ordinary skill in the art to modify or combine the various references in the manner suggested by Apple.][97]

In determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art [as a whole], the differences between the prior art and the claimed invention and the level of ordinary skill in the art. In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be aware of all pertinent prior art. The skill of the actual inventor is irrelevant, because inventors may possess something that distinguishes them from persons of ordinary skill in the art.[98]

---

[94] 35 U.S.C. § 103; Trial Tr., *Whirlpool Corp v. TST Water, LLC,* No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); ECF No. 166; Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co,*, No. 2:16-cv-1314-JRG-RSP  (E.D. Tex. June 15, 2018), ECF No. 498.

[95] *Par Pharma. V. Twi Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014).

[96] *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016).

[97] [**Apple Objection:** Plaintiffs' proposed language is improperly argumentative, prejudicial to Apple, likely to confuse the jury, and redundant with respect to other portions of the instruction to which Plaintiffs do not object.]
**Plaintiffs' Response:** The "all elements" rule is a critical part of the obviousness analysis and needs to be addressed in the jury instructions.

[98] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498.

In considering whether a claimed invention is obvious, you should consider whether, as of the [effective filing date] [priority date] of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account facts such as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, although obvious to try is not sufficient in unpredictable technologies;

6. whether the change resulted more from design incentives or other market forces.

[A claim is not deemed obvious if the modification proposed by Apple would alter the principle of operation of the primary reference or eliminate a key function of a reference.[99]   A claim is also not obvious if a person of ordinary skill in the art, at the time of the invention, had failed to recognize the problem or the cause of the problem that prompted the solution in the invention. A claim is also not obvious if the combination would not have yielded a reasonable expectation of success to a person of ordinary skill in the art.[100]][101]

---

[99] *Plas-Pak Industries, Inc. v. Sulzer Mixpac AG*, 600 F. App'x 755, 759 (Fed. Cir. 2015)

[100] *Procter & Gamble Co. v. Teva Pharm. USA, Inc.,* 566 F.3d 989 (Fed. Cir. 2009).

PROPOSED JURY INSTRUCTIONS

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention. In determining whether the claimed invention was obvious, do not use hindsight. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the patent-in-suit [as a whole].[102]

In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on [non-obviousness] [the obviousness or non-obviousness of the claimed invention]. These include:

1. whether the invention was commercially successful;

2. whether the invention satisfied a long-felt need in the art;

3. whether others copied the invention;

4. whether the invention achieved unexpected results;

5. whether others in the field praised the invention; and

6. whether the invention departed from other principles or accepted wisdom of the art.

[These objective indicia can show that the invention is not obvious, although they are not requirements for patentability.[103]   For example, commercial success may evidence non-obviousness.   However, there must be a nexus between the patented features of the invention

---

[101] [**Apple Objection:** Plaintiffs' proposed language is improperly argumentative and prejudicial to Apple.  Further, Plaintiffs' repeated use of double-negatives is likely to confuse the jury.]

**Plaintiffs' Response:** The law is often formulated in this manner—a claim is "not obvious" if X did not occur.  There is no basis for Apple's "double negative" basis.  Nor does Apple identify how this instruction is argumentative or prejudicial, as opposed to a proper recitation of the law.

[102] Trial Tr., *Whirlpool Corp. v. TST Water, LLC,* Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[103] *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 960 (Fed. Cir. 1986).

and the commercial success of the device.[104] While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.][105]

[In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.]

## 28.    WRITTEN DESCRIPTION[106]

Patent law contains certain requirements for the part of the patent called the specification. Apple contends that claims 1, 14, and 27 of the '284 patent are invalid because the specification of the '284 patent does not contain an adequate written description of the claimed invention.  To succeed, Apple must show by clear and convincing evidence that a person of ordinary skill in the art reading the '284 specification would not have recognized that [the inventors were in possession of the inventions as they are] [it describes the full scope of the invention as it is] finally claimed in claims 1, 14, and 27 of the '284 patent.  If those patent claims lack adequate written description, they are invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date.  The specification must describe [the invention in sufficient detail to convey to those skilled in the art that the inventors had possession

---

[104] *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[105] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.,* No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[106] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 4.2a.

of the claimed subject matter as of the effective filing date.  Written description is about whether a skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described; it is not about whether the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue that I will address shortly.[107]   In determining sufficiency of written description, you should bear in mind that a specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes.][108].

[the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.]

