IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC,<br><br>                         Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br><br>                         Defendant. | Civil Action No. 2:19-cv-00066-JRG<br><br>**JURY TRIAL DEMANDED** |

## APPLE INC.'S REPLY IN SUPPORT OF MOTION TO CONTINUE TRIAL

Plaintiffs' Response (Dkt. 352) fails to counter the evidence that holding a trial on August 3 would present significant public health and safety risks, and Plaintiffs cannot show they would suffer any true prejudice from the requested continuance.

*First*, Plaintiffs offer no real challenge to Dr. Haley's conclusions, and no contrary opinion from any medical professional—no doubt because Plaintiffs were unable to locate any infectious disease expert who would contradict Dr. Haley. Instead, Plaintiffs throw mud. For example, Plaintiffs falsely suggest that Dr. Haley's opinions are not his own because his declaration "appears to be in large part cut and pasted" from a brief filed by Apple in the *VirnetX* case. Resp. at 11. Not surprisingly, the reverse is true: Apple's *VirnetX* brief drew language from Dr. Haley's expert declaration. Dr. Haley's declaration presents his own opinions—as

1

Plaintiffs could have confirmed, if they had accepted Apple's offer to depose him.[1]  (If the Court deems it helpful to hear from Dr. Haley, Apple could try to arrange remote video testimony to the Court.)  Plaintiffs also misquote Dr. Haley's public statements to the Rotary Club of Longview to imply that he believes masks are not necessary in "every part of the state."  Resp. at 1.  The full exchange quoted in the cited article is as follows: [2]

> Haley was asked during the meeting by a Rotarian that if the virus is so bad, why doesn't he know anyone in Gregg County who has it? "I would argue that's only a matter of time. The other thing is, remember, only 50 percent of those who get it show symptoms. It's coming in or it will eventually," Haley said. "But Longview may be a place you don't have to (wear masks) at this time, but you should be ready. This is your only rifle to defend yourself from it.  I don't think every part of the state needs to (wear masks)," Haley continued. "There are smaller towns and places where people live far apart and don't get together often. That's why there is so much opposition to masks. Local health departments should be making the diagnosis and when you see your city or town is having a problem, you need to (have people wear masks) quick to try to stop it. It should be in every city and municipality. But the state needs to implement a statewide policy." He said wearing masks "is the key to restoring our economy sooner" and said people should own several cloth masks they can wash.

Plaintiffs also attack Apple's motion as a "delay tactic" and "a concerted litigation tactic," but never explain how these supposed "tactics" would advantage Apple.  Resp. at 2; 10.  Plaintiffs' smears are undermined by the extensive evidence Apple provided in its motion that

---

[1] At 10:53pm CT on Thursday night, Plaintiffs' counsel, Jason Sheasby, requested to depose Dr. Haley the next day.  The next morning, despite the last-minute request and Dr. Haley's extraordinarily busy schedule working to address the pandemic, Apple arranged to make Dr. Haley available for a thirty-minute deposition.  But when Apple offered a time on Friday, Mr. Sheasby stated he was too busy with another deposition to actually take Dr. Haley's deposition. *See* Ex., 1 (July 17, 2020 Email from Mr. Sheasby to Ms. Sewall).

[2] John Anderson, *Epidemiologist urges masks, vitamins to fight COVID-19*, Longview News Journal, June 24, 2020, https://www.news-journal.com/news/coronavirus/epidemiologist-urges-masks-vitaminsto-fight-covid-19/article_45968458-b582-11ea-8786-6b85fa71e52e.html/.

show an August 3 trial presents serious public health and safety risks.³  Plaintiffs have offered no substantive challenge to the scientific conclusions—trial on August 3 will likely lead to the spread of COVID-19 among the participants, the local communities in the Marshall Division, and the distant communities to which the participants will return after trial.

*Second*, cases continue to rise in Harrison County and the surrounding areas.  In the brief time since the filing of Apple's motion on July 14, the number of new cases and active cases continue to grow exponentially in Harrison County, with a record of 29 new cases and 156 active cases on July 16.⁴  In fact, just the last 6 days of this 114-day pandemic account for almost 20% of the total cases in Harrison County.⁵  Over the same time period, there were 126 new cases reported in the five other counties that make up the Marshall Division.⁶  Harrison County is now considered a "Red Zone" county according to new White House criteria, meaning the county has one of the highest concentrations of new COVID-19 cases in the United States over the last week.⁷

---

³ Plaintiffs fault Apple for supposedly not modelling "how many asymptomatic cases could be present in the courtroom."  That is *precisely* what the cited Georgia Tech analysis (not addressed by Plaintiffs) does.  *See* https://biosciences.gatech.edu/news/georgia-tech-researchers-release-county-level-calculator-estimate-risk-covid-19-exposure-us ("The dashboard accounts for widespread gaps in U.S. testing for the Coronavirus, which can silently spread through individuals who display mild or no symptoms of illness.").  Georgia Tech reports the chances today of one or more people having COVID in a gathering of 100 in Harrison County as **92%**.
⁴ Texas COVID-19 Data, Texas Health and Human Services, https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited on July 18, 2020).
⁵ *Id.* (first positive case reported in Harrison County March 27, 2020; 96 new cases July 12 to 17, of 497 total).
⁶ *Id.*
⁷ A "Red Zone" county is defined by the White House as a place where there have been >100 diagnosed cases per 100,000 people in a week.  Harrison County has experienced nearly 100 new cases in the last week among a population of less than 68,000.  *See* Liz Essley Whyte, *Exclusive: White House Document Shows 18 States in Coronavirus "Red Zone*," Center for Public Integrity, July 17, 2020, https://publicintegrity.org/health/coronavirus-and-inequality/exclusive-white-house-document-shows-18-states-in-coronavirus-red-zone-covid-19/.

