**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

OPTIS WIRELESS TECHNOLOGY, LLC,
OPTIS CELLULAR TECHNOLOGY, LLC,
UNWIRED PLANET, LLC, UNWIRED
PLANET INTERNATIONAL LIMITED,
AND PANOPTIS PATENT
MANAGEMENT, LLC.,

           Plaintiffs,

    v.

APPLE INC.,

           Defendant.

Case No. 2:19-CV-0066-JRG

**JURY TRIAL REQUESTED**

**PROPOSED JURY INSTRUCTIONS AT THE CLOSE OF EVIDENCE[1]**

---

[1] Submissions that are agreed to by both Plaintiffs and Apple are not highlighted.

    Submissions proposed by Plaintiffs that are not agreed to by Apple are bracketed and highlighted in green.  Submissions proposed by Apple that are not agreed to by Plaintiffs are bracketed and highlighted in yellow.  The parties have entered their objections, explanations, citations, and commentary in footnotes only.

    The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

# 1.    INTRODUCTION[2]

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

Ladies and Gentlemen, as I've said previously, you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You're about to hear closing arguments from the attorneys.  Statements and arguments of the attorneys are not evidence, and they are not instructions on the law.  They're intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

---

[2] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

## 2.    CONSIDERING WITNESS TESTIMONY

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them.  [In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.]  You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case.

As I've told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question.  If, on the other hand, the objection was overruled, then you're to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room. This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

### 3.      HOW TO EXAMINE THE EVIDENCE[3]

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.  Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony.  Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case.  However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular mobile devices.

Now, unless I instruct you otherwise, the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if, after considering all of the other evidence, you believe that single witness.

---

[3] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at §§ 2.3; 2.8; 2.13; 3.3; 3.4 (all modified).

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties have stipulated or agreed to some facts in the case.  When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness.  Demonstrative exhibits are not evidence.  They are a party's picture or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.  The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

## 4.        EXPERT WITNESSES[4]

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury.  However, you're not required to accept that opinion. As with any other witness, it is solely up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether  to

---

[4] Fifth Circuit Manual of Model Civil Jury Instructions (Oct. 2016) at § 3.5 (modified).

rely upon it.  [In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.][5]

## 5.    BURDENS OF PROOF[6]

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof.  The burden of proof in this case is on the Plaintiffs for some issues, and it is on Apple for other issues.  There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.

The Plaintiffs have the burden of proving patent infringement by a preponderance of the evidence. The Plaintiffs also have the burden of proving willful patent infringement by a preponderance of the evidence.  The Plaintiffs also have the burden of proving damages for any [alleged] patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Apple has the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable. Although proof to an

---

[5] This is the second place in the proposed instructions that Apple proposes to refer to bias of witnesses. Plaintiffs object to the introduction of bias in instructions, as it puts an undue focus on alleged bias and may suggest expert witnesses are biased. Moreover, if any instruction on bias is given it should not be repeated a second time here.  [**Apple Response:** An instruction as to the bias of expert witnesses is not improper, and is an instruction this Court has given in other cases. *See, e.g.*, Jury Charge, *EON Corp. IP Holdings, LLC v. Silver Spring Networks, Inc.*, No. 6:11-CV-317-JDL, Dkt. No. 620 (E.D. Tex. June 10, 2014), Instruction No. 7 ["Expert Witnesses"]. Moreover, Plaintiffs' concern that this instruction will create a presumption of bias is unfounded because this instruction will be given after the close of evidence and after the parties' experts have testified.]

[6] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at §§ 3.1; 4.1.

---

absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.[7]

These standards are different from what you may have learned about in criminal proceedings where a fact is proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between those two standards.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

## 6.    CONTENTIONS OF THE PARTIES[8]

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this case concerns five United States Patents, those being U.S. Patent Nos. 8,019,332; 8,385,284; 8,411,557; 9,001,774; and 8,102,833, which you've

---

[7] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018). ECF No 498.

[8] Trial Tr., *Whirlpool Corp. v. TST Water LLC,* No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017).  ECF No. 166.; Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

consistently heard referred to throughout the trial as the '332, '284, '557, '774, and '833 patents. I will refer to them as the patents-in-suit.  I may also refer to them as the asserted patents.

Plaintiffs [seek] [contend they are entitled to] money damages from Apple for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States [the smartphones, tablets, smartwatches that operate over the "LTE" cellular standard.  Sometimes in these instructions I will refer to these as the accused products.  The Plaintiffs contend that the accused products infringe the following claims:

> '332 Patent claims 6, 7;
> '284 Patent claims 1, 14, 27;
> '557 Patent claims 1, 10;
> '774 Patent claim 6; and
> '833 Patent claim 8.

These claims are sometimes referred to as the asserted claims.  The Plaintiffs allege that the accused products infringe the asserted claims either literally or through the Doctrine of Equivalents.  The Plaintiffs also allege that Apple's infringement is and has been willful. Plaintiffs seek damages in the form of a reasonable royalty for Apple's alleged infringement.][9]

[certain iPhones, iPads, and Apple Watches.

Plaintiffs contend that Apple made, used, offered to sell, sold, or imported products that infringe at least one of the following product claims:

---

[9] [**Apple Objection:**  Plaintiffs' instruction does not precisely describe the categories of products that Plaintiffs accuse, and their generic reference to products "that operate over the 'LTE' cellular standard" is likely to confuse the jury.  Plaintiffs also fail to distinguish between the apparatus and method claims they allege are infringed, and identify with precision the alleged infringer(s).  In addition, for the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

**Plaintiffs' Response:** This instruction will come after all of the evidence has been put on at trial. The jury will understand the infringement theories for the asserted claims, and will understand how those theories apply to Apple's relevant products.  .

---

- Claims 6 and 7 of the '332 patent;
- Claim 1 of the '284 patent;
- Claim 1 of the '557 patent; and
- Claim 8 of the '833 patent.

Plaintiffs also contend that Apple, its customers, and/or other users of the accused products infringe[10] by performing each step required by at least one of the following method claims:

- Claims 14 and 27 of the '284 patent;
- Claim 10 of the '557 patent; and
- Claim 6 of the '774 patent.

These product and method claims are sometimes referred to as the asserted claims.]

