08:35:50

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION

 3
    OPTIS WIRELESS TECHNOLOGY,    )(  CIVIL ACTION NO.
 4  LLC, OPTIS CELLULAR           )(  2:19-CV-66-JRG
    TECHNOLOGY, LLC, PANOPTIS     )(
 5  PATENT MANAGEMENT, LLC,       )(
    UNWIRED PLANET, LLC, UNWIRED  )(
 6  PLANET INTERNATIONAL LIMITED, )(
          PLAINTIFFS,             )(
 7                                )(
    VS.                           )(
 8                                )(  MARSHALL, TEXAS
                                  )(  AUGUST 5, 2020
 9  APPLE INC.,                   )(  8:44 A.M.
          DEFENDANTS.             )(
10
```

11                    TRANSCRIPT OF JURY TRIAL

12                       MORNING SESSION

13         BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

14             UNITED STATES CHIEF DISTRICT JUDGE

15
    APPEARANCES:
16

17  FOR THE PLAINTIFFS:

18
    MR. SAMUEL F. BAXTER
19  MS. JENNIFER TRUELOVE
    MCKOOL SMITH, P.C.
20  104 E. Houston Street
    Suite 300
21  Marshall, TX 75670

22
    MR. JASON G. SHEASBY
23  MS. ANNITA ZHONG
    IRELL & MANELLA LLP
24  1800 Avenue of the Stars
    Suite 900
25  Los Angeles, CA 90067

```
 1  FOR THE PLAINTIFFS:

 2
    MR. STEVEN J. POLLINGER
 3  MR. SETH R. HASENOUR
    MCKOOL SMITH, P.C.
 4  300 W. 6th Street
    Suite 1700
 5  Austin, TX 78701

 6
    MR. JONATHAN YIM
 7  MCKOOL SMITH, P.C.
    One Manhattan West
 8  395 9th Avenue
    50th Floor
 9  New York, NY 10001

10
    MR. CHRISTOPHER P. MCNETT
11  MCKOOL SMITH, P.C.
    1999 K Street, NW
12  Suite 600
    Washington, DC 20006
13

14  MS. INGRID PETERSEN
    MS. KELSEY SCHUETZ
15  IRELL & MANELLA LLP
    840 Newport Center Drive
16  Suite 400
    Newport Beach, CA 92660
17

18  FOR THE DEFENDANT:

19
    MR. JOSEPH J. MUELLER
20  WILMER CUTLER PICKERING
    HALE & DORR, LLP
21  60 State Street
    Boston, MA 02109
22

23  MR. MICHAEL J. SUMMERSGILL
    WILMER CUTLER PICKERING
24  HALE & DORR, LLP
    60 State Street
25  Boston, MA 02109
```

1   FOR THE DEFENDANT:

2

    MS. MELISSA R. SMITH
3   GILLAM & SMITH, LLP
    303 South Washington Avenue
4   Marshall, TX 75670

5

6

7

8   COURT REPORTER:      Ms. Shelly Holmes, CSR, TCRR
                         Official Court Reporter
9                        United States District Court
                         Eastern District of Texas
10                       Marshall Division
                         100 E. Houston
11                       Marshall, Texas  75670
                         (903) 923-7464
12

13
    (Proceedings recorded by mechanical stenography, transcript
14  produced on a CAT system.)

15

16

17

18

19

20

21

22

23

24

25

|           |    |                                                        |
|-----------|----|--------------------------------------------------------|
| 08:44:03  | 1  | P R O C E E D I N G S                                  |
| 08:44:03  | 2  | (Jury out.)                                            |
| 08:44:04  | 3  | COURT SECURITY OFFICER:  All rise.                     |
| 08:44:05  | 4  | THE COURT:  Be seated, please.                         |
| 08:44:06  | 5  | Are the parties prepared to read into the record       |
| 08:44:13  | 6  | those items from the list of pre-admitted exhibits which |
| 08:44:17  | 7  | were used during yesterday's portion of the trial?     |
| 08:44:19  | 8  | MS. SCHUETZ:  Yes, Your Honor.                          |
| 08:44:20  | 9  | THE COURT:  Please proceed.                             |
| 08:44:21  | 10 | MS. SCHUETZ:  Good morning, Your Honor.  Kelsey         |
| 08:44:29  | 11 | Schuetz for Plaintiffs.                                 |
| 08:44:30  | 12 | Yesterday, Plaintiffs used the following               |
| 08:44:34  | 13 | Plaintiffs' exhibit numbers:  PX-4, 5, 20, 69, 71, 90, 92, |
| 08:44:46  | 14 | 125, 128, 136, 601, 1002, 1612, 1760, 1997, 2000, 2002, |
| 08:45:05  | 15 | 2003, 2004, 2005, 2006, 2007, 2008, 2010, 2013, 2014, 2064, |
| 08:45:23  | 16 | 2105, 2134, 2329, 2332, 2333, 2334, 2335, 2336, 2337, 2338, |
| 08:45:48  | 17 | 2339, 2341, 2343, 2348, 2349, 2355, 2358, 2855, and     |
| 08:46:09  | 18 | Defendant's Trial Exhibit 0524.                        |
| 08:46:11  | 19 | THE COURT:  All right.  Any objections to that         |
| 08:46:12  | 20 | offer from the Plaintiff from Defendant?               |
| 08:46:15  | 21 | MR. MUELLER:  Your Honor, obviously, I haven't had     |
| 08:46:17  | 22 | a chance to check all those in light of the chambers   |
| 08:46:22  | 23 | conference we just had, but I will take counsel's      |
| 08:46:22  | 24 | representation that they have all been used in slides shown |
| 08:46:27  | 25 | to the jury in a substantive fashion.                  |

08:46:27   1          THE COURT:  Do Defendants have a similar rendition
08:46:30   2    to offer for the record?
08:46:32   3          MR. POLLINGER:  Your Honor, we may have some more.
08:46:34   4          MS. SCHUETZ:  Your Honor, we have an additional
08:46:36   5    list of exhibits that were used with Madisetti yesterday.
08:46:38   6          THE COURT:  All right.  Let's hear that addition
08:46:41   7    to Plaintiffs' rendition, and then we'll see if Defendant
08:46:44   8    have anything to add.  Go ahead.
08:46:45   9          MS. SCHUETZ:  Okay.  They were Plaintiffs' Exhibit
08:46:48  10    2, 6, 84, 86, 90, 91, 119, 120, 124, 126, 128, 138, 982,
08:47:06  11    1002, 1695, 1760, 2142, 2214, 2308, and 2735.
08:47:20  12          THE COURT:  All right.  I'll ask again, does
08:47:22  13    Defendant have any objection to what's been offered by
08:47:25  14    Plaintiff?
08:47:25  15          MR. MUELLER:  And, again, Your Honor, same
08:47:26  16    position.  We have not had a chance to check all these
08:47:29  17    slides to confirm that they were substantively used on
08:47:32  18    slides shown to the jury even if not listed by name and
08:47:35  19    testimony, per Your Honor's guidance.
08:47:37  20          At this point, I will take counsel's
08:47:40  21    representation that they were.  And we, Your Honor, for our
08:47:42  22    part do not have any list of exhibits for today.
08:47:45  23          THE COURT:  All right.  Well, I made it quite
08:47:48  24    clear yesterday at the time we recessed that the parties
08:47:51  25    were to meet and confer overnight and be satisfied as to

08:47:53  1  what was going to be offered this morning.

08:47:56  2      So I will find that those offered into the record

08:48:00  3  were used by Plaintiff and are admitted exhibits for

08:48:03  4  purposes of this trial.

08:48:05  5      MS. SCHUETZ:  Yes, Your Honor.

08:48:06  6      THE COURT:  And I'll expect the parties to fully

08:48:09  7  meet and confer so that there is not:  I'll take your

08:48:12  8  representation because I haven't had time to look at it.

08:48:14  9      That's -- that's not in compliance with the

08:48:16  10  instructions I gave last evening.  And so I'm going to

08:48:20  11  consider, to the extent there is an objection, it's been

08:48:23  12  waived.

08:48:23  13      Those are admitted exhibits.

08:48:25  14      MS. SCHUETZ:  Yes, Your Honor.

08:48:26  15      THE COURT:  All right.  Thank you, counsel.

08:48:27  16      MR. SHEASBY:  One quick issue, Your Honor.  I know

08:48:29  17  that they're going to be able to examine Mr. Madisetti and

08:48:34  18  the fact that Dae Won Lee is not coming to trial.  I accept

08:48:38  19  the consequences of that.  Dae Won Lee's testimony was

08:48:40  20  produced in this case on the subject of his patent --

08:48:43  21      THE COURT:  Speak up, Mr. Sheasby, or go to the

08:48:46  22  podium.

08:48:47  23      MR. SHEASBY:  I understand they're going to be

08:48:48  24  able to inquire that Dae Won Lee is not coming to trial,

08:48:52  25  with Mr. Madisetti.  I accept Your Honor's ruling on that.

08:48:55  1  I want to make sure that it is not going to incur -- we

08:48:57  2  won't be violating anything if Professor Madisetti notes

08:49:01  3  that Dae Won Lee's testimony about his patent was produced

08:49:04  4  in this case and that he reviewed it.

08:49:06  5       THE COURT:  Mr. Madisetti is going to testify

08:49:09  6  within the four corners of his report, and as long as he

08:49:12  7  testifies within the four corners of his report, he's on

08:49:16  8  safe ground.

08:49:16  9       MR. SHEASBY:  It is in his report.

08:49:17  10      THE COURT:  If he goes outside those four corners,

08:49:20  11  he has no ground whatsoever.

08:49:22  12      MR. SHEASBY:  I understand your instruction,

08:49:24  13  Your Honor.  Thank you for your patience.

08:49:25  14      MR. SUMMERSGILL:  And, Your Honor, I would just

08:49:27  15  note that Mr. Lee's deposition from a different case was

08:49:33  16  not in Mr. Madisetti's report -- Dr. Madisetti's report, to

08:49:34  17  my knowledge.

08:49:35  18      THE COURT:  Well, Mr. Madisetti's report is going

08:49:37  19  to be whatever it is, and he, like any other expert witness

08:49:40  20  in this case, is going to be confined to the -- the

08:49:46  21  boundaries of that expert report.

08:49:47  22      MR. POLLINGER:  And, Your Honor, and

08:49:50  23  Mr. Summersgill, I suggest you look at Paragraph 169 of his

08:49:56  24  report, because I believe it is cited there.  It's his

08:49:58  25  opening report.  His opening report.

08:50:02   1          THE COURT:  All right.  Is there anything else we

08:50:04   2   need to take up before we return Mr. Madisetti --

08:50:09   3   Dr. Madisetti, I'm sorry, to the witness stand and continue

08:50:11   4   with his direct examination?

08:50:13   5          MR. POLLINGER:  Other than having Professor

08:50:16   6   Madisetti take the stand, we may want to seal the court

08:50:20   7   again before we bring in the jury because the testimony

08:50:24   8   will be under seal, Your Honor.

08:50:26   9          THE COURT:  All right.  Mr. Pollinger, you may go

08:50:28  10   to the podium and prepare.

08:50:32  11          Let me ask you this, sir:  Do you prefer doctor,

08:50:33  12   do you prefer professor, what do you prefer?

08:50:35  13          THE WITNESS:  Either is fine, Your Honor.  Doctor

08:50:37  14   is fine.

08:50:38  15          THE COURT:  If you'd please return to the witness

08:50:40  16   stand.  And I'll remind you on the record, Dr. Madisetti,

08:50:45  17   you remain under oath just as you were yesterday.

08:50:49  18          THE WITNESS:  Yes, Your Honor.

08:50:50  19          THE COURT:  Okay.  Let's bring in the jury,

08:50:52  20   please.

08:50:52  21          COURT SECURITY OFFICER:  All rise.

08:50:54  22          (Jury in.)

08:51:17  23          THE COURT:  Good morning, ladies and gentlemen of

08:51:18  24   the jury.  I hope you had a good evening.  Please have a

08:51:21  25   seat, please.

08:51:22  1          When we recessed yesterday, the Plaintiff, through

08:51:26  2  counsel, Mr. Pollinger, was engaged in a direct examination

08:51:32  3  of Professor Vijay Madisetti.  We stopped in the middle of

08:51:36  4  that direct examination, and we'll continue there this

08:51:39  5  morning.

08:51:40  6          Mr. Pollinger, you may continue with your direct

08:51:43  7  examination of the witness.

08:51:44  8          MR. POLLINGER:  Thank you, Your Honor.

08:51:44  9          (Transcript sealed.)

08:51:44  10         (This portion of the transcript is sealed

08:51:44  11         and filed under separate cover as

09:50:47  12         Sealed Portion No. 5.)

09:50:47  13         (Courtroom unsealed.)

09:51:14  14         THE COURT:  Mr. Sheasby, is there a reason you're

09:51:25  15 not at your proper place at the bar?

09:51:27  16         MR. SHEASBY:  Your Honor --

09:51:29  17         THE COURT:  Do you need to meet with your IT

09:51:31  18 person?

09:51:31  19         MR. SHEASBY:  Your Honor, for the assistance of

09:51:33  20 the cross-examination, I -- I have given up my seat to

09:51:37  21 Mr. Pollinger.

09:51:37  22         THE COURT:  Then please find a seat somewhere

09:51:39  23 else.

09:51:51  24         All right.  You may proceed, counsel.

09:51:53  25         MR. SUMMERSGILL:  Thank you, Your Honor.

397

|  |  |  |
|---|---|---|
| 09:51:53 | 1 | <u>CROSS-EXAMINATION</u> |
| 09:51:53 | 2 | BY MR. SUMMERSGILL: |
| 09:51:55 | 3 | Q.  Good morning, Professor Madisetti. |
| 09:51:56 | 4 | A.  Good morning, sir. |
| 09:51:57 | 5 | Q.  My name is Michael Summersgill.  We've met a few times |
| 09:52:01 | 6 | before, including at your deposition.  Is it okay if I ask |
| 09:52:04 | 7 | you a few questions today? |
| 09:52:05 | 8 | A.  Sure. |
| 09:52:06 | 9 | Q.  Now, you're appearing today as an expert witness, |
| 09:52:09 | 10 | correct? |
| 09:52:10 | 11 | A.  Yes, as an independent expert witness. |
| 09:52:12 | 12 | Q.  And you're charging the Plaintiffs for your time today, |
| 09:52:16 | 13 | correct? |
| 09:52:16 | 14 | A.  Yes. |
| 09:52:16 | 15 | Q.  You're charging the Plaintiffs for your time working on |
| 09:52:19 | 16 | this case, correct? |
| 09:52:20 | 17 | A.  Yes. |
| 09:52:21 | 18 | Q.  And you're charging the Plaintiffs $500.00 an hour, |
| 09:52:25 | 19 | right? |
| 09:52:25 | 20 | A.  Yes. |
| 09:52:26 | 21 | Q.  And as of your deposition, I believe, two months ago, |
| 09:52:30 | 22 | you had billed between three and 400 hours to this case, |
| 09:52:36 | 23 | correct? |
| 09:52:36 | 24 | A.  I don't remember the exact numbers, but that sounds |
| 09:52:39 | 25 | right. |

09:52:39   1   Q.  And since your deposition, you've certainly spent more
09:52:42   2   time working on the case, right?
09:52:44   3   A.  Yes.  The last couple of months, yes.
09:52:46   4   Q.  And including to prepare for your testimony today,
09:52:50   5   right?
09:52:50   6   A.  Yes.
09:52:51   7   Q.  And so is it fair to say that you've billed the
09:52:54   8   Plaintiffs hundreds of thousands of dollars for your work
09:52:57   9   on this case?
09:52:58  10   A.  Yes.
09:52:59  11   Q.  More than $400,000.00?
09:53:02  12   A.  I -- I don't think so, but something -- again,
09:53:10  13   recalculate, probably 600 hours times $500.00.
09:53:15  14   Q.  So something in the vicinity of $400,000.00; is that
09:53:22  15   fair?
09:53:22  16   A.  Between -- yeah, 300 and 400, maybe less -- a little
09:53:24  17   less, yes.
09:53:24  18   Q.  Now, this isn't your first time working as an expert
09:53:29  19   witness in a patent litigation, right?
09:53:32  20   A.  No, it's not.
09:53:33  21   Q.  And, in fact, you've worked as an expert in patent
09:53:36  22   litigation cases over 50 times, right?
09:53:38  23   A.  This is over the last 15, 20 years.
09:53:40  24   Q.  But you've worked as an expert litigation witness over
09:53:44  25   50 times, right?

| | | |
|---|---|---|
| 09:53:44 | 1 | A.  Yes, over the last 10, 15 years. |
| 09:53:47 | 2 | Q.  And you've had your deposition taken 75 to 80 times, |
| 09:53:52 | 3 | correct? |
| 09:53:52 | 4 | A.  Yes.  Again, that's -- that's a rough number, yes. |
| 09:53:58 | 5 | Q.  You've testified at trial roughly 30 times before, |
| 09:54:02 | 6 | correct? |
| 09:54:02 | 7 | A.  Yes.  I mean, again, it's a rough number. |
| 09:54:05 | 8 | Q.  And over the course of your career, you've made between |
| 09:54:09 | 9 | two and $3 million working as a litigation expert witness, |
| 09:54:15 | 10 | correct? |
| 09:54:15 | 11 | A.  Yes.  Over the past 10, 15 years, if you multiply the |
| 09:54:21 | 12 | amount per year over those years. |
| 09:54:23 | 13 | Q.  And during that time -- over that period of time, at |
| 09:54:26 | 14 | least 30 to 40 percent of your income came from serving as |
| 09:54:32 | 15 | a litigation expert witness, correct? |
| 09:54:33 | 16 | A.  Some years, yes.  Some years -- some years, less.  Some |
| 09:54:42 | 17 | years, around that. |
| 09:54:43 | 18 | Q.  Now, in this case, you're offering testimony on behalf |
| 09:54:47 | 19 | of the five Plaintiffs, correct? |
| 09:54:49 | 20 | A.  Yes. |
| 09:54:49 | 21 | Q.  And that's who retained you in this case, correct? |
| 09:54:54 | 22 | A.  Yes. |
| 09:54:54 | 23 | Q.  But at your deposition just two months ago, you told us |
| 09:55:02 | 24 | you couldn't -- you couldn't recall the specifics of who |
| 09:55:05 | 25 | retained you, correct? |

