REDACTED BY ORDER OF THE COURT

12:52:59

1      IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
2                MARSHALL DIVISION

3

   OPTIS WIRELESS TECHNOLOGY,    )(  CIVIL ACTION NO.
4  LLC, OPTIS CELLULAR           )(  2:19-CV-66-JRG
   TECHNOLOGY, LLC, PANOPTIS     )(
5  PATENT MANAGEMENT, LLC,       )(
   UNWIRED PLANET, LLC, UNWIRED  )(
6  PLANET INTERNATIONAL LIMITED, )(
        PLAINTIFFS,              )(
7                                )(
   VS.                           )(
8                                )(  MARSHALL, TEXAS
                                 )(  AUGUST 7, 2020
9  APPLE INC.,                   )(  1:11 P.M.
        DEFENDANTS.              )(
10

11            TRANSCRIPT OF JURY TRIAL

12               AFTERNOON SESSION

13    BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

14       UNITED STATES CHIEF DISTRICT JUDGE

15
   APPEARANCES:
16

17 FOR THE PLAINTIFFS:

18
   MR. SAMUEL F. BAXTER
19 MS. JENNIFER TRUELOVE
   MCKOOL SMITH, P.C.
20 104 E. Houston Street
   Suite 300
21 Marshall, TX 75670

22
   MR. JASON G. SHEASBY
23 MS. ANNITA ZHONG
   IRELL & MANELLA LLP
24 1800 Avenue of the Stars
   Suite 900
25 Los Angeles, CA 90067

```
 1   FOR THE PLAINTIFFS:

 2
     MR. STEVEN J. POLLINGER
 3   MR. SETH R. HASENOUR
     MCKOOL SMITH, P.C.
 4   300 W. 6th Street
     Suite 1700
 5   Austin, TX 78701

 6
     MR. JONATHAN YIM
 7   MCKOOL SMITH, P.C.
     One Manhattan West
 8   395 9th Avenue
     50th Floor
 9   New York, NY 10001

10
     MR. CHRISTOPHER P. MCNETT
11   MCKOOL SMITH, P.C.
     1999 K Street, NW
12   Suite 600
     Washington, DC 20006
13

14   MS. INGRID PETERSEN
     MS. KELSEY SCHUETZ
15   IRELL & MANELLA LLP
     840 Newport Center Drive
16   Suite 400
     Newport Beach, CA 92660
17

18   FOR THE DEFENDANT:

19
     MR. JOSEPH J. MUELLER
20   WILMER CUTLER PICKERING
     HALE & DORR, LLP
21   60 State Street
     Boston, MA 02109
22

23   MR. MICHAEL J. SUMMERSGILL
     WILMER CUTLER PICKERING
24   HALE & DORR, LLP
     60 State Street
25   Boston, MA 02109
```

```
 1   FOR THE DEFENDANT:

 2
     MS. MELISSA R. SMITH
 3   GILLAM & SMITH, LLP
     303 South Washington Avenue
 4   Marshall, TX 75670

 5

 6

 7

 8   COURT REPORTER:      Ms. Shelly Holmes, CSR, TCRR
                          Official Court Reporter
 9                        United States District Court
                          Eastern District of Texas
10                        Marshall Division
                          100 E. Houston
11                        Marshall, Texas  75670
                          (903) 923-7464
12

13
     (Proceedings recorded by mechanical stenography, transcript
14   produced on a CAT system.)

15

16

17

18

19

20

21

22

23

24

25
```

```
01:11:06   1              P R O C E E D I N G S
01:11:06   2         (Jury out.)
01:11:07   3         COURT SECURITY OFFICER:  All rise.
01:11:09   4         THE COURT:  Be seated, please.
01:18:55   5         Defendants, who is your next witness?
01:19:03   6         MR. MUELLER:  Your Honor, our next witness is
01:19:04   7  going to be Ray Perryman.  May I raise one issue before we
01:19:07   8  call him, Your Honor?
01:19:08   9         THE COURT:  You may.
01:19:08  10         MR. MUELLER:  So as I understand from Plaintiffs,
01:19:10  11  with respect to their rebuttal case, which will be coming
01:19:13  12  soon, they intend to play -- or are considering playing, I
01:19:18  13  should say, at the conclusion of it a portion of the
01:19:22  14  deposition of a Sophie Vrzic.  I'm probably mispronouncing
01:19:25  15  her name, but I think it's V-r-i-c-i-c.  As context, this
01:19:29  16  is a --
01:19:30  17         THE COURT:  Let me stop you.  Is this something we
01:19:34  18  can take up after you've close your case-in-chief?
01:19:37  19         MR. MUELLER:  Yes, Your Honor.
01:19:38  20         THE COURT:  Then let's do that.
01:19:38  21         MR. MUELLER:  Okay.
01:19:41  22         THE COURT:  I don't want to delay the jury getting
01:19:43  23  back in here.
01:19:44  24         MR. MUELLER:  Understood.
01:19:45  25         THE COURT:  All right.  Let's bring the jury in.
```

| | | |
|---|---|---|
| 01:19:48 | 1 | COURT SECURITY OFFICER:  All rise. |
| 01:20:14 | 2 | (Jury in.) |
| 01:20:15 | 3 | THE COURT:  Welcome back, ladies and gentlemen. |
| 01:20:17 | 4 | Please have a seat. |
| 01:20:19 | 5 | Defendant, call your next witness. |
| 01:20:22 | 6 | MR. MUELLER:  Thank you, Your Honor.  We call |
| 01:20:23 | 7 | Dr. Ray Perryman.  And Ms. Smith will conduct the |
| 01:20:26 | 8 | examination. |
| 01:20:26 | 9 | THE COURT:  All right.  Dr. Perryman, if you'll |
| 01:20:40 | 10 | come forward and be sworn, please. |
| 01:20:43 | 11 | (Witness sworn.) |
| 01:20:44 | 12 | THE COURT:  Please come around and have a seat at |
| 01:20:47 | 13 | the witness stand. |
| 01:20:49 | 14 | THE WITNESS:  Thank you, Your Honor. |
| 01:20:54 | 15 | THE COURT:  Ms. Smith, you may proceed whenever |
| 01:21:00 | 16 | you're ready. |
| 01:21:01 | 17 | MS. SMITH:  Thank you, Your Honor. |
| 01:21:01 | 18 | RAY PERRYMAN, DEFENDANT'S WITNESS, SWORN |
| 01:21:01 | 19 | DIRECT EXAMINATION |
| 01:21:02 | 20 | BY MS. SMITH: |
| 01:21:02 | 21 | Q.  Good afternoon, Dr. Perryman.  If you would, introduce |
| 01:21:05 | 22 | yourself to the jury. |
| 01:21:06 | 23 | A.  Yes, ma'am.  My name is Raymond Perryman.  I grew up |
| 01:21:10 | 24 | over in Lindale, and I live now in Odessa and work in Waco. |
| 01:21:16 | 25 | And that's because 28 years ago, I married the mayor of |

01:21:19  1   Odessa, and so I moved.  And I continue my business in

01:21:24  2   Waco.  And I'm the father of five and the grandfather of

01:21:29  3   four with one on the way.

01:21:30  4   Q.  Dr. Perryman, if you would, share your educational

01:21:34  5   background with the jurors.

01:21:37  6   A.  Yes, ma'am.  After graduating from Lindale, I attended

01:21:40  7   Baylor University, and I received a Bachelor's degree in

01:21:43  8   mathematics at Baylor.  And then I attended Rice University

01:21:47  9   down in Houston, and received a Ph.D. in economics.

01:21:50  10  Q.  And where do you work now, doctor?

01:21:53  11  A.  Now I am the president of a company called The Perryman

01:22:00  12  Group.  It's -- it's an economic consulting company that I

01:22:03  13  manage.

01:22:03  14  Q.  And when you say economic consulting company, how long

01:22:06  15  you have been doing that?

01:22:07  16  A.  Well, the company itself was incorporated about 35

01:22:10  17  years ago.  I've been doing economic consulting for

01:22:14  18  something over 40 years.

01:22:15  19  Q.  I understand you also have some teaching experience?

01:22:19  20  A.  Yes, ma'am, I do.  I spent 17 years at Baylor

01:22:23  21  University and five years at Southern Methodist University.

01:22:25  22  I still have some honorary titles and do a little work at

01:22:30  23  two or three universities.

