**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, | Civil Action No. 2:19-cv-66-JRG |
| Plaintiffs, | JURY TRIAL |
| v. | FILED UNDER SEAL |
| APPLE INC., | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR ONGOING ROYALTY**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   PLAINTIFFS ARE ENTITLED TO AN ONGOING ROYALTY ............................ 1

III.  APPLE REFUSED TO NEGOTIATE AN ONGOING ROYALTY ........................ 2

IV.   THE COURT SHOULD AWARD AN ONGOING ROYALTY RATE ................... 2

    A.    The Court Should Award An Ongoing Royalty Rate Equal To
        Minimum Royalty Rates Calculated by Mr. Kennedy Which the Jury
        Adopted ...................................................................................................... 2

    B.    Apple Waived Any Argument That The Jury's Implied Royalty Rate
        Is Not FRAND .......................................................................................... 10

    C.    The Jury's Royalty Rates Were FRAND ................................................. 12

    D.    The Trial Record Supports A Higher Ongoing Royalty Rate .............. 13

V.    CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
694 F.3d 1312 (Fed. Cir. 2012) ................................................................................................ 14

*Affinity Labs of Texas, LLC v. BMW North Am., LLC,*
783 F. Supp. 2d 891 (E.D. Tex. Mar. 28, 2011) ................................................................. 13, 15

*Amado v. Microsoft Corp.,*
517 F.3d 1353 (Fed. Cir. 2008) ......................................................................................... 2, 3, 14

*Apple Inc. v. Motorola, Inc.,*
757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix
Online, LLC,* 792 F.3d 1339 (Fed. Cir. 2015) ......................................................................... 2

*Apple, Inc. v. Samsung Elecs. Co.,*
2014 WL 6687122 (N.D. Cal. Nov. 25, 2014) ........................................................................ 14

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,*
876 F.3d 1350 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 143 (2018) ................................. 13, 14

*Cioffi v. Google, Inc.,*
2017 WL 4011143 (E.D. Tex. Sept. 12, 2017) ......................................................................... 1

*Datatreasury Corp. v. Wells Fargo & Co.,*
2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) .................................................................. 13, 14, 15

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.,*
2017 WL 3034655 (E.D. Tex. July 18, 2017) (Bryson, J.) ................................................*passim*

*Fractus S.A. v. Samsung Elecs. Co. Ltd.,*
2013 WL 1136964 (E.D. Tex. Mar. 15, 2013) ........................................................................ 13

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
582 F.3d 1288 (Fed. Cir. 2009) ............................................................................................... 1

*Mondis Tech. Ltd. v. Chimei Innolux Corp.,*
822 F. Supp. 2d 639 (E.D. Tex. 2012) ......................................................................... 3, 13, 15

*Mondis Tech. Ltd. v. Innolux Corp.,*
530 F. App'x. 959 (Fed. Cir. 2013) ......................................................................................... 3

*Paice LLC v. Toyota Motor Corp.,*
504 F.3d 1293 (Fed. Cir. 2007) (Judge Rader, concurring) ................................................... 14

**Page**

*Paice LLC v. Toyota Motor Corp.*,
    609 F. Supp. 2d 620 (E.D. Tex. 2009) ................................................................................ 13, 15

*Read Corp. Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ................................................................................................ 15

*VirnetX Inc. v. Apple Inc.*,
    2014 WL 12672822 (E.D. Tex. Mar. 6, 2014) ...................................................................... 15

*XY LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018) .............................................................................................. 15

## I.     INTRODUCTION

Plaintiffs respectfully request that the Court set an ongoing royalty for Apple's continuing infringement of at least one asserted claim of each of the patents-in-suit from the date of the verdict through the date on which the Court entered final judgment, and for the period after final judgment a continuing royalty (collectively, an "ongoing royalty").  Case law and the facts strongly support an ongoing royalty at a rate higher than that awarded by the jury on a per patent, per-unit basis.  Nonetheless, Plaintiffs seek an ongoing rate solely at the per-patent, per-unit rate awarded by the jury, without an increase.  Apple declined to argue to the jury that these rates were not in compliance with FRAND obligations set by ETSI, the Federal courts, or any other body.  The Court found that these arguments have therefore been waived.  Setting the ongoing royalty rate at the rate set by the jury will therefore streamline the post-trial process and the appeal of this this order.

