**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, | Civil Action No. 2:19-cv-66-JRG |
| Plaintiffs, | JURY TRIAL |
| v. | ███████████ |
| APPLE INC., | |
| Defendant. | |

### PLAINTIFFS' OPPOSITION TO APPLE'S MOTION FOR A NEW TRIAL (DKT. 549)

## TABLE OF CONTENTS

Page

I.      Legal Standard ................................................................................................ 1

II.     The Jury Verdict Is Supported By The Evidence ................................................ 1

      A.      Apple's Damages Expert Admitted at the Bench Trial That the Jury
            Fully Considered All Relevant Aspects of a FRAND Commitment .......................... 1

      B.      The Court Ultimately Determined That the Jury Should Be
            Instructed on FRAND Apportionment .............................................................. 4

      C.      Apple Prevailed on the Court to Block Additional "FRAND"
            Evidence from Coming Before the Jury ............................................................ 5

      D.      In *Ericsson,* There Was an Undisputed Obligation to Extend a
            FRAND License; PanOptis Disputed Any Such Obligation .............................. 7

      E.      A *Georgia-Pacific* Factor 5 Instruction Was Proper Because Apple
            Included Affirmative Evidence on This Issue to Assist Its Case ........................ 7

      F.      Apple Was Not Blocked From Presenting the Perryman Proffer ........................ 9

III.    Apple Waived Its Argument That PanOptis' Damages Breached FRAND ................... 11

IV.     Apple Waived Its Right To Have The Court Adjudicate FRAND By Not
      Bringing Affirmative Counterclaims Or Defenses ................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baisden v. I'm Ready Prods., Inc.,*
   693 F.3d 491 (5th Cir. 2012)...............................................................................................1

*Diaz v. Methodist Hosp.,*
   46 F.3d 492 (5th Cir. 1995)..................................................................................................1

*Ericsson, Inc. v. D-Link Sys., Inc.,*
   773 F.3d 1201 (Fed. Cir. 2014)..............................................................................2, 3, 7, 8

*HTC Corp. v. Telefonaktiebolaget LM Ericsson (HTC I),*
   2019 WL 4734950 (E.D. Tex. May 22, 2019) ....................................................2, 7, 8, 14

*Jimenez v. Wood County, Tex.,*
   660 F.3d 841 (5th Cir. 2011)................................................................................................8

*KWP Fin. I, Inc. v. Harlan,*
   100 F.3d 953 (5th Cir. 1996)..............................................................................................13

*Laxton v. Gap Inc.,*
   333 F.3d 572 (5th Cir. 2003)................................................................................................1

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.,*
   421 F. Supp. 3d 410 (E.D. Tex. 2019) ..............................................................................15

*Pegram v. Herdrich,*
   530 U.S. 211 (2000)..............................................................................................................5

*Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.,*
   347 F.3d 935 (Fed. Cir. 2003)............................................................................................13

*Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC,*
   No. 2:15-CV-351-JRG, 2018 WL 915125 (E.D. Tex. Feb. 15, 2018) .............................15

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM
   Ericsson (TCL II),* 2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) ..................................14

*TCL Commc'ns Tech. Holdings Ltd v. Telefonaktiebolaget LM Ericsson (TCL I),*
   2016 WL 4150033 (C.D. Cal. July 25, 2016) ...................................................................14

*Zafiro v. United States,*
   506 U.S. 534 (1993)....................................................................................................2, 3, 4

**Page**

**Statutes**

35 USC § 284 ...................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 8(c)(1) ........................................................................................................ 13

Fed. R. Civ. P. 13(a)(1)(A) ................................................................................................ 13

Fed. R. Civ. P. 59(a) ............................................................................................................ 1

PanOptis respectfully opposes Apple's motion for a new trial.

## I.      Legal Standard

"Generally, any error in admitting or excluding evidence is not grounds for a new trial." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012). A new trial is only "warranted if the [verdict] is against the great, and not merely the greater, weight of the evidence." *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003); Fed. R. Civ. P. 59(a). The burden is on the party seeking the new trial. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 495 (5th Cir. 1995).

## II.     The Jury Verdict Is Supported By The Evidence

### A.      Apple's Damages Expert Admitted at the Bench Trial That the Jury Fully Considered All Relevant Aspects of a FRAND Commitment

Apple's damages expert, Dr. Perryman, admitted that a reasonable royalty is FRAND if it isolates the value solely attributable to the patents-in-suit:



Dkt. 509 (Perryman) at 62:5-25.

