████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, | Civil Action No. 2:19-cv-00066-JRG |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| APPLE INC., | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ████████████████ |

**APPLE INC.'S SUPPLEMENTAL MOTION FOR A NEW TRIAL**

███████████████████████████

**TABLE OF CONTENTS**

Page

I.     TRIAL STRUCTURE REGARDING "WILLFULNESS" .................................................1

    A.     The Trial Structure Permitted Misleading, Irrelevant "Holdout" Evidence
        That Apple Was Unfairly Barred From Rebutting ............................................1
    B.     Apple Was Incorrectly Precluded From Offering Relevant Fact Testimony
        To Rebut Willfulness ..........................................................................................3

II.    IMPROPER ADMISSION OF EXPERT EVIDENCE ...........................................................4

    A.     Plaintiffs Improperly Relied On Opinions From Non-Testifying Experts .............4
    B.     Plaintiffs Were Improperly Allowed To Compare Apple's Products To
        Disclosed Embodiments.......................................................................................5
    C.     Wrongly Excluded Evidence Requires A New '284 Patent Trial...........................6

III.   NEW TRIAL ON DAMAGES .............................................................................................8

    A.     The Court Erred In Denying Apple's Proposed SSPPU Instruction......................8
    B.     Mr. Kennedy's Testimony Should Have Been Excluded ...................................8
    C.     Dr. Reed-Arthurs' Testimony Should Have Been Excluded ...............................10
    D.     Plaintiffs' References To Pre-Suit Damages Were Unfairly Prejudicial..............11
    E.     As An Alternative To A New Trial, The Court Should Grant A Remittitur .........11

IV.    IF THE COURT GRANTS JMOL AS TO ANY PATENT, A NEW TRIAL ON
      ALL REMAINING PATENTS IS REQUIRED ..................................................................11

    A.     JMOL Of No Liability For Any Patent Requires Setting Aside Entire
        Verdict................................................................................................................11
    B.     JMOL Of No Infringement Under DOE For Either '557 Or '774 Patent
        Requires Setting Aside Entire Verdict................................................................12
    C.     Verdict Form Separately Violated Apple's Right To A Unanimous Verdict........13
    D.     If The Court Grants A New Trial On Any Issue, The Seventh Amendment
        Requires A New Trial On All Issues ...................................................................13

V.     CONCLUSION..................................................................................................................15

███████████████

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accentra, Inc. v. Staples, Inc.*,
  500 F. App'x 922 (Fed. Cir. 2013) ...................................................................12

*Apple Inc. v. Qualcomm Inc.*,
  2017 WL 3966944 (S.D. Cal. Sept. 7, 2017).....................................................10

*Apple Inc. v. Wi-LAN, Inc.*,
  2019 U.S. Dist. LEXIS 191804 (S.D. Cal. Oct. 1, 2019) ..................................8, 9

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964)............................................................................................11

*Brazos River Auth. v. GE Ionics, Inc.*,
  469 F.3d 416 (5th Cir. 2006) ...............................................................................6

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002)........................................................................5, 6

*Cates v. Creamer*,
  431 F.3d 456 (5th Cir. 2005) ...............................................................................4

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)............................................................................9

*Davidson Oil Country Supply Co. v. Klockner, Inc.*,
  917 F.2d 185 (5th Cir. 1990) ..........................................................................3, 14

*Dossett v. First State Bank*,
  399 F.3d 940 (8th Cir. 2005) .............................................................................14

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  2017 WL 1322550 (E.D. Tex. Apr. 6, 2017).......................................................10

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
  2017 WL 2651618 (E.D. Tex. June 20, 2017)......................................................4

*Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*,
  919 F.3d 266 (5th Cir.), *cert. denied*, 140 S. Ct. 221 (2019)..............................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)...................................................................8, 9, 10

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC,*
879 F.3d 1332 (Fed. Cir. 2018).....................................................................8

*First Fed. Lincoln Bank v. United States,*
518 F.3d 1308 (Fed. Cir. 2008)........................................................1, 8, 11, 14

*Fox v. United States,*
417 F.2d 84 (5th Cir. 1969) ..........................................................................13

*Gasoline Prods. Co. v. Champlin Refining Co.,*
283 U.S. 494 (1931)........................................................................................13

*Hernandez v. M/V Rajaan,*
841 F.2d 582 (5th Cir. 1988) ........................................................................11

*i4i Ltd. P'ship v. Microsoft Corp.,*
598 F.3d 831 (Fed. Cir. 2010).......................................................................12

*Jazzabi v. Allstate Ins. Co.,*
278 F.3d 979 (9th Cir. 2002) ........................................................................13

*Kanida v. Gulf Coast Med. Personnel LP,*
363 F.3d 568 (5th Cir. 2004) ..........................................................................8

