**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:19-cv-00066-JRG <br><br> **JURY TRIAL DEMANDED** <br><br> ████████████ |

**DEFENDANT APPLE INC.'S OPPOSED MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

1.   Exclude All References To The First Trial, Including The Parties' Arguments, The Verdict, The Result, And The Now-Vacated Damages Award..................................1

2.   Exclude All Argument Or Evidence Related To Plaintiffs' Already-Decided Claims For Infringement, Validity, Willfulness, Enhanced Damages, And/Or Declaratory Judgment. ....................................................................................2

3.   Exclude Derogatory Remarks And Arguments—E.g., That Apple Is A Holdout— Calculated To Inflame The Jury To Punish Apple. ............................................3

4.   Exclude All Reference To Parties' Licensing Negotiations And Correspondence. ...........4

5.   Exclude All Reference To Apple-Qualcomm Negotiations, Litigations, And Agreements. ....................................................................................................5

6.   Exclude All Evidence Or Argument That Plaintiffs Could Seek A Larger Damages Award Than $506.2 Million....................................................................7

7.   Exclude Misleading And Irrelevant LTE Evidence And Arguments. ...............................8

8.   Exclude Any Evidence Or Argument Referring To Apple's Overall Pricing Of, Or Profits Generated From, For Cellular Technology As A Whole. ........................................9

9.   Exclude All References To Evidence Or Argument Concerning Any Changes Or Lack Of Changes To The Accused Products. ....................................................................10

10.  Exclude All Argument Or Evidence Concerning The Absence Of Any Apple, Qualcomm, Or Intel Witness At Trial....................................................................10

11.  Exclude All Argument Or Evidence That Third Parties Licensed Plaintiffs' Portfolio Because Of The Asserted Patents. .........................................................11

12.  Exclude All References To Evidence, Arguments, Verdicts, Judgments, Or Orders From Other Litigations. ....................................................................................11

13.  Exclude Irrelevant Evidence About Apple's Foreign Operations. ...................................11

14.  Exclude Argument Or Evidence About Apple's Overall Finances. ..................................12

15.  Exclude Evidence About Witness Compensation Unrelated To This Case. .....................12

16.  Exclude Argument Or Evidence About Steve Jobs, Political Positions Taken By Apple Or Its Leadership, And Media Reports Unrelated To This Litigation. ..................12

17.  Exclude All References To Innography "Strength Scores."...............................................13

18.  Permit Apple To Refer To Optis's' United Kingdom Claims If Optis Falsely Suggests The Retrial Is The Sole Means By Which Optis Is Pursuing Royalties. ............14

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*DDR Holdings, LLC v. Hotels.com, L.P.*, 2:06-cv-42-JRG, ECF 527 (E.D. Tex.
Oct. 9, 2012) ...................................................................................................8

*Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cvV-00201-JRG, 2017
WL 1322550 (E.D. Tex. Apr. 6, 2017) ..........................................................7

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367 (Fed.
Cir. 2020) .........................................................................................................3

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP,
ECF 377 (E.D. Tex. Nov. 29, 2017) ..............................................................10

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ....................1, 9, 10

*Glaxo Grp. Ltd. v. Ranbaxy Pharms., Inc.*, 262 F.3d 1333 (Fed. Cir. 2001) ..........2, 4, 5

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006) ..................................15

*LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ............5, 6

*Lucent Techs., Inc. v. Gateway, Inc.* 580 F.3d 1301 (Fed. Cir. 2009) ...........................1

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015)...............................15

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512-WCB, 2017
WL 1319553 (E.D. Tex. Apr. 10, 2017).........................................................14

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011)...........................9

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-
RSP, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019)......................................14

*Unwired Planet Int'l Ltd. v. Huawei Techs. Co. ¶¶ 49-62, [2020]* ...............................15

*VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-00855-RWS, ECF 937 (E.D. Tex. Sept. 1,
2020) ..............................................................................................................11

*VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-855, ECF 500 (E.D. Tex. July 29, 2016) .........2

*Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012)................2, 4

### **STATUTES, RULES, AND REGULATIONS**

Fed. R. Evid. 401 ...................................................................................... *passim*

Fed. R. Evid. 402 ........................................................................................... *passim*