## 29.    ENABLEMENT[109]

The patent law contains certain requirements for the part of the patent called the specification.  Apple contends that claims 1, 6, 7, and 10 the '332 patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention.  To succeed, Apple must show by clear and convincing evidence that the '332 patent does not contain a sufficiently full and clear description of the claimed invention.  To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the

---

[107] *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1366 (Fed. Cir. 2019).

[108] *Id.*

[109] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 4.2b (modified).

patent to make and use the full scope of the claimed invention at the time the patent application was filed.  This is known as the "enablement" requirement.  If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the art of the patent to make and use the full scope of the claimed invention at the time of filing without having to conduct undue experimentation.  The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1.     the time and cost of any necessary experimentation;

2.     how routine any necessary experimentation is in the field of technology of the patent;

3.     whether the patent discloses specific working examples of the claimed invention;

4.     the amount of guidance presented in the patent;

5.     the nature and predictability of the field of technology of the patent;

6.     the level of ordinary skill in the field of technology of the patent; and

7.     the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the application, a person having

ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

[A claim does not fail for full-scope enablement even if it requires a considerable amount of experimentation, if such experimentation is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed.  The presence of inoperative embodiments within the scope of a claim does not necessarily render a claim non-enabled. The standard is whether a skilled person could determine which embodiments that were conceived, but not yet made, would be inoperative or operative without undue experimentation.][110][111]

---

[110] *In re Angstadt,* 537 F.2d 498, 502-503, 190 USPQ 214, 218 (CCPA 1976).

[111] [**Apple Objection:** Plaintiffs' proposed language is duplicative of other language in the instruction to which Plaintiffs do not object, and is thus likely to confuse the jury.] **Plaintiffs' Response**: This is not duplicative of any other language in the instructions.

## 30.    DAMAGES [INTRODUCTION][112]

If you find that Apple has infringed any [of the asserted claims] [valid claim of the asserted patents], you must then consider the proper amount of damages, if any, to award to the Plaintiffs. I will now instruct you about the measure of damages. However, by instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Apple has not infringed any of the asserted claims, then the Plaintiffs are not entitled to any damages.

If you award damages, they must be adequate to compensate the Plaintiffs for any infringement of the asserted claims you may find. You must not award the Plaintiffs more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing Apple [or setting an example]. [The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty].

Plaintiffs have the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that the Plaintiffs establish that it more likely than not suffered [as a result of Apple's infringement of the asserted claims]. While the Plaintiffs are not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. The Plaintiffs are not entitled to damages that are remote or speculative.

[In this case, Plaintiffs seek what Plaintiffs contend is a reasonable royalty.]    A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to

---

[112]   *United Services Automobile Association v. Apple Bank, N.A.,* No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

when the infringement first began, [for any patents you have found valid and infringed.]    A reasonable royalty must reflect that Plaintiffs committed to license the asserted patents on fair, reasonable and non-discriminatory ("FRAND") terms.][113]

The law requires that any damages awarded to the Plaintiffs correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Apple's size or market position. This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology.

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. You may also consider:

1. [The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.][114]

---

[113] Plaintiffs object to the inclusion of FRAND terms at this point in the instructions.  The jury should hear the law on calculating patent damages before being introduced to the FRAND obligation. **[Apple Response:**  Plaintiffs allege that Apple infringes claimed-essential patents, to which Plaintiffs have an obligation to license on FRAND terms.  The jury will have heard the parties' arguments regarding Plaintiffs' FRAND obligations by the time these instructions are given.  Accordingly, Apple's proposed language is proper.  It is unclear to Apple why Plaintiffs object to referencing their FRAND obligations "at this point."]

[114] Plaintiffs object to the inclusion of all Georgia-Pacific factors, and believe that only factors 2, 6, 7, 9-15 reflect the evidence that will be presented to the jury.  Plaintiffs further object to the modification of the Georgia-Pacific factors as presented by Apple, which Apple have made out of whole cloth.  Instead, Plaintiffs suggest the Court uses the formulation of relevant factors it presented in *Optis v. Huawei.*  **[Apple Response:**  Any Georgia-Pacific factors that are given to the jury should be modified to reflect Plaintiffs' FRAND commitment.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230–31 (Fed. Cir. 2014).]

2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.  [The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

5.  The duration of the patent and the term of the license.

6.  [The extent to which the infringer has made use of the invention and any evidence probative of the value of that use] [The utility and advantages of the patent alternatives that could have been used instead of the technology alleged to infringe in the period before the standard was adopted].