*Third*, Plaintiffs' assertion that the situation could grow worse in two months is not evidence that it is safe to hold a trial today. Contrary to Plaintiffs' conclusion, the fact that current projections estimate **80,000 more deaths** in the next **sixty days** underscores just how serious this pandemic is *now*. The "second wave" model Plaintiffs allude to is based on increased travel and "larger gatherings in some states due to lifting of social distancing restrictions."[8] Health experts, including Dr. Haley, universally agree that if "spreader" type events continue to occur—like the gathering of large groups of people from around the country in an enclosed space as needed for this trial—the number of infections and deaths will only worsen.[9] *See* Declaration of Robert Haley, Dkt. 341-1 ¶ 16.

Plaintiffs' claim that the Motion is a "*de facto* request for an indefinite stay" also ignores the actual experiences of nearly every community around the world. Resp. at 4. Places once severely impacted at the beginning of the pandemic, such as New York City and Boston, have significantly reduced infections and begun to reopen a few months after taking decisive mitigation efforts.[10] Continuing trial will also allow the Court and the parties to potentially avail

---

[8] Notably, Plaintiffs' **national** model that predicts a "second wave" of cases nationally tells us very little about the **local** risk of COVID-19 in Marshall in October. Press Release, *IHME models show second wave of COVID-19 beginning September 15 in US*, June 11, 2020, http://www.healthdata.org/news-release/ihme-models-show-second-wave-covid-19-beginning-september-15-us/.

[9] Thomas R. Frieden and Christopher T. Lee, *Identifying and Interrupting Superspreading Events—Implications for Control of Severe Acute Respiratory Syndrome Coronavirus 2*, 26 Emerging Infection Diseases 6, June 2020 https://wwwnc.cdc.gov/eid/article/26/6/20-0495_article; Christie Aschwanden, *How 'Superspreading' Events Drive Most COVID-19 Spread*, Scientific American, June 23, 2020, https://www.scientificamerican.com/article/how-superspreading-events-drive-most-covid-19-spread1/.

[10] *See* Victoria Albert, *New York City cleared to enter Phase 4 of reopening, Cuomo says*, CBS News, July 17, 2020, https://www.cbsnews.com/news/new-york-city-cleared-to-enter-phase-4-of-coronavirus-reopening/; Nik DeCosta-Klipa, *Phase 3 of the Massachusetts reopening plan will begin Monday. Here's what that means*, Boston.com, July 6, 2020, https://www.boston.com/news/coronavirus/2020/07/02/massachusetts-reopening-plan-phase-3/.

themselves of rapid medical advancements occurring almost daily.  Multiple therapies and better testing methods are in development.   For example, there have been recent releases of self-collected, non-invasive saliva tests that can be processed in thirty minutes rather than the on-site, invasive swab tests that takes hours or days to process.[11]

*Fourth*, contrary to Plaintiff's assertion that proposed safeguards will be sufficient to eliminate the risk, experts and officials—including the U.S. Department of Health and Human Services—have repeatedly warned that asymptomatic transmission account for "most" of the spread of the virus, and new information indicates that the virus is transmitted by aerosol.  Haley Decl. Dkt. 341-1 ¶¶ 15, 20.  Local officials are likewise highlighting the risk of community spread.[12]  It is therefore not surprising that Plaintiffs could not offer any declaration or scientific support for their position that this trial—including the significant trial teams, witnesses, courthouse staff—under these circumstances, is unlikely to spread the disease or pose significant risk to the participants or the community.  Trial requires the congregation of large groups in enclosed spaces—precisely the circumstances that health experts have warned should be avoided.  Haley Decl. Dkt. 341-1 ¶ 23.

*Finally,* unable to advance any science-based reason to proceed, Plaintiffs rely on the strange view that jurors will somehow feel deprived of their "right to sit" as a juror if they are

---

[11] *See, e.g.,* Amanda Heidt, *Saliva Tests: How They Work and What They Bring to COVID-19*, The Scientist, July 9, 2020, https://www.the-scientist.com/news-opinion/saliva-tests-how-they-work-and-what-they-bring-to-covid-19-67720/.

[12] *See Three new COVID cases reported Saturday*, Marshall News Messenger, July 18, 2020, https://www.marshallnewsmessenger.com/news/three-new-covid-cases-reported-saturday/article_6bdc8f08-c947-11ea-b0f9-2747e1894641.html ("Much of what we are seeing now is community spread. Please avoid crowds and close social gatherings especially indoors," quoting Harrison County Judge Chad Sims).

not allowed to attend a five-day trial with 50 or more strangers during a surging pandemic. Resp. at 2.  Plaintiffs make an equally strange suggestion that the opportunity to sit in judgment in a patent case—involving purely monetary remedies—during a pandemic is tantamount to the opportunity to vote in an election.  *Id.*  To be sure, the jury system is a critical pillar of our civic society.  But the majority of the potential venire would surely prefer to serve as jurors during a time when a patent trial would not create an undue risk of infection.

DATED:  July 19, 2020              Respectfully submitted,


By: */s/ Melissa R. Smith*
Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100


Joseph Mueller (*pro hac vice*)
joseph.mueller@wilmerhale.com
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000


Mindy Sooter (*pro hac vice*)
mindy.sooter@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202

Telephone:  (720) 274-3135
Facsimile:  (720) 274-3133


Brittany Blueitt Amadi (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363


Melissa R. Smith State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257


*Attorneys for Defendant Apple Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 19, 2020 a true and correct copy of the above and foregoing document has been served by electronic mail upon all counsel of record.

                                              */s/ Melissa R. Smith*
                                              Melissa R. Smith