Apple denies that [the accused products infringe the][11] [it has infringed any] asserted claims of the '332, '284, '557, '774, and '833 patents.  [Apple further denies the Plaintiffs'

---

[10] [**Plaintiffs' Objection:**  This instruction improperly and argumentatively suggests that Plaintiffs are accusing Apple's customers of infringement, or that Plaintiffs were required to prove that customers infringe. Even as to the method claims, Plaintiffs are accusing Apple of direct infringement and indirect infringement.  For indirect infringement, Plaintiffs merely must show that all elements are practiced by an entity and that Apple induces this act.]  [**Apple Response:**  Plaintiffs' September 25, 2019 Supplemental P.R. 3-1 and 3-2 Disclosure states "For the method claims in the claim charts, when Apple, *its customers, retailers, or servicers, and/or other users* turn on and use the Accused  Instrumentalities in the U.S., or when the Accused Instrumentalities are tested in the U.S., for cellular LTE transmissions, the claimed methods are performed in the U.S. and thus directly infringed under 35 U.S.C. §271(a). The claimed methods are also performed and thus directly infringed under 35 U.S.C. §271(a) when the Accused Instrumentalities are activated as part of design and development activities (e.g. interoperability, compliance, certification, reliability and quality control testing), and/or otherwise operated by Apple *or other users of the Accused  Instrumentalities*, for cellular LTE transmissions. Apple is liable therefor directly and indirectly." (emphasis added).]

[11] [**Apple Objection:** Products themselves do not infringe.  *See* 35 U.S.C. § 271.]

**Plaintiffs' Response:** The Court frequently uses this construction in patent infringement cases. *See, e.g.,* Trial Tr., *Whirlpool Corp. v. TST Water, LLC,* No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166 at 15.

allegation that it willfully infringed][12].  [In other words, Apple contends that Apple did not make, use, sell, offer for sale, or import products that infringe any of the asserted product claims. Apple further contends that its products do not perform each step required by any of the asserted method claims.]

[Apple also contends that the asserted claims are invalid.]  [Separately, Apple also contends that, under Plaintiffs' interpretation of the asserted claims, the claims are invalid.  In other words, Apple contends that if the claims are found to be infringed, then they are also invalid because they were anticipated or rendered obvious by prior art that existed before Plaintiffs' alleged inventions.  Invalidity is a defense to infringement.]

[Apple denies it owes the Plaintiffs any damages in this case].

[Your job is to decide whether any asserted claim of the asserted patents has been infringed and whether any of the asserted claims of those patents is invalid.]

If you were to decide that any claim [of a patent] has been infringed and [that claim] is not invalid, then you will need to decide [whether Apple's infringement has been willful, and to decide the amount of][13] [what, if any,] money damages to be awarded to Plaintiffs as compensation for [that] [the] infringement.

### 7.     ESTABLISHED FACTS

I will now instruct you on a number of established facts.  You must take these facts as true when deciding the issues in this case.

---

[12] [**Apple Objection:**  For the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

[13] [**Apple Objection:**  For the reasons discussed in Apple's objection to Instruction No. 8, *see* fn. 14, any instruction regarding willful infringement is improper.]

1.     The Plaintiffs are the record assignee and owner of the '332, '284, '557, '774, and '833 patents.[14]

2.     The '332 patent was filed for on December 8, 2010 and issued on September 13, 2011 by the U.S. PTO.  The '332 patent has the effective filing date of March 7, 2008.

3.     The '833 patent was filed for on September 11, 2008 and issued on January 24, 2012 by the U.S. PTO.  The '833 patent has an effective filing date of November 13, 2007.

4.     The '284 patent was filed for on August 16, 2010 and issued on February 26, 2013 by the U.S. PTO.  The '332 patent has the effective filing date of December 20, 2007.

5.     The '557 patent was filed for on December 21, 2011 and issued on April 2, 2013 by the U.S. PTO.  The '557 patent has an effective filing date of March 20, 2006.

6.     The '774 patent was filed for on November 12, 2013 and issued on April 7, 2015 by the U.S. PTO.  The '774 patent has an effective filing date of April 21, 2005.

## 8.     PATENT CLAIMS[15]

Before you can decide many of the issues in this case, you'll need to understand the role of the patent claims.

---

[14] [**Apple Objection:**  Plaintiffs' ownership of the asserted patents is not an established fact. Plaintiffs have presented no evidence that PanOptis owns any patent-in-suit.  Plaintiffs are a collective of corporate entities, some of whom are the owners of record to certain asserted patents.  PanOptis does not appear to own any of the patents-in-suit.  Indeed, the "Uncontested Facts" portion of the parties Joint Pretrial Order does not address ownership of any individual asserted patent, much less suggest that Plaintiffs, collectively, own the asserted patents.]

[**Plaintiffs' Response:** PanOptis's corporate representative testified to ownership, and Apple has not contested Plaintiffs' ownership of the asserted patents at any point in this litigation. Accordingly, there is no actual dispute here regarding ownership.]

[15] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

---

The claims of a patent are numbered sentences at the end of the patent.  The claims define the patent owner's rights under the law.  The claims are important, because it is the words of the claims themselves that define what the patent covers.  The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers collectively or as a whole depends on what each of its claims cover.

## 9.      CLAIM CONSTRUCTION[16]

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.  And the first step is to understand the meaning of the words used in the patent claim.  The law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I've determined the meaning of certain claim language.  I have provided the definitions of those claim terms in your jury notebooks. You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

[For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one

---

[16] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1.

of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention in light of the specification.]

[For any words in a claim for which you have not been provided with a definition, you should apply their common meaning.  You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide.]

[It is the Court's sole duty to instruct you on the meaning of the claim language, and I have provided those definitions in your jury notebooks.  There have been mentions of the absence of inventors here at trial. In this regard that the patent claims speak for themselves with my claim constructions, and any suggestion that inventor testimony is needed on this should be disregarded.[17]  You should not consider questions of who might have testified, but rather must decide the case based only on the evidence that was actually presented.[18]]

## 10.    PATENT CLAIMS AND LIMITATIONS

I'll now explain how a claim defines what it covers.  A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device [or method] satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim

---

[17] *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction."); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000) ("it is not unusual for there to be a significant difference between what the inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO.")