```
09:55:06   1   A.  I was mentioning PanOptis, but you had asked me about
09:55:09   2   all the Defendants' names.  I did not remember the legal
09:55:11   3   names.
09:55:12   4   Q.  You were unable to identify the five Plaintiffs in this
09:55:16   5   case, right?
09:55:17   6   A.  By -- by the legal names, yes.  I could not identify by
09:55:24   7   the legal names.  I mentioned PanOptis.
09:55:26   8   Q.  Well, and what you told us was that you deferred to the
09:55:29   9   Plaintiffs' legal side about who you were providing
09:55:32  10   testimony for, right?
09:55:34  11   A.  Yes.  I said I couldn't remember the legal names.
09:55:41  12   Q.  Right.  So you couldn't remember the -- who the
09:55:45  13   Plaintiffs were, and you were deferring to the Plaintiffs'
09:55:47  14   lawyers as to who you were providing testimony for, right?
09:55:49  15   A.  Yes.  I was saying I was working for PanOptis.
09:55:53  16   Q.  Now, you do know who the Defendant is in this case,
09:55:56  17   Apple, correct?
09:55:57  18   A.  Yes.
09:55:59  19   Q.  And Mr. Pollinger didn't ask you questions about your
09:56:03  20   work against Apple in the past, did he?
09:56:05  21   A.  I'm not against Apple.  I provide independent technical
09:56:10  22   opinions.
09:56:11  23   Q.  Well, is it okay if I ask you a few questions about
09:56:14  24   your prior testimony opposed to Apple?
09:56:17  25   A.  Sure.
```

09:56:17  1   Q.  So this isn't the first time that you've testified on

09:56:20  2   the opposite side of a patent litigation from Apple, right?

09:56:24  3   A.  That's right.

09:56:25  4   Q.  And you've testified opposite Apple at least nine

09:56:30  5   times, fair?

09:56:31  6   A.  I don't recall the exact number, but a few times.

09:56:36  7   Q.  Rough -- roughly nine times, Dr. Madisetti?

09:56:41  8   A.  I don't recall the exact number, but it could be.  Over

09:56:43  9   the last 10, 12 years, I can remember three or four

09:56:48  10  different matters.

09:56:48  11  Q.  And you'd agree there's nothing wrong with that, right?

09:56:51  12  A.  As I said, I'm not against Apple or any party.  I just

09:56:55  13  do my technical work.

09:56:57  14  Q.  Well, Dr. Madisetti, you've been paid more than

09:57:00  15  $1 million in cases where you were testifying opposite to

09:57:05  16  Apple, right?

09:57:06  17  A.  Again, I don't recall the specific numbers, but this is

09:57:09  18  over the last 10 years, so I -- I would guess that it would

09:57:12  19  be somewhere around there.

09:57:13  20  Q.  Well, let me -- let me see if I can refresh your

09:57:16  21  recollection.  If you could look at Tab 1 in your binder,

09:57:21  22  please.  And that's your deposition, sir.  And if you could

09:57:25  23  look at Page 20, Lines 9 to 14, please.

09:57:31  24  A.  Page 20?

09:57:32  25  Q.  Yes.  Lines 9 to 14, Dr. Madisetti.

09:57:58   1   A.   Yes.

09:57:59   2   Q.   And does that refresh your recollection, sir, that in

09:58:03   3   the cases where you've testified on behalf of a party

09:58:05   4   opposed to Apple, you've been paid close to a million

09:58:10   5   dollars, correct?

09:58:11   6   A.   Yes, I -- I mentioned that.  Again, it's -- it's an

09:58:14   7   estimate, yes.

09:58:14   8   Q.   Now, you're testifying opposed to Apple again in this

09:58:17   9   case, right?

09:58:18  10   A.   As I said, I mean, I -- I -- I would say I was an

09:58:22  11   independent expert, but Apple is on the other side.

09:58:27  12   Q.   Well -- and you'd like the jury to believe that Apple

09:58:30  13   infringes the three patents that you just testified about,

09:58:33  14   right?

09:58:33  15   A.   Yes.  I provided the basis of my opinion, as well.

09:58:35  16   Q.   The '332 patent, the '833 patent, and the '557 patent,

09:58:41  17   correct?

09:58:41  18   A.   Yes.

09:58:41  19   Q.   Now, Dr. Madisetti, there are multiple inventors listed

09:58:46  20   on the front page of each of the three patents you

09:58:50  21   testified about, correct?

09:58:51  22   A.   Yes.

09:58:52  23   Q.   The '557 patent lists multiple inventors, right?

09:58:56  24   A.   Yes.

09:58:57  25   Q.   The '332 patent lists multiple inventors, correct?

403

09:59:04    1    A.  Yes.

09:59:04    2    Q.  And the '833 patent also lists multiple inventors,

09:59:08    3    right?

09:59:08    4    A.  Yes.

09:59:09    5    Q.  And in total -- I counted them up -- there are 15 named

09:59:14    6    inventors on the three patents that you analyzed, correct?

09:59:17    7    A.  I will -- I have not counted the exact number, but I

09:59:24    8    wouldn't be surprised.

09:59:24    9    Q.  Does that sound about right?

09:59:26   10    A.  Yes.

09:59:26   11    Q.  Now, sir, who would know more about the ideas that the

09:59:31   12    inventors came up with, you or the named inventors?

09:59:35   13    A.  I'm -- I'm not sure as to your question.

09:59:41   14    Q.  Well, is it fair to expect that the named inventors

09:59:47   15    would be the ones who are most knowledgeable about what

09:59:50   16    they actually invented?

09:59:51   17    A.  I disagree.  I think the patent is complete.  It

09:59:56   18    provides full details as to what the invention is about.

10:00:00   19    Q.  Okay.  So you know more about the patents and the

10:00:04   20    circumstances of their origination than even the inventors

10:00:08   21    do; is that your testimony?

10:00:09   22    A.  That's not my testimony.  My -- my testimony is that,

10:00:12   23    based on a review of the patents and the file history, I

10:00:15   24    would know as much as anyone else with respect to the

10:00:18   25    patents and what the claims cover --

404

| | | |
|---|---|---|
| 10:00:20 | 1 | Q.  Okay. |
| 10:00:20 | 2 | A.  -- in light of the Court's construction. |
| 10:00:24 | 3 | Q.  Now, you told the jury you conducted an extensive |
| 10:00:27 | 4 | investigation for this case, right? |
| 10:00:30 | 5 | A.  Yes.  I looked at different types of evidence, I looked |
| 10:00:34 | 6 | at deposition testimony, source code, standards, and other |
| 10:00:39 | 7 | such evidence. |
| 10:00:39 | 8 | Q.  You told the jury that you spent hundreds of hours |
| 10:00:44 | 9 | performing your analysis for this case, correct? |
| 10:00:46 | 10 | A.  Yes.  About 200 hours per patent, yes. |
| 10:00:51 | 11 | Q.  And prior to reaching your conclusions and submitting |
| 10:00:54 | 12 | your reports in this case, you didn't speak with any of the |
| 10:01:00 | 13 | named inventors, correct? |
| 10:01:01 | 14 | A.  I did not personally speak to them.  I reviewed their |
| 10:01:05 | 15 | deposition testimony. |
| 10:01:05 | 16 | Q.  Sir, the deposition you're referring to is from a |
| 10:01:12 | 17 | different case, correct? |
| 10:01:14 | 18 | A.  Yes. |
| 10:01:14 | 19 | Q.  You didn't speak to a single inventor on the three |
| 10:01:17 | 20 | patents in this case, correct? |
| 10:01:19 | 21 | A.  Yes.  I did not need to.  I reviewed the patents. |
| 10:01:22 | 22 | Q.  So, in forming your opinions, you never spoke with a |
| 10:01:26 | 23 | single named inventor on the '332 patent, right? |
| 10:01:30 | 24 | A.  I did not. |
| 10:01:30 | 25 | Q.  You didn't speak to a single named inventor on the '833 |

10:01:37  1  patent?

10:01:37  2  A.  I did not.

10:01:38  3  Q.  And you didn't speak to a single named inventor on the

10:01:42  4  '557 patent, right?

10:01:42  5  A.  I did not.

10:01:43  6  Q.  Now --

10:01:45  7          THE COURT:  Dr. Madisetti, pull the microphone

10:01:46  8  down just a little bit.

10:01:48  9          THE WITNESS:  Sorry -- sorry, Your Honor.

10:01:49  10          THE COURT:  Thank you.  That helps.

10:01:50  11          Continue, please.

10:01:56  12  Q.  (By Mr. Summersgill)  So, Dr. Madisetti, you never

10:02:00  13  personally spoke to the inventors about the work they were

10:02:02  14  doing that led to any of these patents, right?

10:02:03  15  A.  I did not.  As I said, I did not need to.

10:02:06  16  Q.  And you never asked the inventors how they came up with

10:02:08  17  their ideas that resulted in the patents, correct?

10:02:11  18  A.  I did not speak to them.

10:02:13  19  Q.  And you never asked the inventors about the

10:02:16  20  significance of these three patents, right?

10:02:19  21  A.  I did not.  I reviewed the papers and patents.

10:02:23  22  Q.  Now, as part of your work on this case, you have spoken

10:02:27  23  with Optis's lawyers, correct?

10:02:32  24  A.  Yes.

10:02:33  25  Q.  The gentlemen sitting at this table right here,

| | | |
|---|---|---|
| 10:02:37 | 1 | correct? |
| 10:02:37 | 2 | A.  Yes. |
| 10:02:37 | 3 | Q.  And you spent many hours speaking with Optis's lawyers, |
| 10:02:41 | 4 | correct? |
| 10:02:41 | 5 | A.  Yes. |
| 10:02:43 | 6 | Q.  So we can both agree that you've spent more time |
| 10:02:47 | 7 | speaking to Optis's lawyers than with the inventors of the |
| 10:02:52 | 8 | patents in this case? |
| 10:02:53 | 9 | A.  Yes.  But I said, I reviewed the documents at issue, |
| 10:02:57 | 10 | including the patents and the proposals and was fully |
| 10:03:00 | 11 | informed. |
| 10:03:00 | 12 | Q.  Right.  But you didn't speak to the inventors? |
| 10:03:03 | 13 | A.  I agree. |
| 10:03:03 | 14 | Q.  Now, we can agree that the baseband computer chips that |
| 10:03:08 | 15 | are in the Apple products allow the devices to communicate |
| 10:03:11 | 16 | over cellular networks, right? |
| 10:03:14 | 17 | A.  The baseband chips are part of the equation.  You |
| 10:03:20 | 18 | require the RF, you require the other stages, as well. |
| 10:03:23 | 19 | Q.  And if you were to pull those baseband chips out of the |
| 10:03:26 | 20 | products, they wouldn't work, right? |
| 10:03:29 | 21 | A.  Yes. |
| 10:03:29 | 22 | Q.  And if you pulled those baseband chips out of the |
| 10:03:32 | 23 | products, you wouldn't have an infringement theory, |
| 10:03:36 | 24 | correct? |
| 10:03:36 | 25 | A.  The baseband is part of the infringement, so if you |

| | | |
|---|---|---|
| 10:03:38 | 1 | pull a part of it out, you wouldn't. |
| 10:03:43 | 2 | Q.  Now, historically, Apple has purchased its baseband |
| 10:03:46 | 3 | chips from Intel and Qualcomm, correct? |
| 10:03:49 | 4 | A.  Yes, the two suppliers, Intel and Qualcomm. |
| 10:03:52 | 5 | Q.  And Intel is a company that specializes in making |
| 10:03:59 | 6 | computer chips, right? |
| 10:04:03 | 7 | A.  Yes. |
| 10:04:04 | 8 | Q.  Qualcomm is a company that specializes in making |
| 10:04:07 | 9 | computer chips, right? |
| 10:04:08 | 10 | A.  Yes, sir. |
| 10:04:08 | 11 | Q.  And you'd agree that both of those companies have very |
| 10:04:17 | 12 | significant expertise designing computer chips, right? |
| 10:04:19 | 13 | A.  Again, it's a very general question, but I would |
| 10:04:22 | 14 | generally agree. |
| 10:04:22 | 15 | Q.  Now, to be sure how the functionalities in the Apple |
| 10:04:26 | 16 | products work that you've accused of infringement, you need |
| 10:04:30 | 17 | to be able to look at those baseband chips in the Apple |
| 10:04:33 | 18 | products, right? |
| 10:04:35 | 19 | A.  You have to look at the baseband and also the other -- |
| 10:04:39 | 20 | other chips, not just the baseband. |
| 10:04:40 | 21 | Q.  And you'd need to look at the source code of the |
| 10:04:45 | 22 | baseband chips, correct? |
| 10:04:46 | 23 | A.  Yes, the source code and the associated product |
| 10:04:50 | 24 | descriptions, so I did that. |
| 10:04:53 | 25 | Q.  All right.  Well, let's turn to the specific analysis |

10:04:55  1   you did in this case, Dr. Madisetti.

10:04:58  2          Please turn to PX-4, which is Tab 19 in your

10:05:06  3   binder.  This is the '557 patent, correct?

10:05:12  4   A.  Which volume is it, sir?

10:05:18  5   Q.  It is Tab 19.  I believe it's in the first volume,

10:05:21  6   Dr. Madisetti.  I'm sorry, it's in the second volume.

10:05:26  7   A.  Yes.

10:05:27  8   Q.  My apologies.  And just let me know when you have that,

10:05:36  9   sir.

10:05:36  10  A.  Yes, I'm on Tab 19.

10:05:53  11  Q.  So this is the '557 patent that you analyzed in this

10:05:56  12  case, right?

10:05:57  13  A.  Yes.

10:05:57  14  Q.  And the '557 patent relates to the process of sending

10:06:00  15  messages over a random access channel called the RACH

10:06:10  16  channel, right?

10:06:10  17  A.  Yes, sir, at a -- at a high level.

10:06:13  18  Q.  And mobile devices use this random access channel to

10:06:18  19  make an initial connection with a base station, right?

10:06:20  20  A.  Yes.

10:06:20  21  Q.  And the '557 patent, among other things, relates to the

10:06:23  22  use of something called sequences -- and you referred to

10:06:27  23  them as signatures in your direct testimony -- to make that

10:06:31  24  initial connection, correct?

10:06:33  25  A.  Yes.

409

10:06:34  1   Q.  Now, in your testimony, you discussed Claims 1 and 10

10:06:38  2   of the '557 patent, correct?

10:06:39  3   A.  Yes.

10:06:43  4        MR. SUMMERSGILL:  And could we please pull up

10:06:46  5   Claim 1?

10:06:48  6   Q.  (By Mr. Summersgill)  Now, Claim 1 starts by saying, a

10:06:51  7   mobile station apparatus comprising.  Do you see that?

10:06:56  8   A.  I do.

10:06:57  9   Q.  And then there are a series of limitations that follow

10:06:59  10  in the claim, right?

10:07:00  11  A.  Yes, different parts.

10:07:02  12  Q.  And even you would agree that certain elements of the

10:07:06  13  claims were known before the '557 patent, right?

10:07:09  14  A.  I think we discussed this in my deposition.  I said,

10:07:13  15  not in the claimed manner.

10:07:15  16  Q.  Well, Claim 1 requires a mobile station, correct?

10:07:19  17  A.  Yes.

10:07:20  18  Q.  An example of a mobile station is a cell phone,

10:07:26  19  correct?

10:07:26  20  A.  Yes.  Outside the context of the claim.

10:07:28  21  Q.  And cell phones existed before the '557 patent, right?

10:07:33  22  A.  Yes, but not in the manner claimed.  That's what we

10:07:36  23  said.

10:07:36  24  Q.  Base stations existed before the '557 patent, right?

10:07:40  25  A.  Yes.

10:07:40    1   Q.  Before the '557 patent, it was known that mobile phones

10:07:47    2   could initiate access with a base station, correct?

10:07:50    3   A.  Yes.  Outside the context of the claims.

10:07:54    4   Q.  And, for example, the 3G standard, which is the

10:07:58    5   standard that preceded LTE and the '557 patent, that

10:08:03    6   included a way for mobile phones to initiate access with

10:08:08    7   base stations, right?

10:08:09    8   A.  Yes, in a different way.

10:08:10    9   Q.  And the 3G standard used sequences to initiate access

10:08:16   10   with base stations, correct?

10:08:18   11   A.  Yes, in a different way.

10:08:20   12   Q.  And before the '557 patent, the idea of generating

10:08:26   13   sequences for use in initiating access with a base station

10:08:30   14   was also known, right?

10:08:33   15   A.  Yes, but I -- as I said, in a different way.

10:08:36   16   Q.  Now -- so we can agree that the '557 patent requires

10:08:43   17   performing this RACH procedure in a very specific way,

10:08:48   18   right?

10:08:48   19   A.  I would defer to the claims, Claims 1 and Claims 10.

10:08:54   20   Q.  Well, sir, you don't disagree that the '557 patent

10:08:59   21   describes a specific way of how mobile devices perform this

10:09:06   22   RACH procedure, do you?

10:09:07   23   A.  At a very high level, yes, but I will defer to the

10:09:13   24   claims as to the detail.

10:09:14   25   Q.  Now, it's your opinion that Apple has infringed Claims

10:09:17   1   1 and 10, correct?

10:09:18   2   A.  Yes.  I provided the support in my presentation.

10:09:21   3   Q.  And to be clear, Apple doesn't have the burden of

10:09:26   4   proving that it does not infringe, right?

10:09:29   5   A.  I don't -- I'm -- I'm not offering a legal opinion.

10:09:33   6   All I've done is shown the infringement.

10:09:35   7   Q.  But you understand, sir, do you not, that the

10:09:38   8   Plaintiffs have the burden of proving infringement,

10:09:43   9   correct?

10:09:43  10   A.  At a high level, yes.

10:09:45  11   Q.  And that means that the Plaintiffs must prove that

10:09:48  12   everything in the asserted claims is found within the Apple

10:09:55  13   products, right?

10:09:56  14   A.  Yes, that's what I've done.

10:09:57  15   Q.  And if even one limitation is missing from Apple's

10:10:00  16   products, the jury must find no infringement, correct?

10:10:07  17   A.  Yes.

10:10:07  18   Q.  And Apple says that the Qualcomm and Intel baseband

10:10:11  19   chips that are in the Apple products don't meet at least

10:10:15  20   this selecting unit limitation -- that's the second

10:10:19  21   limitation on our screen -- right?

10:10:21  22   A.  Yes.  You are to be a little more specific, but -- but

10:10:29  23   at a high level, yes.

10:10:31  24   Q.  Now, I'm not going to read all of them because it will

10:10:38  25   take too long, but my count, the selecting unit limitation

10:10:42   1   contains about 93 words.  Is that about right?

10:10:47   2   A.  Again, I -- I will take your representation on that.

10:10:50   3   Q.  Well, we can agree that the Plaintiffs have to show

10:10:53   4   that everything in that limitation is found within the

10:10:57   5   Apple products, right?

10:10:57   6   A.  Yes, I've shown that.

10:10:59   7   Q.  Now, the selecting unit requirement of Claim 1

10:11:05   8   requires, among other things, that a mobile device, quote,

10:11:10   9   randomly select a sequence from a plurality of sequences

10:11:17  10   contained in one group of a plurality of groups into which

10:11:22  11   a pre-determined number of sequences that are generated

10:11:26  12   from a plurality of base sequences.  Do you see that?

10:11:30  13   A.  That's a portion of the limitation.  So the entire

10:11:33  14   limitation must be present.

10:11:34  15   Q.  Right.  And -- but I -- did I read that portion of the

10:11:38  16   limitation correctly, Dr. Madisetti?

10:11:40  17   A.  Yes.

10:11:41  18   Q.  And so the claim includes the language, quote,

10:11:45  19   sequences that are generated, correct?

10:11:50  20   A.  It includes the entire limitation.  So it doesn't

10:11:54  21   require that the sequences are generated.

10:11:57  22   Q.  Sir, the claim includes the languages sequences --

10:12:02  23   sequences that are generated, right?

10:12:04  24   A.  I disagree.  I would say that the phrase includes more

10:12:07  25   than that.

413

| | | |
|---|---|---|
| 10:12:09 | 1 | Q.  Okay.  But we can both agree, sir, that the words, |
| 10:12:14 | 2 | sequences that are generated from a plurality of base |
| 10:12:18 | 3 | sequences, are in the claim, right? |
| 10:12:19 | 4 | A.  The English words are present, but the claim does not |
| 10:12:24 | 5 | require that the sequences have to be pregenerated. |
| 10:12:30 | 6 | Q.  Okay.  So it's your testimony, sir, that the claim says |
| 10:12:33 | 7 | that sequences that are generated from a plurality of base |
| 10:12:38 | 8 | sequences is in the claims, but that limitation isn't |
| 10:12:41 | 9 | required?  Is that your testimony? |
| 10:12:43 | 10 | A.  No, sir, that's not. |
| 10:12:44 | 11 | Q.  Okay.  So we can agree that the claim requires, quote, |
| 10:12:49 | 12 | sequences that are generated from a plurality of base |
| 10:12:55 | 13 | sequences, right? |
| 10:12:56 | 14 | A.  Again, as I said, I disagree.  The entire claim |
| 10:13:00 | 15 | limitation has to be met.  All I said was the English |
| 10:13:03 | 16 | language, sequences that are generated, is present in the |
| 10:13:07 | 17 | limitation. |
| 10:13:07 | 18 | Q.  Okay.  So the English language that I just read is in |
| 10:13:11 | 19 | the claim, right? |
| 10:13:11 | 20 | A.  Yes, it is. |
| 10:13:12 | 21 | Q.  And Claim 10 also includes that same English language, |
| 10:13:15 | 22 | correct? |
| 10:13:15 | 23 | A.  Yes. |
| 10:13:16 | 24 | Q.  Now, for your infringement analysis, you concluded that |
| 10:13:22 | 25 | that generation -- that the generation functionality in |

10:13:25  1  Apple's baseband chips was irrelevant, didn't you?

10:13:28  2  A.  I said that the embodiments covered both generation and

10:13:35  3  generation from sequences.

10:13:40  4         MR. SUMMERSGILL:  Your Honor, move to strike as

10:13:42  5  non-responsive.

10:13:53  6         THE COURT:  I'll sustain the objection.

10:13:58  7  Q.  (By Mr. Summersgill)  Dr. Madisetti --

10:13:59  8         THE COURT:  The question was, Dr. Madisetti, did

10:14:01  9  you find that the baseband chips were irrelevant.  And your

10:14:09  10 response did not address that question.  So I'm going to

10:14:13  11 sustain the objection.

10:14:14  12        Either ask the question again or move on,

10:14:17  13 Mr. Summersgill.

10:14:18  14        MR. SUMMERSGILL:  Thank you, Your Honor.

10:14:19  15 Q.  (By Mr. Summersgill)  Dr. Madisetti, for your

10:14:22  16 infringement analysis, you concluded that the generation

10:14:26  17 functionality in Apple's baseband chips was irrelevant,

10:14:30  18 correct?

10:14:30  19 A.  I disagree.

10:14:31  20 Q.  Well, you know who Nigel Jones is, correct?

10:14:41  21 A.  Yes.  He did some of the source code review.

10:14:44  22 Q.  He's one of the Plaintiffs' experts in this case,

10:14:46  23 right?

10:14:46  24 A.  Yes.

10:14:47  25 Q.  And he submitted a source code expert report in this