01:22:31  24          During my time at Baylor, I was -- spent 10 years

01:22:35  25  as the Herman Brown Professor of Economics, which was an

01:22:39   1   endowed research position.  And the last five years I was

01:22:40   2   there, my title was University Professor, which is a title

01:22:43   3   that, to my understanding, only two people at Baylor have

01:22:46   4   had in the past -- since 1845.  As long as Baylor's been

01:22:52   5   there.

01:22:52   6          THE COURT:  Dr. Perryman, it's good to have you

01:22:54   7   appear in court in front of me again.  I remember the last

01:22:58   8   time you appeared, you spoke very fast, and you're right

01:23:03   9   back where you were at the last trial.  Please slow down,

01:23:07   10   sir.

01:23:07   11          THE WITNESS:  Yes, Your Honor.

01:23:08   12          THE COURT:  Thank you very much.

01:23:08   13          Ms. Smith, please continue.

01:23:10   14          MS. SMITH:  Thank you, Your Honor.

01:23:11   15   Q.  (By Ms. Smith)  Dr. Perryman, have you received any

01:23:13   16   awards for your work in economic and financial consulting?

01:23:17   17   A.  I have.  I -- I've been very fortunate in that regard.

01:23:20   18   I received a number over the years.  Just -- just a few

01:23:20   19   that are memorable to me.

01:23:23   20          Lindale started an award for their distinguished

01:23:26   21   alumnus a few years ago, and they were kind enough to give

01:23:30   22   me that the first year.  And then I received awards, alumni

01:23:36   23   awards, from both Baylor University and Rice University for

01:23:39   24   work I had done.

01:23:40   25          I received a number of academic research awards,

01:23:40  1   and one that meant a lot to me, back in 2012, the Texas

01:23:45  2   Legislative Conference named me the Texan of the Year,

01:23:47  3   which was -- which I've done a lot of work on economic

01:23:50  4   growth and development here in Texas.  So that one meant a

01:23:53  5   lot to me.

01:23:54  6        I've won one that the Cesar Chavez Foundation gave

01:23:54  7   me for humanitarian work, which is something I've done a

01:24:00  8   lot of work on, issues like hunger and poverty and child

01:24:03  9   abuse and that sort of thing.

01:24:05  10        And then just this past year -- less than a year

01:24:07  11   ago, I was given the lifetime achievement award by the

01:24:14  12   International Economic Development Council, again, largely

01:24:14  13   for developing economies primarily here in Texas.

01:24:19  14   Q.  I understand, Doctor, even though you're a Texan, that

01:24:22  15   the -- The New York Times has -- has given you an award as

01:24:26  16   well.  Is that correct?

01:24:26  17   A.  Well, they haven't given me an award, but they did once

01:24:27  18   call me the state's unofficial economist.

01:24:31  19   Q.  A title, yes, Doctor.

01:24:32  20        Now, what kind of experience do you have in

01:24:34  21   assessing patent licenses?

01:24:36  22   A.  Quite a bit.  I've been doing this for over 30 years.

01:24:40  23   I have studied thousands and thousands of patents over that

01:24:43  24   period of time, and done the economic analysis associated

01:24:45  25   with those patents.

01:24:47   1   Q.  And what experience do you have related to patent

01:24:51   2   license negotiations?

01:24:53   3   A.  Well, I never invented anything.  I've never been in

01:24:57   4   the room actually negotiating a patent license.  I have

01:25:00   5   helped a lot of companies that have patents to -- with

01:25:04   6   their negotiations by valuing their patents or helping them

01:25:07   7   structure their negotiations or things of that nature.

01:25:11   8   Q.  If somebody came into the courtroom and said that Apple

01:25:14   9   didn't have an expert with any experience in surveys, would

01:25:18  10   that be right or wrong?

01:25:19  11   A.  I believe that would be incorrect.

01:25:21  12   Q.  Well, tell -- tell the jurors a little bit about your

01:25:24  13   experience in surveys.

01:25:25  14   A.  Sure.  I've conducted hundreds of surveys, many of them

01:25:29  15   dealing with -- with consumer products and issues.  For

01:25:32  16   years, I was the co-owner of a company called Metro Stats

01:25:36  17   that did consumer surveys in many large cities around the

01:25:43  18   country.  I have done all of the underlying statistical

01:25:46  19   work that goes into surveys.  I've published extensively on

01:25:50  20   that and received a number of awards for that work.

01:25:53  21          I have -- as I think Dr. Reed-Arthurs said

01:25:57  22   yesterday, things like the unemployment rate and consumer

01:26:01  23   price index are all based on big surveys.  I've helped the

01:26:05  24   U.S. Department of Labor and U.S. Department of Commerce in

01:26:08  25   designing and advising on those surveys for about 30 years.

| | | |
|---|---|---|
| 01:26:10 | 1 | And then I actually created the Texas Consumer |
| 01:26:14 | 2 | Price Index, which is also based on a large survey. |
| 01:26:16 | 3 | Q.  Dr. Perryman, how many times have you served as an |
| 01:26:21 | 4 | expert on patent damages? |
| 01:26:22 | 5 | A.  Probably around 70 times, something like that, in |
| 01:26:28 | 6 | litigation. |
| 01:26:28 | 7 | Q.  And have any of those cases involved patents claimed or |
| 01:26:33 | 8 | declared to be essential? |
| 01:26:34 | 9 | A.  Yes, ma'am.  I would say about 25 or so of those. |
| 01:26:37 | 10 | Q.  Dr. Perryman, are you being compensated for -- for your |
| 01:26:44 | 11 | work in this case today? |
| 01:26:45 | 12 | A.  My company is, yes, ma'am. |
| 01:26:46 | 13 | Q.  Okay.  And is that compensation dependent in any way |
| 01:26:50 | 14 | dependent on the outcome of this case? |
| 01:26:51 | 15 | A.  No, ma'am, it's not. |
| 01:26:53 | 16 | Q.  In addition to -- to Apple -- or -- or maybe I'll say |
| 01:26:56 | 17 | setting Apple aside, how many clients have you done work |
| 01:26:59 | 18 | for, say, in the past five years? |
| 01:27:01 | 19 | A.  Probably 3- or 400, something like that. |
| 01:27:04 | 20 | Q.  And out of that 3- or 400, how many times did you work |
| 01:27:07 | 21 | for Apple? |
| 01:27:08 | 22 | A.  Three times. |
| 01:27:09 | 23 | MS. SMITH:  Your Honor, I'd offer Dr. Perryman as |
| 01:27:13 | 24 | an expert in financial, economic damages analysis, |
| 01:27:17 | 25 | technology, and patent valuation. |

| | | |
|---|---|---|
| 01:27:19 | 1 | THE COURT:  Is there objection? |
| 01:27:20 | 2 | MR. SHEASBY:  No objection, Your Honor. |
| 01:27:22 | 3 | THE COURT:  Then the Court will recognize this |
| 01:27:24 | 4 | witness as an expert in those designated fields. |
| 01:27:26 | 5 | Please continue, Ms. Smith. |
| 01:27:29 | 6 | MS. SMITH:  Thank you, Your Honor. |
| 01:27:30 | 7 | Q.  (By Ms. Smith)  Dr. Perryman, have you been here each |
| 01:27:31 | 8 | day of trial? |
| 01:27:32 | 9 | A.  I have, yes, ma'am. |
| 01:27:32 | 10 | Q.  Have you seen all the witnesses? |
| 01:27:34 | 11 | A.  I have, yes, ma'am. |
| 01:27:35 | 12 | Q.  And you saw that Apple actually used its time in trial |
| 01:27:40 | 13 | to call engineers to show it doesn't infringe.  Did you see |
| 01:27:42 | 14 | that? |
| 01:27:43 | 15 | A.  Yes, I did. |
| 01:27:43 | 16 | Q.  How many witnesses is Apple calling on damages? |
| 01:27:46 | 17 | A.  Just me. |
| 01:27:47 | 18 | Q.  What do you understand about Apple's position on |
| 01:27:52 | 19 | whether or not it infringes? |
| 01:27:53 | 20 | A.  Well, as -- as we've all heard throughout the week, |
| 01:27:57 | 21 | Apple feels very strongly that it does not infringe these |
| 01:28:00 | 22 | patents. |
| 01:28:01 | 23 | Q.  And what is -- what is Plaintiffs' damage claim in this |
| 01:28:05 | 24 | case? |
| 01:28:05 | 25 | A.  Over half a billion dollars, a little over $500 |

01:28:10   1   million.