## II.     PLAINTIFFS ARE ENTITLED TO AN ONGOING ROYALTY

Where a jury's verdict only compensates the patentee for pre-suit infringement, the patentee is "entitled to be compensated for infringement occurring between the cut-off date for its calculation of damages…and the expiration date of the [patents]." *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2017 WL 3034655, at *1 (E.D. Tex. July 18, 2017) (Bryson, J.) ("*UroPep*"); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales.").  "[W]hether the jury award compensates the patentee for future infringement is important because without some form of prospective relief, the patent owner is effectively forced to 'resort to serial litigation' to receive compensation for future infringement." *Cioffi v. Google, Inc.*, 2017 WL 4011143, at *2 (E.D. Tex. Sept. 12, 2017) (quoting *UroPep*, 2017 WL 3034655, at *2) (Gilstrap, J.).

Here, the jury expressly determined that the damages awarded were a "royalty for past sales." Dkt. 483 at 8.  Thus, Plaintiffs are entitled to an ongoing royalty in this case.  *See UroPep*, 2017 WL 3034655, at *2 ("[I]t would be improper for the Court first to conclude that the damages awarded by the jury do not cover the post-verdict period, but then to rule that [the plaintiff] is not entitled to any relief for that period.").

## III.    APPLE REFUSED TO NEGOTIATE AN ONGOING ROYALTY

Counsel for the parties met and conferred regarding this motion.  Counsel for Apple stated that Apple opposes an award of an ongoing royalty on the same grounds that will be set forth in its motions for judgment as a matter of law and motion for a new trial.  Apple's failure to propose **any** rate that it would agree to is further evidence that its behavior is not in good faith and represents a repudiation of any rights it may have under FRAND, in express violation of its obligations under French law.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *see also* Dkt. 533 at 70-74.  Apple has been adjudicated a willful infringer of five patents that it claims are standard essential and therefore subject to ETSI disclosure obligations—if Apple did not contend the patents were standard essential, its declaratory judgment claim for unenforceability would have been moot.  And yet there is not any rate Apple is prepared to pay for these patents, even if the judgment is stayed pending appeal.

## IV.    THE COURT SHOULD AWARD AN ONGOING ROYALTY RATE

### A.    The Court Should Award An Ongoing Royalty Rate Equal To Minimum Royalty Rates Calculated by Mr. Kennedy Which the Jury Adopted

As an equitable determination, the calculation of an ongoing royalty rate is "a matter committed to the sound discretion of the district court."  *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008).  Courts routinely use the royalty rate implied by the jury's verdict as the starting point in determining a forward-looking royalty.  *UroPep*, 2017 WL 3034655, at *7

("Recognizing the importance of the jury's verdict, courts have uniformly held that the starting point for the *Amado* analysis of the ongoing royalty rate is the royalty rate found by the jury for the pre-verdict infringement period."). Specifically, "the Court will proceed by first determining a post-judgment reasonable (ongoing) royalty rate under *Georgia–Pacific* and will use the jury's verdict in this case as a starting point and determine how the circumstances may have changed. Then the Court will consider whether the ongoing infringement will be willful. If so, the Court will consider how much to enhance the damages in light of this willful infringement." *Mondis Tech. Ltd. v. Chimei Innolux Corp.,* 822 F. Supp. 2d 639, 647 (E.D. Tex. 2012), aff'd sub nom. *Mondis Tech. Ltd. v. Innolux Corp.*, 530 F. App'x. 959 (Fed. Cir. 2013).

Despite the fact that Apple's ongoing infringement will be willful and thus an enhanced ongoing royalty rate is appropriate, Plaintiffs only seek an ongoing royalty equal to the jury's implied rate.