This is consistent with the instructions the Court provided to the jury. The Court instructed the jury that it "must not award Optis more damages than are adequate to compensate for the infringement." Dkt. 520 (Jury Instruct.) at 985:23-24. Additionally, the Court instructed the jury that, for standard essential patents, "the patented feature must be apportioned from all the unpatented

features reflected in the standard" and "the patent owner's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology." *Id.* at 991:6-14. This is exactly what the Federal Circuit requires for standard essential patents. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232 (Fed. Cir. 2014):

> Although the jury, as the fact finder, should determine the appropriate value for that added benefit and may do so with some level of imprecision, we conclude that they must be told to consider the difference between the added value of the technological invention and the added value of that invention's standardization.

The Court must presume that the jury correctly followed the Court's instructions. *See Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).

Apple's assertion that *Ericsson* requires the Court to tell the jury that there is a "FRAND" commitment is a significant misreading of the case. The full context of the quote that Apple relies on makes clear that the "commitment" that must be explained to the jury is that the jury "must" only award damages solely related to the value of the technology and separate from the value of standardization, exactly what the Court did here:

> Rather than instruct the jury to consider "Ericsson's obligation to license its technology on RAND terms," J.A. 226, the trial court should have instructed the jury about Ericsson's *actual* RAND promises. "RAND terms" vary from case to case. A RAND commitment limits the market value to (what the patent owner can reasonably charge for use of) the patented technology. The court therefore must inform the jury what commitments have been made and of its obligation (not just option) to take those commitments into account when determining a royalty award.

*Ericsson*, 773 F.3d at 1231. In *Ericsson*, that commitment was to limit the value to what "the patent owner can reasonably charge for use." Here, Dr. Perryman admitted that the FRAND obligation is to only seek damages on the technical contribution, exactly this Court instructed the jury it "must do."

Professors Madisetti and Mahon calculated the performance benefit solely associated with the patents-in-suit in comparison to the next closest non-infringing alternatives. Dkt. 501 (Mahon) at 85:22-86:3; Dkt. 502 (Madisetti) at 36:2-11, 37:14-16, 38:21-25; Dkt. 507 (Mahon) at 108:14-16,

108:23-25. Mr. Kennedy's two damages analyses, the infrastructure approach and the survey approach, were based on these performance benefits. Dkt. 503 (Kennedy) at 43:20-44:22*; see also* Plaintiffs' Motion for Ongoing Royalty, Dkt. 556.

Mr. Kennedy's infrastructure analysis is based on the incremental benefits of the patents-in-suit, which were calculated by Profs. Madisetti and Mahon in percentage terms by comparing the LTE speed of the accused products with the next-best noninfringing alternatives (NIAs). Dkt. 503 (Kennedy) at 44:19-22. Mr. Kennedy's infrastructure cost approach analyzed the incremental cost of providing the bandwidth that was otherwise saved by using the infringing technology. *Id.* at 46:17-50:14. Mr. Kennedy's infrastructure approach first estimates the cost associated with existing LTE network capacity. *Id.* at 48:20-23, 49:6-10; PX1405 at 0009. Mr. Kennedy then apportioned the relevant LTE infrastructure cost across all LTE handsets in the market to estimate the network carriers' average network infrastructure cost per LTE handset. *Id.* at 48:24-49:2; PX5284. Mr. Kennedy then further apportioned down to the LTE speed percentage benefits of the patents-in-suit. PX5283.

The survey approach was based on consumer survey evidence presented by Dr. Rebbecca Reed-Arthurs. Specifically, Dr. Reed-Arthurs designed and conducted a choice-based conjoint (CBC) survey, in which 1,512 survey takers were presented with sets of smartphones that each varied based on different features like brand, price, screen size, LTE download speed, and so on. Dkt 494 (Reed-Arthurs) at 540:2-7, 546:20-24. The survey takers were then asked to choose the device they were most likely to purchase. *Id.* CBC surveys provide a means to measure the maximum amount someone is willing to pay, also called "willingness to pay," for just one feature of a product, as opposed to all the other features of the product. *Id.* at 540:24-541:2. Dr. Reed-Arthurs' CBC survey was thus able to "measure just the value of the change in LTE speeds," apart from other changes and features in a product. *Id.* at 541:18-24. She concluded that Apple received an increase in profit of $8.79 per phone because of the patents-in-suit's increase in LTE speed. *Id.* at 561:18-562:1.