*Lewis v. Parish of Terrebonne,*
894 F.2d 142 (5th Cir. 1990) ........................................................................11

*Lucent Techs., Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009).....................................................................10

*United States v. Macedo-Flores,*
788 F.3d 181 (5th Cir. 2015) ..........................................................................3

*Montgomery Ward & Co. v. Duncan,*
311 U.S. 243 (1940)..........................................................................................3

*Muth v. Ford Motor Co.,*
461 F.3d 557 (5th Cir. 2006) ........................................................................12

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
415 F.3d 1335 (Fed. Cir. 2005).......................................................................8

*Omega Pats., LLC v. CalAmp Corp.,*
920 F.3d 1337 (Fed. Cir. 2019).....................................................................14

*Ormco Corp. v. Align Tech., Inc.,*
463 F.3d 1299 (Fed. Cir. 2006).....................................................................10

ii

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013)..................................................................11

*Pryer v. C.O. 3 Slavic*,
   251 F.3d 448 (3d Cir. 2001).......................................................................15

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)...............................................................9, 10

*SEB S.A. v. Montgomery Ward & Co.*,
   594 F.3d 1360 (Fed. Cir. 2010)..................................................................12

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) .......................................................................4

*United States v. Valencia*,
   600 F.3d 389 (5th Cir. 2010) .......................................................................3

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)..................................................................12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 .............................................................................................9

*Williams v. Slade*,
   431 F.2d 605 (5th Cir. 1970) .....................................................................14

*Witco Chem. Corp. v. Peachtree Doors, Inc.*,
   787 F.2d 1545 (Fed. Cir. 1986)..................................................................15

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)..................................................................10

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
   19 F.3d 1418 (Fed. Cir. 1994)......................................................................5

**STATUTES**

35 U.S.C. § 287(a) ............................................................................................11

**OTHER AUTHORITIES**

U.S. Const. amend VII.....................................................................................13

Fed. R. Civ. P. 48(b) .......................................................................................13

Fed. R. Evid. 602 ..............................................................................................3

Fed. R. Evid. 401 ..............................................................................................1

iii

Fed. R. Evid. 402 ...........................................................................................................1

Fed. R. Evid. 403 ...........................................................................................................1

Fed. R. Evid. 701 ...........................................................................................................3

Fed. R. Evid. 702 ........................................................................................................3, 4

Fed. R. Evid. 801(d)(2)(c)...............................................................................................4



## I.    TRIAL STRUCTURE REGARDING "WILLFULNESS"

### A.    The Trial Structure Permitted Misleading, Irrelevant "Holdout" Evidence That Apple Was Unfairly Barred From Rebutting.

The Court ruled pretrial that the jury would hear no FRAND issues—including alleged bad faith or "holdout"— because Plaintiffs elected to try their declaratory judgment claim to the bench. *See* 7/27 Pretrial Tr. 56:10-14, 56:25-57:4, 57:6-9.  The Court warned that Plaintiffs could not "tar and feather" Apple by attempting to "selectively take bad acts that relate solely to the FRAND issue … and bring them into a trial before a jury where there is no FRAND issue to be decided, but there is very much a willfulness issue to be decided that would be directly and improperly impacted by that evidence." *Id.* 57:13-17, 58:1-9.

Plaintiffs nonetheless were permitted to introduce PX1537, which discussed ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, PX1537 at 0003; PX1537b (redacted version shown to jury); 7/29 Sealed Pretrial Tr. 11:4-12:3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (7/29 Sealed Pretrial Tr. 6:9-8:13, 10:5-21), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮. *See, e.g.*, D.I. 503 at 27:22-28:3, 28:4-10, 28:16-29:16; D.I. 499 at 998:12-14.[1]

Plaintiffs' use of PX1537 and their ▮▮▮▮▮▮▮▮ were attempts to inflame and mislead the jury, and, as the Court predicted, "directly and improperly impacted" willfulness—as well as all other jury issues.  7/27 Pretrial Tr. 58:1-9.  PX1537 should have been excluded under FRE 401, 402, and 403 for two principal reasons.

***First***, PX1537 is irrelevant to willfulness.  It is dated ***three years*** before the earliest alleged notice date.[2]  *SRI Int'l, Inc. v. Cisco Systems, Inc.*, is not to the contrary; indeed, the Federal Circuit

---

[1] Plaintiffs used PX1491 in the same way.  *See, e.g.*, D.I. 503 at 59:19-60:17.
[2] Plaintiffs separately did not present sufficient evidence that Apple received notice of the patents. D.I. 555 at 12-14.

held that substantial evidence did ***not*** support a verdict of willful infringement before the earliest alleged notice date.  930 F.3d 1295, 1309 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1108 (2020).