Fed. R. Evid. 403 ........................................................................................... *passim*

Fed. R. Evid. 407 ...............................................................................................10

Fed. R. Evid. 408 .................................................................................................5

Fed. R. Evid. 703 ...............................................................................................14

The retrial jury will decide a single issue:  the amount that, at a hypothetical negotiation occurring in 2012, Apple and the original asserted patent owners would have agreed upon as a Fair, Reasonable, and Non-discriminatory royalty.  To decide this issue, the jury only needs to know that it is awarding a FRAND royalty to be paid by Apple to Plaintiffs, consistent with the principles set forth in *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  Plaintiffs, however, have indicated that they will attempt to reintroduce irrelevant and unfairly prejudicial evidence and argument related to claims already tried—specifically, infringement, willfulness, enhanced damages, and Plaintiffs' declaratory judgment claim on Apple's purported FRAND forfeiture.  Apple seeks to prevent Plaintiffs from attempting to use that—or other irrelevant and prejudicial evidence—to inflame the jury into awarding non-FRAND royalties.

1.    **Exclude All References To The First Trial, Including The Parties' Arguments, The Verdict, The Result, And The Now-Vacated Damages Award.**

To correctly determine a FRAND royalty, the retrial jury must apply the law supplied by the Court ***solely*** to the evidence admitted ***at the retrial***.  To ensure that factual record is tethered to that FRAND issue, the Court should preclude (including at *voir dire*) any argument or evidence concerning the parties' first trial—including by barring any reference to (1) the first trial itself, (2) the positions that Apple and its witnesses took at the first trial on issues related to infringement, willfulness, validity, and damages,[1] (3) the result, verdict, and damages award reached by the first jury, including that there was a prior determination of infringement and no invalidity.  Such references would be irrelevant to the jury's task; the jury need only be instructed that, for purposes of determining a FRAND royalty, they should assume infringement and validity.  *See Lucent Techs., Inc. v. Gateway, Inc.* 580 F.3d 1301, 1325 (Fed. Cir. 2009).  Allowing Plaintiffs to inject

---

[1] For example, Plaintiffs should not be permitted to inform the jury that Apple's witnesses previously testified that the five asserted patents are not essential to the LTE standard, that Apple did not infringe those patents, and/or that no damages were owed.

1

the first trial's result (e.g., that infringement/validity was determined or was done by a prior jury) into the retrial presents a significant risk of confusing and inflaming the retrial jury and improperly prejudicing it to punish Apple.  *See Glaxo Grp. Ltd. v. Ranbaxy Pharms., Inc.*, 262 F.3d 1333, 1339 (Fed. Cir. 2001) ("The purpose of compensatory damages is not to punish the infringer, but to make the patentee whole."); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 34 n.18 (Fed. Cir. 2012) ("beyond debate" that punishment not allowed."); Ex. 1, *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-855, ECF 500 at 14 (E.D. Tex. July 29, 2016) (ordering new trial where "repeated references to the prior jury verdict … resulted in an unfair trial" and created "a substantial risk that the jury would defer to the prior jury's findings altogether"); Fed. R. Evid. 401-403.

## 2.    Exclude All Argument Or Evidence Related To Plaintiffs' Already-Decided Claims For Infringement, Validity, Willfulness, Enhanced Damages, And/Or Declaratory Judgment.

The Court should preclude all argument and evidence that Plaintiffs presented at the first trial to support their claims for willfulness, enhanced damages, and/or declaratory judgment (i.e., Count VIII of Plaintiffs' First Amended Complaint).  The first trial already resolved these claims, none of which is at issue in the retrial, and Plaintiffs should not be permitted to re-litigate them at the retrial in an improper attempt to drive up damages.

For example, at the first trial, Apple objected to Plaintiffs' use of certain documents (such as PX1537, PX1491, and PX1612) that, according to Plaintiffs, showed that ███████████

████████████████████████████████████████████████████████████

███████████████  *E.g.*, ECF 503 at 27:22-28:3, 28:4-10, 28:16-29:16, 59:19-60:17.  But the Court admitted the documents by accepting Plaintiffs' argument that the documents were ████████

███████████████████[2]  ECF 440 at 11:4-8.  Willfulness is now decided.  ECF 544 at 2

---

[2] As Apple explained in its post-trial motions, such evidence was not relevant to willfulness, was unduly prejudicial, and the Court should have excluded it.  ECF 555 at 17-20; ECF 578 at 1-2.