7.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

8.  [The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. ]

9.  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

10. The opinion testimony of qualified experts.

11. The amount that a licensor (such as the Plaintiffs) and a licensee (such as Apple) would have agreed upon at the time the infringement began if both [were considering the FRAND commitment and its purposes, and] had been reasonably and voluntarily trying to reach an agreement; [that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.]

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.

The royalty rate must be based on the incremental value that the patented technology adds to the product, not any value added by the standardization of the technology.[115]

[You may also consider any other factors which in your minds would have increased or decreased the royalty Apple would have been willing to pay and that the patent owner, The Plaintiffs, would have been willing to accept, with both acting as normally prudent business people.

A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Apple through its

---

[115] [**Apple Objection:** Plaintiffs' excerpting of this language from *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) is misleading and likely to confuse the jury because it fails to capture the special apportionment principles stated in *Ericsson*.]
**Plaintiffs' Response**: The Federal Court in *Ericsson* stated that the purpose of apportionment is to "ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology." 773 F.3d at 1232.  It is settled law that this is the goal the jury must seek to achieve.

infringement of the asserted patents, including evidence of cost savings that Apple achieved through the use of the asserted patents as well as evidence of additional profits and other benefits.[116] A reasonable royalty can exceed the profits expected by the patentee.]

As I have already told you, you must not award the Plaintiffs any additional amount for the purpose of punishing Apple or setting an example. You must not consider the Plaintiffs' allegations of willfulness in considering damages. Consideration of willfulness is entirely separate from the question of damages. You may not increase damages because you find willfulness or decrease damages because you did not find willfulness. I will take your decision regarding the issue of willfulness into account later.

## CONDUCT OF APPLE DURING NEGOTIATION[117]

At the beginning of this trial, you were told that Plaintiffs seek a judgment that Apple has acted in bad faith or held out during the parties pre-suit negotiations.  Plaintiffs have the burden of providing that Apple committed at least one act of bad faith by a preponderance of evidence.

As a result, your job in this case is simply to decide whether Apple committed at least one act of bad faith during pre-suit negotiations.  Now, before you decide these issues, you'll need to understand the terms of the contract at issue in this case.  A contract is a legally enforceable promise or set of promises. When two individuals or entities enter into a contract that is intended to benefit a third party, the third party has standing to enforce the terms of the contract in the event that it is breached.

---

[116] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[117] *HTC Corp. and HTC America, Inc. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-243-JRG (E.D. Tex. Feb. 15, 2019)

PROPOSED JURY INSTRUCTIONS

The patents in suit have been declared to be essential to the cellular standards of the European Telecommunications Standards Institute.  Panasonic, Samsung, and LG, Plaintiffs' predecessors-in-interest with respect to the asserted patents, submitted written commitments to ETSI covering the asserted patents, in which they agreed to be prepared to grant irrevocable licenses on fair, reasonable, and non-discriminatory, or FRAND, terms and conditions.

Now, although Apple is not a party to Plaintiffs' contract with ETSI, Apple may be understood as a third-party beneficiary to Plaintiffs' FRAND commitment to ETSI.  Under French law, which defines Apple's contractual obligations under Plaintiffs' FRAND commitment, Apple was required to negotiate in good faith with Plaintiffs to obtain the benefit of this FRAND commitment.

Under French law, which as I mentioned earlier defines the parties' obligations, you may consider various types of evidence to determine good faith and bad faith.  For example, unreasonably delaying negotiations, voluntarily maintaining the other party in prolonged uncertainty, continuing to negotiate when the party has no intention of voluntarily entering into a contract, and making affirmative misrepresentations during negotiations are examples of bad faith.  If you find that Apple engage in an act of bad faith during pre-suit negotiations, you need not consider the consequences of the FRAND commitment made by LG, Panasonic and Samsung.

If you conclude that Apple did not act in bad faith, you should also make must make sure that any reasonable royalty determination takes into account that a reasonable royalty in this case

for the asserted patents patents cannot exceed the amount permitted under Plaintiffs' FRAND obligations.[118] ][119]

## [DAMAGES -- FRAND REASONABLE ROYALTY][120],[121]

[Plaintiffs have agreed that they are under an obligation to license the asserted patents on fair, reasonable, and non-discriminatory or FRAND license terms, and so you must ensure that any reasonable royalty determination you make cannot exceed the amount permitted under Plaintiffs' FRAND obligations.  I will provide you with additional instructions on how the

---

[118] *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).