[18] *Robert Bosch LLC v. Pylon Manuf. Corp.*, No. 08-cv-542, Dkt. No. 375, Trial Tr. at  1565:26-1566:3 (D. Del. 2010) ("You may not consider such questions of who might have testified, on either side.  Instead, you must decide the case based only on the evidence that was actually presented.")

by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  [Claims may describe apparatuses, devices, or products, such as machines. I will call such claims "product" claims. Claims may also describe processes or methods for making or using a product.  I will call such claims "method" claims.  In this case, Plaintiffs have asserted both product and method claims for the asserted patents.[19]]

When a product meets all the requirements of a claim, where it meets all of its limitations or all of its elements, the claim is said to cover that product; and that product is said to fall within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. [However, that does not mean that every word of the claim must exist identically in the accused products. In assessing infringement, whether literally or under the doctrine of equivalents, your task is not to consider individual words in isolation but rather to compare the accused products and methods to the scope of the claims, according to the Court's claim constructions and the meaning of claim language to a person of ordinary skill in the art (as may have been explicated, for example, by testimony from experts), and this Court's instructions regarding the doctrine of equivalents.[20][If after that analysis you conclude that a product is missing even one limitation or element of a claim, the product is not

---

[19] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[20] **Optis Statement:** this clarification is necessary to correct a misstatement of law made by Apple during opening statement (and alluded to with several witnesses). E.g., Trial Tr. at 240:4-7 ("If any one of those words is missing in what they're accusing of infringement, there is no infringement."); *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) ("To determine infringement , a court first construes the scope and meaning of the asserted patent claims, and then compares the construed claims to the accused product or process.")

covered by that claim unless an equivalent of the limitation is present.  If the product is not covered by the claim either literally or under the doctrine of equivalents, the product does not infringe the claim.][21]

[With respect to product claims, if a product is missing even one limitation or element of a claim, the product is not covered by that product claim.  If the product is not covered by the product claim, the product does not infringe the claim.  Similarly, with respect to method claims, if an entity does not perform even one required step of the process, the entity's actions are not covered by that method claim.  If the actions are not covered by the method claim, the actions do not infringe the method claim.]

## 11.    INDEPENDENT VS. DEPENDENT CLAIMS[22]

This case involves two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. Thus, it is not necessary to look to any other claim to determine what an independent claim covers.

---

[21] [**Apple Objection:** Plaintiffs' instruction fails to separately address the requirements for method claims, and thus is likely to confuse the jury.  Plaintiffs' proposed language "unless an equivalent of the limitation is present" is also improper, imprecise, and likely to confuse the jury because Plaintiffs do not have theories under the doctrine of equivalents for all the claims they assert, much less for all limitations of all the asserted claims.]

[**Plaintiffs' Response:**  Plaintiffs believe that there is no need for separate instructions for apparatus and method claims.  This is consistent with the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1a, AIPLA Model Patent Jury Instructions (2019-11-13) at § 3.2, and Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at § 3.2, all of which contain a unified instruction for direct infringement of method and apparatus claims.  With respect to the "equivalent of the limitation" language, Plaintiffs' instruction is an accurate recitation of the law, and it is more helpful to the jury to include the doctrine of equivalents here, since they will be applying the doctrine of equivalents in this case.]

[22] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.1a.

By contrast, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

The law considers a dependent claim to incorporate all the requirements of the claim or claims to which it refers or depends, as well as the additional claims set forth in the dependent claim itself.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Taking the '557 patent as an example, claim 1 of the '557 patent is an independent claim. Claim 5 of the '557 patent is a dependent claim that refers back to independent claim 1. Therefore, dependent claim 5 includes all the requirements of claim 1 as well as all of the requirements of claim 5.

## 12.     MEANS FOR[23]

Certain claims use the phrase "means for."  This "means for" phrase has a special meaning in patent law.  It's called a means-plus-function requirement.  It does not cover all the structures that could perform the function set forth in the claim.  Instead, it covers a structure or set of structures that performs that function and that is either identical or equivalent to the structures described in the patent for performing the function.

---

[23] Taken directly from *Optis v. Huawei,* where Claim 1 of the '284 patent was also asserted. Trial Tr., *Optis Wireless Tech. v. Huawei Techs. Co., Ltd.* No. 2:17-cv-123-JRG-RSP (E.D. Tex. Aug. 24, 2018), ECF. No. 310

The issue of whether two structures are identical or equivalent is for you to decide.  I'll explain to you later how to decide whether two structures or two sets of structures are equivalent to one another.]

### 13.    COMPRISING

The claims of the patent-in-suit use the word "comprising."  Comprising means including or containing.   A claim that includes the word "comprising" is not limited to the methods or devices having only the elements recited in the claim but also covers methods or devices that add additional elements.[24]

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs.  That's a simple example using the word "comprising" and what it means.  But, in other words, it can have other features, in addition to those that are covered by the patent.[25]

[If a product is missing even one limitation or element of a claim, it does not meet all of the requirements of a claim and is not covered by the claim. If a product is not covered by the claim, it does not infringe the claim.][26]

---

[24] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

[25] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP, (E.D. Tex. June 15, 2018).

[26] Plaintiffs object to the inclusion of this instruction multiple times, as repetitive and unnecessary in light of the inclusion of this instruction in the preceding and later paragraphs, and therefore placing an unnecessary focus on this instruction.  **[Apple Response:**  This instruction is not repetitive and one this Court has given in other cases.  *See* Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.]

## 14.     INFRINGEMENT[27]

A patent owner has the right to stop others from making, using or selling the patented invention in the United States for the life of the patent.  If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.  [Whether the accused infringer or any third parties own patents is not a defense to infringement.[28]][29]

To determine whether there is infringement, you must compare the asserted patent claims, as I've defined each of them, to the accused products [or methods]. You should not compare the accused products [or methods] with any specific example set out in the patent or with the prior art in reaching your decision on infringement.  [The specific examples set out in a patent, however, may inform you as to the reasonableness of the application of the plain and ordinary meaning of claim terms[30]].[31]   [The only correct comparison is between the accused product [or method] and the language of the claim itself.]

---

[27] Trial Tr., *Whirlpool Corp. v. TST Water, LLC.,* No. 2:15-cv-01528-JRG, (E.D. Tex. Mar. 23, 2017), ECF No. 166.; Trial Tr., Core Wireless Licensing S.A.R.L. v. Apple Inc., No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[28] *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[29] [**Apple Objection:**  Plaintiffs' instruction is unnecessary and confusing.  Apple does not contend that ownership of its own patent is a defense to infringement.]

[**Plaintiffs' Response:** There is nothing confusing about this instruction.  The jury is likely aware that Apple owns its own patents, and Apple mentioned third party patents numerous times through the case including with respect to its suppliers.  It is important for the jury to know that this is not relevant to the determination of infringement.]

[30] Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005)

[31] [**Apple Objection:**  Apple objects to Plaintiffs' instruction to the extent it invites the jury to conduct claim construction.]

**Plaintiffs' Response**: Apple's objection is baseless, Plaintiffs are setting out settled Federal Circuit law. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

---

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.  [Remember that the issue of infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another claim in the patent.][32]

[I'll now instruct you on the specific rules that you must follow to determine whether the Plaintiffs have proven that Apple has infringed one or more of the patent claims involved in this case.]  In this case, there are two possible ways that a claim may be infringed. I'll explain the requirements of each of these types of these types of infringement to you.  The two types of infringement are called direct infringement and indirect infringement.