```
10:14:51   1   case?
10:14:54   2   A.  Yes.
10:14:54   3   Q.  Source code is one of the pieces of evidence that would
10:14:58   4   tell you how the baseband chips in the Apple products work,
10:15:04   5   right?
10:15:04   6   A.  Yes.
10:15:04   7   Q.  It's a set of instructions -- source code is a set of
10:15:07   8   instructions that tells the baseband chip what to do,
10:15:12   9   right?
10:15:12  10   A.  Yes.
10:15:13  11   Q.  And you asked Mr. Jones to analyze portions of the
10:15:18  12   source code in the Apple products, right?
10:15:20  13   A.  I also analyzed it myself.
10:15:23  14            MR. SUMMERSGILL:  Move to strike as
10:15:25  15   non-responsive.
10:15:28  16            THE COURT:  I'll sustain that.
10:15:37  17            Dr. Madisetti, the question was:  You asked
10:15:40  18   Mr. Jones to analyze the portion.
10:15:42  19            Your answer was:  I also analyzed it myself.
10:15:45  20            I assume that means, yes, you asked Mr. Jones, but
10:15:49  21   then you went further than that.  You need to limit your
10:15:52  22   question -- your answers, rather, to the questions that are
10:15:56  23   asked.
10:15:56  24            THE WITNESS:  Yes, Your Honor.
10:15:57  25            THE COURT:  Mr. Pollinger will get a chance to
```

| | | |
|---|---|---|
| 10:15:59 | 1 | follow up with additional questions on redirect. |
| 10:16:01 | 2 | THE WITNESS:  Yes, Your Honor. |
| 10:16:01 | 3 | THE COURT:  Let's proceed. |
| 10:16:05 | 4 | Q.  (By Mr. Summersgill)  Dr. Madisetti, you asked |
| 10:16:09 | 5 | Mr. Jones to analyze portions of the source code in the |
| 10:16:11 | 6 | Apple products, correct? |
| 10:16:12 | 7 | A.  Yes. |
| 10:16:12 | 8 | Q.  And you relied on the source code analysis that |
| 10:16:18 | 9 | Dr. Jones -- that Mr. Jones performed, correct? |
| 10:16:21 | 10 | A.  Yes. |
| 10:16:21 | 11 | Q.  And, in fact, you asked him to analyze the code, quote, |
| 10:16:25 | 12 | under your direction, correct? |
| 10:16:26 | 13 | A.  Yes. |
| 10:16:26 | 14 | Q.  Now -- and you told Mr. Jones when you asked him to |
| 10:16:31 | 15 | perform that analysis, that it wasn't necessary for him to |
| 10:16:37 | 16 | describe the code that performs sequence generation in the |
| 10:16:42 | 17 | Apple products, right? |
| 10:16:44 | 18 | A.  I'm not clear as to your question. |
| 10:16:55 | 19 | Q.  Well, you told Mr. Jones, didn't you, that it wasn't |
| 10:17:01 | 20 | necessary for him to describe the source code that performs |
| 10:17:08 | 21 | sequence generation in the Intel and baseband chips, |
| 10:17:17 | 22 | correct? |
| 10:17:17 | 23 | A.  I don't recall.  I mean, I said -- I asked him for a |
| 10:17:21 | 24 | detailed analysis, so I did not exclude anything. |
| 10:17:24 | 25 | Q.  Well, are you aware that Dr. Jones testified that you |

417

| | |
|---|---|
| 10:17:29 | 1 |
| 10:17:34 | 2 |
| 10:17:37 | 3 |
| 10:17:39 | 4 |
| 10:17:43 | 5 |
| 10:17:47 | 6 |
| 10:17:48 | 7 |
| 10:17:53 | 8 |
| 10:17:54 | 9 |
| 10:17:57 | 10 |
| 10:18:01 | 11 |
| 10:18:06 | 12 |
| 10:18:10 | 13 |
| 10:18:13 | 14 |
| 10:18:15 | 15 |
| 10:18:20 | 16 |
| 10:18:26 | 17 |
| 10:18:29 | 18 |
| 10:18:30 | 19 |
| 10:18:33 | 20 |
| 10:18:35 | 21 |
| 10:18:38 | 22 |
| 10:18:38 | 23 |
| 10:18:44 | 24 |
| 10:18:44 | 25 |

1  told him it wasn't necessary to describe the code that

2  provides the sequence generation in the Apple products?

3       MR. POLLINGER:  Your Honor, I object to these

4  references to other depositions that Professor Madisetti

5  hasn't had the opportunity to review.  He needs to

6  establish a foundation first.

7       THE COURT:  Do you have a response,

8  Mr. Summersgill?

9       MR. SUMMERSGILL:  Yes, Your Honor.  He relied on

10  Dr. Jones's report explicitly in his report.  He adopted it

11  into his report.  And he's certainly had an opportunity to

12  review the deposition.  The deposition was taken weeks, if

13  not a month ago, and he's been preparing for trial.  He had

14  plenty of opportunity to review it.

15       THE COURT:  Well, I have no problem with his

16  report having adopted the input, but what Dr. Jones may

17  have said in other places, I don't think you've laid a

18  foundation for that.

19       I'll sustain as to that objection.

20  Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, you're --

21  again, you relied on Dr. -- on Mr. Jones's report, correct?

22  A.  Yes.

23  Q.  And you know that Mr. Jones did this analysis of the

24  source code, correct?

25  A.  Yes.

418

| | | |
|---|---|---|
| 10:18:46 | 1 | Q.  He did it under your direction, correct? |
| 10:18:48 | 2 | A.  Yes. |
| 10:18:50 | 3 | Q.  You know he was deposed in this case, right? |
| 10:18:53 | 4 | A.  Yes. |
| 10:18:54 | 5 | Q.  And you certainly had access to his deposition, |
| 10:18:59 | 6 | correct? |
| 10:18:59 | 7 | A.  Yes. |
| 10:19:00 | 8 | Q.  Did you read his deposition? |
| 10:19:02 | 9 | A.  I -- I skimmed through it.  I did not read it in |
| 10:19:08 | 10 | detail. |
| 10:19:08 | 11 | Q.  Okay.  Well, then let me ask you again, based on your |
| 10:19:12 | 12 | skim through it, are you aware that Dr. Jones testified |
| 10:19:15 | 13 | that you told him, quote, it wasn't necessary to -- |
| 10:19:19 | 14 |         MR. POLLINGER:  Objection, Your Honor. |
| 10:19:21 | 15 | Q.  (By Mr. Summersgill)  -- to describe the code that |
| 10:19:22 | 16 | provides -- |
| 10:19:23 | 17 |         THE COURT:  Let him finish the question. |
| 10:19:24 | 18 |         MR. POLLINGER:  He's publishing -- I'm sorry. |
| 10:19:27 | 19 |         THE COURT:  Finish the question, and then I'll |
| 10:19:29 | 20 | hear the objection. |
| 10:19:30 | 21 | Q.  (By Mr. Summersgill)  Dr. Madisetti, based on your skim |
| 10:19:33 | 22 | of Mr. Jones's deposition, are you aware that he testified |
| 10:19:36 | 23 | that you told him it wasn't necessary to describe the code |
| 10:19:41 | 24 | that provides sequence generation? |
| 10:19:45 | 25 |         MR. POLLINGER:  Your Honor, I object to this |

10:19:46  1    question because Mr. Summersgill is publishing the

10:19:49  2    deposition through his oration prior to giving Professor

10:19:53  3    Madisetti a chance to review it.

10:19:55  4           THE COURT:  I'll sustain that.

10:19:57  5    Q.  (By Mr. Summersgill)  Okay.  Dr. Madisetti, why don't

10:20:11  6    you turn to Tab 17, which is the Jones's deposition,

10:20:17  7    Page 136, Lines 15 to 20?  And let me know after you've had

10:20:19  8    a chance to review it.

10:20:19  9    A.  Which page, sir?

10:20:20  10   Q.  Page 136, Lines 15 to 20.  And just let me know when

10:20:28  11   you've had a chance to review that, sir.

10:21:16  12   A.  Yes, I've reviewed that portion.

10:21:17  13   Q.  And does that refresh your recollection that you told

10:21:21  14   Dr. Jones that it wasn't necessary for him to describe the

10:21:25  15   source code that provides the sequence generation

10:21:28  16   functionality in the Intel and Qualcomm chips?

10:21:33  17   A.  As I said, I don't recall this.  I don't review -- I

10:21:37  18   don't recall reviewing this section, and I won't agree with

10:21:40  19   that.

10:21:40  20   Q.  Well, does reviewing it now refresh your recollection

10:21:43  21   as to whether you told Dr. Jones that he didn't need to

10:21:49  22   describe that portion of the source code?

10:21:50  23   A.  Again, I don't recall this discussion with Dr. -- with

10:21:54  24   Mr. Jones.

10:21:54  25   Q.  Well, isn't it true, sir, that because of what you told

10:22:00  1  Mr. Jones, he didn't analyze the hardware code in Apple --

10:22:06  2  Apple's products that perform the actual sequence

10:22:10  3  generation, right?

10:22:11  4  A.  I disagree.

10:22:13  5  Q.  Sir, did you read the portion of Mr. Jones's deposition

10:22:19  6  where he talks about what he included in his report?

10:22:22  7  A.  Yes, I did.  And even after reading it, I wouldn't

10:22:25  8  agree with that, because he's talking about the claims.

10:22:29  9  Q.  Well, sir, does reading that deposition now refresh

10:22:33  10  your recollection that his report that you relied on

10:22:39  11  doesn't describe the code that performs the actual sequence

10:22:44  12  generation in the Apple products?

10:22:45  13  A.  I disagree that the -- I disagree with that statement.

10:22:50  14  Q.  So you disagree with Mr. Jones?

10:22:53  15  A.  No.  I disagree with your question.  I did review the

10:22:57  16  code that does the sequence generation.  It is described in

10:23:01  17  my report and Mr. Jones's report.

10:23:04  18  Q.  Well, Mr. Jones said that his report does not include

10:23:09  19  the code that performs the actual sequence generation,

10:23:14  20  right?

10:23:14  21  A.  Again, I would disagree with that statement.  I've seen

10:23:17  22  that code, as well as the statement to his report.  I can

10:23:20  23  show that to you in his report.

10:23:22  24  Q.  So you disagree with Mr. Jones?

10:23:24  25  A.  No.

421

10:23:30  1          MR. SUMMERSGILL:  Well, Your Honor, I'd ask that I

10:23:32  2   now have permission to publish that testimony, because he's

10:23:36  3   directly contradicting something that he relied on in his

10:23:38  4   report.

10:23:39  5          MR. POLLINGER:  Objection, Your Honor.  I -- I

10:23:40  6   object to the -- to the characterization.  This question

10:23:45  7   has now been asked multiple times.  I object on the basis

10:23:48  8   of asked and answered.

10:23:51  9          THE COURT:  Well, Mr. Summersgill, I don't know

10:23:53  10  how you can impeach this witness with the testimony of

10:23:56  11  another person.  That's what it sounds like you're --

10:23:59  12  you're asking me to let you do.

10:24:00  13         MR. SUMMERSGILL:  Well, Your Honor, I'm asking you

10:24:02  14  to let me impeach him with the testimony of a source code

10:24:06  15  expert whose report he adopted and whose deposition he's

10:24:11  16  reviewed and now he's disagreeing with.

10:24:17  17         THE COURT:  I don't know how you can impeach a

10:24:19  18  witness with anything other than their own prior

10:24:22  19  inconsistent statements.

10:24:22  20         I'm going to overrule that request.

10:24:25  21         MR. SUMMERSGILL:  Thank you, Your Honor.

10:24:26  22         THE COURT:  Let's move on.

10:24:27  23  Q.  (By Mr. Summersgill)  Now --

10:24:28  24         THE COURT:  As a matter of fact, let's not move

10:24:30  25  on.  Let's use this as a good place to take a recess,

| | | |
|---|---|---|
| 10:24:34 | 1 | ladies and gentlemen. |
| 10:24:34 | 2 | I'll ask the members of the jury simply to close |
| 10:24:37 | 3 | their notebooks and leave them in their chairs, follow all |
| 10:24:41 | 4 | the instructions I've given you, including as you would |
| 10:24:46 | 5 | expect me to remind you, not to discuss the case against |
| 10:24:48 | 6 | each other -- excuse me, among each other.  And we'll have |
| 10:24:54 | 7 | you back in here shortly to continue. |
| 10:24:57 | 8 | The jury is excused for recess at this time. |
| 10:24:59 | 9 | COURT SECURITY OFFICER:  All rise. |
| 10:25:00 | 10 | (Jury out.) |
| 10:25:01 | 11 | THE COURT:  The Court stands in recess. |
| 10:41:00 | 12 | (Recess.) |
| 10:41:05 | 13 | COURT SECURITY OFFICER:  All rise. |
| 10:41:06 | 14 | THE COURT:  Be seated, please. |
| 10:42:46 | 15 | Counsel, let me ask before I bring the jury in, I |
| 10:42:56 | 16 | know we have some remaining witnesses by deposition.  Will |
| 10:42:59 | 17 | you be in a position at the time they are called to give us |
| 10:43:03 | 18 | the allocations of time between Plaintiff and Defendant so |
| 10:43:06 | 19 | we can keep that straight? |
| 10:43:07 | 20 | MR. SHEASBY:  Yes, we will, Your Honor. |
| 10:43:09 | 21 | THE COURT:  Okay. |
| 10:43:10 | 22 | MR. SHEASBY:  Your Honor, may I address one issue |
| 10:43:12 | 23 | before you call in the jury briefly? |
| 10:43:14 | 24 | THE COURT:  You're on the clock, go ahead. |
| 10:43:15 | 25 | MR. SHEASBY:  It relates to the cross-examination |

10:43:17   1   issue.

10:43:17   2           Apple's attorneys talked about Mr. Madisetti's

10:43:22   3   last 15 -- 15 years of being an expert witness and talked

10:43:26   4   about the income he's received over the last 15 years,

10:43:29   5   which was beyond what the Court had authorized.  Part of

10:43:34   6   Dr. Madisetti's income has been from being retained as an

10:43:38   7   expert by the Wilmer firm and the lawyers who represent

10:43:41   8   Apple.

10:43:42   9           THE COURT:  Let me ask you a question,

10:43:43  10   Mr. Sheasby.  Why are you arguing this to me?  He's not

10:43:47  11   your witness.

10:43:48  12           MR. POLLINGER:  Thank you, Your Honor.  I'll just

10:43:49  13   continue on from there.

10:43:51  14           But given the questioning on his income that he's

10:43:53  15   received over the years and all the cases he's had, I would

10:43:57  16   submit that they've opened the door for me to ask on

10:44:00  17   redirect, Professor Madisetti, whether he has ever been

10:44:05  18   hired by the Wilmer Hale law firm and received income

10:44:08  19   through that hiring by the Wilmer Hale law firm.  They've

10:44:10  20   clearly tried to create a negative impression of his work

10:44:16  21   over the years in all of his cases.  In fact, they have

10:44:19  22   hired him --

10:44:21  23           THE COURT:  As long as it's generic like that and

10:44:24  24   not how much money did they pay you and all kinds of

10:44:26  25   detail.  As long as it's the high level, have -- have the

| | | |
|---|---|---|
| 10:44:30 | 1 | Defendant's law firm in this case ever hired you? |
| 10:44:34 | 2 | MR. POLLINGER:  Yes. |
| 10:44:34 | 3 | THE COURT:  I think -- I think the door has been |
| 10:44:36 | 4 | opened to that extent, but not more. |
| 10:44:38 | 5 | MR. POLLINGER:  Thank you, Your Honor. |
| 10:44:39 | 6 | THE COURT:  All right.  All right.  Are you ready |
| 10:44:40 | 7 | to continue, Mr. Summersgill? |
| 10:44:43 | 8 | MR. SUMMERSGILL:  Yes, Your Honor. |
| 10:44:44 | 9 | THE COURT:  Let's bring in the jury, please. |
| 10:44:46 | 10 | COURT SECURITY OFFICER:  All rise. |
| 10:44:49 | 11 | (Jury in.) |
| 10:45:11 | 12 | THE COURT:  Please be seated. |
| 10:45:13 | 13 | We'll continue with the cross-examination of the |
| 10:45:21 | 14 | witness by the Defendant. |
| 10:45:21 | 15 | Mr. Summersgill, you may proceed. |
| 10:45:24 | 16 | MR. SUMMERSGILL:  Thank you, Your Honor. |
| 10:45:25 | 17 | Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, we were |
| 10:45:30 | 18 | discussing the fact that the claims require that |
| 10:45:33 | 19 | sequences -- that sequences are generated from a plurality |
| 10:45:38 | 20 | of base sequences, right? |
| 10:45:42 | 21 | A.  As I said, I mean, the claim speaks for itself.  I |
| 10:45:46 | 22 | would not summarize the claim in any other way. |
| 10:45:49 | 23 | Q.  Now, we can agree that sequence generation is a |
| 10:45:53 | 24 | multi-step process, correct? |
| 10:45:54 | 25 | A.  I didn't understand the question. |

| | | |
|---|---|---|
| 10:46:01 | 1 | Q.  We can agree that sequence generation -- the process of |
| 10:46:04 | 2 | generating a sequence in the Apple products is a multi-step |
| 10:46:08 | 3 | process, correct? |
| 10:46:12 | 4 | A.  Again, I'm not sure.  Are you referring to a portion of |
| 10:46:16 | 5 | my report? |
| 10:46:17 | 6 | Q.  I'm just asking you the question, Dr. Madisetti.  You |
| 10:46:21 | 7 | know, sir, do you not, that the process of sequence |
| 10:46:24 | 8 | generation in the Apple products takes multiple steps, |
| 10:46:31 | 9 | right? |
| 10:46:31 | 10 | A.  I would disagree.  I think that there is a -- once you |
| 10:46:35 | 11 | select the base sequences and the -- |
| 10:46:38 | 12 | THE COURT:  Dr. Madisetti, you disagree. |
| 10:46:39 | 13 | THE WITNESS:  I disagree. |
| 10:46:40 | 14 | THE COURT:  That answers the question.  You don't |
| 10:46:42 | 15 | need to explain the basis of your disagreement unless he |
| 10:46:45 | 16 | asks you for it. |
| 10:46:46 | 17 | THE WITNESS:  Thank you, Your Honor. |
| 10:46:47 | 18 | THE COURT:  Let's continue. |
| 10:46:48 | 19 | Q.  (By Mr. Summersgill)  All right.  Well, Dr. Madisetti, |
| 10:46:49 | 20 | please take a look at your deposition, Tab 1, Page 170, |
| 10:46:54 | 21 | Lines 2 to 11, and let me know when you've had a chance to |
| 10:47:00 | 22 | read that. |
| 10:47:03 | 23 | A.  So which exhibit -- which -- |
| 10:47:05 | 24 | Q.  This is Tab 1 -- |
| 10:47:08 | 25 | A.  Okay. |

| | | |
|---|---|---|
| 10:47:09 | 1 | Q.  -- which is your deposition -- your June 3rd |