01:28:10   2   Q.  So if Apple's engineers, all the witnesses, the -- the

01:28:15   3   engineer witnesses that Apple's brought in, if they're

01:28:18   4   right, why are you here?

01:28:20   5          MR. SHEASBY:  Your Honor, I object to the

01:28:21   6   misstatement of the record.  Apple's engineers didn't give

01:28:24   7   non-infringement opinions.

01:28:25   8          THE COURT:  Overruled, Mr. Sheasby.

01:28:29   9   A.  Well, I'm here because, obviously, you folks get to

01:28:33  10   make the decision about whether or not there was

01:28:34  11   infringement here, and if there -- if -- if you determine

01:28:38  12   that there were, you -- you would need to get a perspective

01:28:41  13   on what the -- the proper amount of compensation would be.

01:28:45  14   Q.  (By Ms. Smith)  And Dr. Perryman, what assumptions did

01:28:47  15   you make on the issues of infringement and validity in

01:28:52  16   preparing your analysis?

01:28:53  17   A.  Well, as Mr. Kennedy said yesterday, all damage experts

01:28:57  18   are required by law to assume, when we do our analysis,

01:29:00  19   that the patents are valid and infringed, even though

01:29:05  20   there's a lot of controversy about that, obviously, here

01:29:07  21   this week.

01:29:08  22   Q.  But if the patents are invalid or are not infringed,

01:29:12  23   what would the damages be?

01:29:14  24   A.  Well, it would be zero in that case.

01:29:16  25   Q.  Thank you, Doctor.

01:29:20   1    Now, you were here when Mr. Kennedy testified,

01:29:23   2 correct?

01:29:23   3 A.  I was, yes, ma'am.

01:29:24   4 Q.  Do you agree with Mr. Kennedy's conclusions?

01:29:27   5 A.  Not at all, no, ma'am.

01:29:30   6    MS. SMITH:  If we could start with DDX-11.43,

01:29:35   7 Mr. Lee.  Thank you.

01:29:36   8 Q.  (By Ms. Smith)  Let's start with a infrastructure cost

01:29:42   9 approach.  What's that approach?

01:29:43  10 A.  Well, that's one way that -- that Mr. Kennedy went

01:29:46  11 about reporting to measure damages.  And, basically, what

01:29:51  12 he was saying was what it would cost -- or what you would

01:29:55  13 have to pay the -- the carriers in order to make up for the

01:29:59  14 loss in performance on their networks allegedly because of

01:30:03  15 these -- not using these patents.

01:30:05  16 Q.  And -- and what's wrong with that infrastructure cost

01:30:08  17 approach?

01:30:08  18 A.  Well, a number of things.  First of all, I have -- I've

01:30:13  19 been around a long time, and I did some pretty serious

01:30:16  20 looking, and I've never seen any situation where that ever

01:30:19  21 occurred in the real world.  And I don't think --

01:30:23  22 Mr. Kennedy, I think he testified yesterday he had never

01:30:25  23 seen that, either.

01:30:26  24    The carriers want Apple on their network.  Apple

01:30:36  25 is the largest cell phone company in the United States.

01:30:39  1  They don't want a network out there where if you've got

01:30:41  2  AT&T or Verizon, that they say, well, you can't be on it if

01:30:44  3  you have Apple.  So, there's no real way that Apple should

01:30:48  4  pay them that or that they would ever ask Apple to them pay

01:30:52  5  that.  That -- that just wouldn't happen.

01:30:55  6       And then one other thing that bothered me a little

01:30:56  7  bit, in the course of all these 40 years, I've done a lot

01:30:59  8  of analysis of infrastructure projects, including cell

01:31:03  9  towers and telecommunications infrastructure, but also

01:31:08  10  highways and ports and airports and all sorts of things.

01:31:11  11       And the way Mr. Kennedy did his analysis was, it

01:31:14  12  was like if you spent X percent more on infrastructure, you

01:31:16  13  would get X percent more speed.  And that's just not how

01:31:21  14  infrastructure works.

01:31:21  15       If you spend 10 percent more on a highway, that

01:31:26  16  doesn't mean you can drive 10 percent faster.  There's all

01:31:29  17  kinds of things that go into that, and there was no

01:31:32  18  analysis at all of how the expenditures would translate.

01:31:36  19       And then another part of that is the -- these

01:31:38  20  companies are constantly, all the time, spending money

01:31:41  21  to -- to make their -- to make their systems better in any

01:31:46  22  case.  So I don't know how you would ever sort anything

01:31:49  23  like that out, even if it did somehow make sense.

01:31:52  24  Q.  How long -- how long -- remind me, how long have you

01:31:56  25  been -- have you been involved in valuing patents?

886

| | |
|---|---|
| 01:31:59 | 1 |
| 01:32:00 | 2 |
| 01:32:03 | 3 |
| 01:32:04 | 4 |
| 01:32:07 | 5 |
| 01:32:07 | 6 |
| 01:32:10 | 7 |
| 01:32:17 | 8 |
| 01:32:19 | 9 |
| 01:32:21 | 10 |
| 01:32:22 | 11 |
| 01:32:26 | 12 |
| 01:32:26 | 13 |
| 01:32:32 | 14 |
| 01:32:36 | 15 |
| 01:32:38 | 16 |
| 01:32:41 | 17 |
| 01:32:43 | 18 |
| 01:32:45 | 19 |
| 01:32:46 | 20 |
| 01:32:49 | 21 |
| 01:32:53 | 22 |
| 01:32:55 | 23 |
| 01:32:59 | 24 |
| 01:33:02 | 25 |

A.  Over 30 years.

Q.  And you actually said that you'd never heard of the infrastructure cost approach?

A.  No, ma'am, not at all.

Q.  Okay.

        MS. SMITH:  If we could see Mr. Kennedy's trial trans -- trial testimony on Day 3.  It's, I believe, Page 46, Lines 12 through 16.

Q.  (By Ms. Smith)  Does that look familiar, Dr. Perryman?

A.  Yes, it does.

Q.  What did Mr. Kennedy have to say about this new approach?

A.  Well, when he was asked if he had seen anyone do this, he also said not a specific payment.  So, obviously, he hadn't seen this occur, either.

Q.  Now, moving away from the cost infrastructure approach, he took a second approach, did he not?

A.  He did, yes, ma'am.

Q.  And what is that?

A.  It was a survey approach where he took the survey that Dr. Reed-Arthurs did and tried to turn that into a method of calculating losses.

Q.  And that's, as the jurors will remember, the survey where she made up the hypothetical phones?

A.  That's correct.

01:33:02   1   Q.   All right.   What's wrong with the survey approach?

01:33:04   2   A.   Well, there's -- there's several things.   I could go

01:33:06   3   into a lot of the -- the technical aspects of it.   But to

01:33:10   4   kind of just summarize it, if you want to reflect what a

01:33:13   5   consumer is going to do in a survey, you have to try to

01:33:16   6   replicate the consumer experience as much as you can, make

01:33:20   7   it seem like they're actually doing what they're doing.

01:33:23   8        As you mentioned, there were some problems in some

01:33:25   9   of the phones that were created, but you recall,

01:33:30  10   Mr. Blevins, when he was testifying, he told us that when

01:33:31  11   Apple brings out a new phone, they like to have a lot of

01:33:34  12   new features in it, kind of wow factors, new things, that

01:33:37  13   sort of thing.

01:33:38  14        That technique, as she admitted yesterday, can

01:33:40  15   only handle about seven or eight things, and then it starts

01:33:43  16   to break down.   So you can't possibly put all of those

01:33:45  17   features in there, and, in fact, she didn't.

01:33:48  18        But I think a bigger problem is that I can't ask

01:33:52  19   you how much you'd pay for something if you don't know what

01:33:56  20   it is.

01:33:56  21   Q.   Well, and, Dr. Perryman, I may stop you there and have

01:34:00  22   you take a look at DDX-11.47.

01:34:03  23   A.   Yes, ma'am.

01:34:04  24   Q.   What are -- are these some notes?   Do you recognize

01:34:07  25   these as notes from -- from the survey?

01:34:10   1   A.  I do, yes, ma'am.

01:34:10   2   Q.  And what are we seeing here?

01:34:13   3   A.  Well, when she was taking notes about the survey --

01:34:16   4   which she talked about some of them yesterday -- one thing

01:34:19   5   she said was most of the ones from her focus group didn't

01:34:20   6   know exactly what speed their phones operated but

01:34:23   7   understood that speeds varied based on location and network

01:34:27   8   availability and knew what it was good enough.