The royalty rate awarded by the jury's verdict is $4.22 per infringing iPhone, $3.62 per infringing iPad, and $2.25 per infringing Apple Watch. These are the royalty rates Mr. Kennedy presented to the jury. Dkt 503 (Kennedy) at 58:6-9 ████████████████████████
████████████████████████████████████████████████████
████████████████████████████



The jury fully accepted Mr. Kennedy's testimony, awarding Plaintiffs the entire $506.2 million in damages Plaintiffs sought.  Dkt. 503 (Kennedy) at 66:8-9 (█████████████████████████ ████████).  The per-patent, per-device royalty rates that make up this award are the following, as reflected in PX5280a which was before the jury.

| Device | '833 | '332 | '774 | '557 | '284 | Total |
|---|---|---|---|---|---|---|
| iPhone | $1.71 | $1.01 | $1.47 | $0.02 | $0.02 | **$4.22** |
| iPad | $1.33 | $0.78 | $1.47 | $0.02 | $0.02 | **$3.62** |
| Apple Watch | $0.91 | $0.54 | $0.79 | $0.01 | $0.01 | **$2.25** |

To reach these per-device rates, Mr. Kennedy presented to the jury two approaches to apportion the value of the patents-in-suit: the infrastructure approach and the survey approach. Apple moved to strike both of these approaches at the *Daubert* stage, and the Court fully rejected Apple's arguments.  Dkt. 437 (PTC Day 2) at 163:24-164:8 ("I'm thoroughly familiar with the arguments on both sides of these issues regarding the infrastructure cost approach, the carrier scarcity approach, and the survey approach.  […]  To the extent Apple moves to exclude the opinions of Mr. Kennedy on these three theories, I'm going to deny that[.]").

Both of Mr. Kennedy's damages opinions are based on the incremental benefits of the patents-in-suit, which were calculated by Profs. Vijay Madisetti and Mark Mahon in percentage terms by comparing the LTE speed of the accused products with the next-best noninfringing alternatives (NIAs).  Dkt. 503 (Kennedy) at 44:19-22 ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████

Profs. Madisetti and Mahon also provided Mr. Kennedy with the understanding that this decrease of LTE speed due to adoption of the best non-infringing alternative to each of the patents-in-suit may be ameliorated or eliminated by increasing carrier network infrastructure capacity by the same percentages.  *Id.* at 46:20-23 ███████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

Dkt. 504 (Kennedy) at 47:2-6.

Mr. Kennedy's infrastructure cost approach analyzed what the incremental cost of providing the bandwidth that was otherwise saved by using the infringing technology.  Dkt. 503 (Kennedy) at 46:17-50:14. █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████     ████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

Mr. Kennedy's infrastructure approach first estimates the cost associated with existing LTE network capacity.  To estimate that cost, Mr. Kennedy relied on a rigorous industry study performed by iGR, "a market strategy consultancy focused on the wireless and mobile communications industry" that "research[es] and analyze[s] the impact new wireless and mobile technologies will have on the industry, on vendors' competitive positioning, and on [its] clients' strategic business plans."  PX1405 at 0069.  █████████████████████████████

██████████████████████████████████████████████  Dkt. 503 (Kennedy) at 48:20-23.  The iGR report breaks down LTE equipment capital costs into four categories: (1) Radio; (2) Fronthaul/Backhaul/Transport; (3) MME / S-GW; and (4) Packet core/EPC.  *See, e.g.*, PX1405 at 0009.  Mr. Kennedy relied on Profs. Madisetti and Mahon to determine that only the "Radio" category of costs are relevant to the technological benefits provided by the patents-in-suit, and thus did not consider the other categories in his analysis.  Dkt. 503 (Kennedy) at 49:6-10.  Mr. Kennedy's analysis of LTE infrastructure costs was presented to the jury as PX5285.

Mr. Kennedy then apportioned the relevant LTE infrastructure cost across all LTE handsets in the market to estimate the network carriers' average network infrastructure cost per LTE handset.  Mr. Kennedy determined that the relevant network infrastructure cost per LTE handset was $33.59.  Dkt. 503 (Kennedy) at 48:24-49:2.  This calculation was presented to the jury as PX5284.