Dr. Perryman admitted that none of Apple's experts provided any data disputing these performance benefit numbers. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ████████████████████

████████████████████████████████ *Id.* at 49:23-51:2.

## B.   The Court Ultimately Determined That the Jury Should Be Instructed on FRAND Apportionment

Apple repeatedly quotes the Court's statement at the pre-trial conference regarding the structure of the FRAND issues at trial:

> [I]f the Court finds the Plaintiff has not been relieved of that FRAND obligation in some way because of the conduct of the Defendant, then we're going to have a damages number that has no relation to FRAND whatsoever and a bench finding that there's a FRAND obligation on the Plaintiff…. I may well have to order a new trial on damages if that's the result of the bench trial.

Dkt. 439 (Pretrial Tr.) at 61:3-21. The Court stated that a new trial may be appropriate if the verdict is "a damages number that has no relation to FRAND." At the charge conference, however, the Court (over PanOptis' objections) gave an instruction to the jury on SEP apportionment, which Dr. Perryman admitted under oath is the standard for FRAND. Dkt. 520 (Charge Conf.) 944:17-945:2. With this instruction, any separate bench determination on "FRAND" became moot. Notably, Apple asked for no additional instructions on FRAND at the charge conference.

## C.   Apple Prevailed on the Court to Block Additional "FRAND" Evidence from Coming Before the Jury

Apple claims it preserved its position that additional evidence on FRAND should be presented

to the jury via a "proffer" regarding Dr. Perryman made *after*[1] PanOptis rested its case in chief (precluding PanOptis from presenting additional evidence in its case in chief of bad faith and hold-out) and via a random reference to "FRAND" in objecting to a jury instruction on *Georgia-Pacific* Factor 5 (relationship of competitors). This is a lawyer game. Apple expressly represented that it did not want additional evidence regarding whether the damages request had to be "FRAND" to be presented to the jury and it prevailed on this issue. Having blocked issues from coming before the jury, Apple cannot now seek a new trial because those issues were not presented. *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

At the Pre-Trial Conference, PanOptis made clear that if Apple was going to allege that the damages sought in the case were a breach of FRAND, then PanOptis had a right to present to the jury that there was no FRAND obligation because of Apple's bad faith and hold-out:

> Your Honor, the issue of bad faith would only be tried to the jury if Apple said we're required to make a FRAND damages request and that our request is not FRAND damages. Other than that, it would not be tried to a jury. It'd be tried to the bench.

Dkt. 435 (Pretrial Tr.) at 54:12-16. Apple then claimed that it was not going to make this argument:

Dkt. 436 (Sealed Pretrial Tr.) at 50:15-19. The Court then made clear that it was relying on Apple's representation in concluding that there would be no reference to "FRAND" in the jury trial:

> Apple has not sought a breach of contract claim asserting a failure to comply with FRAND. And, quite honestly, counsel, I don't want to hear the word "FRAND" or "fair," "reasonable," or "non-discriminatory" in front of the jury.

Dkt. 435 (Pretrial Tr.) at 57:5-9. The Court then asked Apple's lead counsel if he had any questions.

---

[1] The Perryman "proffer" was filed on August 7, 2020 at 1:10pm CDT. Dkt. 471. PanOptis rested its case in chief on August 6, 2020 at 10:00am CDT. Dkt. 495 at 614:4-6.

Apple's counsel did not correct the Court. *Id.* at 64. Apple's attempt to rely on a passing reference that "the damages request is proper or consistent with FRAND" at an earlier point in the PTC is sharp practice on the Court.  If Apple believed its experts needed to be able to say more to make its damages case in front of the jury, the time to assert this was when the Court asked if there were any questions.