***Second***, PX1537 is a document ████████████, and the Court excluded all FRAND issues from the jury trial.  7/27 Pretrial Tr. 57:6-9.  It was unfair to let Plaintiffs use this document ████████████████████, while forbidding Apple from educating the jury about the FRAND framework, Plaintiffs' commitment to license the patents on FRAND terms, patent stacking issues and holdup, and why Apple's approach to FRAND licensing is fair and reasonable.  *See* D.I. 471.  The jury was deprived of necessary context to understand PX1537, Apple's approach to licensing FRAND-committed patents, and Apple's intent—issues that directly affect willfulness.

Given the Court's ultimate decision to decline jurisdiction over Plaintiffs' declaratory-judgment claim that prompted the trial structure, D.I. 538, Plaintiffs should not have been allowed to use FRAND evidence without the jury learning about FRAND.  ████████████████ ████████ which was critical to the evidence's context, was confusing and misleading.  For example, Mr. Kennedy testified that ████████████████████████████ ████████████████████████████████████████████ ████████████████████  D.I. 503 at 28:16-29:4.  That is essentially a suggestion that ████████████████████████████████, which was not only irrelevant in a jury trial from which FRAND was excluded, but also confusing for a jury uninformed about the FRAND framework.  The jury would be susceptible to assuming—as Plaintiffs told them—████████████████████████████.  Further, Apple could not effectively cross-examine Mr. Kennedy by explaining the critical context that Plaintiffs' patents are FRAND-committed because all mention of FRAND was prohibited.  7/27 Pretrial Tr.

57:6-9.   Without this evidence, Apple was unable to effectively rebut Plaintiffs' willfulness allegations or cure the evidence's unfair prejudice through cross-examination.   A new trial is required.  *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Davidson Oil Country Supply Co. v. Klockner, Inc.*, 917 F.2d 185, 186 (5th Cir. 1990).

### B.      Apple Was Incorrectly Precluded From Offering Relevant Fact Testimony To Rebut Willfulness.

These errors were compounded when Apple was erroneously barred from introducing testimony that Apple reasonably believed that the chips did not implement the LTE features in an infringing way.  Specifically, Apple was precluded from offering fact testimony from engineers who helped design the Intel chips in Apple's products showing how they used the LTE standard to aid their design of those chips.  That exclusion of this testimony unfairly prejudiced Apple.  *See* D.I. 497 at 844:17-846:4; D.I. 496 at 689:5-692:11, 694:1-24; D.I. 505 at 7:19-9:7.

Dr. Josiam's and Mr. Ramaprasad's testimony was admissible because it rested on *personal knowledge of facts* regarding their state of mind when designing the Intel-based chipsets—not opinion testimony governed by Rule 701.  *See* D.I. 497 at 845:8-21; D.I. 496 at 17:8-23; *see also* Fed. R. Evid. 602.  And even if it were considered opinion testimony (it is not), it was admissible lay opinion testimony because their understanding of LTE when they designed the Intel-based chips is "rationally based" on their "perception" and "helpful … to determining a fact in issue" (whether Apple infringed, and if so, willfully)—not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Such testimony relating to a corporate witness's personal knowledge and on-the-job experience is routinely admitted.  *See United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010); *United States v. Macedo-Flores*, 788 F.3d 181, 191 (5th Cir. 2015); Fed. R. Evid. 701 Comm. Notes on Rules (2000 Am.) (addition of Rule 701(c) was not intended to prevent employees from offering opinions

3

██████████████████████

admitted due to their personal knowledge and job experience).  The proposed testimony in no way sought to compare Apple's products to the claim language, as Rule 702 experts would (and did).

## II.    IMPROPER ADMISSION OF EXPERT EVIDENCE

### A.    Plaintiffs Improperly Relied On Opinions From Non-Testifying Experts.

Apple moved to preclude expert testimony relying on opinions of non-testifying experts, D.I. 192 at 4-5; D.I. 455 at 10.  Drs. Mahon and Madisetti then were nonetheless allowed to channel opinions of non-testifying source code expert Mr. Jones (D.I. 501 at 10:3-16, 27:1-4, 115:17-116:2, 159:14-20; D.I. 493 at 416:4-13), testing expert Mr. Royer (D.I. 501 at 10:3-11:3, 159:14-20), and simulation expert Dr. Virdis (D.I. 501 at 159:14-20; D.I. 502 at 36:12-37:24).