(rejecting Plaintiffs' claim for enhanced damages after considering Plaintiffs' willfulness evidence). Accordingly, any reference or argument about these same documents should be precluded. *See, e.g.*, *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1379 (Fed. Cir. 2020) (explaining that considerations of egregious behavior are "not appropriate for jury consideration"). And as the Court instructed before, willfulness allegations are irrelevant to damages—i.e., the sole issue for the retrial jury. ECF 499 at 991:25-992:6 (instructing that jury "must not consider Optis's allegations of willfulness in considering damages" and "may not increase damages because [it] finds willfulness"); *see also* ECF 585 at 10 (Court stating that "issues relating to willful infringement are separate and distinct from those relating to damages"); Fed. R. Evid. 401-403. Plaintiffs' purported willfulness evidence is thus irrelevant to the retrial.

Any attempt to re-litigate Plaintiffs' declaratory judgment claim should similarly be precluded, including any evidence or argument related to French law or intended to raise doubt in the jurors' minds that Plaintiffs are bound by an irrevocable FRAND commitment. The Court declined jurisdiction over Plaintiffs' declaratory judgment claim, effectively deciding the issue against Plaintiffs (ECF 538 at 18), and further held that "the patents found to be infringed are FRAND-encumbered SEPs, [and] any royalty awarded must be FRAND." ECF 585 at 9. Having had their claim dismissed, the Plaintiffs should not be permitted to re-argue it now.

3. **Exclude Derogatory Remarks And Arguments—E.g., That Apple Is A Holdout— Calculated To Inflame The Jury To Punish Apple.**

Apple requests that the Court exclude derogatory remarks calculated to inflame the jury into punishing Apple. For example, Plaintiffs should be precluded from characterizing Apple as a holdout, and from suggesting that (1) Apple's conduct shows "a lack of respect" for patents or the legal system and a pattern of "not following the rules," (2) Apple wants to "destroy" Optis, LTE innovation, or the patents of others, (3) Apple is "unwilling" to pay FRAND royalties, or (4)

Apple is responsible for jurors having to attend trial, despite the continuing threat of COVID-19—all things that Optis argued at trial.  *E.g.*, ECF 499 at 1051:18-21 ("Apple doesn't even have the courtesy or the respect for this process …"), ECF 499 at 1057:5 ("Apple has made an art of not following the rules."); ECF 490 at 220:15-23:24 (arguing that Apple has a "strategy" to delay payment for SEPs and "what's striking about it is they're willing to accept the litigation burden, the burden of being here.  They're willing to accept the fact that they can face significant, extraordinary damages in this case."), ECF 490 at 220:24-223:6 (asserting Apple wants to "destroy LTE innovation," "destroy the patents of others," "destroy SEP values," "destroy [Optis's] business," "destroy the value of standard essential patents," "destroy the intellectual property of others," and "delay [damages] for as long as possible").

The Court should also preclude any suggestion that the jury should punish Apple, including through the use of any punishment-based phrases such as the supposed need for a damages award that "sends a message" to Apple, that will stop Apple's "infringing behavior" with respect to the asserted patents, or that will deter similar conduct by Apple (or others) in the future.[3]  Any such commentary is both legally irrelevant and would improperly suggest to the jury that it can award an amount beyond what would be appropriate for a FRAND royalty.  *See Glaxo Grp.*, 262 F.3d at 1339; *Whitserve*, 694 F.3d at 34 n.18; Fed. R. Evid. 401-403.

**4.    Exclude All Reference To Parties' Licensing Negotiations And Correspondence.**

Apple requests that the Court exclude any reference to the parties' licensing negotiations with each other, including references to any testimony on the license negotiations given during the bench phase of the prior trial.  This subject should be excluded for several reasons.

---

[3] This request is consistent with the Court's ruling in the first trial that neither party could make "pejorative remarks" about the other party or its business structure.  ECF 437 at 215-17.