[119] [**Apple Objection:** Plaintiffs' instruction regarding alleged "Conduct of Apple During Negotiation" is improperly argumentative, prejudicial to Apple, and does not correspond to any factual issue to be decided by the jury.  Plaintiffs have not plead breach of contract or that Apple has committed any other tortfeasance.  Nor does the Court have subject matter jurisdiction over Plaintiffs' Count VII.  *See* Dkt. 169, 258.  Moreover, to the extent the Court wishes to address such issues, they belong in the bench portion of the trial.  Plaintiffs' instruction also contains irrelevant detail regarding ETSI and the previous patent owners that is likely to confuse the jury.]

**Plaintiffs' Response**: Count VIII seeks a declaration that Apple has no ongoing right to raise a FRAND defense in the U.S., based on Apple's bad faith during negotiations.  This is a fact question for the jury.  *See* Dkt 244 at 14-15; *see also* "Plaintiffs' Position on Issues To Be Tried To the Jury" in the parties' Joint Pretrial Order, filed concurrently herewith.

[120] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at §§ 5.6 (modified); 5.11 (modified); Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[121] Plaintiffs object to the inclusion of a FRAND royalty section in the instructions as unnecessary and confusing for the jury.  Should the Court choose to include such an instruction, however, Plaintiffs believe this Court should use the instructions from the more recent *Optis v. Huawei* case. [**Apple Response:**  Plaintiffs' concerns that a specific FRAND royalty instruction will confuse the jury is unfounded because the jury will have heard the parties' arguments regarding Plaintiffs' FRAND obligations by the time this instruction is given.  Apple's proposed instruction is necessary given Plaintiffs' FRAND obligations.]

FRAND commitment for the asserted patents affects your determination of any reasonable royalty.[122]

If you find infringement, then in determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the alleged infringement began.  In particular, because Plaintiffs have agreed that they are under an obligation to license the patents-in-suit on FRAND terms, you must take into account how this FRAND commitment would have affected the hypothetical negotiation in determining a reasonable royalty.  Parties would examine the reasonableness of a royalty under the FRAND commitment based on the value of the patented technology alone—including in light of technical alternatives—not any value associated with the standard.  For example, there may have been alternatives to the patented technology available before the standard was set, but if the technology is incorporated in the standard and the standard is widely adopted by the industry, switching to those alternatives may no longer be viable or would be too expensive.  In that circumstance, FRAND patent holders cannot demand more simply because their patented technology was standardized.  FRAND commitments are designed to prevent hold-up, which refers to an attempt to use the alleged standardization of a patent to capture value beyond the inherent value of the patent-in-suit.

Similarly, parties attempting to reach an agreement consistent with FRAND obligations would take into account the overall amount of royalties that a party would need to pay all holders of patents relevant to a standard, often referred to as a "royalty stack," when assessing the reasonableness of the patent holder's requested royalty rate. "Royalty stacking" can arise when a standard implicates multiple patents, perhaps hundreds or thousands, which would cause a

---

[122] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.1 (modified); Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

company that is forced to pay royalties for all such standard patents to pay royalties that "stack" on top of each other and may become excessive.  In determining what amount is a FRAND royalty, you may consider any evidence of royalty stacking.  A reasonable royalty in this case cannot exceed the amounts permitted under Plaintiffs' FRAND obligations.

A FRAND commitment also requires non-discrimination by the patent holder.  That is, the patent holder must treat parties in a similar way, in terms of the royalties the patent holder seeks and how it conducts the license negotiations.]

### DATE OF COMMENCEMENT OF DAMAGES[123]

[In calculating damages, you must determine when the damages began.  With regard to the '154, '332, '284, '557, and '833 patents, you may only award damages to Plaintiffs for infringement that occurred after the date Plaintiffs gave actual notice to Apple that Plaintiffs believed Apple was infringing the patents-in-suit.  It will be up to you to determine when such notice occurred.  With regard to the '774 patent, Plaintiffs can recover damages for Apple's infringement dating back to the issuance of the patent on April 7, 2015, and do not need to establish that they gave Apple actual notice.]

[If you find infringement, then in determining the amount of damages, you must determine when the damages began.  Damages commence on the date that Apple has both infringed and been notified of the alleged infringement of any of the patents-in-suit you have found valid and infringed.

If you find that the any of the patents are valid and infringed, then you must determine whether those patents have been licensed to a licensee that sells a product that includes the claimed invention, and, if so, whether the licensee has "marked" that product with the patent

---

[123] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 5.10.

number.  "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all the products that include the patented invention.