### 15.    LITERAL INFRINGEMENT[33]

In order to infringe a patent claim, the accused device must include each and every element of the claim.  In determining whether Apple infringes the Plaintiffs' asserted claims, you must determine if the accused products contain each and every element recited in a claim of the asserted patent.  A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.  In making your determination, you must consider each claim separately.  Not all of the claims of a patent

---

[32] Plaintiffs object to the inclusion of this instruction as repetitive and unnecessary in light of the instructions in the previous and later paragraphs, and therefore placing an unnecessary focus on this instruction.  [**Apple Response:**  This language, which is taken directly from the Federal Circuit Bar Association's model instructions, is not unnecessary and instructive for the jury.  *See* FCBA Model Patent Jury Instructions (May 2020) at § 3.1.  Moreover, Plaintiffs include similar language in their proposed instruction regarding literal infringement.  *See* p. 24, *infra* ("In making your determination, you must consider each claim separately.  Not all of the claims of a patent must be infringed for infringement to exist.")]

[33] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

must be infringed for infringement to exist.  The Plaintiffs need only establish by a preponderance of the evidence that one claim is infringed.  If you find that each and every element of a patented claim is found in the accused product then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[34]

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[35]  A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.[36]]

## 16.   DOCTRINE OF EQUIVALENTS

[If you find that the accused product does not literally infringe a claim of the asserted patents, then you must determine whether the plaintiff proved that the product infringes that claim under the doctrine of equivalents. Under the doctrine of equivalents, if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the product.  You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of

---

[34] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[35] *Whirlpool*, Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017).

[36] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018); *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.][37]

[Even if an accused product does not literally satisfy every requirement of a claim, there may be infringement under the "doctrine of equivalents" if it meets a missing requirement by including an equivalent of the claimed requirement.  You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have found that the structure: (1) performs substantially the same function, (2) works in substantially the same way, and (3) achieves substantially the same result as the requirement of the claim.

Plaintiffs contend that Apple infringes the following claims under the doctrine of equivalents:

- Claims 1 and 10 of the '557 patent; and
- Claim 6 of the '774 patent.[38]]

---

[37] [**Apple Objection:**  Plaintiffs' instruction fails to identify the claims they allege are infringed under the doctrine of equivalents.  Apple's instruction provides this information, which will be instructive for the jury.]

[**Plaintiffs' Response:** There is no need to include this level of factual detail in the jury instructions, which are meant to merely inform the jury of the law.  This Court has previously determined that giving doctrine of equivalents instructions without identifying claims alleged under DOE is appropriate.  *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).]

[38] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1c.

## 17.     LITERAL INFRINGEMENT -- PRODUCT CLAIMS[39],[40]

In order to prove literal infringement of an apparatus—or product--claim, the Plaintiffs must show by a preponderance of the evidence that an accused product includes each and every element of that claim exactly.  In determining whether Apple infringes the Plaintiffs' asserted claims, you must compare the accused product with each and every element recited in a claim to determine whether the accused product contains each and every requirement recited in the claim. A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art.  If an accused product does not possess any element recited in a claim, then you must find that that particular product does not literally infringe that claim.

In making your determination, you must consider each claim separately.  Not all the claims of a patent must be infringed for infringement to exist.  For apparatus, or product, claims, if you find that each and every element of a patented apparatus or product is found in the accused product, then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[41]  Conversely, if a product is missing even one element of a product claim, it does not meet all the requirements of the claim and is not covered by the claim.

---

[39] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[40] Plaintiffs object that there is no need for separate instructions for apparatus and method claims. This is consistent with the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.1a, AIPLA Model Patent Jury Instructions (2019-11-13) at § 3.2, and Northern District of California Model Patent Jury Instructions (August 2017, updated October 2019) at § 3.2, all of which contain a unified instruction for direct infringement of method and apparatus claims.

[41] Trial Tr., *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498.

If a product is not covered by the claim, it does not infringe the claim.[42]  For method claims, if you find that each and every element of a patented method is practiced by the accused product then the claim is infringed.[43]  Conversely, if a product does not practice even one step of a method claim, it does not meet all of the requirements of a claim and is not covered by the claim. If a product is not covered by the claim, it does not infringe the claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.[44] A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.[45]

## 18.    DIRECT INFRINGEMENT -- METHOD CLAIMS[46]

In order to prove direct infringement of a method--or process--claim, the Plaintiffs must show by a preponderance of the evidence that Apple itself performs each and every step of the claimed method.

---

[42] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[43] *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:14-cv-33-JRG, 2016 WL 5480908, at *5 (E.D. Tex. Sept. 29, 2016).

[44] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[45] Trial Tr., *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498; *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[46] *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:14-cv-33-JRG, 2016 WL 5480908, at *5 (E.D. Tex. Sept. 29, 2016).

## 19.    INFRINGEMENT OF DEPENDENT CLAIMS[47],[48]

The asserted patents also contain dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of a dependent claim of any of the asserted patents, you must first determine whether any of the independent claims has been infringed.  If you decide that the independent claim has not been infringed then the dependent claim cannot have been infringed.  If you decide that the independent claim has been infringed, you must then separately determine:  (1) for product claims, whether each additional requirement of the dependent claim has also been included in the accused product; or (2) for method claims, whether Apple itself performs each additional step required by the dependent claim.  If each additional product requirement has been included, or each additional method is performed, then the dependent apparatus or method claim has been infringed.  Conversely, if Apple's products or conduct omits any additional requirement recited in a dependent claim, then Apple does not infringe that claim.]

## 20.    DIRECT INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIMS

[The two "processing unit" terms in asserted claim 1 of the '284 patent are the so-called means-plus-function claim limitations.  To demonstrate that these limitations are literally met, Plaintiffs must prove by a preponderance of evidence (that is, it is more likely than not) that Apple's products contains a structure that (1) performs the recited function; and (2) is identical or

---

[47] Adapted from Jury Charge in *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019), ECF No. 335.

[48] Plaintiffs object that there is no need for an instruction on infringement of dependent claims given the previous instructions regarding independent vs. dependent claims.

equivalent to the structure that is disclosed in the patent specification and drawings for performing the recited function. I have set forth in my claim construction order both the recited function that is to be performed by the structure, and the structure that is disclosed in the patent specification that performs the recited function.  Those constructions are included under Tab __ of your Juror Notebook.