| 10:47:13 | 2 | deposition, Page 170, Lines 2 to 11, and let me know when |
| 10:47:19 | 3 | you've had a chance to read that. |
| 10:47:33 | 4 | A.  Sorry, once again, which page? |
| 10:47:34 | 5 | Q.  Page 170 -- |
| 10:47:37 | 6 | A.  170. |
| 10:47:37 | 7 | Q.  -- Lines 2 to 11.  Do you see that, sir? |
| 10:47:47 | 8 | A.  Yes, I'll agree with that portion. |
| 10:48:23 | 9 | Q.  And you were asked the question that you just read, and |
| 10:48:26 | 10 | you -- and you gave that answer, right? |
| 10:48:28 | 11 | A.  At a high level, yes.  But it's not the same language, |
| 10:48:47 | 12 | but at a high level, yes. |
| 10:48:49 | 13 | MR. SUMMERSGILL:  And I'll ask if we can pull up |
| 10:48:52 | 14 | Dr. Madisetti's deposition, Page 170:2 to 11, please. |
| 10:48:56 | 15 | Q.  (By Mr. Summersgill)  You were asked -- this was your |
| 10:48:58 | 16 | deposition, Dr. Madisetti, correct? |
| 10:48:59 | 17 | A.  Yes. |
| 10:49:03 | 18 | Q.  The deposition was taken roughly two months ago, |
| 10:49:07 | 19 | correct? |
| 10:49:07 | 20 | A.  Yes. |
| 10:49:08 | 21 | Q.  On June 3rd of this year, correct? |
| 10:49:11 | 22 | A.  Yes. |
| 10:49:12 | 23 | Q.  You were under oath, correct? |
| 10:49:14 | 24 | A.  Yes. |
| 10:49:14 | 25 | Q.  Same oath you took today? |

10:49:16   1    A.  Yes.

10:49:17   2    Q.  And you told the truth at your deposition, right?

10:49:19   3    A.  Yes.

10:49:21   4    Q.  And you were asked:

10:49:23   5            Question:  Dr. Madisetti, that wasn't my question.

10:49:26   6            Have you cited in your expert report the hardware

10:49:29   7    code that shows how sequences are generated in the Apple

10:49:33   8    products?  Yes or no?

10:49:34   9            Answer:  I don't believe that -- that question has

10:49:40   10   a yes or no answer.  Sequence generation is a multi-step

10:49:45   11   process, and I have cited most of the steps.  To the extent

10:49:48   12   that Mr. Lanning argues that certain portions are not

10:49:52   13   cited, I reviewed that code, and I believe that they're not

10:49:55   14   relevant to the infringement analysis.

10:49:56   15           You were asked that question, and you gave that

10:50:01   16   answer, correct?

10:50:02   17   A.  Yes.

10:50:02   18   Q.  So we can agree sequence generation is a multi-step

10:50:07   19   process, correct?

10:50:08   20   A.  Yes, in that context.

10:50:10   21   Q.  And your report only cited to source code for some --

10:50:15   22           MR. SUMMERSGILL:  Can we keep that up, please?

10:50:19   23   Q.  (By Mr. Summersgill)  -- for some but not all of those

10:50:21   24   steps, correct?

10:50:22   25   A.  Yes.  And I've reviewed the remaining code, yes.

10:50:25  1   Q.  Now, Dr. Madisetti, you're aware, are you not, that

10:50:32  2   Defendant's Exhibits DTX-1931 and 1947 are the hardware

10:50:42  3   source code for sequence generation in the Intel and

10:50:45  4   Qualcomm chips, right?

10:50:46  5   A.  I would have to look at those.

10:50:49  6   Q.  Okay.  Well, you didn't show the jury either of those

10:50:53  7   two exhibits in your two-hour-long direct, correct?

10:50:58  8   A.  Well, I don't -- yes, you may be right, but I don't

10:51:04  9   recall what that code was.

10:51:14  10          MR. SUMMERSGILL:  Now, if we could put Claim 1

10:51:17  11  back up, please.

10:51:19  12  Q.  (By Mr. Summersgill)  So Claim 1 of the '557 patent

10:51:24  13  requires a phone to select a sequence from a plurality of

10:51:30  14  sequences, correct?

10:51:30  15  A.  Again, I disagree.  It requires the whole limitation.

10:51:35  16  Q.  Right.  It requires the whole limitation, but part of

10:51:39  17  that limitation is to select a sequence from a plurality of

10:51:44  18  sequences, correct?

10:51:45  19  A.  Again, as a part of the entire limitation.  So I would

10:51:49  20  disagree if you said it was just that portion.

10:51:52  21  Q.  Well, I'm not saying it's just that portion,

10:51:55  22  Dr. Madisetti.  You understand that, right?

10:51:57  23  A.  Well, then I would agree with you that the selecting

10:52:00  24  unit is to be configured as claimed.

10:52:04  25  Q.  And part of the claim is that it has to select a

429

| | | |
|---|---|---|
| 10:52:08 | 1 | sequence from a plurality of sequences, correct? |
| 10:52:11 | 2 | A.  Yes, a part of it. |
| 10:52:12 | 3 | Q.  Now, you told the jury that this requirement to select |
| 10:52:19 | 4 | a sequence from a plurality of sequences is met in the |
| 10:52:22 | 5 | Apple products by selecting something that you referred to |
| 10:52:25 | 6 | as a sequence index, correct? |
| 10:52:29 | 7 | A.  Yes. |
| 10:52:29 | 8 | Q.  Now, the claims require selecting a sequence, not just |
| 10:52:38 | 9 | a sequence index, right? |
| 10:52:40 | 10 | A.  I disagree. |
| 10:52:41 | 11 | Q.  Well -- I apologize.  Finish your answer. |
| 10:52:44 | 12 | A.  I disagree. |
| 10:52:45 | 13 | Q.  The word that the claims use is "sequence," correct? |
| 10:52:49 | 14 | A.  Yes.  I -- I said that, as described in the |
| 10:52:55 | 15 | embodiments, selecting a sequence is the same as selecting |
| 10:53:00 | 16 | a sequence index in the claims. |
| 10:53:02 | 17 | MR. SUMMERSGILL:  Your Honor, move to strike as |
| 10:53:04 | 18 | non-responsive. |
| 10:53:05 | 19 | THE COURT:  Sustained. |
| 10:53:06 | 20 | Q.  (By Mr. Summersgill)  Dr. Madisetti, the word used in |
| 10:53:08 | 21 | the claim is "sequence," correct? |
| 10:53:12 | 22 | A.  Yes. |
| 10:53:12 | 23 | Q.  And in your own expert report, when you wanted to |
| 10:53:16 | 24 | describe a sequence, you called it a sequence, correct? |
| 10:53:20 | 25 | A.  Could you be more specific? |

10:53:28  1  Q.  Yeah.  When you wanted to describe a sequence index in

10:53:32  2  your expert report, you called it a sequence index, right?

10:53:37  3  A.  Yes.

10:53:38  4  Q.  And when you wanted to describe a sequence in your

10:53:41  5  expert report, you called it a sequence, right?

10:53:45  6  A.  Yes.

10:53:45  7  Q.  And even you have stated that a sequence index just

10:53:53  8  represents a sequence; it's not the sequence itself,

10:53:56  9  correct?

10:53:56  10  A.  Again, you have to be more specific.

10:54:04  11  Q.  Well, you have taken the position, have you not, in

10:54:11  12  this litigation that a sequence index just represents the

10:54:16  13  actual sequence but isn't the sequence itself, correct?

10:54:19  14  A.  You have to point to some specific portion of my

10:54:25  15  testimony.

10:54:27  16  Q.  All right.

10:54:31  17         MR. SUMMERSGILL:  Well, could we pull up

10:54:33  18  Dr. Madisetti's report -- opening report, Paragraph 235?

10:54:39  19  Q.  (By Mr. Summersgill)  The first sentence of that -- do

10:54:41  20  you see that, Dr. Madisetti?

10:54:42  21  A.  Yes, I do.

10:54:45  22  Q.  And in the first sentence, you state:  For example,

10:54:50  23  Apple's Qualcomm products randomly select a sequence index

10:54:54  24  that represents a sequence from a plurality of available

10:54:59  25  sequence indexes.

10:55:00    1              Did I read that correctly?

10:55:02    2    A.   Yes.

10:55:02    3    Q.   And so even you, in your expert report in this case,

10:55:07    4    distinguished between sequences and sequence indexes,

10:55:10    5    correct?

10:55:10    6    A.   I did not.  I was saying that the sequence index is --

10:55:14    7    selecting a sequence index is the same as selecting the

10:55:18    8    sequence.

10:55:18    9    Q.   Well, LTE sequences have a certain length, right?

10:55:24   10    A.   Yes.

10:55:25   11    Q.   LTE sequences are either 139 or 839 complex values

10:55:35   12    long, correct?

10:55:35   13    A.   Yes.

10:55:35   14    Q.   But a sequence index is only a single value, right?

10:55:41   15    A.   A sequence index is an index that takes a value.

10:55:49   16    Q.   It's only a single value, right?

10:55:54   17    A.   I would disagree with that.  A sequence index takes a

10:55:57   18    value.

10:55:57   19    Q.   Well, Dr. Madisetti, you can't say whether a sequence

10:56:09   20    index is the same thing as a sequence, correct?

10:56:12   21    A.   Could you please repeat the question?

10:56:17   22    Q.   Yes.  You can't say whether a sequence index is the

10:56:23   23    same thing as a sequence itself, correct?

10:56:25   24    A.   I don't think I expressed an opinion on that issue.  I

10:56:41   25    said that selecting a sequence index is the same thing as a

10:56:49   1   sequence.

10:56:49   2   Q.   Right.   So let me get this right.   You offered the

10:56:51   3   opinion that Apple selects a sequence index, correct?

10:56:55   4   A.   No, I offered an opinion that Apple selects a sequence

10:56:58   5   by selecting the sequence index.

10:57:01   6   Q.   Right.   But you can't say whether a sequence index is

10:57:03   7   the same thing as a sequence itself, right?

10:57:06   8   A.   I did not offer an opinion on that separate issue.

10:57:09   9   Q.   And we can agree that when the inventors went to get

10:57:12   10  their patent --

10:57:13   11          MR. SUMMERSGILL:   And if we could put Claim 1 back

10:57:17   12  up.

10:57:17   13  Q.   (By Mr. Summersgill)   -- the word they used was

10:57:19   14  "sequence," correct?

10:57:19   15  A.   Yes.

10:57:20   16  Q.   Now --

10:57:23   17  A.   As I said, I can explain that.

10:57:25   18  Q.   Now, Dr. Madisetti, the '557 patent isn't the only way

10:57:29   19  to use sequences for initiating access, correct?

10:57:33   20  A.   Could you please be more specific?

10:57:35   21  Q.   The '557 patent isn't the only way for a cell phone to

10:57:40   22  initiate -- to use sequences and initiate access with a

10:57:44   23  base station, right?

10:57:49   24  A.   By -- again, I'm not sure as to your question.   Is

10:57:52   25  it -- what do you mean by only way?

433

10:57:55   1   Q.  Fair enough.

10:57:56   2       As part of your analysis, you analyzed potential

10:58:00   3   alternatives to the '557 patent, right?

10:58:02   4   A.  Yes.

10:58:03   5   Q.  And we can agree the '557 patent requires arranging

10:58:10   6   sequences in a particular way, correct?

10:58:14   7   A.  Yes.  The claims describe the ways.

10:58:18   8   Q.  The claims -- and we can see it in Claim 1 -- require

10:58:23   9   sequences generated from the base -- from the same base

10:58:26   10  sequence and having different cyclic shifts arranged in an

10:58:31   11  increasing order of the cyclic shift, correct?

10:58:34   12  A.  Yes, that's a portion of the limitation.

10:58:37   13  Q.  Now, Apple proposed that one alternative to the '557

10:58:42   14  way of doing things would be to arrange sequences in a

10:58:45   15  decreasing order of cyclic shift, correct?

10:58:51   16  A.  I believe so.

10:58:52   17  Q.  And we can agree that decreasing is the opposite of

10:58:55   18  increasing, correct?

10:58:59   19  A.  No, because in the context of this limitation, it is

10:59:07   20  not, as I can explain.

10:59:10   21  Q.  Well, if Georgia Tech told you that they were

10:59:13   22  decreasing your salary, you'd know the difference between

10:59:17   23  that and increasing your salary, right?

10:59:21   24  A.  As I said, that's a different example.

10:59:23   25       But what happens in this case is that it's a

| | | |
|---|---|---|
| 10:59:26 | 1 | cycle -- it's a cyclic shift, so when you move something in |
| 10:59:29 | 2 | a circle, when you decrease it in one way, it increases in |
| 10:59:33 | 3 | the other way. |
| 10:59:35 | 4 | MR. SUMMERSGILL:  Your Honor, move to strike as |
| 10:59:36 | 5 | non-responsive. |
| 10:59:37 | 6 | THE COURT:  Sustained. |
| 10:59:39 | 7 | Q.  (By Mr. Summersgill)  Dr. Madisetti, in this case, |
| 10:59:42 | 8 | you've taken the position that Apple's decreasing order |
| 10:59:47 | 9 | alternative would still infringe the increasing limitation |
| 10:59:52 | 10 | of the '557 claims, correct? |
| 10:59:55 | 11 | A.  I did not.  I think I said I did not take an opinion on |
| 11:00:03 | 12 | that issue because it was not clear as to what Apple was |
| 11:00:05 | 13 | proposing. |
| 11:00:06 | 14 | Q.  Well, can we see what you said in your expert report, |
| 11:00:09 | 15 | Dr. Madisetti? |
| 11:00:10 | 16 | A.  Sure. |
| 11:00:11 | 17 | MR. SUMMERSGILL:  Let's pull up Dr. Madisetti's |
| 11:00:14 | 18 | opening report, Paragraph 506 -- |
| 11:00:16 | 19 | THE COURT:  Yes, Mr. Pollinger? |
| 11:00:18 | 20 | MR. POLLINGER:  Your Honor, I object to showing |
| 11:00:20 | 21 | this -- publishing this to the jury before establishing a |
| 11:00:24 | 22 | foundation whether there's a need to show it to the jury |
| 11:00:27 | 23 | and a basis to show it to the jury. |
| 11:00:29 | 24 | THE COURT:  This is his expert report.  It's a |
| 11:00:30 | 25 | prior -- we'll find out, but I assume it's going to be a |

11:00:36    1   prior inconsistent statement.

11:00:37    2           MR. POLLINGER:  Thank you, Your Honor.

11:00:38    3           THE COURT:  I don't see that there's a lack of

11:00:40    4   foundation here.  That's overruled.

11:00:42    5   Q.  (By Mr. Summersgill)  And in the second sentence in

11:00:44    6   that paragraph, Dr. Madisetti, you stated:  First, with

11:00:48    7   respect to Apple's decreasing order example, my opinion is

11:00:55    8   that this alternative is infringing.  Do you see that?

11:01:01    9   A.  Yes.  So that means what I said earlier, that

11:01:06   10   increasing and decreasing are the same thing.

11:01:08   11   Q.  So your expert opinion is that increasing -- increasing

11:01:11   12   and decreasing mean the same thing, correct?

11:01:12   13   A.  In the context of what was disclosed by Apple.

11:01:16   14   Q.  Now, could we now turn to the '332 patent,

11:01:22   15   Dr. Madisetti?

11:01:22   16   A.  Sure.

11:01:23   17   Q.  Now, this is the patent that you discussed with the

11:01:25   18   jury that has an equation in the claims, correct?

11:01:28   19   A.  Among other things.

11:01:29   20   Q.  And you were here for Mr. Sheasby's opening, right?

11:01:32   21   A.  I reviewed the transcript.

11:01:35   22   Q.  And you recall Mr. Sheasby highlighted this particular

11:01:38   23   patent as particularly important, right?

11:01:43   24   A.  I believe all patents were, but --

11:01:46   25   Q.  Well -- I apologize, Dr. Madisetti.  Were you finished?

436

11:01:49  1    A.  Yes.

11:01:50  2    Q.  Now, he said it was ranked by the Innography group,

11:01:54  3    right?

11:01:54  4    A.  Yes.

11:01:58  5    Q.  Now -- and you know that the -- the lead inventor on

11:02:07  6    this patent is Mr. Dae Won Lee, correct?

11:02:10  7    A.  Yes, Dr. Lee.

11:02:14  8    Q.  I apologize.  Now, you talked about the lead inventor,

11:02:18  9    Dr. Lee on your direct, correct?

11:02:22  10   A.  Yes, briefly.

11:02:24  11   Q.  You said he was one of your students, correct?

11:02:27  12   A.  He was one of the students at Georgia Tech.

11:02:30  13   Q.  And you said -- I believe you used the words he was a

11:02:32  14   prolific inventor, correct?

11:02:33  15   A.  Yes.

11:02:33  16   Q.  Now, he's not going to come and sit on the stand in

11:02:37  17   this trial and take questions, is he?

11:02:39  18   A.  I'm not sure as to what you're asking me.

11:02:42  19   Q.  He's not going to testify at this trial, right?

11:02:45  20   A.  I don't think so.

11:02:46  21   Q.  He's not going to come here and tell the jury that this

11:02:49  22   patent is important, right?

11:02:54  23   A.  Again, I don't -- I don't think he'll be here, but I'm

11:02:58  24   not the right person to ask that.

11:02:59  25   Q.  He's not going to come and tell this jury that the

| | | |
|---|---|---|
| 11:03:02 | 1 | Qualcomm and Intel chips use his invention, correct? |
| 11:03:05 | 2 | MR. POLLINGER:  Your Honor, I object.  He's |
| 11:03:07 | 3 | creating the suggestion that that's a legal requirement |
| 11:03:09 | 4 | that the inventor be here to testify as to his patent. |
| 11:03:15 | 5 | He's asked his question again and again. |
| 11:03:16 | 6 | THE COURT:  I'll sustain on the repetitive nature. |
| 11:03:21 | 7 | The ground has been covered.  Let's move on. |
| 11:03:23 | 8 | Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, we do know |
| 11:03:25 | 9 | one thing that the inventor said about this patent, right? |
| 11:03:33 | 10 | A.  I'm not sure as to what you mean. |
| 11:03:34 | 11 | Q.  Well, you told the jury that the '332 patent disclosed |
| 11:03:39 | 12 | an important new invention in the industry, correct? |
| 11:03:42 | 13 | A.  Yes. |