01:34:29   9   Q.  So they didn't know what speed their phone operated

01:34:32   10  out, but they were basically being given a test over it?

01:34:35   11  A.  Right, yeah.  They were basically being asked:  How

01:34:37   12  much would you pay for more speed?

01:34:39   13       If I could take just one second and give a pretty

01:34:41   14  simple example about this.

01:34:42   15  Q.  Please.

01:34:43   16  A.  Since I've been here in Marshall, Baylor University

01:34:46   17  asked me to do a little program for some alumni over the --

01:34:46   18  over a -- electronically.  And it turned out because of

01:34:52   19  where I was, I had to do it over the cellular network.  And

01:34:54   20  they were -- they wanted to make sure I had enough

01:34:57   21  bandwidth to do it.  So they tested my device here on the

01:35:00   22  network here in Marshall.  It turned out I had three times

01:35:03   23  as much as I needed.

01:35:05   24       And so I did the -- the -- the speech.  Everything

01:35:08   25  went fine.  But had I taken a 50 percent cut -- in other

01:35:11  1  words, instead of having three times as much, I only had

01:35:14  2  one and a half times as much -- I would have never known

01:35:16  3  the difference.  And the only reason I know the difference

01:35:19  4  is because they tested it.  I mean, I didn't know what the

01:35:21  5  speed was, and I think that's the --

01:35:21  6        MR. SHEASBY:  Your Honor --

01:35:23  7  A.  -- situation we --

01:35:26  8        MR. SHEASBY:  -- I object.

01:35:24  9  A.  -- find ourselves in.

01:35:25  10       MR. SHEASBY:  This is technical commentary.  He's

01:35:30  11  not a technical witness.  He shouldn't be able to be giving

01:35:32  12  this type of testimony.

01:35:32  13       MS. SMITH:  Your Honor, I think he was -- he was

01:35:34  14  merely giving factual testimony about his experience.

01:35:37  15       MR. SHEASBY:  And that's --

01:35:38  16       THE COURT:  I understand, but this doesn't relate

01:35:42  17  directly to his opinions.  I'm not going to strike what

01:35:44  18  he's testified to, but I will direct you to move on,

01:35:47  19  Ms. Smith.

01:35:47  20       MS. SMITH:  Of course, Your Honor.  Thank you.

01:35:50  21  Q.  (By Ms. Smith)  Dr. Perryman, is there anything wrong

01:35:52  22  with -- with how Mr. Kennedy used the survey results?

01:35:55  23  A.  Yes, ma'am.  To start with, if you can't determine what

01:36:02  24  people -- how much more people would pay for it, then you

01:36:05  25  certainly can't use it to -- to multiply it by something

01:36:08   1   else to get to a damage number because -- if you don't have

01:36:13   2   reliable information to start with.

01:36:15   3          So that's -- that's just the biggest kind of

01:36:17   4   structural problem with it.  He was multiplying two things

01:36:20   5   together, and one of them he didn't really know the answer

01:36:22   6   to.  So -- so you can't -- you can't do that.

01:36:24   7          And -- and so that was -- that's -- that's the --

01:36:27   8   the biggest problem that I saw with it.

01:36:30   9          In addition to that, I'm aware that -- that Apple

01:36:35   10  does not use any techniques like this in pricing its

01:36:40   11  products.  In fact, as -- as Dr. Reed-Arthurs gave us a

01:36:44   12  slide and showed us, when Apple brings out a new phone,

01:36:44   13  they price it at the same level where they were pricing the

01:36:50   14  previous phone, whether it has a different type of cellular

01:36:53   15  functionality or not.

01:36:54   16         That's just -- that's just not how Apple goes

01:36:57   17  about doing this.  So I -- there were -- there were a lot

01:37:00   18  of problems with -- with the way that -- that Mr. Kennedy

01:37:02   19  did that.

01:37:03   20  Q.  Doctor, you've been in the courtroom, and there's been

01:37:06   21  a lot of talk about Qualcomm.  Do you recall that?

01:37:09   22  A.  Yes, ma'am.

01:37:10   23  Q.  All right.

01:37:11   24         MS. SMITH:  Your Honor, may I approach the flip

01:37:12   25  board, please?

| | | |
|---|---|---|
| 01:37:13 | 1 | THE COURT:  You may. |
| 01:37:14 | 2 | MS. SMITH:  Thank you, Your Honor. |
| 01:37:29 | 3 | I need to seal the courtroom, please. |
| 01:37:30 | 4 | THE COURT:  All right.  Based on counsel's |
| 01:37:33 | 5 | request, I'll order the courtroom sealed at this time. |
| 01:37:35 | 6 | Those of you not present not subject to the protective |
| 01:37:39 | 7 | order in this case or aligned with Defendant, Apple, should |
| 01:37:41 | 8 | excuse yourselves until the courtroom is unsealed and the |
| 01:37:47 | 9 | public is invited to return. |
| 01:37:49 | 10 | MR. SHEASBY:  PanOptis is in compliance, Your |
| 01:37:52 | 11 | Honor. |
| 01:37:52 | 12 | THE COURT:  Thank you. |
| 01:37:53 | 13 | (Courtroom sealed.) |
| 01:37:53 | 14 | (This portion of the transcript is sealed |
| 01:37:53 | 15 | and filed under separate cover as |
| 01:37:54 | 16 | Sealed Portion No. 17.) |
| 01:37:54 | 17 | (Courtroom unsealed.) |
| 02:39:49 | 18 | THE COURT:  What's the anticipated length of this |
| 02:39:52 | 19 | witness, Mr. Mueller? |
| 02:39:53 | 20 | MR. MUELLER:  Just over three minutes. |
| 02:39:55 | 21 | THE COURT:  All right.  Proceed. |
| 02:39:57 | 22 | (Videoclip played.) |
| 02:39:57 | 23 | QUESTION:  Would you state and spell your name for |
| 02:40:01 | 24 | the record, please. |
| 02:40:02 | 25 | ANSWER:  Richard Misiag.  R-i-c-h-a-r-d. |

| | | |
|---|---|---|
| 02:40:06 | 1 | QUESTION:  Mr. Misiag, where did you work |
| 02:40:10 | 2 | immediately before IPValue? |
| 02:40:11 | 3 | ANSWER:  At PanOptis. |
| 02:40:12 | 4 | QUESTION:  Did you hold a position of head of |
| 02:40:14 | 5 | licensing for your entire tenure at PanOptis? |
| 02:40:16 | 6 | ANSWER:  I believe that answer is yes. |
| 02:40:21 | 7 | QUESTION:  Mr. Misiag, we have marked as Exhibit 4 |
| 02:40:24 | 8 | a copy of U.S. Patent No. 8,019,332.  Do you see that? |
| 02:40:28 | 9 | ANSWER:  Yes. |
| 02:40:28 | 10 | QUESTION:  Mr. Misiag, we have marked as Exhibit 5 |
| 02:40:39 | 11 | a copy of U.S. patent number 8,102,833.  Do you see that? |
| 02:40:43 | 12 | ANSWER:  Yes. |
| 02:40:43 | 13 | QUESTION:  Have you ever seen this patent before? |
| 02:40:45 | 14 | ANSWER:  Again, it's possible I've seen it.  I |
| 02:40:49 | 15 | just don't recollect seeing it. |
| 02:40:52 | 16 | QUESTION:  You have no recollection of having read |
| 02:40:54 | 17 | this patent, correct? |
| 02:40:55 | 18 | ANSWER:  I don't have any recollection of reading |
| 02:40:58 | 19 | this patent. |
| 02:40:59 | 20 | QUESTION:  And you have no information or |
| 02:41:01 | 21 | knowledge about this patent, correct? |
| 02:41:02 | 22 | ANSWER:  Not that I recall. |
| 02:41:06 | 23 | QUESTION:  Mr. Misiag, we have marked as Exhibit 6 |
| 02:41:11 | 24 | a copy of U.S. Patent No. 8,385,284.  Do you see that? |
| 02:41:14 | 25 | ANSWER:  Yes. |