Mr. Kennedy then further apportioned this down to the LTE speed percentage benefits of the patents-in-suit.  He did so by determining how much additional network infrastructure would be needed to ameliorate or eliminate the speed loss due to Apple using NIAs instead of the patents-in-suit.  Relying on Profs. Madisetti and Mahon, Mr. Kennedy determined that the total required increase in infrastructure cost would be 23.8%.  Mr. Kennedy thus determined that

the total required increase in infrastructure cost per accused product is $7.99 ($33.59 x 23.8% = $7.99).  This calculation was presented to the jury as PX5283.

Mr. Kennedy also presented his survey approach to the jury as a means to apportion to the value of the patents-in-suit. Mr. Kennedy's survey approach relied on Dr. Rebbecca Reed-Arthurs' opinions that if Apple chose to not use the patents-in-suit, Apple would need to reduce the price of its devices to reflect lower LTE performance, and thus would receive lower per-unit profits.  Dkt. 503 (Kennedy) at 45:18-21 ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  Dr. Reed-Arthurs "designed and analyzed a survey to measure how much a change in LTE upload and download speed is worth to phone buyers and to Apple."  Dkt. 494 (Reed-Arthurs) at 536:16-18.

Specifically, Dr. Reed-Arthurs designed and conducted a choice-based conjoint (CBC) survey, in which 1,512 survey takers were presented with sets of smartphones that each varied based on different features like brand, price, screen size, LTE download speed, and so on.  Dkt 494 (Reed-Arthurs) at 540:2-7, 546:20-24.  The survey takers were then asked to choose the device they were most likely to purchase.  *Id.*  As Dr. Reed-Arthurs explained, CBC surveys provide a means to measure the maximum amount someone is willing to pay, also called "willingness to pay," for just one feature of a product, as opposed to all the other features of the product.  *Id.* at 540:24-541:2.  Dr. Reed-Arthurs' CBC survey was thus able to "measure just the value of the change in LTE speeds," apart from other changes and features in a product.  *Id.* at 541:18-24.

Dr. Reed-Arthurs used her survey to identify consumers' willingness to pay, and after additional adjustments to ensure her results were accurate, *see generally id.* at 555:7-558:7, applied her results of that survey to the percentage changes in speed found by Profs. Madisetti and Mahon to apportion to the incremental benefit of each of the patents-in-suit.  *Id.* at 560:13-24.  Dr. Reed-Arthurs then used a standard microeconomic model to convert a change in willingness to pay to

a change in profit, and thus created a model to calculate how the patents-in-suit reflected a change in Apple's profits.  *Id.* at 558:15-560:8.  The combined total of the change in Apple's profits due to the use of the patents-in-suit is $8.79 per iPhone.  Dkt. 503 (Kennedy) at 46:4-16.

After Mr. Kennedy calculated the incremental profits due to the patents-in-suit under these two approaches, he determined the outcome of the hypothetical negotiation, during which the parties would have agreed to split those profits:



*Id.* at 54:21-55:12.  Mr. Kennedy then applied that negotiation split to the apportioned value of the patents.  Although Mr. Kennedy noted that both the infrastructure approach and the survey approach are valid methods of apportioning to the value of the patents-in-suit, PanOptis only sought an award based on the low amount in the range - $7.99.

Mr. Kennedy then applied Plaintiffs' 52.8% negotiation split to determine the reasonable royalty rate for infringing iPhones would be $4.22 per unit:



*Id.* at 54:19-55:14.

As the final step, Mr. Kennedy took the per-unit royalty rate for the iPhone and used Apple's comparable license agreements to determine the reasonable per-unit royalty rate for the iPad and the Apple Watch.



*Id.* at 56:1-58:18.  This resulted in per-unit royalty rates of $4.22 for the iPhone, $3.62 for the iPad, and $2.25 for the Apple Watch.

Apple's expert Dr. Perryman did not present a reasonable royalty opinion, and he did not analyze any of the Georgia-Pacific factors:



Dkt. 507 (Perryman) at 40:1-11).  Nonetheless, his damages opinions confirm that a per-device royalty is appropriate here.  Dr. Perryman's opinions consisted of both a top-down approach and a comparable license approach that each rely on a per-unit royalty:



*Id.* at 18:17-19:3; 18:5-7; 12:1-3; 19:17-23 (top-down approach).