Apple's representations in the joint pre-trial submission were also unambiguous that it wanted no additional "FRAND" evidence in front of the jury beyond the apportionment instruction it received. In particular, on the question of "issues to be tried to the jury" Apple did not list anything having to do with "FRAND." As to damages, it sought only to try the issue of a ███████████ ████████████████████████████████████████████████████████ Dkt. 360 at 12. This was not an oversight. PanOptis argued that if additional issues relating to FRAND came before the jury, ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ *Id.* at 5. In order to avoid this, Apple made clear that it would not make this argument and that nothing more had to come before the jury regarding FRAND commitments other than a standard reasonable royalty instruction on SEPs: ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████ ███████ *Id.* at 4. Apple's claim that its pre-trial statement asserted that damages have to be "FRAND" cannot save Apple because Apple expressly asserted that a FRAND award is one that is based on proper SEP apportionment, which is exactly the instructions it ultimately received over PanOptis' objection.

To the extent *Ericsson* supports giving or removing additional instructions because of a FRAND commitment, or could have entitled Apple to present additional evidence to the jury on

FRAND, the reason that did not occur was because of the decision Apple made at the start of the case that it wanted no additional "FRAND" evidence to come before the jury. The Federal Circuit held in *Ericsson* that a district court "need not instruct the jury on [an issue] unless [a party] presents actual evidence of [that issue.]" *Ericsson*, 773 F.3d at 1234 (discussing hold-up and royalty stacking).

### D.     In *Ericsson,* There Was an Undisputed Obligation to Extend a FRAND License; PanOptis Disputed Any Such Obligation

The *Ericsson* decision is not on point for an important reason. "Ericsson agree[d] that it is under a binding obligation to license the patents at issue on the RAND terms it pledged to the IEEE." *Ericsson*, 773 F.3d at 1231. Here, PanOptis expressly pleaded that Apple lost its right to take advantage of any FRAND commitment. In particular, in the First Amended Complaint, PanOptis pleaded:

> Plaintiffs maintain that Apple has acted in bad faith, has participated in hold-out and has rejected Plaintiff's performance, and therefore can no longer raise a FRAND defense in this case.

Dkt. 26 at ¶ 143. Apple therefore had a choice: it could present additional argument and evidence on FRAND or it could avoid having the jury hear arguments that it acted in bad faith and participated in hold out and therefore lost its right to enforce a FRAND commitment. It had to make this choice because this choice because its own expert admitted that it was possible to lose the right to benefit from a FRAND commitment. Dkt. 533 [FF15]-[FF21]. Apple chose to block any of this evidence going before the jury. As a result, to the extent *Ericsson* gives a Defendant accused of infringing an allegedly FRAND-encumbered SEP any additional rights to argument, evidence, or instructions beyond a SEP that is not FRAND encumbered, Apple waived this right.

### E.     A *Georgia-Pacific* Factor 5 Instruction Was Proper Because Apple Presented Affirmative Evidence on This Issue to Assist Its Case

Apple now belatedly suggests that the inclusion of *Georgia-Pacific* factor five in the jury charge was error entitling it to a new trial. Mot. at 8-9. This is nonsensical. Apple's own damages expert affirmatively discussed this factor in his testimony. He did not attempt to say it was irrelevant because

the patents were standard essential. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Dkt. 507 (Perryman) at 7:14-20.

Even if Apple had not introduced the issue of competition into its case in chief, there was still no error justifying a new trial in including the instruction. *Ericsson* observed that on the facts before it, factor 5 was irrelevant: "factor 5—'[t]he commercial relationship between the licensor and licensee'— is irrelevant because Ericsson must offer licenses at a *non-discriminatory* rate." *Ericsson*, 773 F.3d at 1230-31. ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

Apple did not object to an instruction on factor 5 on relevance grounds. Instead it made a non-sensical argument that this instruction would have somehow been inappropriate if there had been a "tri[al]" with respect to the FRAND issue." Dkt. 520 (Charge) at 944:1-9 ("The reason for us putting it on the record now is in the event that this matter were, I believe, tried with respect to the FRAND issue."). Apple failed to preserve the objection that the factor was "irrelevant" because of SEP obligations at the time of the Kennedy direct, and its non-sensical statement at the charge conference did not cure this. *Jimenez v. Wood County, Tex.*, 660 F.3d 841, 845 (5th Cir. 2011) ("An objection must be made 'on the record' and must state 'distinctly matter objected to and the grounds for the objection.' Fed.R.Civ.P. 51(c)(1). The objection must have been made on the specific 'ground raised on appeal, rather than a general objection to the instructions as a whole or an objection on a different ground.'").