Making matters worse, the Court barred Apple from showing key conflicts between non-testifying experts' opinions and Drs. Mahon's and Madisetti's testimony.  *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). For example, for the '557 patent, ███████████████████████████████

████████████████████████████████████████████████████

██████.  Ex. 1, 136:15-20, 140:19-141:4, 133:8-20, 133:23-141:19.  But at trial, Dr. Madisetti testified that ███████████████████████████████ D.I. 493 at 416:19-24, 415:3-421:20.    Apple was barred from impeaching Dr. Madisetti with Mr. Jones's prior inconsistent testimony.  *Id.* 421:1-20; *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2017 WL 2651618, at *4 (E.D. Tex. June 20, 2017) ("Fifth Circuit law find[s] an opponent's expert's statement [in a report] admissible under Rule 801(d)(2)(c)").  For the '774 patent, Mr. Jones ████████████████████████████████████████████████

████████████████████████████ (Ex. 1, 50:2-8), while Dr. Mahon testified at trial that ████████████████████████████████████████████

██████as claim 6 requires (D.I. 501 at 61:21-62:5, 63:23-64:7, 132:13-19; D.I. 497 at 810:1-

████████████████████

811:7).   For the '833 patent, Mr. Jones admitted in his report ████████████

████████████████   (Ex. 2 ¶¶802, 803), while Dr. Madisetti testified ████████

████████████████████████████████   (D.I. 501 at 188:2-199:6; D.I.

493 at 460:4-9, 460:24-461:1).

### B.    Plaintiffs Were Improperly Allowed To Compare Apple's Products To Disclosed Embodiments.

In denying Apple's MIL #6, the Court agreed that "testimony about accused product[s]

practicing the embodiments of the patent-in-suit" is improper.   7/28 Pretrial Tr. 237:7-16; D.I. 455

at 11;  D.I. 192 at 6-7.    Nonetheless, Apple was significantly prejudiced when Plaintiffs

misleadingly conflated the patent specification, the LTE standard, and Apple's products.

For the '557 patent, Plaintiffs improperly elicited testimony from Apple's expert Mr.

Lanning (over Apple's objection) comparing the Apple products to Figure 4 and columns 5-6 (D.I.

506 at 45:19-47:4-13) and from Dr. Madisetti comparing the specification's ████████████

████████████████████████   (D.I. 507 at 76:9-19).   *See also* D.I. 502 at 19:19-24 ██████

████████████████████████████████████████████

██████████████████████████, 18:25-20:24, 27:15-28:5 ████████████

████████████████████████████.   Rather than "educate the jury" (D.I. 355

at 8), Dr. Madisetti impermissibly used the specification to avoid nearly half the words in the

claims, including how sequences are generated, grouped, partitioned, and arranged.   *See, e.g.*, D.I.

502 at 19:13-24, 27:15-28:5; D.I. 506 at 76:9-77:18.   This testimony prejudiced Apple by inviting

the jury to evaluate alleged infringement by comparing the Apple products to an embodiment, not

the claims.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002);

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).   In closing,

Plaintiffs' counsel took full advantage, claiming that the Court had ruled the patent's second embodiment "must be used" to understand the claim scope.  D.I. 499 at 1006:23-1007:3.

For the '284 patent, Plaintiffs also sought improper testimony from Dr. Mahon and cross-examined Dr. Buehrer comparing the Apple products and the LTE standard to Table 3.  *See, e.g.*, D.I. 501 at 29:20-30:17; *see also* PDX3.29; PDX3.32; D.I. 496 at 758:10-12, 758:13-759:13. Plaintiffs' infringement theory impermissibly invited the jury to find infringement by comparing the Apple products to tables in the specification, not the asserted claims (which do not cover those tables or Apple's products).  *See Catalina Lighting*, 295 F.3d at 1286.

Contrary to Plaintiffs' argument relying on means-plus-function terms (D.I. 355 at 7), the testimony discussed above was directed to claims without such terms.  *See, e.g.*, D.I. 501 at 29:20-30:17; *see also* PDX3.29; PDX3.32; D.I. 130 at 34-39 (construing only claim 1's "processing unit").  Likewise, Plaintiffs' discussion of the '284 patent's tables did not explain the claims, but instead conflated the specification, the Apple products, and the claims into a single misleading comparison.  *See, e.g.*, D.I. 501 at 29:20-30:17; PDX3.29.

Given the highly technical nature of the '557 and '284 patents, a jury could have easily been misled into finding infringement based on alleged similarities between embodiments and the Apple products.  That unfairly prejudiced Apple.