*First*, the only issue for the retrial jury to decide is the amount of a FRAND royalty based on a hypothetical negotiation that would have taken place *in 2012* between Apple and *the prior owners* of the patents.  Negotiations occurring many years later between Apple and *Plaintiffs* (including *after* Plaintiffs filed this litigation) are irrelevant.[4]  Fed. R. Evid. 401, 402.

*Second*, allowing references to the parties' licensing negotiations and communications—pre-suit or post-suit—risks leaving the jury with the incorrect impression that trial is happening because Apple is an "unwilling licensee"—a conclusion the jury may use to improperly justify punishing Apple with a higher damages award.  *See Glaxo Grp.*, 262 F.3d at 1339 ("The purpose of compensatory damages is not to punish the infringer, but to make the patentee whole.").  Furthermore, the hypothetical negotiation construct assumes a "willing licensor" and "willing licensee," *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012); any suggestion by Plaintiffs that Apple is "unwilling" will cause significant jury confusion.

*Third*, the Court should preclude the parties from any reference to the parties' licensing negotiations because they are ███████████████████████████ and Fed. R. Evid. 408.  ECF 437 at 43:23-44:11, 230:1-231:15.  The ████████████████████████ ██████████████████████████████[5]  DTX-0015 ¶ 4.

5.    **Exclude All Reference To Apple-Qualcomm Negotiations, Litigations, And Agreements.**

---

[4] This would include, for example, evidence similar to Mr. Blasius's testimony at the first trial that since filing this lawsuit he has "informed Apple that [Plaintiffs] were still willing to license our patents, and we offered an out of court resolution."  ECF 491 at 281:12-16; *see also id.* at 263:2-6 ("[W]e've been talk -- discussing license with Apple for some time.  Apple actually infringes these patents, and that's why we're here.").  Argument and evidence that Plaintiffs are *still willing* to license the patents improperly suggests that a willingness to settle, or lack thereof, is relevant to determining a reasonable royalty—when it is not.

[5] In the prior trial, the Court permitted references to the █████████████████████████ ██████████████████.  There is no need to refer to the ████████ in the retrial—it is irrelevant to the issues that the retrial jury will need to decide.

Plaintiffs should be precluded from presenting any evidence regarding Apple's litigations with Qualcomm, Apple's negotiations with Qualcomm, and the Apple-Qualcomm agreements.

**First**, the Apple-Qualcomm agreements (including the negotiations leading to them and litigations involving them) should be excluded at the retrial as irrelevant because, as Plaintiffs' damages expert, Mr. Kennedy, conceded in his reports and at his deposition, the ████████████ ████████████████████████████████████████████ Ex. 2 (Kennedy Rpt.) ¶ 413 (███████████████████████████████████████████████ ███████████████████████████████████████); Ex. 3 (Kennedy Dep.) at 202:14-203:15 (████████████████████████████).

Indeed, the agreements fall far short of the legal test for comparability, because (1) unlike the hypothetical license at issue here, which involves at most five SEPs, the Apple-Qualcomm agreements cover ████████████████████████████████████████████ (ECF 503 at 77:9-16, 79:15-20); (2) ████████████████████████████████████ (ECF 504 at 75:18-76:4)—a significant requirement that does not exist in the hypothetical license between Apple and the original asserted patent owners; and (3) the ████████████████████████████████████████ ████████████████████ (PX-0387 at 1)—a key distinction from this proceeding. *See LaserDynamics*, 694 F.3d at 79 ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice."); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cvV-00201-JRG, 2017 WL 1322550, at *4 (E.D. Tex. Apr. 6, 2017) ("While settlement licenses have been used to assess damages in patent litigation, their admittance is never obtained without scrutiny because of the inherent risk they pose in skewing a reasonable royalty calculation.").