Plaintiffs have the burden of establishing that they substantially complied with the marking requirement.  This means that Plaintiffs must show that they made reasonable efforts to ensure that any licensee(s) that made, offered for sale, or sold products under the asserted patents also marked the products.

If you find that one or more licensees to any patents you have found to be valid and infringed have not marked relevant product with the patent numbers, you must determine the date that Apple received actual notice of the asserted patents and the specific product alleged to infringe.  Actual notice means that Plaintiffs communicated to Apple a specific charge of infringement of the asserted patents by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period for the patents listed in the complaint begins no later than the date the complaint was served.  Plaintiffs served their complaint in this case on March 1, 2019.

In addition to these marking or actual notice requirements, for the method claims at issue in this case, any damages would be limited to any instances where all steps of the method have been performed in the United States by Apple or a person acting under Apple's direction or control.][124]

---

[124] Plaintiffs object to Defendant's proposed instruction on the grounds that it is confusing because Plaintiffs are relying on actual notice to establish compliance with § 287.  As a result, it would be confusing to the jury to hear an instruction concerning constructive notice.

## 1.      [APPORTIONMENT[125][126]

When dealing with patents claimed to be standard essential, there are two special apportionment issues that arise.

First, the patented feature must be apportioned from all the unpatented features reflected in the standard.

Second, the patent owners' royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.  These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology. This is particularly true for patents claimed to be standard essential.  When a technology is incorporated into a standard, it is typically chosen from among different options.  Once incorporated and widely adopted, that technology is not always used because it is the best or the only option; it is used because its use is necessary to comply with the standard.

In other words, widespread adoption of a standard essential technology is not entirely indicative of the added usefulness of the innovation over the prior art.  To ensure that a FRAND royalty rate reflects the incremental value of the patented technology, you must consider the following two factors in setting a FRAND royalty rate: (1) any royalty for the patented technology must be apportioned from the value of the standard as a whole; and (2) the FRAND royalty rate must be based on the value of the invention, not any value added by the standardization of that invention. In the case of multicomponent products like smartphones and

---

[125] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at §§ 5.11 (modified), 5.12 (modified); Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[126] Plaintiffs object to this request as duplicative of the FRAND instructions and thus placing unnecessary focus on the fact that the patents are standards essential.

tablet computers where demand for the entire product is not attributable to the patented feature, you may not base the royalty on the price or revenue of the entire product; but instead must use a more realistic starting point for the royalty calculation, often the smallest salable unit, and at times, even less.

You may also need to further apportion the smallest salable patent-practicing unit to isolate the portion of the realizable profits that is attributable to the asserted patents, as distinguished from elements in the smallest salable patent-practicing unit that are not attributable to the asserted patents in this case.]

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.]

## 35. DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. [You have heard all of the evidence in this case. You have now heard the argument of counsel. The Court has now given you the charge in this case. In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.]

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.   Again, I remind you, your answers and your verdict in this case must be unanimous.

[You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

A patent owner is entitled to protect its patent rights under the U.S. Constitution. This includes bringing a suit in a United States District Court for money damages for infringement.

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.]

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you.   If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you

should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally.  I will always first disclose to the attorneys in the case your question and my response before I answer your question.

[After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.]

[After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this

---

case.   By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.]

Dated: July 17, 2020

Respectfully submitted,

*/s/ Samuel Baxter*

Jason Sheasby (pro hac vice)
jsheasby@irell.com
Hong Zhong, PhD
hzhong@irell.com
IRELL & MANELLA LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064
Phone: (310) 203-7096; Fax: (310) 203-7199

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
McKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Phone: (903) 923-9000; Fax: (903) 923-9099

Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
McKOOL SMITH, P.C.
300 W. 6th Street Suite 1700
Austin, TX 78701
Phone: (512) 692-8700; Fax: (512) 692-8744

M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Phone: (214) 954-4135; Fax: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS OPTIS
WIRELESS TECHNOLOGY, LLC, OPTIS
CELLULAR TECHNOLOGY, LLC, AND
PANOPTIS PATENT MANAGEMENT,
LLC**

*/s/ Mark D. Selwyn*
Mark D. Selwyn (pro hac vice)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Mindy Sooter (pro hac vice)
mindy.sooter@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133
Joseph J. Mueller (pro hac vice)
Timothy D. Syrett (pro hac vice)
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Brittany Blueitt Amadi (pro hac vice)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Attorneys for Defendant Apple Inc.**

PROPOSED JURY INSTRUCTIONS

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served via electronic mail on all counsel of record on July 17, 2020.

/s/ Samuel F. Baxter
Samuel F. Baxter