Whether the structure of the accused product is equivalent to a structure disclosed in the patent specification and drawings is decided from the perspective of a person of ordinary skill in the art.  The structure in the accused product and that disclosed in the patent are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial.  One way to show this is to demonstrate that the structure in the accused product performs the identical function in substantially the same way to achieve substantially the same result as would be achieved by the element that is disclosed in the patent specification.

Equivalency in structures can also be demonstrated by showing that people of ordinary skill in the art would have known that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent issued.

Further, in determining structural equivalency, the range of permissible equivalents depends upon the extent and nature of the invention.[49]  More particularly, when in the claimed "processing unit" limitation the disclosed physical structure is of little or no importance to the claimed invention, there may be a broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention.[50]  That the structure in the accused products may perform additional

---

[49] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304 (Fed. Cir. 2011).

[50] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304 (Fed. Cir. 2011).

functions not disclosed in the patent specification does not mean the structure is not identical or equivalent to the structure that I identified in my claim construction order.  For example, if the disclosed structure in the patent is a summation algorithm while the structure in the accused products for performing the recited function has, in addition to summation functions, also logical functions and multiplication functions, the accused structure may nevertheless still satisfy the requirement that it is a summation algorithm or equivalent.[51]  This is the case even if the accused structure purports to have a different objective from or achieves better performance than that is disclosed in the patent specification.[52]  It bears noting that even when two structures would not have been considered equivalent structures in other contexts, e.g., if performing functions other than the claimed function, they may nevertheless be equivalent for the means-plus-function term when performing the same function.[53]][54]

[Some patent claim requirements may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's say that a patent describes a table in which the legs are glued to the tabletop.  One way an inventor may claim the table is to require the tabletop, four legs, and glue between the legs and the tabletop.  Another way to claim the table is to require the tabletop and the legs, but instead of stating "glue," the inventor states a "means for securing the legs to the tabletop."

---

[51] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1305 (Fed. Cir. 2011).

[52] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1304-05 (Fed. Cir. 2011).

[53] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1305 (Fed. Cir. 2011).

[54] [**Apple Objection:** Plaintiffs' instruction regarding means-plus-function is an improper recitation of Plaintiffs' infringement theories with respect to claim 1 of the '284 patent.  Plaintiffs' instruction is argumentative, prejudicial to Apple, and likely to confuse the jury.]

[**Plaintiffs' Response:** Apple has not identified any way in which Plaintiffs' instruction is incorrect or otherwise does not accord with the law.  To the contrary, Plaintiffs' instruction is directly drawn from Federal Circuit precedent.]

This second type of claim requirement is called a "means-plus-function" requirement. It describes a means for performing the function of securing the legs to the tabletop, rather than requiring the glue.

When a claim requirement is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim and also any structure equivalent to the described structures. In my example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure to glue that performs the function of securing the legs to the tabletop.

Asserted claim 1 of the '284 patent includes means-plus-function claim limitations identified in my claim construction. In instructing you about the meaning of a means-plus-function claim requirement, I will tell you, first, the function that is performed, and second, the structure disclosed in the patent specification that corresponds to that function. Those constructions are included under Tab 1 of your Juror Notebook.

To establish literal infringement of a claim that includes means-plus-function requirements, the Plaintiffs must prove two things:

1. The relevant structure in the accused device performs the identical function I identified in my claim construction for the means plus function requirement, and

2. The accused device employs a structure identical or equivalent to the structure identified in my claim construction for the means plus function requirement.

Where the structure in the accused device and the structure identified in my claim construction are not identical, Plaintiffs have the burden of proving by a preponderance of the evidence that the relevant structure in the accused device is equivalent to the structure identified in my claim construction.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial for performing the required function.  One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.  Another way is to consider whether people of ordinary skill in the art believed that the accused structure and the structure identified in my claim construction were interchangeable at the time the patent was issued by the Patent Office.][55]

## 21.    INDIRECT INFRINGEMENT[56]

In addition to direct infringement, a party can be liable for infringement if it actively induces the direct infringement of a patent claim by another.  To show inducement, the Plaintiffs must prove by a preponderance of the evidence that someone has directly infringed a patent claim.  If you find that someone else has directly infringed the asserted claims, it is not necessary to show that Apple itself has directly infringed if the Plaintiffs prove by a preponderance of the evidence that Apple actively and knowingly aided and abetted that direct infringement.  The Plaintiffs must show that Apple actually intended to cause the acts that constitute direct infringement and that Apple knew or should have known that its actions would induce actual infringement.

Now, if you find that someone has directly infringed the asserted claims and you find that Apple knew or should have known that its actions would induce direct infringement, you may find that Apple induced another to infringe the asserted patents if it provided instructions and directions to perform the infringing act.

---

[55] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 2.3a.

[56] Based on *Golden Hour Data Systems, Inc. v. emsCharts, et al.*, No. 2:06-cv-381 (E.D. Tex. Nov. 25, 2008).

## 22.   INDIRECT INFRINGEMENT --INDUCED INFRINGEMENT[57]

Plaintiffs also allege that Apple has actively induced another to infringe the asserted claims of the asserted patents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To show inducement, Plaintiffs must show by a preponderance of evidence that:

1.   the acts are actually carried out by Apple's customers[58] using the accused products and directly infringe that claim;

2.   Apple took action during the time the patent was in force, intending to cause the infringing acts by Apple's customers using the accused products; and

3.        Apple was aware of or willfully blind to the patent and knew that the acts, if taken, would constitute infringement of the patent or that Apple was willfully blind to that infringement.

If you find that Apple was aware of an asserted patent, but believed that the acts it encouraged did not infringe that patent, Apple cannot be liable for inducement.

In order to establish active inducement of infringement, it's not sufficient that the other party or parties themselves directly infringe the claim, nor is it sufficient that Apple was aware of the acts by its customers using the accused products that allegedly constitute the direct infringement.

Rather, you must find that Apple specifically intended its customers, using the accused products, to infringe the patent or that Apple believed there was a high probability that its

---

[57] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.2.

[58] Here, as elsewhere in its proposal, Apple improperly suggests that Plaintiffs are accusing customers in this litigation or that showing infringement by customers is the only way to demonstrate indirect infringement.

customers would infringe the patent but deliberately avoided learning the infringing nature of its customers' acts.[59]

### 23.    WILLFULNESS

In this case, the Plaintiffs contend that Apple willfully infringed its patent. If you decided that Apple has infringed, you must go on and separately address the additional issue of whether or not Apple's infringement was willful. [60]

The Plaintiffs must prove willfulness by a preponderance of the evidence. In other words, you must determine whether it is more likely than not that Apple willfully infringed.You may not determine that the infringement was willful just because Apple knew of the Asserted Patents and infringed them. However, you may find that Apple willfully infringed if you find that it acted egregiously, willfully, or wantonly.[61] You may find Apple's actions were egregious, willful, or wanton if it acted in reckless or callous disregard of or with indifference to the rights of the Plaintiffs.[62]  A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position. Your determination of willfulness should incorporate the totality of the

---

[59] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 3.2.