| 11:03:43 | 14 | Q.  But that's not how the inventors described their idea |
| 11:03:47 | 15 | for the '332 patent before this lawsuit, is it? |
| 11:03:50 | 16 | A.  I disagree.  I believe that they proposed it to the |
| 11:03:56 | 17 | standards body and they felt it was very important. |
| 11:04:00 | 18 | Q.  Well, let's turn to Tab 12, which is DTX-171. |
| 11:04:08 | 19 | MR. SUMMERSGILL:  And if we can put that up on the |
| 11:04:10 | 20 | screen. |
| 11:04:11 | 21 | Q.  (By Mr. Summersgill)  You've seen this before, correct? |
| 11:04:17 | 22 | A.  Yes. |
| 11:04:18 | 23 | Q.  And this is a series of emails written by Mr. Dae Won |
| 11:04:21 | 24 | Lee in March 2008, correct? |
| 11:04:24 | 25 | A.  That's what it says here. |

11:04:26  1  Q.  He's the -- again, the first named inventor of the '332

11:04:30  2  patent, correct?

11:04:30  3  A.  Yes.  Dae Won Lee is the inventor, and that's what this

11:04:33  4  says.

11:04:34  5  Q.  And in this series of emails, Mr. Lee was -- I'm sorry,

11:04:38  6  Dr. Lee was describing the inventor's proposal that

11:04:41  7  ultimately became the '332 patent, correct?

11:04:45  8  A.  I have to look at the entire email, but I believe this

11:04:49  9  is one of the emails that was discussing the proposal.

11:04:52  10  Q.  And in this email, Dr. Lee describes an equation,

11:04:58  11  correct?

11:04:58  12  A.  Yes.

11:04:59  13  Q.  And the equation that he describes in this email is the

11:05:03  14  same equation that's in the claims of the '332 patent,

11:05:07  15  correct?

11:05:07  16  A.  It's a portion of it.

11:05:13  17  Q.  And you told the jury -- I believe the word you used

11:05:16  18  was this was a critical new way for mobile devices to

11:05:19  19  search the PDCCH, correct?

11:05:21  20  A.  Yes, it is a -- it's a very important -- the previous

11:05:25  21  approaches were -- had a critical flaw in them.

11:05:28  22  Q.  But in his email, Dr. Lee wrote, quote, what we are

11:05:36  23  proposing is nothing new really, correct?

11:05:41  24          MR. SUMMERSGILL:  If we could pull that up on the

11:05:43  25  screen.  It's down at the bottom of the page.

439

| | | |
|---|---|---|
| 11:05:46 | 1 | A.  Yes. |
| 11:05:48 | 2 | Q.  (By Mr. Summersgill)  Do you see the -- the -- the |
| 11:05:50 | 3 | first line of that last paragraph, Dr. Madisetti? |
| 11:05:53 | 4 | A.  Yes. |
| 11:05:54 | 5 | Q.  So Dr. Lee wrote that what we are proposing is nothing |
| 11:05:59 | 6 | new really, correct? |
| 11:06:01 | 7 | A.  That's what he wrote.  As I said, I can explain this in |
| 11:06:05 | 8 | detail. |
| 11:06:06 | 9 | Q.  And then he went on to say at the bottom of that |
| 11:06:10 | 10 | paragraph, quote, what we are proposing is to use what is |
| 11:06:15 | 11 | well-known equation, correct? |
| 11:06:17 | 12 | A.  Yes, that text appears in this email.  But I can |
| 11:06:20 | 13 | explain. |
| 11:06:20 | 14 | Q.  Those were the first inventors -- the first named |
| 11:06:27 | 15 | inventor's words, correct? |
| 11:06:29 | 16 | A.  Yes.  As I said, he was being very modest. |
| 11:06:33 | 17 | MR. SUMMERSGILL:  Your Honor, I'll move to strike. |
| 11:06:38 | 18 | THE COURT:  I don't think that's offensively |
| 11:06:41 | 19 | non-responsive.  I'll overrule. |
| 11:06:42 | 20 | Q.  (By Mr. Summersgill)  So those are the words that the |
| 11:06:44 | 21 | lead inventor of the '332 patent said before this lawsuit |
| 11:06:51 | 22 | was filed, correct? |
| 11:06:52 | 23 | A.  Yes. |
| 11:06:53 | 24 | Q.  And you never bothered to ask that inventor, Dr. Lee, |
| 11:06:57 | 25 | what he meant by this email, correct? |

11:06:59  1   A.  I did not ask him.

11:07:05  2   Q.  And Mr. -- Dr. Lee isn't here to explain it, right?

11:07:08  3   A.  I agree.

11:07:09  4   Q.  Now, you told the jury on direct that the '332 patent

11:07:13  5   describes a better way for mobile devices to calculate

11:07:17  6   where to begin searching on something called the PDCCH,

11:07:20  7   correct?

11:07:20  8   A.  Yes, among other things.

11:07:24  9   Q.  And if we could turn to Claim 6 of the '332 patent,

11:07:29  10  which is PX-2, and it's at Tab 18 of your binder,

11:07:33  11  Dr. Madisetti.

11:07:33  12  A.  Yes, I'm looking at it on the screen.

11:07:36  13  Q.  Now, this is one of the two claims that you told the

11:07:39  14  jury is infringed, correct?

11:07:40  15  A.  Yes.

11:07:40  16  Q.  Now, Optis claims that this -- argues that this claim

11:07:48  17  is literally infringed, correct?

11:07:50  18  A.  Yes.

11:07:50  19  Q.  And neither you nor Optis have made an argument under

11:07:56  20  the Doctrine of Equivalents, right?

11:07:58  21  A.  You are right.

11:07:59  22  Q.  Now, to prove infringement, the Plaintiffs must show

11:08:01  23  that Apple's products meet every element of this claim,

11:08:05  24  right?

11:08:05  25  A.  Yes.

441

| | | |
|---|---|---|
| 11:08:06 | 1 | Q.   And Claim 6 requires a mobile device to perform a |
| 11:08:12 | 2 | specific math equation, correct? |
| 11:08:15 | 3 | A.   Among other things, a particular math expression. |
| 11:08:22 | 4 | Q.   And if you look down in the third limitation, it |
| 11:08:25 | 5 | requires something called a modulo "C" operation wherein |
| 11:08:29 | 6 | "C" is determined as floor(N/L), correct? |
| 11:08:34 | 7 | A.   Yes. |
| 11:08:36 | 8 | Q.   And a lot of technical language, but that's a math -- a |
| 11:08:40 | 9 | specific math operation, correct? |
| 11:08:42 | 10 | A.   That's a specific math expression. |
| 11:08:44 | 11 | Q.   So the claim requires using that calculation as part of |
| 11:08:49 | 12 | the equation to figure out where to begin searching the |
| 11:08:54 | 13 | PDCCH, right? |
| 11:08:55 | 14 | A.   Yes, among other things. |
| 11:08:57 | 15 | Q.   And we can agree that Claim 7 has the same requirement, |
| 11:09:01 | 16 | correct? |
| 11:09:01 | 17 | A.   Yes. |
| 11:09:01 | 18 | Q.   Now, Apple says that its products don't perform that |
| 11:09:14 | 19 | operation, this floor(N/L) operation of the claims, |
| 11:09:17 | 20 | correct? |
| 11:09:17 | 21 | A.   Yes.   That's my high-level understanding, yes. |
| 11:09:20 | 22 | Q.   And if the jury agrees with Apple, then there's no |
| 11:09:22 | 23 | infringement of these claims, correct? |
| 11:09:24 | 24 | A.   Yes, I agree.   If it doesn't meet the limitation, it |
| 11:09:29 | 25 | won't meet that limitation. |

442

| | | |
|---|---|---|
| 11:09:30 | 1 | Q.  Now, you're familiar with a concept of an operator in a |
| 11:09:35 | 2 | programming language, correct? |
| 11:09:36 | 3 | A.  You have to be a little more specific. |
| 11:09:39 | 4 | Q.  You're -- you're familiar with the concept of an |
| 11:09:42 | 5 | operator, right? |
| 11:09:44 | 6 | A.  As a part of language, yes.  At a high level, yes. |
| 11:09:48 | 7 | Q.  And programming languages use different operators to |
| 11:09:52 | 8 | perform different functions, correct? |
| 11:09:53 | 9 | A.  I disagree with that. |
| 11:09:55 | 10 | Q.  Okay.  Well, we can agree that the source code for |
| 11:09:58 | 11 | Intel and Qualcomm's chips include code written in the C |
| 11:10:03 | 12 | and the C++ programming languages, right? |
| 11:10:07 | 13 | A.  Yes. |
| 11:10:08 | 14 | Q.  And the C programming language has one operator called |
| 11:10:12 | 15 | a divide, correct? |
| 11:10:15 | 16 | A.  Yes.  It has many operators for the divide. |
| 11:10:20 | 17 | MR. SUMMERSGILL:  Your Honor, may I approach the |
| 11:10:22 | 18 | whiteboard? |
| 11:10:23 | 19 | THE COURT:  You may.  You may use the chart. |
| 11:10:26 | 20 | MR. SUMMERSGILL:  Thank you. |
| 11:10:27 | 21 | Q.  (By Mr. Summersgill)  And that operator is shown with a |
| 11:10:30 | 22 | forward slash, correct? |
| 11:10:31 | 23 | A.  As I said, I disagree with your question.  I said:  It |
| 11:10:35 | 24 | has many operators for the divide. |
| 11:10:37 | 25 | Q.  Well, the C programming language has another operator |

| | | |
|---|---|---|
| 11:10:43 | 1 | called a right shift, correct? |
| 11:10:46 | 2 | A.  Yes, but that's also divide. |
| 11:10:48 | 3 | Q.  And the right shift is shown with a different symbol, |
| 11:10:53 | 4 | two forward arrows, correct? |
| 11:10:56 | 5 | A.  I didn't understand your question.  Again? |
| 11:11:02 | 6 | Q.  The shift -- |
| 11:11:03 | 7 | THE COURT:  Let me interrupt for just a minute. |
| 11:11:05 | 8 | Ladies and gentlemen, there's a very brief matter I need to |
| 11:11:07 | 9 | take up with the parties outside of your presence.  Please |
| 11:11:10 | 10 | give me just a minute with you outside the courtroom, and |
| 11:11:12 | 11 | I'll have you right back in here. |
| 11:11:15 | 12 | If you'll leave your notebooks in your chairs and |
| 11:11:17 | 13 | not discuss the case among yourselves, I promise you, this |
| 11:11:20 | 14 | will be very short.  Please retire to the jury room for |
| 11:11:23 | 15 | just a minute. |
| 11:11:25 | 16 | COURT SECURITY OFFICER:  All rise. |
| 11:11:26 | 17 | (Jury out.) |
| 11:11:26 | 18 | THE COURT:  Please be seated. |
| 11:11:48 | 19 | I fully understand the trial process where |
| 11:11:58 | 20 | co-counsel are in some form of communication with the |
| 11:12:02 | 21 | counsel who's taking a witness. |
| 11:12:04 | 22 | Mr. Sheasby, I've lost count how many times you |
| 11:12:07 | 23 | have popped up and walked around this courtroom while |
| 11:12:11 | 24 | Mr. Summersgill was crossing the witness or while |
| 11:12:15 | 25 | Mr. Pollinger was directing the witness.  This is not your |

| | | |
|---|---|---|
| 11:12:17 | 1 | witness, and you've done everything you could to make it |
| 11:12:20 | 2 | your witness, including trying to argue objections to me |
| 11:12:24 | 3 | after we came back from the prior recess. |
| 11:12:27 | 4 | If you want to pass notes to Mr. Pollinger and |
| 11:12:29 | 5 | hold his hand, then I suggest you move the corporate |
| 11:12:33 | 6 | representative from that seat, and you sit right next to |
| 11:12:36 | 7 | him. |
| 11:12:36 | 8 | But it's highly dis -- distracting, at least it is |
| 11:12:40 | 9 | to me, so I assume it is to the jury, to have you move |
| 11:12:43 | 10 | around and pop up and down and lean over with your laptop |
| 11:12:46 | 11 | in front of Mr. Pollinger and give him the ongoing |
| 11:12:49 | 12 | instructions that you're giving him.  You need to let it |
| 11:12:55 | 13 | go.  This is not your witness. |
| 11:12:57 | 14 | And I'll say this:  I have never seen a corporate |
| 11:12:59 | 15 | representative on the Apple side stand up and pass notes to |
| 11:13:03 | 16 | the lawyer three or four or five times. |
| 11:13:06 | 17 | I assume you're not part of the trial team, sir. |
| 11:13:09 | 18 | I assume you're here merely to represent the Defendant -- |
| 11:13:12 | 19 | MR. MUELLER:  I apologize.  I just asked him -- |
| 11:13:13 | 20 | THE COURT:  Is he your go-between? |
| 11:13:16 | 21 | MR. MUELLER:  I apologize.  I asked Mr. Blevins to |
| 11:13:17 | 22 | pass it so we -- it was -- it was me, Your Honor, not him. |
| 11:13:19 | 23 | THE COURT:  The interaction of lead counsel with |
| 11:13:22 | 24 | these very qualified lawyers who now have this witness is |
| 11:13:24 | 25 | becoming disrupt -- distracting.  And it needs to be |

11:13:28    1   moderated.  I'm not saying that it must be stopped

11:13:31    2   completely.  I -- I know what it's like to try and help

11:13:35    3   someone who's on your trial team.  But this is beginning to

11:13:38    4   get out of hand, okay?

11:13:39    5           MR. MUELLER:  Understood.

11:13:40    6           MR. SHEASBY:  I understand, Your Honor.

11:13:41    7           THE COURT:  Let's bring the jury back in.

11:13:44    8           COURT SECURITY OFFICER:  All rise.

11:13:46    9           (Jury in.)

11:14:14   10           THE COURT:  Thank you, ladies and gentlemen.

11:14:15   11   Please have a seat.

11:14:16   12           And we'll continue with the cross-examine of the

11:14:22   13   witness -- cross-examination of the witness by the

11:14:24   14   Defendant.

11:14:24   15           Please proceed.

11:14:25   16           MR. SUMMERSGILL:  Thank you, Your Honor.

11:14:26   17   Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, before the

11:14:27   18   break, we were talking about the divide symbol, the forward

11:14:33   19   slash symbol, and the right shift symbol, right?

11:14:35   20   A.  Yes.  But I don't agree with your characterization of

11:14:39   21   those symbols.

11:14:39   22   Q.  Now, Apple contends that the Qualcomm and Intel chips

11:14:44   23   don't infringe because they perform this shift operation

11:14:48   24   instead of a divide operation, correct?

11:14:52   25   A.  Yes.  That's how I understand Apple's position to be.

| | | |
|---|---|---|
| 11:14:56 | 1 | Q.  Now, you've taken the position in this case that a |
| 11:14:59 | 2 | shift is the same thing as a floor(N/L) operation, correct? |
| 11:15:06 | 3 | A.  Yes. |
| 11:15:06 | 4 | Q.  But we can agree that if one operation is simpler than |
| 11:15:12 | 5 | another operation, they aren't the same thing, correct? |
| 11:15:14 | 6 | A.  I disagree. |
| 11:15:15 | 7 | Q.  Well, let's turn to Tab 11 in your binder, and this is |
| 11:15:26 | 8 | a -- a journal paper from 1994, correct? |
| 11:15:36 | 9 | A.  Yes. |
| 11:15:45 | 10 | Q.  And it lists V. Madisetti as one of the editors, |
| 11:15:53 | 11 | correct? |
| 11:15:53 | 12 | A.  Yes. |
| 11:15:53 | 13 | Q.  And that's you, correct? |
| 11:15:55 | 14 | A.  Yes. |
| 11:15:55 | 15 | Q.  And if you turn the page to 128, this is one of the |
| 11:16:04 | 16 | articles -- |
| 11:16:05 | 17 | MR. SUMMERSGILL:  I'm sorry, you can go back to |
| 11:16:07 | 18 | the cover page. |
| 11:16:09 | 19 | Q.  (By Mr. Summersgill)  -- this is one of the articles |
| 11:16:11 | 20 | that was in that set of articles that you edited, correct? |
| 11:16:14 | 21 | A.  I didn't edit the article.  I edited the -- the book. |
| 11:16:17 | 22 | Q.  Okay.  But this article is in the book that you edited, |
| 11:16:26 | 23 | correct? |
| 11:16:26 | 24 | A.  Yes. |
| 11:16:26 | 25 | Q.  Now, if we turn to Page 128, this article states, |

11:16:33   1   quote --

11:16:34   2          MR. SUMMERSGILL:   And if we could pull that up.

11:16:36   3   Q.  (By Mr. Summersgill)  Well, Dr. Madisetti, you've got

11:16:47   4   it in front of you.

11:16:48   5          It states:  In each iteration, there's a division

11:16:51   6   by 2, and this takes care of a correct division as at

11:16:59   7   stage i, the iteration number is a minus i, and the

11:17:05   8   division of the original input is by $3^{n-i-1}$ [sic].

11:17:15   9          Do you see that?

11:17:16  10   A.  I don't.

11:17:17  11   Q.  This is Tab 1 -- I'm sorry, Tab -- Tab 24 in your

11:17:24  12   binder.

11:17:43  13   A.  Okay.

11:17:44  14   Q.  So you see the sentence I read, sir?

11:17:46  15   A.  Which page, sir?

11:17:48  16   Q.  Page 128.  Page 128 in the left column following the

11:18:02  17   code?

11:18:02  18   A.  Yes, I see a sentence here.

11:18:04  19   Q.  And it refers to using a division, correct?

11:18:11  20   A.  Yes.  Yes, it says something about a division.

11:18:16  21   Q.  And then in the next sentence it says, quote, a simpler

11:18:21  22   way is to write the inputs in binary and shift to right,

11:18:27  23   dropping LSB each time, as this is equivalent to a division

11:18:32  24   by 2.

11:18:32  25          Do you see that?

11:18:33   1   A.   I see that.   It's the same as the division.   That's

11:18:35   2   what I said.

11:18:36   3   Q.   The paper is saying that you get the same answer but

11:18:41   4   that the shift is a simpler way, correct?

11:18:44   5   A.   Again, I didn't write this paper, but my understanding

11:18:49   6   is that the shift and the division are one and the same.

11:18:52   7   Q.   Well, we can agree that code that is faster and

11:18:55   8   requires fewer steps, even if it gets the same answer, is

11:18:59   9   better than code that's slower and requires more steps,

11:19:05   10  right?

11:19:05   11  A.   I cannot provide a yes or no answer for that.

11:19:08   12  Q.   Well, you traveled from Atlanta, Georgia, to Marshall

11:19:12   13  to get here for the trial, correct?

11:19:14   14  A.   Yes.

11:19:14   15  Q.   There's more than one way to get from Atlanta to

11:19:18   16  Marshall, Texas, correct?

11:19:19   17  A.   Yes.

11:19:22   18  Q.   You could fly, right?

11:19:23   19  A.   Yes.

11:19:23   20  Q.   You could drive, right?

11:19:25   21  A.   Yes.

11:19:27   22  Q.   And you could walk, correct?

11:19:29   23  A.   Yes.

11:19:29   24  Q.   Each of those ways will get you to Marshall, Texas,

11:19:35   25  correct?