| | | |
|---|---|---|
| 02:41:14 | 1 | QUESTION:  Have you ever seen this patent before? |
| 02:41:21 | 2 | ANSWER:  I mean, the -- the diagram looks |
| 02:41:27 | 3 | familiar, but it looks familiar to a thousand other |
| 02:41:29 | 4 | patents, so I don't recollect this specific patent. |
| 02:41:32 | 5 | QUESTION:  You have no rec -- recollection of |
| 02:41:34 | 6 | having read this patent, correct? |
| 02:41:35 | 7 | ANSWER:  I -- I don't recall. |
| 02:41:37 | 8 | QUESTION:  And you have no information or |
| 02:41:42 | 9 | knowledge about this patent, correct? |
| 02:41:42 | 10 | ANSWER:  I have no information about this patent |
| 02:41:46 | 11 | that I recall. |
| 02:41:46 | 12 | QUESTION:  And you don't recall having seen this |
| 02:41:50 | 13 | or any of the prior patents that I've shown you, correct? |
| 02:41:54 | 14 | ANSWER:  Yeah, across the boards.  I -- I may have |
| 02:41:56 | 15 | seen the patents.  I just don't recall, and I have no |
| 02:41:59 | 16 | recollection of the -- the content or technology in the |
| 02:42:03 | 17 | patents. |
| 02:42:03 | 18 | QUESTION:  Mr. Misiag, we've marked as Exhibit 8 a |
| 02:42:06 | 19 | copy of U.S. Patent No. 9,001,774.  Do you see that? |
| 02:42:11 | 20 | ANSWER:  Yes. |
| 02:42:11 | 21 | QUESTION:  Do you have any recollection of having |
| 02:42:15 | 22 | seen this patent before? |
| 02:42:17 | 23 | ANSWER:  Again, I may have seen it.  I just don't |
| 02:42:21 | 24 | have any recollection of it specifically. |
| 02:42:22 | 25 | QUESTION:  Do you have any recollection of |

02:42:25  1   having -- having read this patent before?

02:42:27  2        ANSWER:  I -- I don't have any recollection of

02:42:30  3   reading this patent.

02:42:31  4        QUESTION:  Do you have any information or

02:42:33  5   knowledge about this patent?

02:42:34  6        ANSWER:  I don't have any information or knowledge

02:42:41  7   of this patent other than, again, that it is a patent.

02:42:45  8        QUESTION:  Okay.  So to sum up, you have no

02:42:48  9   information or knowledge about any of the patents that

02:42:50  10  we've marked as Exhibits 3 through 8, correct?

02:42:54  11       ANSWER:  Yeah.  I -- I -- I just don't recollect

02:42:58  12  any knowledge across the boards on these specific patents.

02:43:01  13       QUESTION:  And you're not aware of any advantages,

02:43:07  14  improvements, or benefits of any of the patents we've

02:43:12  15  marked as Exhibits 3 through 8, correct?

02:43:15  16       ANSWER:  I'm not familiar with the patents, nor do

02:43:19  17  I recollect any specific information with -- with respect

02:43:23  18  to the improvements on these patents.

02:43:26  19            (Videoclip ends.)

02:43:29  20       THE COURT:  Does that complete this witness by

02:43:31  21  deposition?

02:43:32  22       MR. MUELLER:  Yes, Your Honor.  And Apple rests.

02:43:34  23       THE COURT:  All right.  I assume all of that

02:43:36  24  deposition time is chargeable to the Plaintiffs since I

02:43:38  25  didn't hear the voice change at all?

02:43:41   1            MR. MUELLER:  That's correct, Your Honor.

02:43:42   2            THE COURT:  Okay.

02:43:43   3            MR. SHEASBY:  Chargeable to the Defendants, Your

02:43:45   4    Honor.

02:43:45   5            THE COURT:  I'm sorry.  I meant the Defendants.  I

02:43:47   6    was looking at Mr. Mueller.  I misspoke.

02:43:49   7            All right.  Ladies and gentlemen of the jury,

02:43:51   8    we're going to take a short recess at this time.  I'm going

02:43:54   9    to ask you to close your notebooks and leave them in your

02:43:57  10    chairs.  I'm going to ask you to follow all my

02:43:59  11    instructions, and we'll be back relatively soon to

02:44:02  12    continue.

02:44:02  13            The jury is excused for recess.

02:44:05  14            COURT SECURITY OFFICER:  All rise.

02:44:05  15            (Jury out.)

02:44:07  16            THE COURT:  Be seated, please.

02:44:29  17            Mr. Sheasby, you asked me in chambers this morning

02:44:39  18    to let you know when you had an hour and 20 minutes

02:44:42  19    remaining.  You have one hour and 22 minutes remaining.  So

02:44:47  20    consider yourself notified.

02:44:48  21            MR. SHEASBY:  Thank you, Your Honor.

02:44:49  22            THE COURT:  All right.  Mr. Mueller, you have nine

02:44:52  23    minutes remaining.

02:44:52  24            MR. MUELLER:  Thank you, Your Honor.

02:44:53  25            THE COURT:  I assume Plaintiff, after the recess,

02:44:55  1  will call its first rebuttal witness; is that correct?

02:44:57  2      MR. SHEASBY:  That's correct, Your Honor.

02:44:58  3      THE COURT:  And what -- what should I anticipate

02:45:00  4  as far as Plaintiffs' rebuttal case?

02:45:01  5      MR. SHEASBY:  It's going to be Professor

02:45:05  6  Madisetti, Professor Mahon, and then Ms. Sophia Vrzic, who

02:45:13  7  I understand Defendants have an objection to.

02:45:15  8      THE COURT:  Is that true, Mr. Mueller?

02:45:17  9      MR. MUELLER:  It is true, Your Honor.

02:45:18  10     THE COURT:  All right.  Well, I'm not aware of the

02:45:24  11 substance of that objection.  Let's take a short recess,

02:45:29  12 and in about 10 minutes, lead and local counsel may meet me

02:45:32  13 in chambers, and we'll see what the problem is.

02:45:33  14     MR. MUELLER:  Your Honor, may I say one more thing

02:45:35  15 before we leave?  The slide that -- the Samsung license

02:45:37  16 with PanOptis, Your Honor, that did include one of the

02:45:39  17 patents-in-suit -- actually, originally two of the

02:45:41  18 patents-in-suit.  So the reason why there was no -- no

02:45:44  19 notation on that slide is because it did, in fact, cover

02:45:46  20 one of the patents-in-suit.

02:45:48  21     I just say that for Your Honor's benefit as a bit

02:45:51  22 of an aside, but that was the reason.

02:45:55  23     THE COURT:  My recollection was there were two

02:45:57  24 slides from this morning, and that's what I thought the

02:45:59  25 second slide was.  But unless you feel strongly that that

| | | |
|---|---|---|
| 02:46:03 | 1 | needs to be corrected with the jury -- |
| 02:46:04 | 2 | MR. MUELLER:  No. |
| 02:46:05 | 3 | THE COURT:  -- we'll just leave it where it is. |
| 02:46:07 | 4 | MR. MUELLER:  That's right, Your Honor. |
| 02:46:08 | 5 | THE COURT:  Anything further before we recess? |
| 02:46:10 | 6 | MR. SHEASBY:  No, Your Honor. |
| 02:46:11 | 7 | THE COURT:  All right.  I'll see lead and local in |
| 02:46:13 | 8 | chambers in 10 minutes. |
| 02:46:14 | 9 | We stand in recess. |
| 02:46:18 | 10 | COURT SECURITY OFFICER:  All rise. |
| 02:51:32 | 11 | (Recess.) |
| 02:54:05 | 12 | (Jury out.) |
| 02:54:06 | 13 | COURT SECURITY OFFICER:  All rise. |
| 02:54:07 | 14 | THE COURT:  Be seated, please. |
| 03:16:22 | 15 | Mr. Sheasby, is Plaintiff prepared to go forward |
| 03:16:29 | 16 | with its rebuttal case? |
| 03:16:31 | 17 | MR. SHEASBY:  We are, Your Honor. |
| 03:16:32 | 18 | THE COURT:  All right.  Let's bring in the jury, |
| 03:16:35 | 19 | please. |
| 03:16:35 | 20 | COURT SECURITY OFFICER:  All rise. |
| 03:16:36 | 21 | (Jury in.) |
| 03:16:37 | 22 | THE COURT:  Please be seated. |
| 03:17:05 | 23 | All right.  Ladies and gentlemen, as you heard, |
| 03:17:11 | 24 | the Defendants have closed their case-in-chief -- they have |
| 03:17:14 | 25 | rested their case-in-chief. |