*Id.* at 20:8-15 (comparable license approach).

Both parties' damages experts also relied on the quarterly sales figures produced by Apple to determine the number of infringing devices (DTX-0917; DTX-0918; PX-5278; PX-5288; PX-0035) and both parties' experts used that number to calculate their damages figures presented to the jury.  Dkt. 503 (Kennedy), at 50:23-51:23 ███████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████ ; Dkt. 507 (Perryman) at 18:17-19:3; 20:8-15.

**B.**   **Apple Waived Any Argument That The Jury's Implied Royalty Rate Is Not FRAND**

Apple made the tactical decision not to raise a FRAND defense to the jury in this litigation.  In so doing, Apple waived any argument that the jury's implied royalty rate and thus an identical ongoing royalty rate is not FRAND.

At the pre-trial conference, Apple's counsel repeatedly told the Court that FRAND was not an issue for the jury, and that FRAND should ***not*** be considered by the jury when considering damages:



Dkt. 436 (Sealed Pretrial Tr.) at 50:20-51:17, 57:25-58:6 (emphasis added).

> ***FRAND is not part of the jury phase of this case.*** […]
>
> ***The jury phase should be focused on what their damages experts are testifying to the jury and our responses to those issues, and the remainder is for the bench phase.***

Dkt. 439 (Pretrial Tr.) at 30:5-8, 31:1-9 (emphasis added).

In the bench phase, we can get into the negotiations and who did what, who said what, who was acting FRAND, who wasn't.  But the jury phase should be kept on

infringement, non-infringement, validity, invalidity, and damages. And none of that is relevant to any of that.

Dkt. 437 (Pretrial Tr.) at 229:19-25.

During the jury trial, near the close of evidence, the parties submitted their proposed jury instructions for the close of evidence. Dkt. 467. Apple's proposed instructions included no reference to FRAND whatsoever. *Id.*

At the formal charge conference, Apple did not object to the final jury instructions on the grounds that the damages instructions did not include instructions regarding FRAND. Dkt. 520 (8-10-20 AM Transcript 932-951).

Despite these repeated statements to the Court that FRAND was not a jury issue, Apple lodged a collateral attack against the jury verdict in its Proposed Findings of Fact and Conclusions of Law, stating "[t]he $506.2 million in damages awarded by the jury is not FRAND." Dkt. 528 at 122. Apple claimed, for the first time, that it "was entitled to have damages measured, and its alleged willfulness judged, in the context of the irrevocable commitment to license these patents on FRAND terms." *Id.* at 2. Apple further stated that "[b]ecause Apple never 'forfeited' its right to rely on the irrevocable FRAND declarations, the FRAND commitments still apply, and the jury should have heard, and been instructed on, the effect of those FRAND commitments applicable to each patent." *Id.* Apple went so far as to claim that "Plaintiffs' non-FRAND damages verdict must be vacated and a retrial held at least as to damages." *Id.* at 125.

The Court rejected Apple's arguments. In the Court's order as to the bench trial, the Court stated that:

> Notably, Apple failed to raise any FRAND issue with the Court at the pretrial conference (Dkt. No. 435 at 64:20) or at the charge conference. (Dkt. No. 499.).
>
> As a consequence of Apple's failure to seek affirmative FRAND relief, the only constraints of any FRAND obligation which were affirmatively presented in this case appeared via Optis's Count VIII. **Relying on representations by the parties,** the Court ruled that Count VIII—and corresponding FRAND issues— would be tried to the bench.

- 11 -

Dkt. 538 at 20.