### F.      Apple Was Not Blocked From Presenting the Perryman Proffer

███████████████████████████████████████████████████████████

███████████████ ███████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████ Dkt. 436 (Sealed Pretrial Tr.) at

51:3-7. It is for this reason that Dr. Perryman did not use the word "FRAND." But there was no

ruling that the underlying evidence in what Apple described as the Perryman "Proffer" (Dkt. 471)

could not come into evidence. The Court never denied the Proffer. And PanOptis never opposed the

Proffer. To the contrary, Apple put the Proffer evidence and argument to the jury.

Factors 1 and 2 in the Proffer relate to argument that damages had to be "FRAND." Dkt. 471

at 1-2. The consequences of a FRAND commitment were expressly presented to the jury in the

instructions, including that "the patented feature must be apportioned from all the unpatented features

reflected in the standard." Dkt. 520 at 991:9-10. Dr. Perryman also testified that PanOptis should only

receive damages based on the technical improvement. For example, he testified that the ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Dkt. 507 (Perryman) at 11:12-18; DTX-1047A at 10-11. Dr.███████████████████████

█████████████████████████████████████████████

Factor 3 in the Proffer related to the argument that a patent's value from its adoption into the

standard could not be a basis for damages. The jury was given this express instruction. Dkt. 520 at

991:9-10 ("the patent owner's royalty must be premised on the value of the patented feature, not any

value added by the standard's adoption of the patented technology"). ████████████████████

████████████████████████████████████████████████████████████

████████████████████ DTX-1047A at 11 (stating that "[t]he relevance and importance of the

technology covered by the IPR to be licensed prior to adoption of the relevant standard(s) (i.e., the *ex ante* incremental value of the innovation(s) covered by the IPR) ought to be considered").

Factor 4 in the Proffer was evidence regarding Apple's ███████████████████ Dkt. 471 at 3. Extensive evidence on this point was presented to the jury. For example, ██████ ████████████████████████████████████████████████ ██████████████████ Dkt. 507 at 10:20-21. ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████ *Id.* at 12:14-18. ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ ████████████████ Dkt. 501 at 144:10-145:1. ████████████████████████ ████████████████████████████████████████████████ ███████████████ ██████████████████████████████ ██████████████████████████████ *Id.*

Factor 5 in the Proffer was evidence ███████████████████ ██████████████ Dkt. 471 at 4. █████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████ Dr. Perryman further explained that ██████ ███████████████████████████████ *Id.* at 9:16-22. Dr Perryman stated:





*Id.* at 9:24-10:8.

Dkt. 507 (Perryman) at 19:24-20:5.

To the extent there is additional evidence Apple wanted to present and did not, this was a result of its trial time management, not an error by Court that rises to the level of a new trial. Apple simply ran out of time. *See* Dkt. 507 (Mahon Rebuttal) at 114:1-3

## III.   Apple Waived Its Argument That PanOptis' Damages Breached FRAND

At the pre-trial conference, Apple's counsel repeatedly told the Court that "FRAND" was not to be discussed in front of the jury and should ***not*** be considered by the jury when awarding damages:



Dkt. 436 (Sealed Pretrial Tr.) at 50:20-51:17, 57:25-58:6 (emphasis added).

> FRAND is not part of the jury phase of this case. […]  The jury phase should be focused on what their damages experts are testifying to the jury and our responses to those issues, and the remainder is for the bench phase.

Dkt. 439 (Pretrial Tr.) at 30:5-8, 31:1-9 (emphasis added).

- 11 -

> In the bench phase, we can get into the negotiations and who did what, who said what, who was acting FRAND, who wasn't. But the jury phase should be kept on infringement, non-infringement, validity, invalidity, and damages. And none of that is relevant to any of that.

Dkt. 437 (Pretrial Tr.) at 229:19-25.

During the jury trial, near the close of evidence, the parties submitted their proposed jury instructions. Dkt. 467. Apple's proposed instructions included no reference to FRAND whatsoever.

At the formal charge conference, Apple did not object to the final jury instructions on the grounds that the damages instructions did not include additional instructions regarding FRAND. Dkt. 520 (Charge Conf.) at 932-95. Apple identifies a single objection in its Motion, stating that Apple objected to the inclusion of *Georgia-Pacific* factor 5. Mot. at 8-9. That objection was non-sensical, asserting Apple wanted *Georgia-Pacific* factor 5 removed if FRAND was to be tried to the jury, but Apple had already made the decision that it would not be tried to a jury. Dkt. 520 (Charge Conf.) at 944:1-9 ("The reason for us putting it on the record now is in the event that this matter were, I believe, tried with respect to the FRAND issue."). The Court overruled Apple's non-sensical objection which clearly did not constitute a request that any additional "FRAND" issues go to the jury.