## C.     Wrongly Excluded Evidence Requires A New '284 Patent Trial.

Apple was improperly barred from offering expert testimony about the '284 patent's file history, even though it was an admitted exhibit central to Plaintiffs' expert's theory.  D.I. 488 at 1. This unfairly prejudiced Apple.  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432 (5th Cir. 2006).  At trial, the infringement dispute focused on the limitation requiring a "first subset of the values [reserved for indicating the transport format]" that contains "more values than the second subset of the values [reserved for indicating the redundancy version]."  PX0003 at 28:44-29:4,

6



29:62-30:23.  Plaintiffs did not dispute Apple's showing that █████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.  DTX0083;

D.I. 496 at 723:19-724:23, 727:4-10, 729:5-19; D.I. 505 at 50:23-51:24.  Instead, Plaintiffs sought

to ███████████████████████████████████████████████████.  D.I. 501 at

30:08-35:11; D.I. 499 at 1005:13-1006:04.  To do so, Dr. Mahon ███████████████████

██████████████████████████████████████████████████████████████████████████

████.  D.I. 501 at 34:24-35:11.  Dr. Mahon then ████████████████████████████████

███████████████████████████████████████████.  *Id.* 33:18-34:23, 37:08-

24.  Plaintiffs' closing hinged on this theory, arguing that ████████████████████████████

████████████████████████████  D.I. 499 at 1005:13-1006:04.

Apple was also prejudiced when Plaintiffs (falsely) attacked Dr. Buehrer's opinion for

excluding embodiments from the claims, despite Apple's objections that the cross-examination

was premised on an incorrect claim construction.  D.I. 495 at 757:02-760:20; D.I. 507 at 101:18-

103:13.  To respond, Dr. Buehrer tried to explain why his opinion was consistent with the file

history, but he was barred from doing so.  D.I. 495 at 721:07-721:24.  On redirect, Dr. Buehrer

again tried to support his opinion with the file history, but was again barred.  *Id.* 770:07-771:21.

The objections were sustained based on the incorrect premise that "the door has [not] been

completely opened" to the file history.  *Id.*  But the door was wide open; Dr. Mahon used the file

history to assert that the ███████████████████████████████████████████████████

████████████████████████████.  Dr. Buehrer was prevented from explaining that

██████████████████████████████████████████████████████████

███████████████████████████████████.  PX0009 at 0857-58; D.I. 507 at

7

██████████████████████

101:24-102:10; D.I. 488 at 1.  This testimony would have refuted Plaintiffs' criticism that

███████████████████████: such an outcome is common where claims

are amended to overcome the prior art.  *See N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,

415 F.3d 1335, 1346 (Fed. Cir. 2005).

## III.    NEW TRIAL ON DAMAGES

### A.    The Court Erred In Denying Apple's Proposed SSPPU Instruction.

It was prejudicial error to deny Apple's request for a jury instruction regarding the smallest

saleable patent-practicing unit ("SSPPU") where the accused technology is in the products'

baseband chip, and Apple relied on the SSPPU for its damages theory.  D.I. 467 at 46; D.I. 499 at

945:6-23; D.I. 495 at 629:13-630:19, 634:23-635:12; *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d

1201, 1227 (Fed. Cir. 2014).  Further, Plaintiffs introduced evidence suggesting that the royalty

base should be greater than the SSPPU.  D.I. 503 at 26:8-13, 56:9-12, 58:19-59:16, 77:14-16; D.I.

504 at 42:15-22, 44:02-13, 46:12-16, 48:9-50:12.  The final instructions did not properly guide the

jury on the correct approach to calculating damages.  D.I. 499 at 991:6-21; *Kanida v. Gulf Coast

Med. Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004).

### B.    Mr. Kennedy's Testimony Should Have Been Excluded.

A new damages trial is needed because the jury should never have heard Mr. Kennedy's

testimony.  D.I. 171, 252, 312; 7/28 Pretrial Tr. 161:21-167:4; 7/28 Sealed Pretrial Tr. 3:1-28:11.

*See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed.

Cir. 2018).  ***First***, Mr. Kennedy's infrastructure and survey approaches were unreliable and

inadmissible.  It was "entirely speculative" for Mr. Kennedy ████████████████████

████████████████████████████████████████████

████████████.  *Apple Inc. v. Wi-LAN, Inc.*, 2019 U.S. Dist. LEXIS 191804, at *23 (S.D.

Cal. Oct. 1, 2019); D.I. 504 at 42:4-22. ██████████████████████



(D.I. 504 at 44:10-13), ███████████████████████████████████████

███████████████████████████ (D.I. 504 at 46:12-16).  And Mr. Kennedy's survey

approach—which relied on Dr. Reed-Arthurs' pricing survey—contradicted how pricing works.

D.I. 504 at 48:9-16.  ███████████████████████████████████████████

███████████████████████████████████████████████████████. *Id.*

50:1-11; D.I. 495 at 638:9-13, 638:23-639:6.