**Second**, the Apple-Qualcomm agreements also should be excluded because any alleged relevance is outweighed by the substantial risk of confusion and unfair prejudice to Apple.  At the pretrial conference, Plaintiffs represented that Mr. Kennedy would only use the Qualcomm license ██████████████████████████████ (ECF 252 at 12), which Plaintiffs could have done without prejudicing the jury with actual numbers.  But during closing, Plaintiffs urged the jury to base its damages award on the royalty of that license ████████████████████████ ██████████████ : "[W]e request the exact same treatment that was ████████████ ████████████████████████████████████████ ██████  We request only a royalty for past sales so that we can be treated exactly the same as Qualcomm only for past damages."  ECF 499 at 1056:15-21; *see also* ECF 503 at 59:2-13 (direct exam of Plaintiffs' damages expert) ("████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██ ).  And Mr. Kennedy himself contradicted his expert report and deposition testimony: ████ ████████████████████████████████████████ ████████████  ECF 503 at 59:14-16.  The Court should preclude Plaintiffs from trying to create similar confusion at the retrial.

6.  **Exclude All Evidence Or Argument That Plaintiffs Could Seek A Larger Damages Award Than $506.2 Million.**

As the Court recently confirmed, Plaintiffs' "damages request to the jury [is] fixed and tied to the same [February 2019 to August 2020] timeline as raised before the previous jury resulting in the prior verdict of August 11, 2020."  ECF 627 at 5.  Accordingly, Apple requests that the Court exclude any suggestion that Plaintiffs could seek more than the $506.2 million it has sought, or that Apple has been infringing since 2012.  At the first trial, Plaintiffs sought damages **only** for

the period from February 25, 2019 (the complaint filing date) through August 11, 2020 (the date of trial).  ECF 503 at 31:19-33:1 ( 

").  Yet, Plaintiffs attempted to mislead the jury by having Mr. Kennedy testify that ███████████████████████████████████████████████████████████████████████████████. ECF 503 at 17:10-15, 31:19-33:1.

Such arguments are both irrelevant and highly misleading and should be excluded. Plaintiffs cannot seek to make their $506.2 million demand appear reasonable based on a claim that damages across the entire period of infringement are much higher, and that Plaintiffs are providing Apple with a charitable "discount."  *See* Ex. 4, *DDR Holdings, LLC v. Hotels.com, L.P.*, 2:06-cv-42-JRG, ECF 527 at 71:6-72:13 (E.D. Tex. Oct. 9, 2012) (precluding evidence from outside the period accused of infringement as "potentially confusing and irrelevant").

**7.    Exclude Misleading And Irrelevant LTE Evidence And Arguments.**

The Court should exclude all evidence or argument suggesting that Apple moved to LTE-capable devices because it had fallen behind with respect to other manufacturers, including evidence or argument (1) comparing the number of patents (including LTE patents) that Apple holds versus others in the industry, such as Samsung, LG, or Panasonic; (2) that Apple has no evidence that its accused products practice any Apple patents, including LTE patents; and (3) comparing when other LTE phone manufacturers, including LG and Samsung, introduced LTE phones versus when Apple first introduced LTE devices.  These arguments—which Plaintiffs made in the first trial in an effort to show infringement and willful infringement (*see* ECF 491 at 332:1-18)—are irrelevant to the amount of a FRAND royalty the jury should award.  Apple would be unfairly prejudiced if forced to use trial time to conduct a side trial on these irrelevant issues, which also would risk confusing jurors into wrongly factoring the value of the entire LTE standard

into their verdict.  *See Ericsson*, 773 F.3d at 1226-27 (holding "care must be taken to avoid misleading the jury by placing undue emphasis on the value [of the entire standard]").

8.    **Exclude Any Evidence Or Argument Referring To Apple's Overall Pricing Of, Or Profits Generated From, For Cellular Technology As A Whole.**

Apple requests that the Court exclude any argument or evidence referring to Apple's overall pricing of, or profits generated from, cellular technology as a whole.  In the prior trial, Mr. Kennedy repeatedly referred ████████████████████████████████████

████████████████████ (ECF 503 at 39:23-40:7; ECF 499 at 1055:3-7), without ever attempting to connect those numbers to a proper input in the reasonable royalty analysis—because those numbers are irrelevant to a legally proper damages analysis.  The only purpose of referring to Apple's purported ***overall*** profits from "cellular technology" is an improper effort to skew the jury's horizon and make Plaintiffs' excessive $506.2 million demand seem reasonable by comparison.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (holding disclosure that defendant "made $19 billion [] in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue"); *see also* Fed. R. Evid. 401-403.