[60] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

[61] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[62] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

circumstances based on all the evidence presented during the trial. Willfulness can be established by circumstantial evidence.[63]

Knowledge of the existence of a patent or patent family can be relevant to the question of willful infringement.[64]  For example, if Apple knew of the existence of a patent or subjectively believed that there was a high probability that a patent existed and took deliberate actions to avoid learning of the patent, you may take this into account when considering willfulness.  You may also take into account whether Apple had knowledge of a patent family.[65]]

[In this case, Plaintiffs argue that Apple infringed and, further, that Apple infringed willfully.  If you have decided that Apple infringed, you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine whether Plaintiffs proved that it is more likely than not that the infringement by Apple was especially worthy of punishment.  You may not determine that the infringement was willful just because Apple knew of Plaintiffs' asserted patents and infringed.  Instead, willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.

To determine whether Apple acted willfully, consider all facts.  These may include, but are not limited, to:

1.     Whether or not Apple acted consistently with the standards of behavior for its industry;

---

[63] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[64] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

[65] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020).

PROPOSED JURY INSTRUCTIONS

2.      Whether or not Apple reasonably believed it did not infringe or that the patent was invalid;

3.      Whether or not Apple or made a good-faith effort to avoid infringing Plaintiffs' asserted patents, for example, whether Apple attempted to design around Plaintiffs' asserted patents; and

4.      Whether or not Apple tried to cover up its infringement.][66]

## 24.    VALIDITY

I will now instruct you on the rules that you must follow in deciding whether or not Apple has proven by clear and convincing evidence that the asserted claims of the patent are invalid.

[Patent invalidity is a defense to patent infringement.  Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.[67]]

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. In order to overcome this presumption, Apple

---

[66] FCBA Model Jury Instructions, No. B.3.10.  Modified to delete: "Whether or not [alleged infringer] intentionally copied a product of [patent holder] that is covered by the [ ] patent."

[67] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

must establish by clear and convincing evidence that the Plaintiffs' patent or any claim in the patent is not valid.[68]

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid.[69]

## 25.    DATE OF THE INVENTION[70]

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as constructive reduction to practice. Ordinarily, art dated before the application filing date is prior art to the patents claims. There are, however, circumstances under which art dated before the application filing date is not prior art. When the inventor was the first to conceive of the invention and exercised reasonable diligence in reducing the invention to practice, then art dated after the inventor's conception is not prior art.

There are two parts of making an invention. The inventor has the idea of the invention. This is referred to as conception of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and it can be made without the need for any further inventive effort.

The actual making of the invention is referred to as reduction to practice. An invention is said to be reduced to practice when it is made and shown to work for its intended purpose.][71]

---

[68] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[69] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[70] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[71] **[Apple Objection:** Plaintiffs' instruction does not identify any factual issues to be decided that necessitate an instruction as to date of invention, and is thus unnecessary and likely to confuse the jury.]

## 26.    PRIORITY DATE OF ASSERTED PATENT REFERENCE[72]

If Apple alleges that a prior art patent is entitled to the priority date of an earlier-filed provisional application, Apple must show, by clear and convincing evidence, both that (1) at least one issued or pending claim is supported by written description of the priority application such that the relied on patent was entitled to the benefit of the alleged priority application; and (2) the disclosure relied on in the prior art patent or application is also disclosed in the alleged priority application. [73]][74]

## 27.    PERSON WITH ORDINARY SKILL IN THE ART[75],

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including:

1.      the levels of education and experience of the inventors and other persons working in the field;

1.      the types of problems encountered in the field;

---

Plaintiffs' Response: Plaintiffs believe a Date of Invention instruction is appropriate, given that the jury will need to determine the date of invention for purposes of its invalidity determination. For example, the '557 patent was conceived and reduced to practice by March 3, 2006.  March 3, 2006 was 17 days before the agreed-to effective filing date of March 20, 2006.

[72] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[73] *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.* 800 F.3d 1375 (Fed. Cir. 2015)

[74] [**Apple Objection:** Plaintiffs' instruction overstates the application of *Dynamic Drinkware*, which is limited to provisional applications, and not any "earlier application" as Plaintiffs suggest.  Accordingly, this instruction is overbroad and lacks authority.]

[75] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

2.      prior art solutions to those problems;

3.      rapidity with which innovations are made; and

4.      the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

## 28.      ANTICIPATION[76]

[In order for someone to be entitled to a patent, the invention must actually be "new."]

Apple contends in this case that the asserted claims of the '774 and '332 patents are invalid because the claimed inventions are anticipated.  [If an invention is not new, we say that it was anticipated by the prior art. An invention that is anticipated by the prior art is not entitled to patent protection.] Apple bears the burden of proving anticipation by clear and convincing evidence.  [Apple also bears the burden of proving that the art it asserts qualifies as prior art, including that it is entitled to the priority date that Apple alleges.  ]

[In patent law, a previous system, publication, or patent that predates the claimed invention is generally called "prior art."[77] To qualify as prior art, it must have been public before the date of the invention or more than one year before the effective filing date of the asserted patent.[78] You may not find that the prior art anticipates a patent claim by combining two or more items of prior art. In deciding whether or not a single item of prior art anticipates a patent claim, you should consider only what is expressly stated or present in the prior art and inherently present. Something is inherent in an item of prior art only if it necessarily results from the

---

[76] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at § 4.3b-1.

[77] *Optis Wireless Tech. LLC v. Huawei Device (Shenzhen) Co.*, Case No. Case 2:17-cv-00123-JRG Dkt. 284 (E.D. Tex. Aug. 24, 2018).

[78] 35 U.S.C. § 102.

practice of the prior art and if a skilled person would recognize that to be the case. The prior art must clearly and unequivocally disclose the elements as arranged in the claim, without needing to pick, choose, and combine various disclosures from the prior art. You cannot combine separate embodiments disclosed in the prior art unless the prior art actually teaches or suggests combining those embodiments.][79]

Anticipation must be determined on a claim-by-claim basis.  Apple must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim[.  Not only must all] [, but all] of the requirements of the claim must have been disclosed [within the four corners of the reference, but the disclosures must also be] [and] arranged as in the claim.  The claim requirements may either be disclosed expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.  [Inherent disclosure means that the missing element is necessarily present in the prior art.  Probability and possibility, no matter how high, is not sufficient for anticipation.  That is, even if there is a high probability that an event may occur based on the disclosures of the reference, that is insufficient to show anticipation by inherency.][80]

---

[79] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[80] [**Apple Objection:** Plaintiffs' proposed language is redundant, vague, and likely to confuse the jury.  Plaintiffs also fail to cite any authority for their references to "probability" (including "99% probability") and "possibility" as proper standards.]