```
11:19:35   1    A.   Yes.

11:19:35   2    Q.   But some ways are faster than others, correct?

11:19:41   3    A.   Yes.   In your example, yes.

11:19:42   4    Q.   Some ways are better than others, correct?

11:19:46   5    A.   In your example, yes.

11:19:47   6    Q.   So just because you get to the same place, doesn't mean

11:19:51   7    you got there the same way, correct?

11:19:52   8    A.   In your example, yes.   But in this example, the

11:19:55   9    division and the shift are one and the same.

11:19:57   10   Q.   Now, Dr. Madisetti, can we now turn to the third patent

11:20:03   11   that you analyzed, the '833 patent?

11:20:07   12   A.   Yes.

11:20:07   13   Q.   Now, you're aware that the Plaintiffs are asking Apple

11:20:10   14   to pay hundreds of millions of dollars for this patent

11:20:14   15   alone, correct?

11:20:14   16   A.   I'm not aware of the exact numbers, but if that's what

11:20:19   17   you represent, I will go with it.

11:20:21   18   Q.   You know it's a whole lot of money, correct?

11:20:24   19   A.   Again, I -- I don't have the numbers.

11:20:26   20   Q.   Now, LG Electronics was the original owner of the '833

11:20:32   21   patent, correct?

11:20:32   22   A.   I believe so.

11:20:33   23   Q.   And you were here for Mr. Sheasby's opening statement

11:20:37   24   in this case, correct?

11:20:37   25   A.   I reviewed the transcript.   I was not here personally.
```

| | | |
|---|---|---|
| 11:20:40 | 1 | Q.  Okay. |
| 11:20:42 | 2 | MR. SUMMERSGILL:  Well, could we pull up PDX-1.13 |
| 11:20:47 | 3 | from Mr. Sheasby's opening statement? |
| 11:20:50 | 4 | Q.  (By Mr. Summersgill)  Do you recall from the transcript |
| 11:20:52 | 5 | that Mr. Sheasby used this slide in his opening? |
| 11:20:57 | 6 | A.  Yes, I -- I generally recall. |
| 11:21:00 | 7 | Q.  And LG is over on the left side.  Do you see that? |
| 11:21:02 | 8 | A.  LGE, yes. |
| 11:21:03 | 9 | Q.  And that's LG Electronics, correct? |
| 11:21:07 | 10 | A.  Yes. |
| 11:21:07 | 11 | Q.  And it shows that LG has nearly 90,000 patents in its |
| 11:21:13 | 12 | portfolio, correct? |
| 11:21:13 | 13 | A.  Yes.  As of 2011, yes. |
| 11:21:22 | 14 | Q.  We can agree that's a lot of patents, right? |
| 11:21:24 | 15 | A.  Yes. |
| 11:21:25 | 16 | Q.  And you know that LG decided to transfer the '833 |
| 11:21:29 | 17 | patent to Optis, correct? |
| 11:21:34 | 18 | MR. POLLINGER:  Objection, lack of foundation. |
| 11:21:36 | 19 | THE COURT:  If he knows, he can answer.  If he |
| 11:21:43 | 20 | doesn't know, he can say I don't know. |
| 11:21:46 | 21 | THE WITNESS:  Okay. |
| 11:21:46 | 22 | THE COURT:  Overruled. |
| 11:21:47 | 23 | A.  My understanding is that the other companies chose the |
| 11:21:52 | 24 | patents, not LG.  So this way the -- again, I don't have a |
| 11:22:00 | 25 | specific understanding.  I have a general understanding |

11:22:02   1   that the quality was unsure because the other parties chose

11:22:06   2   the patents of LG.

11:22:08   3           Similarly, LG chose the patents of the other

11:22:12   4   parties to make sure that the parties were of the highest

11:22:17   5   quality -- the patents were of the highest quality.

11:22:21   6   Q.  (By Mr. Summersgill)  Sir, LG kept thousands and

11:22:23   7   thousands of patents in its portfolio, correct?

11:22:25   8   A.  Again, I don't have specific information as to prove

11:22:28   9   that issue.

11:22:29  10   Q.  But you can see it on Mr. Sheasby's chart, correct?

11:22:31  11   A.  I can see on the chart that LG has a lot of patents.

11:22:33  12   Q.  And LG was willing to transfer this patent, the '833

11:22:37  13   patent, to Optis, correct?

11:22:42  14   A.  Again, I cannot go into specifics.  I don't have the

11:22:46  15   knowledge.  All I know is that the other parties were

11:22:49  16   selecting patents to ensure the patents were of the highest

11:22:54  17   quality.

11:22:54  18   Q.  Dr. Madisetti, could you please turn to PX-1571, which

11:22:58  19   is also Tab 21 in your binder?

11:23:00  20   A.  Yes, sir.

11:23:01  21   Q.  That's the '833 patent, correct?

11:23:02  22   A.  Yes.

11:23:03  23   Q.  And Plaintiffs allege that Apple's products infringe

11:23:10  24   Claim 8, correct?

11:23:11  25   A.  Yes.

```
11:23:11   1   Q.  Now, this claim describes the mapping of a type of
11:23:15   2   signal called an SC-FDMA signal, correct?
11:23:22   3   A.  I would disagree.  I would say the claims speak for
11:23:25   4   themselves.
11:23:25   5           MR. SUMMERSGILL:  I'm sorry, can we put Claim 8
11:23:29   6   up, please?
11:23:30   7   Q.  (By Mr. Summersgill)  The claim refers to an SC-FDMA
11:23:35   8   symbol, correct?
11:23:35   9   A.  Yes, that's called a Single-carrier Frequency Division
11:23:40  10   Multiple Access symbol.
11:23:40  11   Q.  And as you explained yesterday, the claim also refers
11:23:43  12   to columns and rows, correct?
11:23:44  13   A.  As a part of the claim, as claimed?
11:23:48  14   Q.  And each one of those columns corresponds to an SC-FDMA
11:23:56  15   symbol, correct?
11:23:56  16   A.  Which portion of the claim are you referring to?
11:23:59  17   Q.  Well, if you look at -- I can't see the line where it
11:24:09  18   states:  Wherein the number of columns of the 2-dimensional
11:24:13  19   resource matrix corresponds to a number of SC-FDMA symbols.
11:24:13  20           MR. SUMMERSGILL:  Down a little bit further,
11:24:13  21   Mr. Lee.  Down a little further, starting with that line.
11:24:22  22   Q.  (By Mr. Summersgill)  Do you see that, Dr. Madisetti?
11:24:23  23   A.  Yes.  That only refers to the number.  It does not say
11:24:26  24   the columns are the symbols.
11:24:29  25   Q.  Well, okay.  Now, let's focus on the part of the claim
```

| | | |
|---|---|---|
| 11:24:31 | 1 | starting at Column 10, Line 17. |
| 11:24:39 | 2 | It states, quote, the multiplex signals are mapped |
| 11:24:43 | 3 | from the first column of the first row to the last column |
| 11:24:46 | 4 | of the first row, comma, the first column of the second row |
| 11:24:53 | 5 | to the last column of the second row, and so on, until all |
| 11:24:59 | 6 | the multiplexed signals are mapped to the 2-dimensional |
| 11:25:07 | 7 | resource matrix.  Do you see that? |
| 11:25:09 | 8 | A.  I see that. |
| 11:25:10 | 9 | Q.  And that's what the claim says, right? |
| 11:25:12 | 10 | A.  Yes. |
| 11:25:13 | 11 | MR. SUMMERSGILL:  Your Honor, may I use a |
| 11:25:16 | 12 | demonstrative? |
| 11:25:16 | 13 | THE COURT:  You may. |
| 11:25:19 | 14 | Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, okay if we |
| 11:25:24 | 15 | map that out on this demonstrative? |
| 11:25:28 | 16 | A.  Yes, I can see a portion of it.  I mean, is it -- |
| 11:25:31 | 17 | THE COURT:  Bring the easel forward, please, |
| 11:25:34 | 18 | counsel. |
| 11:25:34 | 19 | MR. SUMMERSGILL:  Yes, Your Honor. |
| 11:25:52 | 20 | Q.  (By Mr. Summersgill)  Now, Dr. Madisetti, this is the |
| 11:25:54 | 21 | first column of the first row, correct? |
| 11:25:57 | 22 | A.  First column of the first row, yes, sir. |
| 11:25:59 | 23 | Q.  And this is the last column of the first row, correct? |
| 11:26:03 | 24 | A.  Yes. |
| 11:26:04 | 25 | Q.  And the claim says that you map from the first column |

| | | |
|---|---|---|
| 11:26:08 | 1 | of the first row to the last column of the last row, |
| 11:26:12 | 2 | correct? |
| 11:26:12 | 3 | A.  Yes.  That's what you do.  You start on the left, and |
| 11:26:14 | 4 | you go column-by-column to the right. |
| 11:26:16 | 5 | Q.  And then the claim says you go to the first column of |
| 11:26:21 | 6 | the second row, correct? |
| 11:26:22 | 7 | A.  Yes. |
| 11:26:23 | 8 | Q.  And you map across to the last column of the second |
| 11:26:28 | 9 | row, correct? |
| 11:26:28 | 10 | A.  Yes. |
| 11:26:29 | 11 | Q.  And the claim says you keep doing that until the whole |
| 11:26:33 | 12 | matrix is mapped, correct? |
| 11:26:35 | 13 | A.  Yes. |
| 11:26:36 | 14 | Q.  Now, I'm going to refer to that as row-by-row mapping, |
| 11:26:45 | 15 | okay? |
| 11:26:45 | 16 | A.  It's your call.  I mean, I would call it by the |
| 11:26:48 | 17 | language in the claim. |
| 11:26:49 | 18 | Q.  Well, what the language in the claim describes is |
| 11:26:54 | 19 | exactly what we just did on that chart, correct? |
| 11:26:57 | 20 | A.  Yes, for each row there's a column-by-column mapping. |
| 11:27:03 | 21 | Q.  Now, Apple says it doesn't infringe this claim because, |
| 11:27:07 | 22 | among other things, it says its products map symbols |
| 11:27:12 | 23 | column-by-column, correct? |
| 11:27:15 | 24 | A.  Yes, that's what Apple says. |
| 11:27:17 | 25 | Q.  And so Apple says it maps from the top of one column to |

11:27:22    1    the bottom of a column, correct?

11:27:24    2    A.  Yes, that's what Apple says.

11:27:25    3    Q.  And Apple says that once it's mapped one column, which

11:27:30    4    corresponds to a symbol, it's able to just send that

11:27:33    5    symbol, correct?

11:27:34    6    A.  Yes, that's what Apple says, which I disagree.

11:27:38    7    Q.  Well, Dr. Madisetti, row-by-row mapping is different

11:27:45    8    from column-by-column mapping, correct?

11:27:48    9    A.  Again, I disagree.  I can explain.

11:27:51   10    Q.  Sir, isn't it true that you've taken the position in

11:27:53   11    this case that row-by-row mapping is distinct from

11:27:58   12    column-by-column mapping?

11:27:59   13    A.  I disagree.  I can explain.

11:28:02   14          MR. SUMMERSGILL:  Well, can we please pull up --

11:28:07   15    Q.  (By Mr. Summersgill)  Dr. Madisetti, take a look at

11:28:10   16    Tab 8, please, which is one of your expert reports?

11:28:12   17          MR. SUMMERSGILL:  And I'd ask that we please pull

11:28:15   18    up Paragraph 79 from Dr. Madisetti's rebuttal expert

11:28:23   19    report.

11:28:23   20    A.  My rebuttal report?

11:28:26   21    Q.  (By Mr. Summersgill)  Correct.

11:28:26   22    A.  Okay.

11:28:28   23    Q.  And that is Tab 8.

11:28:33   24    A.  Are you going to put it up or --

11:28:36   25          MR. SUMMERSGILL:  Yes, please, please, put it up.

11:28:39  1   Q.  (By Mr. Summersgill)  And do you see that, sir?

11:28:40  2   A.  Do I see what?

11:28:44  3   Q.  Your expert report.  I thought maybe you had it in

11:28:47  4   front of you.  We'll work on getting it up on the screen,

11:28:51  5   Dr. Madisetti.

11:28:59  6        While we're waiting for it to be put on the

11:29:02  7   screen, would you mind --

11:29:03  8   A.  Which volume should I go --

11:29:06  9   Q.  It's Tab 8, Volume 1, I believe.

11:29:09  10  A.  I'll go there.  Which page would you like me to go to,

11:29:21  11  sir?

11:29:21  12  Q.  Paragraph 79, Page 37.  And let me know when you're

11:29:24  13  there.

11:29:36  14       Now we have it up on the screen, Dr. Madisetti.

11:29:40  15  A.  Okay.

11:29:40  16  Q.  Okay.  Again, this is your expert report, correct?

11:29:44  17  A.  Yes, it's my rebuttal expert report.

11:29:45  18  Q.  And here you were talking about some of the prior art

11:29:48  19  references at issue in this case, correct?

11:29:50  20  A.  Yes, I was using Dr. Wells's terminology.  This is not

11:29:53  21  mine.

11:29:54  22  Q.  In your report, sir, you distinguished between mapping

11:29:58  23  signals row-by-row and mapping signals column-by-column,

11:30:01  24  right?

11:30:01  25  A.  Yes, I was using Dr. Wells.

| | | |
|---|---|---|
| 11:30:06 | 1 | Q.  Well, what you said was the Qualcomm reference, on the |
| 11:30:12 | 2 | left, maps its signals row-by-row, correct? |
| 11:30:18 | 3 | A.  Yes, I was referring to Dr. Wells.  It's not an |
| 11:30:22 | 4 | admission that it does.  It was just citing Dr. Wells. |
| 11:30:25 | 5 | Q.  Sir, that's what you said in your expert report, |
| 11:30:27 | 6 | correct? |
| 11:30:27 | 7 | A.  Yes. |
| 11:30:28 | 8 | Q.  And then you included that picture on the left showing |
| 11:30:31 | 9 | row-by-row mapping, correct? |
| 11:30:35 | 10 | A.  Yes, that's the picture from Dr. Wells. |
| 11:30:36 | 11 | Q.  And you then said that the Malladi reference '161 maps |
| 11:30:44 | 12 | its signals column-by-column, correct? |
| 11:30:48 | 13 | A.  Yes, that's Dr. Wells's pictures that I reproduced. |
| 11:30:51 | 14 | Q.  And you include the picture on the right showing |
| 11:30:53 | 15 | column-by-column mapping, correct? |
| 11:30:55 | 16 | A.  Yes, as I said, Dr. Wells drew that picture.  Not me. |
| 11:30:59 | 17 | Q.  And that wasn't the only time you referred to -- you |
| 11:31:02 | 18 | distinguished row-by-row and column-by-column mapping, was |
| 11:31:09 | 19 | it? |
| 11:31:09 | 20 | A.  Again, you have to be more specific than that.  I -- |
| 11:31:13 | 21 | Q.  Well, let's -- |
| 11:31:15 | 22 | MR. SUMMERSGILL:  Let's pull up Paragraph 113 of |
| 11:31:19 | 23 | your expert report, please. |
| 11:31:23 | 24 | Q.  (By Mr. Summersgill)  Sir, on at least five different |
| 11:31:26 | 25 | instances in your report, you -- you distinguished |

| | | |
|---|---|---|
| 11:31:30 | 1 | row-by-row from column-by-column mapping; isn't that right? |
| 11:31:34 | 2 | A.  As I said, I used Dr. Wells's terminology.  I did not |
| 11:31:38 | 3 | admit that either of those references had mapping, and I |
| 11:31:41 | 4 | think I explained that in my deposition. |
| 11:31:43 | 5 | Q.  Well, as part of your analysis, you looked at the |
| 11:31:45 | 6 | source code for the Intel and the Qualcomm baseband chips |
| 11:31:51 | 7 | used in the Apple products, correct? |
| 11:31:54 | 8 | A.  Yes, sir. |
| 11:31:54 | 9 | Q.  And you would agree that the source code in both the |
| 11:31:57 | 10 | Intel and Qualcomm baseband chips maps its signals |
| 11:32:02 | 11 | column-by-column instead of row-by-row, correct? |
| 11:32:05 | 12 | A.  I disagree. |
| 11:32:07 | 13 | Q.  Well, turn to Tab 2, your deposition, Page 393, Lines 8 |
| 11:32:17 | 14 | to 19. |
| 11:32:19 | 15 | A.  Yes, I've reviewed that. |
| 11:32:21 | 16 | Q.  And you were asked that question there and you gave |
| 11:32:26 | 17 | that answer, correct? |
| 11:32:27 | 18 | A.  I was not asked that question, sir.  I disagree. |
| 11:32:31 | 19 | Q.  You disagree that you were asked that question? |
| 11:32:34 | 20 | A.  Yes.  The question says, first and second resource |
| 11:32:37 | 21 | elements. |
| 11:32:37 | 22 | Q.  Sir, that is a question and answer from your deposition |
| 11:32:41 | 23 | on June 4th of this year, correct? |
| 11:32:44 | 24 | A.  Yes, that's correct. |
| 11:32:46 | 25 | Q.  And you answered that -- you provided that answer, |

| | | |
|---|---|---|
| 11:32:49 | 1 | correct? |
| 11:32:49 | 2 | A.  Yes, to a different question. |
| 11:32:51 | 3 | MR. SUMMERSGILL:  Let's pull up Dr. Madisetti's |
| 11:32:54 | 4 | deposition, Page 393, Lines 8 to 19. |
| 11:32:58 | 5 | Q.  (By Mr. Summersgill)  You were asked: |
| 11:33:00 | 6 | Question:  Based on the way that the source code |
| 11:33:04 | 7 | works and the source code executes, when the source code |
| 11:33:07 | 8 | runs in the Qualcomm and Apple processors, which resource |
| 11:33:11 | 9 | element is mapped first and which resource element is |
| 11:33:15 | 10 | mapped second sequentially by the code? |
| 11:33:21 | 11 | Answer:  I said they are mapped column-by-column |
| 11:33:29 | 12 | in a temporally segmented manner, starting at the top left, |
| 11:33:34 | 13 | as described in Column 5 of Lines 45 to 55 of the '833 |
| 11:33:39 | 14 | patent.  And I've verified that and provided detailed |
| 11:33:43 | 15 | description of the code in my report, as well as my |
| 11:33:47 | 16 | reliance on Dr. Jones's report and the analysis that I've |
| 11:33:52 | 17 | done personally on the source code computer. |
| 11:33:54 | 18 | You were asked that question and you gave that |
| 11:33:57 | 19 | answer, correct? |
| 11:33:57 | 20 | A.  Yes, I can explain.  It's fully consistent with my |
| 11:33:59 | 21 | opinions. |
| 11:33:59 | 22 | Q.  And you gave that answer after you'd studied the source |
| 11:34:01 | 23 | code, correct? |
| 11:34:02 | 24 | A.  Yes. |
| 11:34:02 | 25 | Q.  You'd verified your analysis? |

460