| | | |
|---|---|---|
| 03:17:16 | 1 | We'll now move to the final component of the |
| 03:17:20 | 2 | evidence, and that is the Plaintiffs' rebuttal case. |
| 03:17:21 | 3 | Mr. Sheasby, Plaintiffs should call their first |
| 03:17:26 | 4 | rebuttal witness at this time. |
| 03:17:27 | 5 | MR. SHEASBY:  Your Honor, Plaintiffs call |
| 03:17:31 | 6 | Professor Vijay Madisetti. |
| 03:17:32 | 7 | THE COURT:  All right.  Professor Madisetti, if |
| 03:17:34 | 8 | you'll return to the witness stand.  I remind you, sir, you |
| 03:17:40 | 9 | remain under oath. |
| 03:17:41 | 10 | THE WITNESS:  Yes, Your Honor. |
| 03:17:45 | 11 | THE COURT:  Mr. Pollinger, are you going to |
| 03:17:45 | 12 | examine this witness? |
| 03:17:45 | 13 | MR. POLLINGER:  Yes, Your Honor. |
| 03:17:45 | 14 | THE COURT:  All right.  You may proceed when |
| 03:17:49 | 15 | you're ready. |
| 03:17:49 | 16 | MR. POLLINGER:  Before I start, Your Honor, we're |
| 03:17:51 | 17 | going to very quickly get into confidential information of |
| 03:17:54 | 18 | third parties.  I believe we should seal the court. |
| 03:17:56 | 19 | THE COURT:  Then based on that request, I'll order |
| 03:17:58 | 20 | the courtroom sealed and direct those present not subject |
| 03:18:00 | 21 | to the protective order to excuse themselves until the |
| 03:18:05 | 22 | courtroom is reopened and unsealed. |
| 03:18:05 | 23 | (Courtroom sealed.) |
| 03:18:05 | 24 | (This portion of the transcript is sealed |
| 03:18:05 | 25 | and filed under separate cover as |

```
03:18:10    1            Sealed Portion No. 18.)
03:18:10    2            (Courtroom unsealed.)
04:35:32    3            MR. MUELLER:  Your Honor, may I set up a placard?
04:35:37    4            THE COURT:  We're going to -- I'm going to send
04:35:40    5   the jury out before we start the redirect --
04:35:43    6            MR. MUELLER:  Thank you.
04:35:43    7            THE COURT:  I'm sorry, the cross.
04:35:45    8            All right.  Ladies and gentlemen, I need to cover
04:35:47    9   a couple very small housekeeping matters with counsel.  I
04:35:50   10   know it's late in the day.  I don't expect to keep you here
04:35:55   11   a whole lot longer, but I do need you to step into the jury
04:36:00   12   room for a minute so I can cover this with them outside
04:36:00   13   your presence.
04:36:02   14            If you will, just leave your notebooks in your
04:36:03   15   chairs, follow all my instructions, including not to
04:36:06   16   discuss the case among yourselves, and we'll back in here
04:36:11   17   shortly.
04:36:11   18            The jury --
04:36:11   19            COURT SECURITY OFFICER:  All rise.
04:36:12   20            THE COURT:  The jury is excused to the jury room.
04:36:15   21            (Jury out.)
04:36:17   22            THE COURT:  Mr. Sheasby, you have 15 minutes total
04:36:34   23   time remaining.
04:36:35   24            MR. SHEASBY:  Thank you, Your Honor.
04:36:36   25            THE COURT:  Mr. Mueller, you have four minutes --
```

| | | |
|---|---|---|
| 04:36:40 | 1 | MR. MUELLER:  Thank you, Your Honor. |
| 04:36:38 | 2 | THE COURT:  -- total time remaining. |
| 04:36:40 | 3 | All right.  If you'll just remain standing, I'll |
| 04:36:44 | 4 | ask the courtroom deputy [sic] to bring the jury back in. |
| 04:36:48 | 5 | MR. MUELLER:  And while that's happening, |
| 04:36:50 | 6 | Your Honor, may I set up this placard? |
| 04:36:52 | 7 | THE COURT:  You may set up while they're coming |
| 04:36:54 | 8 | in, yes. |
| 04:36:55 | 9 | MR. MUELLER:  Yes, Your Honor. |
| 04:37:36 | 10 | (Jury in.) |
| 04:37:36 | 11 | THE COURT:  Thank you, ladies and gentlemen. |
| 04:37:40 | 12 | We'll proceed with cross-examination by the Defendant. |
| 04:37:43 | 13 | Mr. Mueller, you may proceed. |
| 04:37:43 | 14 | CROSS-EXAMINATION |
| 04:37:46 | 15 | BY MR. MUELLER: |
| 04:37:46 | 16 | Q.  Good afternoon, Dr. Mahon. |
| 04:37:49 | 17 | A.  Good afternoon. |
| 04:37:50 | 18 | Q.  Dr. Mahon, Mr. Sheasby made a reference to Apple's paid |
| 04:37:51 | 19 | expert for the '284 patent.  Do you recall that? |
| 04:37:51 | 20 | A.  Yes, he did. |
| 04:37:52 | 21 | Q.  Now, sir, you're a paid expert for the Plaintiffs in |
| 04:37:55 | 22 | this case, right? |
| 04:37:56 | 23 | A.  Yes, I am. |
| 04:37:56 | 24 | Q.  There's nothing wrong with that, right? |
| 04:37:58 | 25 | A.  No, sir. |

| | | |
|---|---|---|
| 04:37:58 | 1 | Q.  Now, I only have three minutes left or four minutes |
| 04:38:01 | 2 | left, so if you could do your best to answer my questions |
| 04:38:04 | 3 | and I'll do my best to make them as clear as possible, |
| 04:38:08 | 4 | okay? |
| 04:38:08 | 5 | A.  Sounds good. |
| 04:38:09 | 6 | Q.  Now, sir, you agree with me that you don't infringe a |
| 04:38:13 | 7 | table in a patent, correct? |
| 04:38:13 | 8 | A.  Correct. |
| 04:38:15 | 9 | Q.  You infringe a claim -- |
| 04:38:17 | 10 | MR. MUELLER:  May I approach the placard, Your |
| 04:38:19 | 11 | Honor? |
| 04:38:20 | 12 | THE COURT:  You may. |
| 04:38:21 | 13 | Q.  (By Mr. Mueller)  You infringe a claim, right, sir? |
| 04:38:23 | 14 | A.  That is correct. |
| 04:38:23 | 15 | Q.  This is the '284 patent, Claim 1.  Do you see that, |
| 04:38:27 | 16 | sir? |
| 04:38:27 | 17 | A.  I do. |
| 04:38:27 | 18 | Q.  You made references with Mr. Sheasby to the LTE |
| 04:38:30 | 19 | standard table, right, sir? |
| 04:38:32 | 20 | A.  I did, yes. |
| 04:38:33 | 21 | Q.  You talked about places where values changed, right, |
| 04:38:37 | 22 | sir? |
| 04:38:37 | 23 | A.  Yes, I did. |
| 04:38:38 | 24 | Q.  The claim itself doesn't refer to changed values, does |
| 04:38:43 | 25 | it?  The word "change" is in the -- nowhere in that claim? |

| | | |
|---|---|---|
| 04:38:46 | 1 | A.  The claim language does not include that word. |
| 04:38:50 | 2 | Q.  Now, sir, you understand that Dr. Buehrer takes the |
| 04:38:53 | 3 | view that this right here is the second subset of values, |
| 04:38:59 | 4 | what I'm pointing to in the redundancy version column? |
| 04:39:01 | 5 | A.  That's what he's pointing to. |
| 04:39:03 | 6 | Q.  And he says the TBS index column to the left of it is |
| 04:39:07 | 7 | the first subset of values, right, sir? |
| 04:39:09 | 8 | A.  Yes. |
| 04:39:10 | 9 | Q.  And the claim requires that the first subset be bigger |
| 04:39:14 | 10 | than the second subset, right? |
| 04:39:15 | 11 | A.  The claim limitation language says that the first |
| 04:39:19 | 12 | subset is more values than the second subset. |
| 04:39:22 | 13 | Q.  This column contains 32 values, correct, sir? |
| 04:39:25 | 14 | A.  Yes, it does. |
| 04:39:25 | 15 | Q.  This contains 29, right, sir? |
| 04:39:27 | 16 | A.  Yes, it does. |
| 04:39:29 | 17 | Q.  What's bigger, 32 or 29? |
| 04:39:30 | 18 | A.  The value 32 is bigger than the value of 29. |
| 04:39:35 | 19 | Q.  Now, sir, there's been a lot of talk in this case about |
| 04:39:38 | 20 | essentiality, right? |
| 04:39:39 | 21 | A.  Yes. |
| 04:39:40 | 22 | MR. MUELLER:  Let's pull up Trial Transcript |
| 04:39:43 | 23 | Page 529 to 530. |
| 04:39:44 | 24 | Q.  (By Mr. Mueller)  And this is Mr. Rodermund. |
| 04:39:47 | 25 | You saw his testimony to the jury, by deposition? |

903

04:39:50   1   A.  I did.