The Court also pointed out that Plaintiffs identified this exact issue, and Apple remained

silent, likely as a litigation tactic:

> Optis itself noted that "the issue of bad faith would only be tried to the jury if
> Apple said [Optis was] required to make a FRAND damages request and that
> [Optis's] request is not FRAND damages. Other than that, it would not be tried
> to a jury. It'd be tried to the bench." (Dkt. No. 435 at 54:12–16.) By acquiescing
> in Optis's request that Count VIII be tried to the bench, the serious allegations of
> bad faith or holdout by Apple would not be presented to the jury. (*Id.* at 56:25–
> 57:4, 62:8–13.) ***Apple's strategic silence at this juncture effectively shielded
> them from any bad faith evidence being presented to the jury***. In light of
> their silence and failure to oppose Optis's bench trial request, it would be a
> particularly unfair, given the jury's verdict for Optis, for Apple to now argue that
> FRAND issues should have been presented to the jury.

Dkt. 538 at 20, n. 4.

## C.      The Jury's Royalty Rates Were FRAND

Dr. Perryman admitted that a rate is FRAND if it isolates the value solely attributed to

the patents in suit:



Dkt. 509 (Perryman) at 62:18-25.

Professors Mahon and Madisetti calculated the performance benefit solely associated with

the patents-in-suit in comparison to the next closest non-infringing alternatives. Dkt. 501

(Mahon) at 85:22-86:3; Dkt. 502 (Madisetti) at 36:2-11, 37:14-16, 38:21-25; Dkt. 507 (Mahon) at

108:14-16, 108:23-25.

Dr. Perryman admitted that none of Apple's experts provided any data disputing these

performance benefit numbers.  In specific, Dr. Wells and Professor Buehrer provided no analysis

on benefit.   Dkt. 507 (Perryman) at 30:24-32:16.   Mr. Lanning did provide an alternative

performance analysis, but Dr. Perryman admitted that he provided no data to support his analysis. *Id.* Moreover, the jury heard that Mr. Lanning was excluding embodiments from the scope of the patent claims and from his calculation of performance benefit for one of the two patents he analyzed. Dkt. 506 (Lanning) at 46:22-48:4; 49:8-21. For the other patent, his simulation assumed that a shift was not an example of a divide as claimed in the patent, even though he admitted

████████████████████████████████████████████████████████

██████  *Id.* at 49:23-51:2.

### D. The Trial Record Supports A Higher Ongoing Royalty Rate

Plaintiffs here only seek an ongoing royalty in the amount of the implied jury rate. However, courts in this district routinely set ongoing royalty rates higher than the implied rate found by the jury. *See e.g., UroPep*, 2017 WL 3034655, at *1 (applying twice the jury's implied royalty rate to post-verdict infringing sales); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009) ("*Paice II*") (setting ongoing royalty of $98 per vehicle as compared to jury verdict implied rate of $25 per vehicle); *Mondis*, 822 F. Supp. 2d at 653 (setting ongoing royalty of 3x the jury verdict rate); *Fractus S.A. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1136964, at *3 (E.D. Tex. Mar. 15, 2013) (setting ongoing royalty of 1.69x the implied rate found by the jury); *Affinity Labs of Texas, LLC v. BMW North Am., LLC*, 783 F. Supp. 2d 891, 905 (E.D. Tex. Mar. 28, 2011) (setting ongoing royalty of 1.33x the jury rate); *Datatreasury Corp. v. Wells Fargo & Co.*, 2011 WL 8810604, at *19 (E.D. Tex. Aug. 2, 2011) (setting ongoing royalty of 2.5x the implied rate found by the jury). The Federal Circuit routinely upholds ongoing royalty rates higher than the implied rate found by the jury. *See, e.g., Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017), cert. denied, 139 S. Ct. 143 (2018) (affirming district court's ongoing royalty rate of double the rate determined by the jury).

Using the jury's implied royalty rate as a starting point, courts conduct a renewed analysis of a reasonable royalty based on a post-verdict hypothetical negotiation. *UroPep*, 2017 WL

3034655 at *8; *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 6687122, at *15 (N.D. Cal. Nov. 25, 2014). "Once a judgment of validity and infringement has been entered … the calculus is markedly different because different economic factors are involved." *Arctic Cat Inc.*, 876 F.3d at 1370 (Fed. Cir. 2017); *Datatreasury Corp.*, 2011 WL 8810604 at *18-19 (reasoning that the "jury verdict [is] a valuable guide" and increasing the royalty based on the defendant's "status as an adjudged infringer.").