## IV. Apple Waived Its Right To Have The Court Adjudicate FRAND By Not Bringing Affirmative Counterclaims Or Defenses

The jury was instructed on all relevant aspects of FRAND, and Apple was allowed to present all evidence it wanted on this issue. But even if it had not, no new trial is appropriate because Apple waived its right to argue that PanOptis had a FRAND obligation and that the damages claim breached FRAND. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Apple made clear in summary judgment briefing before the Court that **only** if Count VIII was live was the issue of whether PanOptis complied with a FRAND obligation in both its licensing behavior and its damages request triable:

[REDACTED]

Apple's representation to the Court could not have been clearer. Whether "Panoptis' . . . damages claim[] are consistent with the FRAND obligation" was live only if Count VIII was live.[2]

Apple made this concession because it waived its independent right to assert a breach of a FRAND commitment as a defense to damages. "By failing to raise a commensurate counterclaim or affirmative defense, Apple has waived its ability to challenge the jury verdict as inconsistent with Optis's FRAND obligations." Dkt. 538 [CL8]-[CL13].[3] A counterclaim is compulsory when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). "[A] party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation." *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003). Federal Rule of Civil Procedure 8(c)(1) identifies "license," "release," and "waiver" as affirmative defenses, and a failure to assert an affirmative defense results in waiver. *See* Dkt. 538 at [CL10] (citing *DH Tech., Inc. v. Synergystex Intern., Inc.*, 154 F.3d 1333, 1344 (Fed. Cir. 1998)). An allegation that a plaintiff owes an obligation to the defendant that offsets the defendant's liability is a required affirmative defense. *KWP Fin. I, Inc. v. Harlan*, 100 F.3d 953, 953 (5th Cir. 1996) (per curiam) ("Claims

---

[2] Apple's motion suggests that it did raise a FRAND breach as an affirmative defense. Motion at 4 (discussing "Fifth Defense"). If this is true, it has two implications. First, Apple was engaged in serial misrepresentation to the Court throughout the Pre-Trial Conference. Second, there would be a live controversy regarding FRAND and this Court would have the authority to hold that Apple has lost its right to rely on FRAND because of hold-out and bad faith.

[3] Apple represents to the Court (at n. 2) that [REDACTED]

Not so. PanOptis filed a motion for summary judgment that sought to dispose of any claim that it was not FRAND compliant based on the fact that "Apple did not file a counterclaim or an affirmative defense that PanOptis' offers did not comply with . . . FRAND obligations." Dkt. 165 at 2.

[REDACTED]

of set-off are affirmative defenses."); *Davis v. Odeco*, 18 F.3d 1237, 1245 (5th Cir. 1994) (accord).

Apple claims that PanOptis has an "undisputed commitment to license the patents on FRAND terms." Mot. at 14. If this commitment impacts the type of damages PanOptis can obtain, black letter law required Apple to plead this alleged commitment to license Apple on specific terms in its affirmative defenses and counterclaims, and Apple's failure to do so foreclosed any relief on the basis of PanOptis' alleged FRAND obligations. PanOptis is entitled by statute to no less than a reasonable royalty. 35 USC § 284. To the extent Apple has a right to rely on a FRAND commitment and this commitment would result in the jury having to award less than a reasonable royalty, this is affirmative relief based on a contract to which Apple claims it is a third-party beneficiary.

The need to plead an affirmative defense or counterclaim was particularly acute because PanOptis' operative pleadings disputed owing a FRAND license to Apple because of its bad faith and holdout. Dkt. 26 (FAC) ¶ 143. As a result, Apple was on clear notice that if FRAND gave it additional rights to limit damages, it would would need to seek affirmative relief.