    *Second*, Mr. Kennedy's conclusion that the Plaintiffs would capture ████ of Apple's profits

from infringement (D.I. 503 at 54:19-55:25) was also speculative.  *See ResQNet.com, Inc. v.*

*Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308,

1332 (Fed. Cir. 2014).  Mr. Kennedy never explained why Plaintiffs' negotiations with ██████

██████ would resemble a negotiation with Apple.  D.I. 503 at 55:10-14.  Indeed, he testified that

no PanOptis agreement was comparable (D.I. 503 at 25:25-26:7) ██████████████████████

██████████████████████████████████████ (D.I. 507 at 19:24-20:15).

    *Third*, Mr. Kennedy's analysis improperly demanded royalties for the entire value of the

LTE standard.  *Ericsson*, 773 F.3d at 1232-33.  For both LTE generally and the specifically accused

features, there are other contributors to value.  *See* D.I. 504 at 12:1-19, 20:6-24, 21:5-25.  But Mr.

Kennedy repeatedly testified ████████████████████████████████████, and

Plaintiffs' counsel emphasized this in closing.  D.I. 503 at 33:18-34:7, 35:25-36:15, 39:23-40:7;

D.I. 499 at 1055:3-6.  This testimony was unreliable and prejudicial.  *Commonwealth Sci. & Indus.*

*Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015).

    *Fourth*, Mr. Kennedy's reliance on non-comparable agreements between Apple and

Qualcomm (PTX0387, PTX0484) simply because ███████████████████ (D.I. 503 at

60:12-17) was unreliable.  The agreements covered ██████████████████████

9

████████████████████████████████

███████████████████████████████.  *See* D.I. 504 at 76:5-14, 78:5-25; *Apple Inc. v. Qualcomm Inc.*, 2017 WL 3966944, at *3-4 (S.D. Cal. Sept. 7, 2017).  Mr. Kennedy did not analyze how the Qualcomm agreements' ███████████ affected their relevance, including valuing the ███████████████████████.  D.I. 504 at 62:22-63:11, 64:18-65:12; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-28 (Fed. Cir. 2009); *ResQNet.com*, 594 F.3d at 870; *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010).  Nor did he identify what percentage ███████████████████████████ ██████████████.  D.I. 503 at 76:5-77:16; D.I. 504 at 67:5-13.  Plaintiffs argued that Mr. Kennedy would only use the Qualcomm license for its structure, not its amount.  *See* D.I. 252 at 12.  But Plaintiffs' counsel repeatedly emphasized the license payment, urging the jury to treat Plaintiffs "exactly the same as Qualcomm."  *See* D.I. 499 at 1056:15-21.  That use of settlement agreements was improper.  *See* Ex. 3 [*WiLan* case Order] at 5 (excluding Mr. Kennedy's opinion based on the Apple-Qualcomm agreements); *Ericsson*, 773 F.3d at 1228; *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 1322550, at *4 (E.D. Tex. Apr. 6, 2017).

**Fifth**, Mr. Kennedy improperly calculated damages for the '774 patent's method claims by using Apple device sales, rather than evaluating the extent of the claimed methods' actual use, of which there was no record evidence.  D.I. 503 at 65:10-22; *see Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).

### C.    Dr. Reed-Arthurs' Testimony Should Have Been Excluded.

Dr. Reed-Arthurs' testimony about a survey using "hypothetical products" with hypothetical features, and that assumed Apple would adjust its prices based on her calculated willingness to pay, was unreliable and inadmissible.  D.I. 174, 248, 307, 372; D.I. 494 at 568:5-572:15; 7/28 Pretrial Tr. 167:15-177:7.  She did not testify to any relationship between Apple's prices and customers' willingness to pay to increase LTE speed; her assumption is contrary to

Apple's actual pricing (D.I. 494 at 541:10-562:2, 569:23-571:10, 579:16-580:25; D.I. 495 at 636:3-16).  The iPhone 4S without LTE was launched at the same price as later iPhone models with LTE.  D.I. 494 at 579:16-583:2; D.I. 495 at 638:18-639:6.  The assumption underlying her analysis defies reality.   D.I. 494 at 579:16-583:2; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013); *First Fed. Lincoln Bank v. United States*, 518 F.3d 1308, 1319 (Fed. Cir. 2008); *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990).  Further, purporting to calculate Apple's per-device profit increase from adding the patented technology (D.I. 494 at 558:19-560:21) is akin to improperly disgorging the infringer's profits.  *See Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476, 505-06 (1964).

> **D.**   **Plaintiffs' References To Pre-Suit Damages Were Unfairly Prejudicial.**

Plaintiffs offered no evidence that allegedly practicing products they licensed were marked under 35 U.S.C. § 287(a) or that Apple had legally-cognizable pre-suit notice.  But Plaintiffs repeatedly suggested they could have but were not seeking pre-suit damages (D.I. 503 at 16:25-17:18, 31:19-33:1) to skew the jury's horizon and make their $506.2 million demand appear reasonable.  That was improperly prejudicial and likewise warrants a new trial.