Indeed, the potential for prejudice is particularly acute in this case where it is undisputed that the asserted patents do not cover all cellular technology, or even all LTE technology.  The overall price that Apple charges for, and the profits it gains from, cellular technology as a whole are therefore irrelevant to the jury's FRAND royalty determination—which must be tied to the specific value of the claimed inventions, not the entire LTE standard (let alone the multiple other 2G and 3G standards that also fall within "cellular technology").  *See Ericsson*, 773 F.3d at 1232-33 (where patents only "cover only a small part of a standard[,]" damages "must be apportioned to the value of the patented invention[,] … not the value of the standard as a whole").

9.     **Exclude All References To Evidence Or Argument Concerning Any Changes Or Lack of Changes To The Accused Products.**

Apple requests that the Court exclude any argument or evidence referring to any changes or lack of changes to the accused products (including to the Qualcomm and Intel baseband chips). Whether Apple or its suppliers have changed the accused products since Plaintiffs filed this case or since the first trial has no bearing on the jury's damages determination, and there are no issues upon which subsequent remedial measures (or lack thereof) are relevant.  *See* Fed. R. Evid. 407.

10.     **Exclude All Argument Or Evidence Concerning The Absence Of Any Apple, Qualcomm, Or Intel Witness At Trial.**

The Court should exclude any argument or evidence referring to the absence of any Apple, Qualcomm, or Intel witnesses (fact or expert) at trial.  Plaintiffs had the opportunity to depose these witnesses during discovery, and should not be allowed to suggest a negative inference from their non-appearance at trial (or otherwise suggest their testimony would be unfavorable to Apple). *See* Ex. 5, *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, ECF 377 at 6-7 (E.D. Tex. Nov. 29, 2017) (holding "it would be unfairly prejudicial to allow commentary on who all is not present at trial," which "would allow the jury to speculate about the meaning of 'non-evidence'" that has "nothing to do with the underlying merits question and only risk misleading the jury"); Ex. 6, *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-00855-RWS, ECF 937 at 11 (E.D. Tex. Sept. 1, 2020) (excluding reference to nonappearance of witnesses because defendant "had a full opportunity to depose Apple employees and offer those employees at trial by deposition" and "admitting such evidence would permit the jury to speculate about non-evidence and cause an unfair risk of confusion").  Indeed, Plaintiffs convinced the Court to preclude Apple from making similar ████████████████████████████.  ECF 455 at 10.

11. **Exclude All Argument Or Evidence That Third Parties Licensed Plaintiffs' Portfolio Because Of The Asserted Patents.**

The Court should exclude all argument or evidence alleging that third parties took a license to Plaintiffs' patent portfolio *because of the asserted patents*.  While certain third parties have licensed Plaintiffs' portfolio (which includes thousands more patents than just the five asserted patents), Plaintiffs have offered no evidence as to *why* any of those entities agreed to the license. Even so, in the first trial, Plaintiffs suggested that the third parties entered into those licenses *because of* the asserted patents.  ECF 490 at 211:18-22 ("HTC, ZTE, Kyocera, BlackBerry, even Huawei has [sic] all agreed to take a license and to pay money *because they use the LTE standard and PanOptis's patents are essential to the standard.  That's a fact.*").  Plaintiffs should be precluded from making similar factually unfounded claims at the retrial, which could mislead the jury into assigning heightened value and importance to the asserted patents.

12. **Exclude All References To Evidence, Arguments, Verdicts, Judgments, Or Orders From Other Litigations.**

Apple renews its MIL 1 from the first trial to preclude Plaintiffs from referring to, or presenting any evidence regarding, other litigations or parallel administrative proceedings.  ECF 192 at 1-2 (Apple MIL 1).  The Court allowed Apple's motion.  ECF 437 at 224:25-225:4.  This evidence would be equally irrelevant and unduly prejudicial in the retrial.

13. **Exclude Irrelevant Evidence About Apple's Foreign Operations.**

Apple renews its MIL 10 from the first trial to preclude Plaintiffs from offering at trial any irrelevant evidence or argument regarding Apple's foreign operations, including the size of Apple's operations abroad and its corporate tax structure; the location of Apple's suppliers, manufacturers, or assemblers; working conditions or labor issues; and any press concerning such matters.  ECF 192 at 10 (Apple MIL 10).  The Court allowed Apple's motion.  ECF 437 at 241:12-242:5.  This evidence would be equally irrelevant and unduly prejudicial in the retrial.