[**Plaintiffs Response:** This instruction is not redundant of any previous instruction, nor is it vague.  To the contrary, it expressly explains inherent disclosure to the jury.  Further, this proposition is settled Federal Circuit law.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) ("Inherency, however, may not be established by

Where Apple is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.   [Conversely, if an independent claim is anticipated, its dependent claims, which have more limitations, may not be anticipated.]

### 29.    OBVIOUSNESS[81]

Apple contends in this case that the asserted claims of the '332, '284, '557, '774, and '833 patents are invalid as obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference, the invention [may be invalid if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to a person of ordinary skill in the field of technology to which the claimed invention pertains at the effective filing date of the claimed invention][82] [may have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.]   Apple bears the burden of establishing obviousness by clear and convincing evidence.

---

probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.").

[81] Trial Tr., *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-cv-01528-JRG (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[82] [**Apple Objection:**  Plaintiffs' proposal is vague and likely to confuse the jury.]
**Plaintiffs' Response**:  This is the direct language of 35 U.S.C 103.  Apple's proposed language leaves out a critical part of the 103 analysis, which is both the invention and the prior art need to be analyzed as a whole.

---

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art.**[83]** [A patent may combine old elements in a new way.  However, if Apple cannot establish that all elements are disclosed in prior art, then Apple fails in its burden of proof.[84]  Where a limitation is missing from the asserted combination of references, Apple may not resort to common sense, institution, or bare assertion of obviousness to establish that reference.[85]  Only when Apple has managed to show that each and every element of the claim was disclosed in prior art do you need to go to the next step of determining whether there is a reason for a person of ordinary skill in the art to modify or combine the various references in the manner suggested by Apple.][86]

In determining whether the patent is invalid because of obviousness, you must consider the scope and content of the prior art [as a whole], the differences between the prior art and the claimed invention and the level of ordinary skill in the art. In determining the level of ordinary skill in the art, you should consider the person of ordinary skill as one who is presumed to be

---

[83] 35 U.S.C. § 103; Trial Tr., *Whirlpool Corp v. TST Water, LLC,* No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017); ECF No. 166; Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co,*, No. 2:16-cv-1314-JRG-RSP  (E.D. Tex. June 15, 2018), ECF No. 498.

[84] *Par Pharma. V. Twi Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014).

[85] *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016).

[86] **[Apple Objection:** Plaintiffs' proposed language is improperly argumentative, prejudicial to Apple, likely to confuse the jury, and redundant with respect to other portions of the instruction to which Plaintiffs do not object.]
**Plaintiffs' Response:** The "all elements" rule is a critical part of the obviousness analysis and needs to be addressed in the jury instructions.

aware of all pertinent prior art. The skill of the actual inventor is irrelevant, because inventors may possess something that distinguishes them from persons of ordinary skill in the art.[87]

In considering whether a claimed invention is obvious, you should consider whether, as of the [effective filing date] [priority date] of the asserted patent, there was a reason that would have prompted a person of ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account facts such as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements in the claimed invention, although obvious to try is not sufficient in unpredictable technologies;

6. whether the change resulted more from design incentives or other market forces.

[A claim is not deemed obvious if the modification proposed by Apple would alter the principle of operation of the primary reference or eliminate a key function of a reference.[88]  A claim is also not obvious if a person of ordinary skill in the art, at the time of the invention, had failed to recognize the problem or the cause of the problem that prompted the solution in the

---

[87] Trial Tr., *KAIST IP US LLC, v. Samsung Elecs. Co*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498.

[88] *Plas-Pak Industries, Inc. v. Sulzer Mixpac AG*, 600 F. App'x 755, 759 (Fed. Cir. 2015)

invention. A claim is also not obvious if the combination would not have yielded a reasonable expectation of success to a person of ordinary skill in the art.[89]][90]

In determining whether the claimed invention was obvious, consider each claim separately, and consider only what was known at the time of the invention. In determining whether the claimed invention was obvious, do not use hindsight. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the patent-in-suit [as a whole].[91]

In making these assessments, you must also take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on [non-obviousness] [the obviousness or non-obviousness of the claimed invention]. These include:

1. whether the invention was commercially successful;

2. whether the invention satisfied a long-felt need in the art;

3. whether others copied the invention;

4. whether the invention achieved unexpected results:

5. whether others in the field praised the invention; and

6. whether the invention departed from other principles or accepted wisdom of the art.

---

[89] *Procter & Gamble Co. v. Teva Pharm. USA, Inc.,* 566 F.3d 989 (Fed. Cir. 2009).

[90] [**Apple Objection:** Plaintiffs' proposed language is improperly argumentative and prejudicial to Apple.  Further, Plaintiffs' repeated use of double-negatives is likely to confuse the jury.]

**Plaintiffs' Response:** The law is often formulated in this manner—a claim is "not obvious" if X did not occur.  There is no basis for Apple's "double negative" basis.  Nor does Apple identify how this instruction is argumentative or prejudicial, as opposed to a proper recitation of the law.

[91] Trial Tr., *Whirlpool Corp. v. TST Water, LLC,* Case No. 2:15-cv-01528-JRG, Dkt. 166 (E.D. Tex. Mar. 23, 2017), ECF No. 166.

[These objective indicia can show that the invention is not obvious, although they are not requirements for patentability.[92]   For example, commercial success may evidence non-obviousness.   However, there must be a nexus between the patented features of the invention and the commercial success of the device.[93] While these objective indicia must be taken into account, you must consider all of the evidence related to obviousness before you reach a decision.][94]

[In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.]

## 30.    DAMAGES[95]

If you find that Apple has infringed any [of the asserted claims] [valid claim of the asserted patents], you must then consider the proper amount of damages, if any, to award to the Plaintiffs. I will now instruct you about the measure of damages. However, by instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Apple has not infringed any of the asserted claims, then the Plaintiffs are not entitled to any damages.

If you award damages, they must be adequate to compensate the Plaintiffs for any infringement of the asserted claims you may find.  [The Plaintiffs contend that they are entitled

---

[92] *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.,* 807 F.2d 955, 960 (Fed. Cir. 1986).