```
11:34:04   1    A.   Yes.   I can explain.
11:34:05   2    Q.   You'd carefully analyzed the products, correct?
11:34:09   3    A.   Yes.
11:34:10   4    Q.   And -- but today you're telling the jury that Apple
11:34:15   5    products really map row-by-row, correct?
11:34:17   6    A.   Yes.   As I explained, the 2D matrix is mapped
11:34:21   7    row-by-row.   That particular column -- the first column is
11:34:27   8    mapped column-by-column -- the first row is mapped
11:34:28   9    column-by-column because this --
11:34:29  10          THE COURT:   Dr. Madisetti, you're launching into
11:34:31  11    an explanation he didn't call for.   And as I've reminded
11:34:35  12    you, Mr. Pollinger is going to get to ask you more
11:34:37  13    questions.   And if he thinks it needs to be explained
11:34:41  14    again, he'll ask you to explain it.
11:34:43  15          But once you've answered Mr. Summersgill's
11:34:46  16    question, you need to leave it at that.   Do you understand?
11:34:50  17          THE WITNESS:   I'm sorry, Your Honor.
11:34:51  18          THE COURT:   All right.   Let's proceed.
11:34:54  19    Q.   (By Mr. Summersgill)   Dr. Madisetti, today you're
11:34:56  20    telling this jury that the Apple products really map
11:35:00  21    row-by-row, correct?
11:35:01  22    A.   I'm -- could I clarify -- I mean, your question is not
11:35:05  23    specific enough.
11:35:06  24    Q.   Dr. Madisetti, you told the jury on direct that Apple
11:35:12  25    products map row-by-row, correct?
```

| | | |
|---|---|---|
| 11:35:14 | 1 | A.  As in the claim. |
| 11:35:15 | 2 | Q.  Now, the source code didn't change between June 4 and |
| 11:35:21 | 3 | today, did it? |
| 11:35:22 | 4 | A.  No. |
| 11:35:23 | 5 | Q.  The only thing that changed is that you started to |
| 11:35:25 | 6 | prepare for trial with the lawyers, correct? |
| 11:35:28 | 7 | A.  Yes. |
| 11:35:31 | 8 | MR. SUMMERSGILL:  Pass the witness. |
| 11:35:33 | 9 | THE COURT:  If you'll take your demonstrative |
| 11:35:35 | 10 | down, please, counsel. |
| 11:35:37 | 11 | MR. SUMMERSGILL:  Yes, sir. |
| 11:35:37 | 12 | THE COURT:  I assume there's redirect, |
| 11:35:40 | 13 | Mr. Pollinger? |
| 11:35:41 | 14 | MR. POLLINGER:  Yes, Your Honor. |
| 11:35:41 | 15 | THE COURT:  All right.  All right.  When you're |
| 11:36:05 | 16 | ready, please proceed with your redirect, counsel. |
| 11:36:09 | 17 | MR. POLLINGER:  Thank you, Your Honor. |
| 11:36:09 | 18 | REDIRECT EXAMINATION |
| 11:36:10 | 19 | BY MR. POLLINGER: |
| 11:36:10 | 20 | Q.  Professor Madisetti, Mr. Summersgill asked you a number |
| 11:36:13 | 21 | of questions about your work as an expert in other cases. |
| 11:36:21 | 22 | Have you ever been asked by Apple's law firm here, |
| 11:36:26 | 23 | Wilmer Hale, to work with them on behalf of one of their |
| 11:36:34 | 24 | clients? |
| 11:36:34 | 25 | A.  Yes. |

| | | |
|---|---|---|
| 11:36:34 | 1 | Q.  Has that happened recently? |
| 11:36:35 | 2 | A.  Yes.  I'm still working for them. |
| 11:36:45 | 3 | Q.  Professor Madisetti, Mr. Summersgill asked you a number |
| 11:36:50 | 4 | of questions regarding the inventors on these patents and |
| 11:36:57 | 5 | whether or not you spoke to the inventors. |
| 11:37:03 | 6 | Now, you've testified that you worked in a lot of |
| 11:37:07 | 7 | these patents cases. |
| 11:37:10 | 8 | What determines whether there's infringement in a |
| 11:37:14 | 9 | patent case? |
| 11:37:15 | 10 | A.  Just the claims.  Only the claims matter because claims |
| 11:37:20 | 11 | are what describe and limit the invention. |
| 11:37:25 | 12 | Q.  Does an inventor's testimony determine whether there's |
| 11:37:29 | 13 | infringement? |
| 11:37:30 | 14 | A.  Not at all. |
| 11:37:31 | 15 | Q.  When there's certain disputed language in the claims, |
| 11:37:38 | 16 | who decides the meaning of those claims?  Is it the Court, |
| 11:37:44 | 17 | or is it the inventor? |
| 11:37:46 | 18 | A.  It's the Court and the Judge. |
| 11:37:49 | 19 | Q.  Now, the lead inventors on the three patents, they've |
| 11:37:58 | 20 | been deposed with respect to their patents, correct, in |
| 11:38:03 | 21 | another case? |
| 11:38:04 | 22 | A.  Yes. |
| 11:38:05 | 23 | Q.  And you listed their depositions as materials that you |
| 11:38:12 | 24 | considered in your expert report, correct? |
| 11:38:15 | 25 | A.  Yes. |

11:38:16  1          MR. POLLINGER:  Could we see that?  If we could go

11:38:19  2  to Paragraph 126 of Professor Madisetti's opening expert

11:38:26  3  report.

11:39:27  4  Q.  (By Mr. Pollinger)  While we're trying to do this, why

11:39:29  5  don't I follow another line of questions, and see if we can

11:39:34  6  come back to this, in the interest of time.

11:39:36  7          Mr. Summersgill made a number of references to

11:39:42  8  Intel and Qualcomm.  Do you recall that?

11:39:44  9  A.  Yes.

11:39:44  10  Q.  And Apple has a business relationship with Intel and

11:39:50  11  Qualcomm.  Do you understand that?

11:39:52  12  A.  Yes, that's my high-level understanding.

11:39:57  13  Q.  Have you seen any evidence that Intel or Qualcomm has

11:40:02  14  protested that there's no infringement in this case?

11:40:04  15  A.  I have not.

11:40:06  16  Q.  Here, I think we've got your expert report -- your

11:40:11  17  opening expert report.

11:40:12  18          And I was asking you whether you considered a

11:40:16  19  deposition from a prior case from the first named inventors

11:40:23  20  on these patents.

11:40:24  21          What do we see here at Paragraph 126 of your

11:40:27  22  expert report?

11:40:29  23  A.  This is referring to the Imamura --

11:40:32  24          THE COURT:  Just -- just a minute.

11:40:33  25          MR. SUMMERSGILL:  Your Honor, I object to the

11:40:34   1   extent that he's going to say anything beyond the fact that

11:40:38   2   he cited it in his expert report.  I think the question

11:40:44   3   calls for more than that.

11:40:47   4            MR. POLLINGER:  I haven't done anything further,

11:40:49   5   and I don't think I will, Your Honor.  I don't think this

11:40:52   6   is an issue.

11:40:52   7            THE COURT:  Restate the question then.

11:40:55   8   Q.  (By Mr. Pollinger)  Professor Madisetti, do you state

11:40:57   9   here in your expert report that you considered the

11:40:59  10   deposition of the first named inventor on the '557 patent?

11:41:05  11            MR. SUMMERSGILL:  Your Honor, I object.

11:41:07  12            THE COURT:  What's the basis for the objection?

11:41:09  13            MR. SUMMERSGILL:  He doesn't say that he considers

11:41:11  14   it.  He says that it was simply produced by the Plaintiffs,

11:41:17  15   so it's outside the scope of the report.

11:41:21  16            MR. POLLINGER:  Your Honor, it's listed in his

11:41:23  17   report.

11:41:23  18            THE COURT:  I'll -- I'll overrule that.

11:41:25  19            And to the extent you want to cross him on whether

11:41:28  20   he didn't consider what was produced, you can do that on

11:41:32  21   recross.

11:41:32  22            Let's continue.

11:41:35  23   Q.  (By Mr. Pollinger)  Did you consider this deposition

11:41:37  24   transcript of the first named inventor on the '557 patent?

11:41:40  25   A.  I did, sir.

| | | |
|---|---|---|
| 11:41:40 | 1 | Q.  And do you cite here in your deposition -- excuse me, |
| 11:41:45 | 2 | do you cite here in your expert report specific pages from |
| 11:41:49 | 3 | that deposition transcript? |
| 11:41:51 | 4 | A.  Yes. |
| 11:41:53 | 5 | MR. POLLINGER:  If we could, Mr. Huynh, please go |
| 11:41:55 | 6 | to Paragraph 169 of Professor Madisetti's opening expert |
| 11:41:59 | 7 | report. |
| 11:42:01 | 8 | Q.  (By Mr. Pollinger)  And my question, Professor |
| 11:42:10 | 9 | Madisetti, is, did you consider the deposition transcript |
| 11:42:13 | 10 | of Dr. Dae Won Lee, the first named inventor on the other |
| 11:42:18 | 11 | two patents, in your opening expert report? |
| 11:42:22 | 12 | A.  I did, sir. |
| 11:42:23 | 13 | Q.  And did you consider specific pages from that |
| 11:42:29 | 14 | deposition transcript? |
| 11:42:30 | 15 | A.  Yes. |
| 11:42:36 | 16 | THE COURT:  Counsel, I need to take up a matter |
| 11:42:37 | 17 | with you briefly. |
| 11:42:40 | 18 | I'm sorry, ladies and gentlemen, part of -- part |
| 11:42:45 | 19 | of the ordinary trial process in days gone by, I would |
| 11:42:50 | 20 | simply call them up here to the bench where I could talk to |
| 11:42:52 | 21 | them quietly outside of your hearing.  I can't do that in |
| 11:42:57 | 22 | today's circumstances, so I have to ask you to step out of |
| 11:43:00 | 23 | the courtroom for just a minute, and I'll bring you back as |
| 11:43:02 | 24 | quickly as I can. |
| 11:43:03 | 25 | Please leave your notebooks in your chairs, follow |

| | | |
|---|---|---|
| 11:43:07 | 1 | all my instructions, and if the jury will retire briefly to |
| 11:43:10 | 2 | the jury room. |
| 11:43:13 | 3 | COURT SECURITY OFFICER:  All rise. |
| 11:43:16 | 4 | (Jury out.) |
| 11:43:35 | 5 | THE COURT:  Counsel, both sides are very much |
| 11:43:40 | 6 | aware that the Court has an order in limine prohibiting |
| 11:43:45 | 7 | discussions or the injection of other litigation into this |
| 11:43:48 | 8 | lawsuit. |
| 11:43:48 | 9 | And we just saw big bold references from |
| 11:43:51 | 10 | depositions taken in specific cases in specific courts, and |
| 11:43:55 | 11 | at least one of them was in this court with my initials on |
| 11:43:59 | 12 | it and case numbers.  And I don't know how that's not a |
| 11:44:01 | 13 | violation of the MIL. |
| 11:44:03 | 14 | No -- neither one of you have raised it, but I |
| 11:44:06 | 15 | have a duty to police my own orders.  And I don't |
| 11:44:10 | 16 | understand how that's not in violation of what I prohibited |
| 11:44:14 | 17 | as far as injecting other litigation into this lawsuit. |
| 11:44:17 | 18 | Can I have a response?  I mean, you're the -- |
| 11:44:20 | 19 | MR. POLLINGER:  I guess -- |
| 11:44:21 | 20 | THE COURT:  -- you're the one -- you called for |
| 11:44:22 | 21 | these, Mr. Pollinger. |
| 11:44:23 | 22 | MR. POLLINGER:  Well, first I apologize, |
| 11:44:26 | 23 | Your Honor.  I think that's the primary -- I'm not sure |
| 11:44:29 | 24 | that's much of a response, but that -- that is my response. |
| 11:44:32 | 25 | And I believe Apple -- Mr. Summersgill, in his |

| | | |
|---|---|---|
| 11:44:39 | 1 | examination of Professor Madisetti, brought up the fact |
| 11:44:42 | 2 | that there was a deposition in a prior lawsuit.  I'm not |
| 11:44:44 | 3 | sure that's -- that's certainly not an excuse.  The primary |
| 11:44:49 | 4 | response, again, is -- is an apology. |
| 11:44:52 | 5 | MR. SUMMERSGILL:  Your Honor, may I respond to |
| 11:44:54 | 6 | that? |
| 11:44:54 | 7 | THE COURT:  I'll hear from Defendant on this, as |
| 11:44:55 | 8 | well, Mr. Summersgill. |
| 11:44:57 | 9 | MR. SUMMERSGILL:  Your Honor, I didn't -- I did |
| 11:44:59 | 10 | object to it.  I didn't raise the other litigation point. |
| 11:45:03 | 11 | I didn't want to raise that in front of the jury.  But we |
| 11:45:06 | 12 | do believe it is contrary to the motion in limine, and we |
| 11:45:09 | 13 | would ask that it be stricken. |
| 11:45:12 | 14 | THE COURT:  Well, my intention is to bring the |
| 11:45:15 | 15 | jury back and instruct them that in the last two slides |
| 11:45:20 | 16 | shown to them, not only was there a deposition mentioned |
| 11:45:25 | 17 | but a specific other lawsuit, and they should disregard any |
| 11:45:29 | 18 | reference to any other lawsuit other than this lawsuit. |
| 11:45:34 | 19 | And I'm going to instruct both sides not to |
| 11:45:38 | 20 | violate my order in limine about injecting other litigation |
| 11:45:41 | 21 | into this lawsuit without expressly seeking and obtaining |
| 11:45:46 | 22 | leave from the Court in advance, all right? |
| 11:45:49 | 23 | MR. POLLINGER:  Yes.  Thank you, Your Honor. |
| 11:45:53 | 24 | MR. SUMMERSGILL:  Thank you, Your Honor. |
| 11:45:54 | 25 | THE COURT:  All right.  Let's bring the jury back |

| | | |
|---|---|---|
| 11:45:55 | 1 | in, Mr. Elliott. |
| 11:45:58 | 2 | (Jury in.) |
| 11:45:58 | 3 | THE COURT:  Thank you, ladies and gentlemen. |
| 11:46:15 | 4 | As you walked out, I got a message from the clerk |
| 11:46:18 | 5 | that your lunch was here.  I'm surprised you came back at |
| 11:46:21 | 6 | all. |
| 11:46:21 | 7 | Please be seated. |
| 11:46:22 | 8 | Ladies and gentlemen, just prior to me asking you |
| 11:46:29 | 9 | to step out, there were slides shown to you regarding two |
| 11:46:33 | 10 | depositions taken in other lawsuits.  And there were |
| 11:46:37 | 11 | specific references on those slides to other lawsuits |
| 11:46:41 | 12 | involving other parties. |
| 11:46:43 | 13 | I'm instructing you to disregard anything you saw |
| 11:46:46 | 14 | on either of those slides about other lawsuits in other |
| 11:46:49 | 15 | places.  This case is about this lawsuit, not about what |
| 11:46:52 | 16 | happened in other lawsuits.  All right? |
| 11:46:55 | 17 | Let's proceed. |
| 11:46:56 | 18 | MR. POLLINGER:  Thank you, Your Honor. |
| 11:46:57 | 19 | Q.  (By Mr. Pollinger)  Professor Madisetti, you were asked |
| 11:47:05 | 20 | by Mr. Summersgill a number of questions regarding the '557 |
| 11:47:08 | 21 | patent and, in particular, with respect to source code. |
| 11:47:10 | 22 | First of all, the questions that Mr. Summersgill |
| 11:47:16 | 23 | asked you, did any of that change your opinions on the |
| 11:47:18 | 24 | patents? |
| 11:47:19 | 25 | A.  No, it did not.  I reviewed source code, as well as -- |

469

| | | |
|---|---|---|
| 11:47:24 | 1 | through Mr. Jones's report, as well as I did personally.  I |
| 11:47:27 | 2 | went to Washington, D.C., to the law firm office and |
| 11:47:32 | 3 | reviewed all the code myself, as well.  I also relied on |
| 11:47:33 | 4 | other documents, like product sheets and so on. |
| 11:47:36 | 5 | THE COURT:  Pull the microphone a little closer -- |
| 11:47:39 | 6 | THE WITNESS:  I'm sorry. |
| 11:47:40 | 7 | THE COURT:  -- Professor. |
| 11:47:44 | 8 | THE WITNESS:  Yes.  Sorry, Your Honor. |
| 11:47:46 | 9 | Q.  (By Mr. Pollinger)  Now, when I presented your |
| 11:47:48 | 10 | infringement opinion, we had to seal the court so that no |
| 11:47:52 | 11 | one qualified to -- no one that's not qualified to see -- |
| 11:47:55 | 12 | see the source code had to step out, and then you showed us |
| 11:47:59 | 13 | the source code. |
| 11:47:59 | 14 | When Mr. Summersgill asked you questions, he |
| 11:48:02 | 15 | didn't ask that the court be sealed, did he? |
| 11:48:05 | 16 | A.  No, he did not.  He didn't show me any code. |
| 11:48:09 | 17 | Q.  He didn't show you any source code, did he? |
| 11:48:11 | 18 | A.  He did not. |
| 11:48:12 | 19 | Q.  Did he give you any opportunity to explain the actual |
| 11:48:15 | 20 | source code that we went over? |
| 11:48:17 | 21 | A.  No. |
| 11:48:18 | 22 | Q.  The actual source code that we went over that you |
| 11:48:21 | 23 | showed us, does it show that the Apple products at issue |
| 11:48:26 | 24 | have every single part of the '557 claims? |
| 11:48:31 | 25 | A.  Yes. |

11:48:32  1   Q.  Mr. Summersgill was trying to suggest that there's some

11:48:43  2   other source code out there that could be relevant, but he

11:48:46  3   never showed you anything else.

11:48:48  4        Is there any other source code that you needed to

11:48:50  5   look at to see whether the '557 patent is infringed by the

11:48:55  6   Apple products at issue.

11:48:57  7        MR. SUMMERSGILL:  Your Honor, objection, leading.

11:48:59  8        THE COURT:  Sustained.

11:49:01  9        This is redirect.

11:49:04 10   Q.  (By Mr. Pollinger)  Was there any other source code

11:49:05 11   that you needed to look at?

11:49:07 12   A.  Not at all.

11:49:09 13   Q.  There was a number of questions by Mr. Summersgill

11:49:17 14   regarding a sequence and a sequence index, and I believe he

11:49:26 15   was suggesting that there was non-infringement based upon

11:49:29 16   that, and -- but you wanted to explain.

11:49:32 17   A.  Yes.

11:49:33 18   Q.  He didn't give you an opportunity to explain?

11:49:35 19   A.  No.

11:49:35 20   Q.  Could you explain your opinion with regard to whether

11:49:41 21   it matters in the '557 patent if we're looking at an actual

11:49:48 22   sequence or a sequence index?

11:49:50 23   A.  It does not.  If you look at Figure 3 of the patent,

11:49:57 24   for example -- could I put up Figure 3 of the --

11:50:00 25   Q.  Yes.

| | | |
|---|---|---|
| 11:50:00 | 1 | MR. POLLINGER:  Could we get -- Mr. Huynh, could |
| 11:50:03 | 2 | we get Figure 3 of the '557 patent, please? |
| 11:50:15 | 3 | THE WITNESS:  The next figure, please, Figure 4. |
| 11:50:17 | 4 | And if you can blow it up slightly. |
| 11:50:20 | 5 | A.  So as you can see in this particular figure, you're |
| 11:50:25 | 6 | selecting a sequence by a signature number, and the |
| 11:50:29 | 7 | signature number is the sequence index in the code. |
| 11:50:34 | 8 | So selecting a sequence is the same as selecting a |
| 11:50:38 | 9 | sequence number.  So just like if you call somebody Tom, |
| 11:50:41 | 10 | you're calling that person, whether you call them by the |
| 11:50:43 | 11 | name or by the person itself. |
| 11:50:46 | 12 | The sequence number and the index, they represent |