04:39:51   2   Q.  Now, did you see at the end where it says:  So a

04:39:55   3   device -- certain device definitely does not have to

04:39:58   4   implement all essential patents which are in the LTE

04:40:02   5   standard?

04:40:03   6           Do you see that, sir?

04:40:04   7   A.  I do see that.

04:40:05   8   Q.  And the way to know whether a particular product is

04:40:08   9   using a particular patent is we compare the patent to the

04:40:12  10   product, right, sir?

04:40:13  11   A.  Yes.  I did that.

04:40:16  12   Q.  And in this case, that requires looking at the Intel

04:40:19  13   and Qualcomm chips in the Apple products, right, sir?

04:40:23  14   A.  That's exactly what I did, yes.

04:40:26  15   Q.  And we can agree that Ms. Dwyer didn't do that, did

04:40:30  16   she, sir?

04:40:30  17   A.  Ms. Dwyer analyzed the claim elements.

04:40:32  18   Q.  Ms. Dwyer never looked at a single Intel chip or a

04:40:37  19   single Qualcomm chip, correct?

04:40:38  20   A.  Not that I know of.

04:40:40  21   Q.  Now, sir, let's talk about the '774 patent.  That

04:40:44  22   requires receiving a processing parameter from a base

04:40:47  23   station, right?

04:40:47  24   A.  Yes, it does.

04:40:48  25   Q.  Now, Dr. Wells took the stand this morning and he said

04:40:50  1    that what happens in the Apple products is the products

04:40:54  2    themselves create a processing parameter through a

04:40:57  3    five-step process.  Do you recall that, sir?

04:40:58  4    A.  He does claim that, yes.

04:41:00  5    Q.  Now, does receiving mean the same thing as

04:41:04  6    constructing?

04:41:05  7    A.  Does receiving mean the same thing as constructing?

04:41:09  8    No.

04:41:13  9    Q.  Now, in this case, Apple has called Mr. Tony Blevins to

04:41:16  10   the stand, correct?

04:41:16  11   A.  Yes, they have.

04:41:17  12   Q.  He's an engineer by training, right?

04:41:20  13   A.  That's what I understand, yes.

04:41:21  14   Q.  And we also called two chip engineers who work on the

04:41:25  15   actual chips and code at issue in this case, correct?

04:41:28  16   A.  Yes, you did.

04:41:28  17   Q.  The Plaintiffs called one fact witness, Mr. Brian

04:41:31  18   Blasius, who hadn't even read the patents in full, right,

04:41:34  19   sir?

04:41:34  20   A.  We called one fact witness.

04:41:36  21   Q.  And, sir, you never spoke to a single inventor

04:41:39  22   yourself, did you?

04:41:39  23   A.  I -- not that I know of, no.

04:41:42  24   Q.  Thank you, sir.  No further questions.

04:41:46  25            THE COURT:  Do you have redirect, Mr. Sheasby?

| | | |
|---|---|---|
| 04:41:48 | 1 | MR. SHEASBY:  Just briefly, Your Honor. |
| 04:41:50 | 2 | THE COURT:  Do you need to use this demonstrative? |
| 04:41:53 | 3 | MR. SHEASBY:  I would like it up, Your Honor, with |
| 04:41:55 | 4 | your permission. |
| 04:41:56 | 5 | THE COURT:  That's fine. |
| 04:41:56 | 6 | REDIRECT EXAMINATION |
| 04:41:57 | 7 | BY MR. SHEASBY: |
| 04:41:57 | 8 | Q.  So let's turn to the '283 (sic) patent. |
| 04:41:59 | 9 | MR. SHEASBY:  And, Mr. Huynh, can I have the -- |
| 04:42:02 | 10 | the -- the rebuttal slides from Dr. Mahon, and if I could |
| 04:42:07 | 11 | have -- I think it's the second to the last slide.  I |
| 04:42:22 | 12 | believe it's PDX -- keep -- keep going. |
| 04:42:32 | 13 | Keep going. |
| 04:42:35 | 14 | Actually, I believe it's -- 36 is the number, |
| 04:42:40 | 15 | Mr. Huynh.  Oh, keep going. |
| 04:42:42 | 16 | Stop right there.  Perfect. |
| 04:42:44 | 17 | Q.  (By Mr. Sheasby)  Counsel for Apple just said tables |
| 04:42:50 | 18 | don't infringe patents, fair? |
| 04:42:52 | 19 | A.  Fair. |
| 04:42:53 | 20 | Q.  This is the source code, on the left-hand side, from |
| 04:42:57 | 21 | Apple's design, fair? |
| 04:42:59 | 22 | A.  Fair. |
| 04:43:02 | 23 | Q. |
| 04:43:07 | 24 | |
| 04:43:11 | 25 | |

REDACTED BY ORDER OF THE COURT

04:43:16  1  ███████████████████████████████

04:43:17  2  ████████████████████████████████████

04:43:24  3  ████████████████████████████████████

04:43:29  4        MR. MUELLER:  Your Honor, I think we're going

04:43:30  5  to -- if we're going to get back into the code, we're going

04:43:34  6  to have to seal the courtroom.  This is Qualcomm

04:43:36  7  information.

04:43:37  8        THE COURT:  All right.  Then I'll order the

04:43:40  9  courtroom sealed at this time and direct all of those

04:43:42 10  present not subject to the protective order to excuse

04:43:47 11  themselves.

04:43:48 12        (Courtroom sealed.)

04:43:48 13        (This portion of the transcript is sealed.

04:43:48 14        and filed under separate cover as

04:43:49 15        Sealed Portion No. 19.)

04:49:50 16        (Courtroom unsealed.)

04:49:52 17        THE COURT:  Ladies and gentlemen of the jury, you

04:49:52 18  have now heard all the evidence in this case.  And it is 10

04:49:58 19  minutes until 5:00 p.m. on a Friday.

04:50:01 20        I have good news for you.  First of all, I'm about

04:50:05 21  to let you go home.  I have even better news for you.  You

04:50:08 22  are not going to have to be back by 8:30 Monday morning.

04:50:12 23  There are things I must take up with counsel outside of

04:50:15 24  your presence as required by the law and the rules of

04:50:17 25  procedure, and those things can't be covered by me between

| | | |
|---|---|---|
| 04:50:22 | 1 | now and Monday morning with you being ready to go at 8:30. |
| 04:50:27 | 2 | So I'm going to need some time with the parties and the |
| 04:50:31 | 3 | lawyers Monday morning. |
| 04:50:32 | 4 | I'm going to ask you be in the jury room assembled |
| 04:50:36 | 5 | and ready to go by 10:30 Monday morning.  No objections, I |
| 04:50:41 | 6 | gather? |
| 04:50:42 | 7 | Now, I want you to understand this is not a |
| 04:50:47 | 8 | science, it's an art.  And I can't know with certainty how |
| 04:50:50 | 9 | long it's going to take for me to cover these things that I |
| 04:50:53 | 10 | will not go into with you right now. |
| 04:50:55 | 11 | That means I might be through before 10:30 and |
| 04:51:00 | 12 | waiting on you, and it means I might not be through by |
| 04:51:05 | 13 | 10:30 and you be waiting on me.  We're just going to have |
| 04:51:07 | 14 | to, as my father used to say, play it by ear.  But you do |
| 04:51:11 | 15 | not have to be here at 8:30 Monday morning.  I'd like you |
| 04:51:15 | 16 | assembled and ready to go by 10:30. |
| 04:51:17 | 17 | And then we will proceed at that point as soon as |
| 04:51:20 | 18 | I'm finished with these matters I have to take up with |
| 04:51:23 | 19 | counsel and the parties outside of your presence. |
| 04:51:26 | 20 | I'm going to ask you to take your notebooks and |
| 04:51:31 | 21 | leave them on the table in the jury room.  I'm going to |
| 04:51:33 | 22 | remind you, we are getting close to the end of this |
| 04:51:38 | 23 | process.  It would be a travesty if you were to violate any |
| 04:51:42 | 24 | of my instructions and jeopardize this entire process. |
| 04:51:44 | 25 | So please, do not discuss this case with anyone, |

04:51:44  1  do not communicate about it with anyone, do not discuss it

04:51:48  2  among yourselves, do not attempt to do any research of any

04:51:52  3  kind, and follow all the other instructions I've given you

04:51:56  4  about your conduct throughout the trial.