There are at least three independent reasons why the implied royalty rate awarded by the jury could appropriately be increased under a post-verdict *Georgia-Pacific* analysis.

**First**, the Federal Circuit recognizes the impact of a jury verdict on a *Georgia-Pacific* hypothetical negotiation. The *Amado* court explained that "[p]rior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." 517 F.3d at 1362; *see also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1317 (Fed. Cir. 2007) ("[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors.") (Judge Rader, concurring). The Federal Circuit has noted that a judgment of infringement and no invalidity results in a "substantial shift in the bargaining power of the parties" and supports a district court's award of an ongoing royalty exceeding the royalty awarded for past infringement:

> While it is likely true that Verizon would not have agreed to that amount prior to litigation, Verizon has been adjudicated to infringe and the patent has been held not invalid after a substantial challenge by Verizon… The district court is correct; there has been a substantial shift in the bargaining position of the parties.

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012).

**Second**, there have been material changes between the hypothetical negotiation period and the August 2020 post-verdict hypothetical negotiation that support a substantially increased

per-unit royalty.  For example, the evidence at trial showed that consumer usage of LTE and of LTE data has increased over time and thus the economic benefits to Apple from the use of the patents have been increasing over time.  Dkt. 491 at 259:12-261:1.  *XY LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1298 n.10 (Fed. Cir. 2018) (noting that the evidence at trial of increased usage contradicted the imposition of ongoing royalties lower than the jury awarded rate).

    ***Third***, Apple's ongoing infringement will be willful.  Courts routinely find post-judgment infringement by a defendant to be willful.  *See, e.g., Affinity Labs*, 783 F. Supp. 2d at 899 ("Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's continued infringement will be willful absent very unusual circumstances."); *Datatreasury*, 2011 WL 8810604 at *8-9 (finding ongoing infringement to be willful); *Mondis*, 822 F. Supp. 2d at 649 (same).  Here, there is no question that Apple's ongoing infringement is willful, given that the jury found that Apple's pre-verdict infringement was willful.  Indeed, were Plaintiffs forced to file a new lawsuit rather than seek an ongoing royalty, "a new lawsuit by [the patent owner for continued infringement] would likely result in treble damages and could potentially be considered an exceptional case." *Paice LLC*, 609 F. Supp. 2d at 626.  To determine whether to enhance an ongoing royalty on the basis of willfulness, courts look to the enhanced damages set out by the Federal Circuit in *Read Corp*. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992); *VirnetX Inc. v. Apple Inc.*, 2014 WL 12672822, at *4 (E.D. Tex. Mar. 6, 2014) (enhancing implied royalty rate due to willfulness).

## V.    CONCLUSION

    Based on the foregoing, Plaintiffs respectfully request an ongoing royalty rate of $4.22 per infringing iPhone, $3.62 per infringing iPad, and $2.25 per infringing Apple Watch.

Dated: March 25, 2021

Respectfully submitted,

*/s/ Jason Sheasby*
Jason Sheasby (pro hac vice)
jsheasby@irell.com
Hong Zhong, PhD
hzhong@irell.com
IRELL & MANELLA LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064
Phone: (310) 203-7096; Fax: (310) 203-7199

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
McKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Phone: (903) 923-9000; Fax: (903) 923-9099
Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
McKOOL SMITH, P.C.
300 W. 6th Street Suite 1700
Austin, TX 78701
Phone: (512) 692-8700; Fax: (512) 692-8744
M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Phone: (214) 954-4135; Fax: (469) 320-6901
**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS TECHNOLOGY,
LLC, OPTIS CELLULAR
TECHNOLOGY, LLC, AND
PANOPTIS PATENT
MANAGEMENT, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served via email on all counsel of record on March 25, 2021.

*/s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that this document should be filed under seal because the document contains material covered by the Stipulated Protective Order approved and entered in this case on August 7, 2019 (Dkt. 57).

*/s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF CONFERENCE

Counsel for the parties have discussed this motion by phone in an effort to resolve their differences. Those discussions have ended in impasse. This motion is opposed by Apple.

*/s/ Jason Sheasby*
Jason Sheasby