The essence of Apple's argument is that it did not have the burden of proof regarding PanOptis' alleged breach of FRAND because compliance with FRAND goes to whether PanOptis adequately proved damages. Mot. at 13-14. However, Apple has not identified a single case in which courts have allowed a defendant to separate an alleged breach of FRAND obligations from the impact of those same FRAND obligations on a damages award. Rather, courts—including this Court—have determined that the party in Apple's position needs to prove a breach of FRAND obligations. *See TCL Comm'ns Tech. Holdings Ltd v. Telefonaktiebolaget LM Ericsson (TCL I)*, 2016 WL 4150033, at *4 (C.D. Cal. July 25, 2016) ("It is TCL's burden to prove a breach of contract and prove that Ericsson's offers are not FRAND."); *HTC Corp. v. Telefonaktiebolaget LM Ericsson (HTC I)*, 2019 WL 4734950, at *5 (E.D. Tex. May 22, 2019) ("The burden of proof in a breach of contract claim rests on the party alleging breach.") (Gilstrap, J.); *TCL Comm'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson (TCL*

*II)*, 2016 WL 7042085, at *3 (C.D. Cal. Aug. 17, 2016) ("Even if Ericsson has made affirmative allegations that it has *not* breached a contract and made affirmative allegations that its offers to TCL *are* FRAND, that fact does not alter the burden of proof in this case.").

Additionally, this Court has classified a failure to offer and grant a license on FRAND terms as an affirmative defense, which defendants in other actions included in their pleadings. *See Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410, 412 (E.D. Tex. 2019) ("Huawei raised five FRAND affirmative defenses alleging that PanOptis violated its commitments by failing to offer and grant a license on FRAND terms.") (citing answer), *vacated in light of settlement*, 2020 WL 5034154 (E.D. Tex. Apr. 3, 2020); *Saint Lawrence Comm'ns LLC v. Motorola Mobility LLC*, No. 2:15-CV-351-JRG, 2018 WL 915125, at *10 (E.D. Tex. Feb. 15, 2018) (Motorola attacked the jury award based on FRAND principles, but in its answer at Dkt. 46 ¶ 36 Motorola had brought an affirmative defense that "SLC's claim for damages may also be limited by FRAND principles to the extent SLC contends the Asserted Patents are standard essential").

In fact, Apple has previously asserted breach of FRAND obligations as affirmative defenses and counterclaims. For example, in *Evolved Wireless*, Apple brought an affirmative defense of "License" that "Apple has a license to the Patents-in-Suit pursuant to Evolved's contractual obligation to license it the Patents-in-Suit on FRAND terms," and a counterclaim of "Breach of Contract," which states, *inter alia*, that "Apple is […] an intended third-party beneficiary of Evolved's FRAND commitments," and thus "Evolved has breached its FRAND commitments for each of the Patents-in-Suit." *Evolved Wireless, LLC v. Apple, Inc.*, No. CV 15-542-JFB-SRF, Dkt. 9 at 17, 31. Apple's position in this case is thus entirely inconsistent with its own practice.

Apple's claim that there is no prejudice associated with its waiver is incorrect. Apple used its failure to bring a FRAND claim or defense as a tool to both block the presentation of its bad faith and hold-out conduct during negotiations before the jury and to avoid adjudication on Count VIII.

Dated: April 1, 2021

Respectfully submitted,

*/s/ Samuel F. Baxter*

Jason Sheasby (pro hac vice – lead counsel)
jsheasby@irell.com
Hong Zhong, PhD
hzhong@irell.com
IRELL & MANELLA LLP
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064
Phone: (310) 203-7096; Fax: (310) 203-7199

Samuel F. Baxter
Texas State Bar No. 1938000
sbaxter@McKoolSmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
McKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, TX 75670
Phone: (903) 923-9000; Fax: (903) 923-9099

Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@McKoolSmith.com
McKOOL SMITH, P.C.
300 W. 6th Street Suite 1700
Austin, TX 78701
Phone: (512) 692-8700; Fax: (512) 692-8744

M. Jill Bindler
Texas Bar No. 02319600
jbindler@grayreed.com
GRAY REED & MCGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Phone: (214) 954-4135; Fax: (469) 320-6901

**ATTORNEYS FOR PLAINTIFFS OPTIS
WIRELESS TECHNOLOGY, LLC, OPTIS
CELLULAR TECHNOLOGY, LLC, AND
PANOPTIS PATENT MANAGEMENT,
LLC**

10873791

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served via electronic mail on all counsel of record on April 1, 2021.

/s/ Samuel F. Baxter
Samuel F. Baxter

10873791