> **E.**   **As An Alternative To A New Trial, The Court Should Grant A Remittitur.**

The only proper damages theory was Dr. Perryman's (D.I. 507 at 8:5-21:9, 24:16-25:7).  Even assuming infringement of all claims, damages should be remitted to $5.1 to $6.4 million.  *See Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988).

## IV.   IF THE COURT GRANTS JMOL AS TO ANY PATENT, A NEW TRIAL ON ALL REMAINING PATENTS IS REQUIRED.

> **A.**   **JMOL Of No Liability For Any Patent Requires Setting Aside Entire Verdict.**

The jury was asked to return a general verdict over Apple's objection, even though Plaintiffs thought the jury should report a finding for each asserted patent.  D.I. 468-1 at 4.  If the Court now grants JMOL on any one patent, a new trial on the remaining patents is required.  The Court "must set aside a general verdict if the jury was told it could rely on any of two or more independent legal theories, one of which was defective."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010); *see also SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1374 (Fed. Cir. 2010) (stating rule in terms of both multiple liability theories and multiple legal claims); *Muth v. Ford Motor Co.*, 461 F.3d 557, 564 (5th Cir. 2006) ("[I]f both theories are put to the jury, a new trial is generally necessary when the evidence is insufficient on one.").

The most the jurors necessarily agreed on was that Apple infringed *some* asserted claim; they did not need to agree on *which* claim (or even that it be from the same patent).  But even assuming they agreed on infringement of one specific claim, it is impossible to know which it was.  Thus, if the Court concludes that the jury lacked substantial evidence to find liability as to one patent, we cannot know whether the jury's verdict rested on that patent alone.  The general-verdict rule thus requires a new trial.  *See i4i*, 598 F.3d at 849; *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1309-10 (Fed. Cir. 2007) (new trial on infringement for one patent required new trial on damages because jury's damages verdict encompassed all asserted patents); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 931 (Fed. Cir. 2013) (non-precedential).

**B.     JMOL Of No Infringement Under DOE For Either '557 Or '774 Patent Requires Setting Aside Entire Verdict.**

The jury should not have been allowed to consider infringement under the doctrine of equivalents ("DOE").  *See* D.I. 544 at 8-10, 11-14.  Even so, the verdict form not only combined nine claims from five patents into one question, but also combined two infringement theories (literal and DOE) for claims 1 and 10 of the '557 patent and claim 6 of the '774 patent into the

same question.  Apple proposed asking the jury to specify which infringement theory it relied on.

D.I. 468-1 at 4.  Plaintiffs objected that "simplify[ing] the verdict form is a virtue."  *Id.* at 4 n.3.

But that "simplicity" now makes it impossible to determine whether the jury relied on a legally

improper theory.  Because the verdict form's first question combined *twelve separate issues* into

one finding (literal infringement of nine claims, and infringement under DOE of three), any issue

the Court finds insufficiently supported cannot now be disaggregated.  Accordingly, JMOL of no

liability on any one patent or theory requires a new trial on the remainder.

### C.      Verdict Form Separately Violated Apple's Right To A Unanimous Verdict.

The verdict form suffered from another fatal flaw: it permitted the jury to reach a verdict

without agreeing unanimously on whether Apple infringed any one patent claim.  The first question

asked whether Plaintiffs proved that "Apple infringed **ANY** of the Asserted Claims."  D.I. 483 at

4.  Although all eight jurors answered affirmatively, they could have been deeply divided over

which of the nine claims—and indeed which patent—they believed to be infringed.  Each juror

could have found that Apple infringed a different asserted patent claim, and all eight jurors still

would have answered the first question in the same way.  But the jury must render a unanimous

verdict on "the ultimate issues of a given case."  *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985

(9th Cir. 2002).  Deviations from the unanimity principle are permissible only if the defendant

consents to a non-unanimous verdict.  *See* Fed. R. Civ. P. 48(b); *Fox v. United States*, 417 F.2d

84, 89 (5th Cir. 1969).  Apple never consented.  D.I. 499 at 948:6-10.  Fundamental fairness

requires a new trial before a jury instructed to return a unanimous verdict as to each cause of action.

### D.      If The Court Grants A New Trial On Any Issue, The Seventh Amendment Requires A New Trial On All Issues.

"[A] partial new trial ... may not properly be resorted to unless it clearly appears that the

issue to be retried is so distinct and separable from the others that a trial of it alone may be had

███████████████████████

without injustice."  *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).  "If the decision on the other issues could in any way have been infected by the error then a new trial must be had on all issues."  *Williams v. Slade*, 431 F.2d 605, 608 (5th Cir. 1970).  "[W]here the damages are excessive and the verdict is the product of passion or prejudice a new trial as to all the issues must be ordered."  *Id.* at 609; *see also Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005).  Here, a new trial on all issues is required.