11

14.     **Exclude Argument Or Evidence About Apple's Overall Finances.**

Apple renews its MIL 11 from the first trial to preclude Plaintiffs from offering at trial any argument or evidence relating to Apple's earnings, market capitalization, stock price, cash reserves (whether held in the United States or overseas), total revenues and profits (both in the United States and worldwide), product-specific revenues and profits (both in the United States and worldwide), ability to pay the amount demanded by Plaintiffs, or other indications of wealth.  ECF 192 at 11-12 (Apple MIL 11).  The Court allowed Apple's motion "with regard to either party."  ECF 437 at 243:23-244:4.  This evidence would be equally irrelevant and unduly prejudicial in the retrial.

15.     **Exclude Evidence About Witness Compensation Unrelated To This Case.**

Apple renews its MIL 12 to preclude the parties from offering evidence or argument relating to any party employee's compensation, stock options, or net worth, or the income, net worth, or other personal financial information of any of the parties' experts that is unrelated to this litigation.  ECF 192 at 12 (Apple MIL 12).  The Court allowed Apple's motion and precluded both sides from attempting to introduce evidence of "how much money [a] witness on the witness stand makes," and "what [a witness's] personal individual wealth might be and where it came from," and only allowed questions about whether "[a] witness's direct personal compensation could be enhanced or reduced as a result of the outcome of this trial."  ECF 437 at 246:5-247:1.  This evidence would be equally irrelevant and unduly prejudicial in the retrial.

16.     **Exclude Argument Or Evidence About Steve Jobs, Political Positions Taken By Apple Or Its Leadership, And Media Reports Unrelated To This Litigation.**

Apple renews its MIL 13 to preclude Plaintiffs from offering argument or evidence regarding statements by and/or videos from Steve Jobs, political positions taken by Apple or its leadership, and media reports.  ECF 192 at 12-13 (Apple MIL 13).  The Court allowed the motion,

with the understanding that it was restricted to "matters unrelated to the litigation."  ECF 437 at

248:20-23.  This evidence would be equally irrelevant and unduly prejudicial in the retrial.

**17.     Exclude All References To Innography "Strength Scores."**

Plaintiffs should be precluded from presenting any argument or evidence referring to

purported "ratings" of the asserted patents obtained from a database hosted by third-party

Innography.  Plaintiffs' expert Ms. Dwyer mentions these Innography patent scores in her expert

report, ████████████████████████████████████████████████████████████████

██████  Ex. 7 (Dwyer Rpt.) ¶ 63.  But she admits that she never used the Innography database

before this case and that she does not know whether Apple has ever relied on the Innography patent

scores.  Ex. 8 (Dwyer Dep.) at 220:10-19; ECF 494 at 509:23-510:5.  Her report also never

explained how Innography's patent strength scores are calculated or any basis to determine that

the scores are a reliable indicator of relative patent "strength."  Ex. 8 (Dwyer Dep.) at 220:10-13;

ECF 494 at 509:4-6.  The limited available information about that methodology indicated it is

deeply unreliable—as Ms. Dwyer acknowledged, the strength scores could go up based on the

mere fact that a patent owner filed a lawsuit, without regard to the merits of that lawsuit.  ECF 494

at 510:15-511:7.  With such acknowledged flaws and lack of knowledge about the algorithm, the

Innography scores should be precluded—particularly given the high risk that jurors will use the

Innography scores to inflate the value of the asserted patents.  Fed. R. Evid. 703.

Preclusion is separately required in view of Ms. Dwyer's repeated and unambiguous

admissions that "*[she] didn't rely on the Innography patent strength range at all in forming the*

*opinions in [her] report*."  Ex. 8 (Dwyer Dep.) at 222:24-223:2, 219:17-21, 223:5-8, 223:10-15;

ECF 494 at 509:10-16 (admitting she "didn't rely upon the Innography database in forming [her]

conclusions in this case" and "didn't perform any analysis based on the Innography database").  In

light of those concessions, Ms. Dwyer cannot now change the basis for her opinions.