[93] *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[94] *KAIST IP US LLC, v. Samsung Elecs. Co, et al.,* No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[95]  *United Services Automobile Association v. Apple Bank, N.A.,* No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

to a certain sum of damages if you were to find infringement.]  You must not award the Plaintiffs more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing Apple [or setting an example]. [The patent laws provide that damages for infringement may not be less than a reasonable royalty].

Plaintiffs have the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that the Plaintiffs establish that it more likely than not suffered [as a result of Apple's infringement of the asserted claims]. While the Plaintiffs are not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. The Plaintiffs are not entitled to damages that are remote or speculative.

[In this case, Plaintiffs seek what Plaintiffs contend is a reasonable royalty.]   A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began, [for any patents you have found valid and infringed.]

The law requires that any damages awarded to the Plaintiffs correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Apple's size or market position. This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology.

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. You may also consider:

1.  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  [The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.]

7.  The duration of the patent and the term of the license.

8.  [The established profitability of the product made under the patents, its commercial success, and its current popularity.]

9.  [The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results] [The utility and

advantages of the patent alternatives that could have been used instead of the technology alleged to infringe in the period before the standard was adopted].

10. [The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.]

11. [The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.]

12. [The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. ]

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the Plaintiffs) and a licensee (such as Apple) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; [that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.]

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.

The  royalty rate must be based on the incremental value that the patented technology adds to the product, not any value added by the standardization of the technology.[96]

[You may also consider any other factors which in your minds would have increased or decreased the royalty Apple would have been willing to pay and that the patent owner, The Plaintiffs, would have been willing to accept, with both acting as normally prudent business people.

A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Apple through its infringement of the asserted patents, including evidence of cost savings that Apple achieved through the use of the asserted patents as well as evidence of additional profits and other benefits.[97] A reasonable royalty can exceed the profits expected by the patentee.]

As I have already told you, you must not award the Plaintiffs any additional amount for the purpose of punishing Apple or setting an example. You must not consider the Plaintiffs' allegations of willfulness in considering damages. Consideration of willfulness is entirely separate from the question of damages. You may not increase damages because you find

---

[96] [**Apple Objection:**  Plaintiffs' excerpting of this language from *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) is misleading and likely to confuse the jury because it fails to capture the special apportionment principles stated in *Ericsson*.]

**Plaintiffs' Response**: The Federal Court in *Ericsson* stated that the purpose of apportionment is to "ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology."  773 F.3d at 1232.  It is settled law that this is the goal the jury must seek to achieve.

[97] *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

willfulness or decrease damages because you did not find willfulness. I will take your decision regarding the issue of willfulness into account later.

### 31.    APPORTIONMENT[98][99]

When dealing with patents claimed to be standard essential, there are two special apportionment issues that arise.

First, the patented feature must be apportioned from all the unpatented features reflected in the standard.

Second, the patent owners' royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.  These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology. This is particularly true for patents claimed to be standard essential.  When a technology is incorporated into a standard, it is typically chosen from among different options.  Once

---

[98] Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) at §§ 5.11 (modified), 5.12 (modified); Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[99] Plaintiffs object to Defendant's proposed instruction on the grounds that it is essentially a FRAND instruction, and FRAND issues have been saved for the bench trial.  This instruction focuses almost entirely on the argument that special royalty rates apply for standard-essential patents.  Further, this instruction is confusing and inapplicable to the parties' damages theories in this case. Here, unless the scenario suggested by the proposed instruction, Plaintiffs are not seeking a royalty for the value of LTE generally. The suggestion of an apportionment within the overall value of LTE is therefore inapplicable and prejudicial.  Moreover, the statement that "technology is not always used because it is the best or only option" is not relevant to this case, particularly given that Apple does not contend that it chose its design for any other reason. Further, the references to the technology potentially not being the best option, not being the most useful option, etc. are not law necessary to guide the jury but rather will appear to factually denigrate the patented technology.

incorporated and widely adopted, that technology is not always used because it is the best or the only option; it is used because its use is necessary to comply with the standard.

In other words, widespread adoption of a standard essential technology is not entirely indicative of the added usefulness of the innovation over the prior art.  In the case of multicomponent products like smartphones and tablet computers where demand for the entire product is not attributable to the patented feature, you may not base the royalty on the price or revenue of the entire product, but instead must use a more realistic starting point for the royalty calculation, often the smallest salable unit, and at times, even less.

You may also need to further apportion the smallest salable patent-practicing unit to isolate the portion of the realizable profits that is attributable to the asserted patents, as distinguished from elements in the smallest salable patent-practicing unit that are not attributable to the asserted patents in this case.]

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

## 32.      DELIBERATIONS

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  You have heard all of the evidence in this case.  You have now heard the argument of counsel.  The Court has now given you the charge in this case.  In just a few moments you're going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you

have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly.   Again, I remind you, your answers and your verdict in this case must be unanimous.

[You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life.

A patent owner is entitled to protect its patent rights under the U.S. Constitution. This includes bringing a suit in a United States District Court for money damages for infringement.

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.]

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you.  If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the

courtroom where I can address you orally.  I will always first disclose to the attorneys in the case your question and my response before I answer your question.

 After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case.  By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.

Dated: August 6, 2020

Respectfully submitted,

*/s/ Samuel Baxter*

Jason Sheasby (pro hac vice)
jsheasby@irell.com
Hong Zhong, PhD
hzhong@irell.com
IRELL & MANELLA LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064
Phone: (310) 203-7096; Fax: (310) 203-7199

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
McKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Phone: (903) 923-9000; Fax: (903) 923-9099

Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
McKOOL SMITH, P.C.
300 W. 6th Street Suite 1700
Austin, TX 78701
Phone: (512) 692-8700; Fax: (512) 692-8744

M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Phone: (214) 954-4135; Fax: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS OPTIS
WIRELESS TECHNOLOGY, LLC, OPTIS
CELLULAR TECHNOLOGY, LLC, AND
PANOPTIS PATENT MANAGEMENT,
LLC**

*/s/ Mark D. Selwyn*
Mark D. Selwyn (pro hac vice)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
Mindy Sooter (pro hac vice)
mindy.sooter@wilmerhale.com

WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
Telephone: (720) 274-3135
Facsimile: (720) 274-3133

Joseph J. Mueller (pro hac vice)
Timothy D. Syrett (pro hac vice)
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Brittany Blueitt Amadi (pro hac vice)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Attorneys for Defendant Apple Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served after filing on all counsel of record via email on August 6, 2020.


*/s/ Samuel F. Baxter*
Samuel F. Baxter