| 11:50:51 | 13 | calling -- selecting a sequence is the same as selecting a |
| 11:50:54 | 14 | sequence number or an index. |
| 11:50:57 | 15 | Q.  (By Mr. Pollinger)  Professor Madisetti, if you're |
| 11:50:59 | 16 | teaching -- you're lecturing, you're teaching a class of |
| 11:51:04 | 17 | students and you want a particular student to answer a |
| 11:51:10 | 18 | particular question, can you select that student by name? |
| 11:51:13 | 19 | A.  Yes, or by their class roll number. |
| 11:51:16 | 20 | Q.  Do you have to walk down to where the student's sitting |
| 11:51:21 | 21 | and grab them to select them? |
| 11:51:23 | 22 | A.  No. |
| 11:51:23 | 23 | Q.  Mr. Summersgill also asked you a number of questions |
| 11:51:33 | 24 | regarding increases and decrease -- decreases, and I |
| 11:51:42 | 25 | believe he was suggesting that in the Apple products this |

11:51:45  1   happens one way and in the claims it's required another

11:51:48  2   way.  But you wanted to explain your -- your -- your

11:51:51  3   analysis of that; is that correct?

11:51:54  4        MR. SUMMERSGILL:  Your Honor, I object.  Leading

11:51:56  5   again.

11:51:57  6        THE COURT:  Sustained.

11:51:59  7        Restate your question, counsel.

11:52:03  8   Q.  (By Mr. Pollinger)  Professor Madisetti, in the claims

11:52:04  9   of the '557 patent, is there a difference with regard to

11:52:11  10  the cyclic shift on increasing or decreasing?

11:52:14  11  A.  The claims say increasing, but I believe Apple raised a

11:52:18  12  number of arguments about non-infringing alternatives, and

11:52:22  13  the alternatives were not precise or clear.

11:52:28  14       So I offered an opinion saying that, to the extent

11:52:31  15  I understood what Apple was trying to say, I said because

11:52:35  16  everything is in a cycle; if you increase one way, it

11:52:40  17  decreases the other way.

11:52:41  18       So in that sense, because it's a cyclic shift,

11:52:43  19  means in a circle.  If you move this way, you're closer

11:52:46  20  this way; and if you move this way, you're increasing in

11:52:46  21  one way and decreasing in another.

11:52:47  22       So I said, according to Apple's non-infringement

11:52:50  23  argument, it's possibly infringing, as well.  So this was

11:52:56  24  more in the context of non-infringing alternatives.  But

11:53:00  25  Apple's products satisfy the increasing strictly.

| | | |
|---|---|---|
| 11:53:06 | 1 | Q.  Now, with regard to the '332 patent -- if we could have |
| 11:53:13 | 2 | Slide 51 from your direct examination -- there were some |
| 11:53:17 | 3 | questions from Mr. Summersgill about what the lead inventor |
| 11:53:21 | 4 | said to the standards setting body, and he seemed to be |
| 11:53:33 | 5 | suggesting that the inventor was indicating that there |
| 11:53:35 | 6 | really wasn't an invention here.  And do you agree with the |
| 11:53:41 | 7 | suggestion that there is no -- that Dr. Lee believed there |
| 11:53:45 | 8 | was no invention here? |
| 11:53:49 | 9 |         MR. SUMMERSGILL:  Objection, leading. |
| 11:53:52 | 10 |         THE COURT:  Sustained. |
| 11:53:53 | 11 | Q.  (By Mr. Pollinger)  Professor Madisetti, on Slide 51 |
| 11:53:55 | 12 | here, which is from PX-1760 that you showed us, what did |
| 11:54:00 | 13 | Dr. Lee say about his invention? |
| 11:54:03 | 14 | A.  Counsel, I think the counsel from Apple was pointing to |
| 11:54:10 | 15 | an email message with respect to asking the question, if I |
| 11:54:22 | 16 | was not mistaken. |
| 11:54:23 | 17 | Q.  I believe so.  And -- and we can show that, as well. |
| 11:54:26 | 18 | A.  Yes. |
| 11:54:26 | 19 | Q.  What I wanted to ask you about was what -- what did |
| 11:54:31 | 20 | Dr. Lee write here? |
| 11:54:33 | 21 | A.  Yes.  He was talking about a critical problem that was |
| 11:54:36 | 22 | being solved in Exhibit 1760, and the critical problem was |
| 11:54:42 | 23 | that 64,000 mobile phones had to share 100 mailboxes before |
| 11:54:44 | 24 | the invention. |
| 11:54:45 | 25 |         So I said here that he was pretty modest because |

11:54:47  1  his invention that was a development of the standard solved

11:54:51  2  this critical problem, and I said the word "minor" or

11:54:53  3  "nothing new" is more of an indicator of how modest he was.

11:54:59  4  Q.  And did you read the email that Mr. Summersgill has

11:55:04  5  shown you?

11:55:06  6  A.  I did.

11:55:07  7  Q.  And the "nothing new" statement that he showed you,

11:55:13  8  what is your assessment of that?

11:55:16  9  A.  It means that -- and he's only referring to a portion

11:55:20  10  of his claim, not the entire invention, and even that was a

11:55:25  11  dramatic change, in my opinion.  But, in my opinion it's

11:55:28  12  more a reflection of his modesty, as opposed to anything

11:55:32  13  else.

11:55:33  14  Q.  Further on the '332 patent, Mr. Summersgill asked you a

11:55:47  15  number of questions regarding shifts and divides.

11:55:52  16          Is whether we're talking a shift or divide

11:55:56  17  relevant to whether there is infringement of the '332

11:56:01  18  patent?

11:56:01  19  A.  No.  A shift is a divide.  And most code uses divide

11:56:07  20  and shift in the same way.  So when you take a number and

11:56:13  21  shift it right, it divides it.  When you shift the number

11:56:16  22  left, it multiplies it.  That's a standard way.  I've

11:56:20  23  written books on this topic, and that's a very common way

11:56:23  24  of doing arithmetic.

11:56:26  25  Q.  On the same topic, Mr. Summersgill asked you about

11:56:29   1   walking, flying, or driving from Atlanta.

11:56:33   2          Does the claims -- the claim here in the '332

11:56:37   3   patent, does it talk about walking, flying, or driving?

11:56:40   4   A.  No, it does not.  And, in fact, I drove from Atlanta,

11:56:46   5   so I was surprised.

11:56:49   6   Q.  Lastly, turning to the '833 patent, there is a lot of

11:56:55   7   talk about rows and a lot of talk about columns and

11:57:01   8   row-by-row and column-by-column.  And I believe you wanted

11:57:06   9   to explain yourself.

11:57:09  10          So my question is -- well, first, my first

11:57:12  11   question is, did Mr. Summersgill's questions in any way

11:57:18  12   undermine your opinion on infringement?

11:57:20  13   A.  No, it did not.

11:57:23  14   Q.  And can you explain to us -- well, let me ask you this.

11:57:33  15          Is it important when you're talking about whether

11:57:36  16   it's row-by-row or column-by-column to know very precisely

11:57:40  17   what you're talking about?

11:57:41  18   A.  Yes, it is.  As I was saying for the 2D matrix, if you

11:57:47  19   look at it for the whole matrix, the mapping is row-by-row,

11:57:52  20   but if you look within a single row, which is the first

11:57:56  21   row, you start from the left and then you go

11:57:57  22   column-by-column across.  That's what I was saying.  So in

11:58:00  23   my deposition, that was pointed out.

11:58:04  24          The question was, what happens in the first row,

11:58:09  25   first element and the second element?  So if you could put

11:58:14    1    up that deposition testimony on Page 393.

11:58:20    2            MR. POLLINGER:  Yes, Mr. Huynh.  Page 393, Lines 8

11:58:27    3    through 19.

11:59:02    4            Your Honor, may I put this up on the easel?

11:59:05    5            THE COURT:  Turn it around and show me what it is.

11:59:08    6            MR. POLLINGER:  It's the Defendant's

11:59:09    7    demonstrative.

11:59:09    8            THE COURT:  All right.

11:59:09    9            MR. POLLINGER:  Thank you, Your Honor.

11:59:15   10    Q.  (By Mr. Pollinger)  So, Professor Madisetti, what is

11:59:19   11    the specific question?  What is specifically being talked

11:59:22   12    about here?

11:59:23   13    A.  Yes.  The question that was asked by the counsel, she

11:59:27   14    asked me:  Which resource element on Line 11 is mapped

11:59:32   15    first and which resource element is mapped second -- so --

11:59:40   16    Q.  Professor, can I stop you there?  Can I --

11:59:44   17            MR. POLLINGER:  If Your Honor allows me, can I

11:59:46   18    draw on the easel, with the assistance of Professor

11:59:54   19    Madisetti, at the direction of Professor Madisetti?

11:59:58   20            THE COURT:  Ordinarily, I let either side use a

12:00:01   21    demonstrative that the other side puts up, but ordinarily

12:00:07   22    it's a picture on a screen, and it's not altered when the

12:00:09   23    other lawyer uses it.

12:00:11   24            Does the Defendant object to Plaintiffs' counsel

12:00:14   25    drawing on its hard copy demonstrative so that it will be

| | | |
|---|---|---|
| 12:00:18 | 1 | altered? |
| 12:00:19 | 2 | MR. SUMMERSGILL:  We do, Your Honor.  We have no |
| 12:00:21 | 3 | objection to Mr. Pollinger using the demonstrative, but we |
| 12:00:25 | 4 | do object to him changing the demonstrative. |
| 12:00:27 | 5 | THE COURT:  Mr. Pollinger, you can certainly |
| 12:00:29 | 6 | indicate without marking on the demonstrative the direction |
| 12:00:34 | 7 | you get from Dr. Madisetti, but I don't want you to |
| 12:00:39 | 8 | physically alter it, given that it's not a picture on the |
| 12:00:41 | 9 | screen; it's a hard copy demonstrative. |
| 12:00:45 | 10 | MR. POLLINGER:  Sure, Your Honor. |
| 12:00:45 | 11 | THE COURT:  So if you'll use it in that way, |
| 12:00:48 | 12 | please. |
| 12:00:48 | 13 | MR. POLLINGER:  I think I can use it in that way. |
| 12:00:48 | 14 | I wanted to put a little dot in a particular place, but if |
| 12:00:53 | 15 | that's not -- |
| 12:00:53 | 16 | THE COURT:  You can use a Post-it note that you |
| 12:01:00 | 17 | can take off. |
| 12:01:00 | 18 | MR. POLLINGER:  That's a great suggestion.  Thank |
| 12:01:00 | 19 | you, Your Honor. |
| 12:01:00 | 20 | THE COURT:  Okay.  Let's proceed. |
| 12:01:02 | 21 | Q.  (By Mr. Pollinger)  Professor Madisetti, if we look at |
| 12:01:04 | 22 | this precise question where it says:  Which resource |
| 12:01:08 | 23 | element is mapped first? |
| 12:01:10 | 24 | A.  Yes. |
| 12:01:10 | 25 | Q.  Can I indicate that on this chart here? |

12:01:13  1    A.  Yes, please select the square on the top left.

12:01:18  2    Q.  Is that correct?

12:01:19  3    A.  Yes, that's the one.

12:01:21  4         And then the question says:  Which resource

12:01:24  5    element is mapped second?

12:01:27  6         Could you put the Post-it note on the block to the

12:01:30  7    right of the blue that you just did?

12:01:34  8         Yes.  So what I was explaining is that within that

12:01:37  9    row, you're moving column-by-column because the first

12:01:42  10   column is 0, the second column is 1, all the way to Column

12:01:47  11   No. 11.

12:01:48  12   Q.  Where is the first column?

12:01:49  13   A.  The first column is -- is that same.  The first column

12:01:55  14   is right there, that's the first column.

12:01:56  15   Q.  And where is the second column?

12:01:58  16   A.  Just beside that.  That's right.

12:02:01  17        And so for the first row, you go from the top

12:02:04  18   left, the first resource element is the first blue Post-it

12:02:08  19   note, and the second one is the -- on the right that shifts

12:02:11  20   by one column to the right.  That's exactly what I said.

12:02:14  21   And that's exactly how the claim also describes it.

12:02:18  22   Q.  Let me see if I understand this.  If we're looking at a

12:02:23  23   particular row, here's the first row?

12:02:24  24   A.  Yes.

12:02:25  25   Q.  The mapping goes column-by-column?

| | | |
|---|---|---|
| 12:02:29 | 1 | A.  On that row. |
| 12:02:30 | 2 | MR. SUMMERSGILL:  Your Honor? |
| 12:02:31 | 3 | Q.  (By Mr. Pollinger)  First column? |
| 12:02:33 | 4 | THE COURT:  Just a minute. |
| 12:02:34 | 5 | MR. SUMMERSGILL:  Objection, leading. |
| 12:02:35 | 6 | THE COURT:  You'll have to do this in a |
| 12:02:37 | 7 | non-leading fashion. |
| 12:02:38 | 8 | Restate your question. |
| 12:02:40 | 9 | Q.  (By Mr. Pollinger)  Professor Madisetti, could you |
| 12:02:41 | 10 | guide me with the Post-its as to what I should do with |
| 12:02:50 | 11 | respect to the first row? |
| 12:02:51 | 12 | A.  Yes.  With respect to the first row, the source code |
| 12:02:56 | 13 | for the Apple/Qualcomm and Apple/Intel products put Post-it |
| 12:02:56 | 14 | notes along in that first row towards the right.  So you |
| 12:03:05 | 15 | can put a third Post-it note there, and the next Post-it |
| 12:03:09 | 16 | note on there, and then all the way to the end, and end on |
| 12:03:12 | 17 | the first row.  End of the first row. |
| 12:03:15 | 18 | And then you go to the beginning of the second |
| 12:03:19 | 19 | row, then you again go column-by-column across that row. |
| 12:03:23 | 20 | And that's what the code does, and that's what I was |
| 12:03:26 | 21 | explaining, because the counsel had asked me which element |
| 12:03:30 | 22 | was mapped first, which second, and all that.  And I said |
| 12:03:33 | 23 | it starts the top left, and then goes to the right |
| 12:03:37 | 24 | column-by-column. |
| 12:03:37 | 25 | So overall, the map -- the matrix -- 2D matrix is |

12:03:44  1  mapped row-by-row, but within each row, it is

12:03:48  2  column-by-column.  And so there shouldn't be any confusion

12:03:52  3  that the code does exactly like the claim should say, and

12:03:55  4  indeed the code does exactly like what the standard -- the

12:03:58  5  LTE standard also says.

12:03:59  6  Q.  Is this what you explained in your deposition?

12:04:03  7  A.  Yes.

12:04:03  8  Q.  Could you read that to us?

12:04:05  9  A.  Yes.  I said -- so the counsel asked me:  Which

12:04:10  10  resource element is mapped first and which resource element

12:04:13  11  is mapped second sequentially?

12:04:17  12         I said:  They're mapped column-by-column in a

12:04:20  13  temporally segmented manner, which means that they're

12:04:23  14  ordered in time.  Each column represents a unit of time,

12:04:28  15  and starting at the top left.

12:04:29  16         So that's exactly what I described here, and

12:04:33  17  that's exactly what I showing the Court, as well.

12:04:36  18  Q.  You showed us an animation as part of your direct --

12:04:40  19  A.  Yes.

12:04:40  20  Q.  -- your direct examination?

12:04:42  21  A.  Yes.

12:04:42  22  Q.  Is your animation consistent with this?

12:04:45  23  A.  Yes.

12:04:45  24  Q.  Is this what the claims require?

12:04:48  25  A.  Yes.

| | | |
|---|---|---|
| 12:04:48 | 1 | Q.  Does this in any way establish non-infringement? |
| 12:04:53 | 2 | A.  No, it does not.  It actually proves what I'm saying, |
| 12:04:56 | 3 | which is interesting. |
| 12:04:57 | 4 | Q.  Is there any question in your mind here that these |
| 12:04:59 | 5 | three patents are infringed by Apple? |
| 12:05:01 | 6 | A.  Not at all. |
| 12:05:03 | 7 | MR. POLLINGER:  No further questions, Your Honor. |
| 12:05:04 | 8 | THE COURT:  You pass the witness?  Mr. Pollinger, |
| 12:05:06 | 9 | you pass the witness? |
| 12:05:08 | 10 | MR. POLLINGER:  Yes, Your Honor, I pass the |
| 12:05:10 | 11 | witness.  Thank you. |
| 12:05:11 | 12 | THE COURT:  Thank you. |
| 12:05:13 | 13 | Mr. Summersgill, additional cross-examination? |
| 12:05:17 | 14 | MR. SUMMERSGILL:  Nothing further, Your Honor. |
| 12:05:19 | 15 | THE COURT:  Okay.  Then you may step down -- |
| 12:05:23 | 16 | THE WITNESS:  Thank you, Your Honor. |
| 12:05:24 | 17 | THE COURT:  -- Professor Madisetti. |
| 12:05:25 | 18 | And let's pull this demonstrative down, please. |
| 12:05:28 | 19 | And this is a good time to break for lunch.  Five |
| 12:05:32 | 20 | minutes after 12:00. |
| 12:05:34 | 21 | Ladies and gentlemen, please take your notebooks |
| 12:05:38 | 22 | with you to the jury room for lunch.  It should be waiting |
| 12:05:41 | 23 | for you there.  Please follow all my instructions, |
| 12:05:44 | 24 | including not to discuss the case among yourselves.  And |
| 12:05:47 | 25 | we'll try to reconvene in approximately an hour. |

12:05:50   1          With that, the jury is excused for lunch.

12:05:53   2          COURT SECURITY OFFICER:  All rise.

12:05:56   3          (Jury out.)

12:05:56   4          THE COURT:  Counsel, we're going to break at this

12:06:10   5   point.  I'd like you to take about 30 minutes, and then I'd

12:06:13   6   like you to make yourselves available to me at chambers to

12:06:16   7   see if there's any other dispute -- any disputes we need to

12:06:21   8   cover so that we can keep the evidence flowing.  All right?

12:06:25   9          With that, we stand in recess.

12:06:27   10          MR. SHEASBY:  Thank you, Your Honor.

12:06:28   11          MR. POLLINGER:  Thank you.

12:06:29   12          (Recess.)

           13                    CERTIFICATION

           14

           15      I HEREBY CERTIFY that the foregoing is a true and

           16   correct transcript from the stenographic notes of the

           17   proceedings in the above-entitled matter to the best of my

           18   ability.

           19

           20

           21   _/S/ Shelly Holmes_____        8/5/2020_____
                 SHELLY HOLMES, CSR, TCRR              Date
           22   OFFICIAL REPORTER
                 State of Texas No.: 7804
           23   Expiration Date: 12/31/20

           24

           25