04:51:57  5       Please travel safely.  I hear some thunder

04:52:01  6  outside, and I will see you Monday morning at 10:30.

04:52:05  7       The jury is excused.

04:52:06  8       COURT SECURITY OFFICER:  All rise.

04:52:07  9       (Jury out.)

04:52:20  10      THE COURT:  Please be seated.

04:52:23  11      Mr. Sheasby, you left 11 minutes on the table, and

04:52:32  12  Mr. Mueller, you left 11 seconds on the table.

04:52:35  13      It's my practice, as I told you during pre-trial,

04:52:41  14  to take up matters under Rule 50(a) after all the evidence

04:52:48  15  has been presented, which is where we are now.

04:52:51  16      Here's what I intend to do with regard to motions

04:52:54  17  under Rule 50(a).  You may prepare a written version of any

04:52:58  18  motion under Rule 50(a) that you think is appropriate,

04:53:02  19  Plaintiff and Defendant, and file it on the docket not

04:53:05  20  later than noon on Sunday.

04:53:08  21      I will review them Sunday afternoon, and I will

04:53:11  22  hear very, very brief argument Monday morning and rule on

04:53:13  23  your motions under Rule 50(a).  But I will have the full

04:53:17  24  benefit of your written filings from Sunday afternoon

04:53:20  25  forward.  That should save us time Monday morning.

04:53:23   1           After I've completed the very brief argument and

04:53:26   2   the ruling on the motions, then we'll proceed to conduct an

04:53:30   3   informal charge conference in chambers.  I have your latest

04:53:35   4   submitted, jointly-suggested charge form.  I will be going

04:53:41   5   over that, as well.  We'll discuss that and the verdict in

04:53:43   6   this case after I've ruled on matters urged under Rule

04:53:50   7   50(a).

04:53:50   8           After that, I will make any adjustments I think

04:53:56   9   are appropriate, and generate a printed copy of the final

04:53:59   10  charge and verdict form.  I will give you an opportunity to

04:54:02   11  review it, and then I will conduct a formal charge

04:54:04   12  conference on the record where either side can lodge any

04:54:07   13  objections they think necessary and appropriate to what I

04:54:12   14  have given you as the final version of those documents.

04:54:15   15          After the final charge -- or, excuse me, the

04:54:19   16  formal charge conference, I'll at that time be prepared to

04:54:24   17  bring in the jury, give them my final instructions, and

04:54:27   18  allow counsel to present their closing arguments.

04:54:31   19          Are there questions from anybody?

04:54:33   20          MR. SHEASBY:  Your Honor, I want to instantiate an

04:54:39   21  agreement that Mr. Mueller and I believe had, on the

04:54:42   22  record.

04:54:42   23          We're going to exchange, not just our

04:54:44   24  demonstratives, but any trial transcript call-outs in

04:54:47   25  advance of -- on Sunday to ensure that all disputes are

04:54:51  1   taken up with the Court before --

04:54:58  2        THE COURT:  Well, as we discussed in chambers,

04:55:00  3   Mr. Sheasby, you and Mr. Mueller and I and other counsel in

04:55:03  4   the case, my direction is that you exchange everything

04:55:06  5   possible so if there is any possibility you have a dispute,

04:55:10  6   I can know about it and resolve it before you start your

04:55:12  7   closing arguments.

04:55:13  8        I consider the closing arguments before a jury

04:55:15  9   after a lengthy jury trial like this to be the most serious

04:55:19 10   and solemn part of the proceeding, and the proceeding

04:55:22 11   itself is inherently solemn and serious.  So the last thing

04:55:27 12   I want are objections raised in the middle of a closing

04:55:30 13   argument from the opposing counsel.

04:55:31 14        If you have any issues after you've made that

04:55:35 15   fulsome disclosure to each other, I'll take those up Monday

04:55:39 16   before we start with the final jury instructions, all

04:55:41 17   right?

04:55:41 18        MR. SHEASBY:  Thank you, Your Honor.

04:55:42 19        THE COURT:  Any other questions?

04:55:43 20        MR. MUELLER:  Just one, Your Honor.  After the

04:55:46 21   Rule 50 arguments on Monday morning, may I go finish

04:55:51 22   preparations for the closing argument, and my colleagues,

04:55:56 23   Mr. Selwyn and Ms. Amadi, will participate in the charge

04:56:02 24   conference?

04:56:02 25        THE COURT:  Mr. Mueller, if you would like to have

04:56:02   1   an associate on your trial team present the argument on the
04:56:02   2   motions under Rule 50(a) and attend the informal charge
04:56:06   3   conference while you prepare for closing arguments, you're
04:56:08   4   free to do that.
04:56:09   5             MR. MUELLER:  Thank you, Your Honor.
04:56:09   6             THE COURT:  The same goes for you, Mr. Sheasby.
04:56:12   7             MR. SHEASBY:  Thank you, Your Honor.
04:56:13   8             THE COURT:  As long as it's adequately staffed,
04:56:15   9   lead counsel doesn't have to be present at either the 50(a)
04:56:18  10   motions or the informal charge conference, as I know you'll
04:56:23  11   be preparing for those closing arguments.
04:56:25  12             MR. SHEASBY:  Thank you, Your Honor.
04:56:26  13             MR. MUELLER:  Thank you, Your Honor.
04:56:26  14             THE COURT:  Mr. Baxter.
04:56:28  15             MR. BAXTER:  What time Monday, Your Honor?
04:56:32  16             THE COURT:  You need to be here and ready to go by
04:56:34  17   regular time.  If there are any disputes that developed
04:56:37  18   with regard to your closings, I need them by 7:00 o'clock,
04:56:43  19   and I'll meet with you at 7:30, and we're going to get on
04:56:47  20   the record early because we will -- we will have to work
04:56:50  21   hard to be ready to go on all of this by midmorning, and I
04:56:54  22   don't want the jury waiting on us any longer than
04:56:56  23   necessary.
04:56:56  24             MR. SHEASBY:  Your Honor, with your permission,
04:56:59  25   may I ask Mr. Mueller one question, because I think it will

| | | |
|---|---|---|
| 04:57:02 | 1 | inform the process on Monday? |
| 04:57:06 | 2 | THE COURT:  Let's go off the record. |
| 04:57:08 | 3 | (Off-the-record discussion.) |
| 04:57:09 | 4 | THE COURT:  All right.  We're back on the record. |
| 04:57:18 | 5 | Anything further before we recess until Monday |
| 04:57:20 | 6 | morning? |
| 04:57:20 | 7 | MR. SHEASBY:  Nothing from Plaintiffs, Your Honor. |
| 04:57:23 | 8 | MR. BAXTER:  And I take it Monday morning, we |
| 04:57:25 | 9 | probably need to put in the last of the exhibits, |
| 04:57:28 | 10 | Your Honor? |
| 04:57:28 | 11 | THE COURT:  Yes, sir.  We'll do that before I |
| 04:57:30 | 12 | bring in the jury. |
| 04:57:30 | 13 | MR. BAXTER:  Thank you. |
| 04:57:31 | 14 | THE COURT:  And you need to go over that with each |
| 04:57:33 | 15 | other and make sure that both sides are straight on that. |
| 04:57:35 | 16 | MR. SHEASBY:  Thank you, Your Honor. |
| 04:57:36 | 17 | THE COURT:  All right.  Without anything further, |
| 04:57:38 | 18 | we stand in recess until Monday morning. |
| 04:57:41 | 19 | MR. MUELLER:  Thank you, Your Honor. |
| 04:57:42 | 20 | COURT SECURITY OFFICER:  All rise. |
| 04:57:46 | 21 | (Recess.) |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                           CERTIFICATION

2

3           I HEREBY CERTIFY that the foregoing is a true and

4   correct transcript from the stenographic notes of the

5   proceedings in the above-entitled matter to the best of my

6   ability.

7

8    /S/ Shelly Holmes                          8/7/2020
    SHELLY HOLMES, CSR, TCRR                 Date
9   OFFICIAL REPORTER
    State of Texas No.: 7804
10  Expiration Date: 12/31/20

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25