*First*, Plaintiffs' improper "holdout" narrative was a character smear designed to convince the jury that Apple infringed because it supposedly had a master plan to force Plaintiffs to litigate. It was also a backhanded way (contrary to the Court's specific ruling, 7/28 Pretrial Tr. 222:10-223:7) to cast blame on Apple for the jury having to sit during the pandemic.  Plaintiffs relied on PX1537 in their opening statement to argue that Apple forced this case into litigation through a master "strategy" and "the plans of Apple's lawyers" that Apple has been "implementing since 2014" to wait to be sued for patent infringement so that Apple can delay payment as long as possible.  *See, e.g.*, D.I. 490 at 220:15-223:15.  Plaintiffs argued that "what's striking about it is [Apple is] willing to accept the litigation burden, the burden of being here. … And the reason for that is because it's part of a strategy, a strategy to delay for as long as possible…."  *Id.* 222:4-11. In reality, the evidence of this "master plan" was a document ███████████████ ████████████████████████████████████████████. *See* PX1537.  But because Apple could not explain FRAND at trial, the jury could not have understood this and instead was almost certainly inflamed by Plaintiffs' self-serving account.  The improper holdout evidence was thus likely to have infected the jury's deliberations on all issues, and caused it to make infringement, invalidity, and damages determinations on an improper basis.

A new trial on all issues is therefore appropriate. *See Davidson Oil*, 917 F.2d at 187; *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1349 (Fed. Cir. 2019).

   *Second*, if the Court grants a new trial on damages, it should also order a new trial on liability—and vice-versa—so that a single jury can decide overlapping factual issues. A partial new trial is not appropriate "where a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability." *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001). This question depends not only on the "interdependence of the issues," but also "'an overlapping of proof' relevant to those issues." *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 276–77 (5th Cir.), *cert. denied*, 140 S. Ct. 221 (2019). Here, any damages calculation will depend upon which claims of which asserted patents Apple was found to infringe. But the verdict form makes it impossible to know which claim(s)—if any—the jury unanimously found infringed. Additionally, any reasonable royalty depends on what the jury determines about the alleged inventions' scope, how important the alleged inventions are over the prior art, whether the patents were actually standard-essential, the extent to which Apple made use of the alleged inventions, and the purported value of that use to Apple's products—all issues that overlap with questions of liability.

   *Finally*, a new trial on infringement requires a new trial on invalidity. Apple's experts explained that Apple does not infringe the asserted patents but that, to the extent the claims were stretched to read on Apple's products, they were invalid. *See, e.g.*, D.I. 506 at 9:21-10:11, 22:22-25:1, 33:25-39:5; D.I. 497 at 793:18-794:6, 812:22-813:1, 814:12-20, 816:4-24, 827:5-22, 829:18-24. A single jury should decide these overlapping issues. *See Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986).

## V.   CONCLUSION

   The Court should set aside the jury verdict and order a new trial on all issues.

Respectfully submitted,

Dated:  April 5, 2021          /s/ *Melissa R. Smith*
                                Mark D. Selwyn (*pro hac vice*)
                                mark.selwyn@wilmerhale.com
                                WILMER CUTLER PICKERING
                                  HALE AND DORR LLP
                                2600 El Camino Real, Suite 400
                                Palo Alto, CA  94306
                                Telephone:  (650) 858-6000
                                Facsimile:  (650) 858-6100

                                Mindy Sooter (*pro hac vice*)
                                mindy.sooter@wilmerhale.com
                                WILMER CUTLER PICKERING
                                  HALE AND DORR LLP
                                1225 Seventeenth Street, Suite 2600
                                Denver, CO  80202
                                Telephone:  (720) 274-3135
                                Facsimile:  (720) 274-3133

                                Joseph J. Mueller (*pro hac vice*)
                                Timothy D. Syrett (*pro hac vice*)
                                joseph.mueller@wilmerhale.com
                                timothy.syrett@wilmerhale.com
                                WILMER CUTLER PICKERING
                                  HALE AND DORR LLP
                                60 State Street
                                Boston, MA  02109
                                Telephone:  (617) 526-6000
                                Facsimile:  (617) 526-5000

                                Brittany Blueitt Amadi (*pro hac vice*)
                                brittany.amadi@wilmerhale.com
                                WILMER CUTLER PICKERING
                                  HALE AND DORR LLP
                                1875 Pennsylvania Avenue NW
                                Washington, DC  20006
                                Telephone:  (202) 663-6000
                                Facsimile:  (202) 663-6363

███████████████████████

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on April 5, 2021 on all counsel who have consented to electronic service.

*/s/ Melissa R. Smith*

███████████████████

████████████████████████

██████████████████

███████████