Nor should Plaintiffs be permitted to offer evidence of the Innography scores through Mr. Kennedy. ████████████████████████████████████████████████████████ ████████████.  Ex. 2 (Kennedy Rpt.) ¶ 536.  In other words, Plaintiffs' experts add nothing to cure Ms. Dwyer's inability to vouch for the reliability of Innography's patent scores, and offers no basis under which they could independently sponsor the scores on their own.

Finally, because Plaintiffs' experts have no personal knowledge as to the reliability of the Innography patent scores, any testimony regarding them would be improper expert channeling of hearsay.  *See Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-cv-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) ("[D]enominating a witness as an expert does not give that witness leave to simply read materials . . . in the case and then testify as to their contents. . . .  Nor is it proper to use an expert witness simply to summarize the evidence proffered by the party that hired him."); *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896674, at *2 (E.D. Tex. Dec. 18, 2019) (excluding expert testimony amounting to a "summation of various documents and testimony" where expert did not use "expertise to help the jury understand facts or issues beyond a lay person's understanding").[6]

**18.      Permit Apple To Refer To Optis's' United Kingdom Claims _If_ Optis Falsely Suggests The Retrial Is The Sole Means By Which Optis Is Pursuing Royalties.**

Plaintiffs are pursuing a FRAND royalty for the five asserted patents ***both*** in this litigation ***and*** in concurrent litigation in the United Kingdom.  ECF 1 ¶ 140 (admitting "Plaintiffs have requested the UK Court to make a determination as to the FRAND license terms in respect of the

---

[6] For the first trial, Plaintiffs successfully argued that third-party studies discussing LTE essentiality should be excluded as hearsay because they are "clearly not a piece of evidence" and "shouldn't come in because it's opinion[] [a]nd opinions are not business records."  ECF 439 at 16:18-17:16.  Similarly, Ms. Dwyer should be precluded from presenting hearsay in the form of Innography's patent scores, for which she has no expertise or personal knowledge.

Plaintiffs' ***worldwide portfolio***," which includes the asserted patents in this litigation); ECF 26 ¶ 144. *See* Ex. 9, *Unwired Planet Int'l Ltd. v. Huawei Techs. Co.* ¶¶ 49-62, [2020] UKSC 37.

Plaintiffs are therefore seeking to obtain a double recovery by pursuing a FRAND royalty on the five asserted patents in both the United States and the United Kingdom, and double recovery is forbidden under United States patent law. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) (holding patentee could not sue users for damages because it had already received full compensation from the manufacturer). Double recovery is also contrary to FRAND principles, as it is inconsistent with the requirement to license FRAND-declared patents on fair and reasonable terms. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015) ("To mitigate the risk that a SEP holder will extract more than the fair value of its patented technology, many SSOs require SEP holders to agree to license their patents on '[fair,] reasonable and nondiscriminatory' or '[F]RAND' terms.").

Given this attempt at double recovery, Plaintiffs should be precluded from arguing to the jury that this forum is the only way for them to receive fair compensation for the asserted patents. If Plaintiffs open the door by implying to the jury that this trial is their only option to obtain compensation for the asserted patents, Apple should be allowed to correct the record by referring to Plaintiffs' United Kingdom action, including by explaining that Plaintiffs are asking a foreign court to award a FRAND royalty that would cover the five asserted U.S. patents.

Dated:  July 5, 2021

/s/ *Melissa R. Smith*

Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Mindy Sooter (*pro hac vice*)
mindy.sooter@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
Telephone:  (720) 274-3135
Facsimile:  (720) 274-3133

Joseph J. Mueller (*pro hac vice*)
Timothy D. Syrett (*pro hac vice*)
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Brittany Blueitt Amadi (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiffs' counsel of record were served with a true and correct copy of the foregoing document by electronic mail on July 5, 2021.

*/s/ Melissa R. Smith*



## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(h), I hereby certify that on July 5, 2021, counsel for Defendant Apple Inc. met and conferred telephonically with counsel for Plaintiffs concerning the subject of this motion.  The parties have been unable to resolve their dispute.

*/s/ Melissa R. Smith*