███████████████████████
   ██████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:19-cv-00066-JRG <br><br> **JURY TRIAL DEMANDED** <br><br><br> **ORAL ARGUMENT REQUESTED** <br><br><br> ████████████████ |

**<ins>APPLE INC.'S MOTION FOR A NEW TRIAL</ins>**

## <u>TABLE OF CONTENTS</u>

Page

I.   THE VERDICT FORM IMPROPERLY ASSUMED A PRIOR FINDING OF INFRINGEMENT AS TO ALL FIVE PATENTS. ............................................................1

II.  PLAINTIFFS WERE IMPROPERLY ALLOWED TO REPEATEDLY REFERENCE APPLE'S PROFITS IN THE CELLULAR INDUSTRY. ...........................2

III. PLAINTIFFS IMPROPERLY SOUGHT ROYALTIES ON ALL OF LTE. ......................3

IV.  MR. KENNEDY'S AND DR. REED-ARTHURS' TESTIMONY SHOULD HAVE BEEN EXCLUDED. ............................................................5

A.   Mr. Kennedy's Infrastructure Approach Was Unreliable. .......................................5

B.   Mr. Kennedy's And Dr. Reed-Arthurs' Survey Approach Was Unreliable. ...........6

C.   Mr. Kennedy Relied On Noncomparable Qualcomm Agreements. .......................7

D.   Mr. Kennedy Applied A Bargaining Power Analysis That Is Contrary to Law......9

V.   THE PARTIES' LICENSING NEGOTIATIONS AND CORRESPONDENCE SHOULD HAVE BEEN EXCLUDED. ............................................................10

VI.  THE COURT ERRONEOUSLY EXCLUDED RELEVANT EVIDENCE. ...................11

A.   Prior Art Evidence Relevant To Damages Was Erroneously Excluded. ...............11

B.   Component Licensing Evidence Was Erroneously Excluded. .............................12

VII. PREJUDICIAL ERRORS IN THE JURY INSTRUCTIONS ...........................................13

A.   The Prior Infringement Instruction Was Erroneous And Prejudicial. ..................13

B.   The Court Erred In Denying Apple's Comparable License Instruction. ...............13

C.   The Court Erred in Denying Apple's SSPPU Instruction......................................14

D.   The Instruction Regarding Use Of Profits Was Erroneous And Prejudicial. ........14

E.   The Court Erred in Denying Apple's *Georgia-Pacific* Factor 9 Instruction. ........15

VIII. ALTERNATIVELY, THE COURT SHOULD GRANT A REMITTITUR. ...................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aero Int'l, Inc. v. U.S. Fire Ins. Co.*,
    713 F.2d 1106 (5th Cir. 1983) ............................................................................14

*Apple Inc. v. Qualcomm Inc.*,
    No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944 (S.D. Cal. Sept. 7, 2017)........................8

*Apple Inc. v. Wi-LAN, Inc.*,
    No. 14cv2235 DMS (BLM), 2019 U.S. Dist. LEXIS 191804 (S.D. Cal. Oct. 1,
    2019) .........................................................................................................5

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964)........................................................................................2

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)....................................................................12, 15

*Brazos River Auth. v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ............................................................................13

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    No. 6:11-CV-00201-JRG, 2017 WL 1322550 (E.D. Tex. Apr. 6, 2017) .................................8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)....................................................................*passim*

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
    879 F.3d 1332 (Fed. Cir. 2018)........................................................................5

*Garretson v. Clark*,
    111 U.S. 120 (1884)........................................................................................6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970).............................................................12, 15

*Glaxo Grp. Ltd. v. Ranbaxy Pharms., Inc.*,
    262 F.3d 1333 (Fed. Cir. 2001)....................................................................11, 13

*Hernandez v. M/V Rajaan*,
    841 F.2d 582 (5th Cir. 1988) ............................................................................15

*Kanida v. Gulf Coast Med. Personnel LP*,
    363 F.3d 568 (5th Cir. 2004) ............................................................................14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)............................................................................8, 11

*Lewis v. Parish of Terrebonne*,
   894 F.2d 142 (5th Cir. 1990) ...............................................................................6

*Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*,
   No. 7:09-CV-29-O, 2011 U.S. Dist. LEXIS 154682 (N.D. Tex. June 10, 2011) ....................3

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)....................................................................7, 9, 13

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
   No. 19-1031-RGA, 2021 WL 4207442 (D. Del. Sept. 16, 2021) ...........................................10

*Omega Patents, LLC v. CalAmp Corp.*,
   Nos. 20-1793, 20-1794, 2021 WL 4168153 (Fed. Cir. Sept. 14, 2021) ...................................9

*Rude v. Westcott*,
   130 U.S. 152 (1889)...........................................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)....................................................................3, 9, 10

*Vectura Ltd. v. Glaxosmithkline LLC*,
   981 F.3d 1030 (Fed. Cir. 2020)............................................................................9

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)........................................................................3, 10

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988)..............................................................................2

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)...............................................................................11

**Statutes**

35 U.S.C. § 284.............................................................................................2, 15

35 U.S.C. § 289...............................................................................................15

**Federal Rules**

FRE 401 .......................................................................................................11

FRE 402 .......................................................................................................11

FRE 408 .......................................................................................................11

███████████████████████████

███████████████████████████

Apple seeks a new trial on the $300 million amount of damages awarded by the jury.[1]

## I.  THE VERDICT FORM IMPROPERLY ASSUMED A PRIOR FINDING OF INFRINGEMENT AS TO ALL FIVE PATENTS.

The verdict form in the first trial did not require the jury to unanimously agree that Apple infringed **any** particular patent claim, much less **all** asserted claims of all asserted patents.  ECF 483 at 4; ECF 578 at 13.  Instead, it asked whether Plaintiffs proved that "Apple infringed **ANY** of the Asserted Claims."  ECF 483 at 4 (emphasis in original).  Although all eight jurors in the prior trial answered that question affirmatively, they could have been deeply divided over which of the nine claims—and indeed which patent—they believed to be infringed.  *See* ECF 666 at 1-2.[2]  Accordingly, it would be speculative to assume that the prior jury agreed that Apple infringed any particular claim—much less all asserted claims.  *Cf.* ECF 667 at 3; ECF 695 at 1-2 (entering judgment that "Apple has infringed one or more of the Asserted Claims").

Nevertheless, the Court instructed the retrial jury that Apple was found to infringe **all** five patents-in-suit.  *Compare* 8/13/21 Tr. at 31:22-24 ("[I]t has been determined that certain of Apple's iPhones, iPads, and Apple Watches **infringe the asserted patents**."), *with* 8/10/21 Tr. at 112:5-7 ("It's already been decided that certain Apple products **infringe one or more claims of the asserted patent[s]**[.]"); *see also* 8/13/21 Tr. at 5:6-6:21, 7:20-8:3; ECF 666 at 1-2; ECF 677 at 10-15.[3]  The retrial verdict form also improperly assumed infringement of all five asserted patents, generically referring to "infringement" without specifying particular patents for which damages were due (an

---

[1] As described in Apple's prior post-judgment motions (ECF 549, 554, 555, 557, 578), Apple is entitled to judgment of no liability and/or a new trial on liability.  Apple understands that the Court denied those motions.  ECF 667.  Apple maintains all its positions in those motions for appeal.

[2] During the first trial, both parties submitted proposed verdict forms eliciting patent-specific findings by the first jury, but the Court chose to use a different form.  ECF 468-1 at 4; ECF 483 at 3; *see* ECF 578 at 13.  Apple objected to instructing the second jury that the first jury had found infringement of all five patents, but the Court overruled those objections and gave the instructions described below.  ECF 666 at 1-2; 8/13/21 Tr. at 5:6-6:21, 31:22-24; ECF 677 at 10-15.

[3] All emphases in quotations are added unless otherwise indicated.

1

███████████████████████████
██████████████████████

impossible task, given the absence of a finding of infringement as to any specific patent-in-suit).

ECF 684; ECF 676-1 at 5.  Due to the structure of the verdict form in the prior trial, these

instructions and the retrial verdict form were legally erroneous.  These errors allowed Plaintiffs to

seek—and the retrial jury to award—damages for a scope of infringement that Plaintiffs have not

proven and no jury has found.  8/11/21 Tr. [Kennedy] at 182:1-8; ECF 684 at 4.  A new trial is

required.  ECF 666 at 1-2; ECF 578 at 13; *see* 35 U.S.C. § 284 (patent infringement damages are

owed "to compensate for *the infringement*" and may take form of a "reasonable royalty for the

use made of *the invention*").[4]

## II.   PLAINTIFFS WERE IMPROPERLY ALLOWED TO REPEATEDLY REFERENCE APPLE'S PROFITS IN THE CELLULAR INDUSTRY.

Plaintiffs improperly referred repeatedly—over Apple's objections (8/11/21 Tr. at 144:11-

147:12, 148:1-17; 8/13/21 Tr. at 22:11-21)—to Apple's profits across the cellular industry.  *See*

8/11/21 Tr. [Kennedy] at 144:1-10 ██████████████████████████

██████████████████████); 8/13/21 Tr. [Pls' Closing] at 86:4-10 ("We know that *Apple*

*dominates the industry*. ██████████████████████████████████");

8/10/21 Tr. [Blasius] at 220:6-11; Ex. 1 [PDX5] at PDX5.11.  Such evidence improperly suggested

that Apple should disgorge its profits, a remedy not available here.  *See* 35 U.S.C. §§ 284, 289;

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) ("[T]he present

statutory rule is that only 'damages' may be recovered."); *Water Techs. Corp. v. Calco, Ltd.*, 850

F.2d 660, 673 (Fed. Cir. 1988).

Moreover, Plaintiffs failed to establish any nexus between Apple's share of cellular

industry profits and the accused features—much less between Apple's profits and the patents-in-

---

[4] The Court rejected Apple's request that the retrial verdict form delineate damages by patent.  ECF 684 at 4; ECF 676-1 at 5; 8/13/21 Tr. at 16:1-7.  Thus, granting JMOL or a new trial as to any one patent requires a new trial on damages for any remaining patents.

suit.  A patentee cannot recover damages based on a product's entire market value without showing that the invention drives demand for the entire product, but here Plaintiffs relied on the ***entire share of industry profits*** without establishing that the patented features drove that profitability.  *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-1327 (Fed. Cir. 2014) ("[A] reasonable royalty analysis requires a court to … carefully tie proof of damages to the claimed invention's footprint in the market place." (citation and quotation marks omitted)).  This emphasis improperly skewed the jury's damages horizon by focusing its attention on large profit numbers not tied to the patented features.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); *see also Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, 2011 U.S. Dist. LEXIS 154682, at *18-19 (N.D. Tex. June 10, 2011) (publishing an accused infringer's profit margin percentage is improper under *Uniloc*).[5]  This evidence was irrelevant and unfairly prejudicial to Apple, warranting a new trial.

## III.   PLAINTIFFS IMPROPERLY SOUGHT ROYALTIES ON ALL OF LTE.

A new trial is also required because Plaintiffs impermissibly sought royalties on the entire LTE standard, rather than on the claimed inventions' value.  *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("[A] royalty award for a SEP must be apportioned to the value of the patented invention (or at least to the approximate value thereof), not the value of the standard as a whole.").  Plaintiffs violated the "two special apportionment issues" for SEPs: (1)

---

[5] Focusing on Apple's share of cellular industry profit was particularly inappropriate because it suggested that Apple should be charged more because its cellular devices are more profitable than the competition—a proposition that is not FRAND, but rather plainly discriminatory.  *See Ericsson*, 773 F.3d at 1230-1231 (noting that commercial status of a RAND licensee is "irrelevant" because plaintiff "must offer licenses at a non-discriminatory rate").

"the patented feature must be apportioned from all of the unpatented features reflected in the standard"; and (2) the "royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology." *Id.* at 1232.

It was undisputed that others significantly contributed to LTE and to the portions of the standard at issue. *See, e.g.*, 8/12/21 Tr. [Perryman] at 129:12-131:21, 214:22-215:16; 8/11/21 Tr. [Reed-Arthurs] at 116:1-13; 8/11/21 Tr. [Madisetti] at 62:22-63:3; 8/10/21 Tr. [Mahon] at 270:25-272:12; DTX-1063-64, DTX-1066, DTX-1069, DTX-1071-72, DTX-1074-78, DTX-1080, DTX-1082-83.  Plaintiffs nonetheless repeatedly presented evidence about the value of ***LTE generally***, as if their patents covered the entirety of the standard.  For example, Mr. Kennedy emphasized Apple executives' references to the benefits of "LTE" without regard to the specific alleged contributions of the patents-in-suit.  *See, e.g.*, 8/11/21 Tr. [Kennedy] at 154:17-155:3, 157:20-158:6.  Mr. Kennedy and Dr. Reed-Arthurs also generally referred to Apple's customers' valuing of LTE without apportioning down to the accused functionalities.  *See, e.g.*, *id.* at 157:12-19; 8/11/21 Tr. [Reed-Arthurs] at 93:13-23.  Plaintiffs' technical experts likewise emphasized the speed of Apple's LTE products over other LTE devices without ever attributing that difference to the patents-in-suit.  *See, e.g.*, 8/10/21 Tr. [Mahon] at 285:3-22.  Furthermore, Plaintiffs' counsel cross-examined Apple's damages expert regarding an alleged "$350 price difference" between an iPod Touch (which "doesn't have cellular") and a cellular-capable iPhone, as though the patents-in-suit claimed the entirety of "cellular" technology, when in fact they were just five of thousands of patents relating to LTE technology.  8/12/21 Tr. [Perryman] at 201:1-202:4.  Plaintiffs' counsel also emphasized these arguments in opening and closing.  8/10/21 Tr. [Pls' Opening] at 136:17-137:10; 8/13/21 Tr. [Pls' Closing] at 41:13-16.  This argument and evidence was improper, irrelevant, and unfairly prejudicial, and should have been excluded.

## IV.   MR. KENNEDY'S AND DR. REED-ARTHURS' TESTIMONY SHOULD HAVE BEEN EXCLUDED.

A new trial is needed because Mr. Kennedy's and Dr. Reed-Arthurs' testimony should have been excluded.  ECF 171, 174, 307, 312; 7/28/20 Pretrial Tr. at 161:21-167:4, 167:15-177:7; 7/28/20 Sealed Pretrial Tr. at 3:1-28:11; 7/26/21 Pretrial Tr. 8:6-16, 184:19-185:6; 8/10/21 Tr. at 106:4-14; *see Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1351 (Fed. Cir. 2018).

### A.   Mr. Kennedy's Infrastructure Approach Was Unreliable.

Mr. Kennedy's infrastructure theory assumed that Apple would pay network carriers to purchase more equipment to improve upload and download speeds if the Intel and Qualcomm chips in Apple's products were stripped of the accused functionality.  8/11/21 Tr. [Kennedy] at 161:7-164:21, 209:5-19.  This speculative theory was factually baseless and should have been excluded at least because Mr. Kennedy himself admits that his theory is "not economically feasible." *Apple Inc. v. Wi-LAN, Inc.*, 2019 U.S. Dist. LEXIS 191804, at *23 (S.D. Cal. Oct. 1, 2019).

*First*, as Mr. Kennedy admitted, he did not investigate or know how much unused U.S. network capacity existed during the relevant period. 8/11/21 Tr. [Kennedy] at 211:19-21.  *Second*, he spoke to no one at a network carrier to confirm that it (or Apple) could compensate for degraded performance in phones by adding network capacity.  *Id.* at 211:14-18.  *Third*, he could not identify any instance in which a phone supplier made the type of payment that he assumed Apple would have made to the carriers.  *Id.* at 211:22-213:7.[6]  *Fourth*, even if the payment Mr. Kennedy hypothesized were realistic (it is not), the jury heard no evidence that infrastructure expenditures

---

[6] Mr. Blevins testified without contradiction that there was no reason to make such a payment, such a payment would not make sense, and such a payment has never occurred.  8/12/21 Tr. [Blevins] at 109:2-110:4.

would affect the network speed of mobile devices (much less that such payments would linearly correlate with speed increases).  Instead, the record showed the exact opposite—Plaintiffs' technical expert Dr. Virdis admitted that it is "not true" that "invest[ing] a dollar into improving LTE infrastructure[] would … also equal a dollar improvement in upload and download speeds." 8/11/21 Tr. [Virdis] at 256:15-19.  *Finally*, the asserted claims do not concern network equipment, but rather user equipment (e.g., mobile devices).  By relying on network equipment pricing as the royalty base—rather than the accused functionality in the accused devices—Mr. Kennedy failed to apportion damages to the value of the claimed inventions.  *See Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Ericsson*, 773 F.3d at 1226.

## B.    Mr. Kennedy's And Dr. Reed-Arthurs' Survey Approach Was Unreliable.

Dr. Reed-Arthurs' testimony regarding her pricing survey—on which Mr. Kennedy relied—also should have been excluded.  ECF 174, 307.  Her calculation of the profits Apple purportedly earned from the patents' alleged increase in LTE speed was divorced from the record and reality.  *First*, she admitted that she had *never* used this type of survey to value patents in a real-world licensing negotiation.  8/11/21 Tr. [Reed-Arthurs] at 113:14-114:18.  *Second*, her survey used "hypothetical products" with hypothetical features—not the accused Apple products. *Id.* at 114:19-115:7.  *Third*, although her survey purported to evaluate consumer "willingness to pay" for LTE speed increases (*id.* at 116:14-19), she conceded that most of her survey respondents did not even know the speeds at which their phones operate.  *Id.* at 115:8-20.  *Finally*, her conclusion that Apple's customers would pay more for faster LTE contradicts Apple's actual iPhone pricing, which remained constant when LTE was first introduced and when LTE speeds increased for subsequent models.  *Id.* at 117:3-16.  Thus, there was no basis for her assumption that Apple could, would, or did increase its prices simply because a survey suggested a willingness to pay some amount for an improved feature.  *See id.* at 116:24-117:2; *Lewis v. Parish of*

*Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture.").  Because Mr. Kennedy's survey approach relied on Dr. Reed-Arthurs' deficient survey, his testimony should have been excluded as well.  8/11/21 Tr. [Kennedy] at 160:12-161:6, 215:14-216:9, 216:17-22.

### C.  Mr. Kennedy Relied On Noncomparable Qualcomm Agreements.

Mr. Kennedy's testimony regarding the amounts Apple paid in ███████████████ agreements between Apple and Qualcomm should have been excluded as unreliable and highly prejudicial.  8/11/21 Tr. [Kennedy] at 150:5-9, 175:2-176:18, 177:1-180:17, 234:4-235:11, 238:6-16; PTX-0387; PTX-0484.  Indeed, another court excluded Mr. Kennedy's opinion based on the Apple-Qualcomm agreements for these reasons.  ECF 171-4 at  5.  The Court erred by overruling Apple's repeated objections to their admission.  ECF 171 at 12-15; ECF 312 at 4-5; ECF 633 at 5-7; ECF 666 at 4-5; 8/10/21 Tr. at 105:16-106:14.

*First,* the Qualcomm agreements were not economically comparable to the hypothetical negotiation, and Mr. Kennedy did not even attempt to demonstrate that they were.  *See* 8/11/21 Tr. [Kennedy] at 150:9 (saying they were merely "relevant"), 175:21-24 (and merely "important"); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332 (Fed. Cir. 2009) ("[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit").[7]  Instead, the Qualcomm agreements involved a "vastly different situation" that "radically differe[d] from the hypothetical agreement under consideration."  *Lucent*, 580 F.3d at 1327-1328.

---

[7] This shortfall is consistent with Mr. Kennedy's previous concession that the Qualcomm agreements are ***not*** comparable to the hypothetical license at issue in this case.  *See* ECF 633-03 (Kennedy Rpt.) ¶ 413 ████████████████████████████████████████████ ██████████████████████████████████████████); ECF 633-04 (Kennedy Dep.) at 202:14-203:15 ██████████████████████████████; ECF 171 at 13-15.



For example, the scope of the patent rights obtained by Apple under the Qualcomm agreements—████████████████████████████████████████—was far greater than the hypothetical license to five patents at issue in this case.  *See, e.g.*, 8/11/21 Tr. [Kennedy] at 222:1-5; 8/11/21 Tr. [Mewes] at 297:22-298:12, 299:1-15; 8/12/21 Tr. [Perryman] at 167:10-168:20.[8]  Further, Qualcomm had a "no license, no chips" policy (which requires customers to license Qualcomm's patents before they can buy Qualcomm chips, *see* 8/12/21 Tr. [Perryman] at 168:2-20; *see also* 8/11/21 Tr. [Mewes] at 296:13-17; 8/12/21 Tr. [Blevins] at 106:7-20), and ████████████████████████████████████, *see* 8/12/21 Tr. [Blevins] at 105:23-107:11; *see also* PX-0387 at 1.  Finally, the Qualcomm agreements ████████████████████████████████████████████████████████████████.  *See* PX-0387 at 1; PX-0484 at 97-117; *Apple Inc. v. Qualcomm Inc.*, 2017 WL 3966944, at *3-4 (S.D. Cal. Sept. 7, 2017).  Thus, the Qualcomm agreements were independently excludable as settlements "tainted by the coercive environment of patent litigation." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012); *see Rude v. Westcott*, 130 U.S. 152, 164 (1889); *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322550, at *5 (E.D. Tex. Apr. 6, 2017).

**Second,** the erroneous admission of the noncomparable Qualcomm agreements and Mr. Kennedy's related testimony greatly and unfairly prejudiced Apple.  Mr. Kennedy and Plaintiffs' counsel repeatedly emphasized the amount paid under the ████████████████████████. 8/11/21 Tr. [Kennedy] at 178:20-23 ████████████████████████████████████████, 179:7-24; 8/10/21 Tr. [Pls' Opening] at 141:8-

---

[8] Beyond failing to account for this difference in scope, Mr. Kennedy also failed to ██████████████████████████████████████ 8/11/21 Tr. [Kennedy] at 133:16-134:2.

█████████████████████████████████
████████████████████████████

13; Ex. 1 [PDX5] at PDX5.58, 5.63, 5.65.  Mr. Kennedy also used the payments in the Qualcomm

agreements—████████████████████████████████████—to "skew unfairly the

jury's ability to apportion the damages to account only" for the claimed features.  *Ericsson*, 773

F.3d at 1228; *see also Omega Patents, LLC v. CalAmp Corp.*, 2021 WL 4168153, at *12 (Fed. Cir.

Sept. 14, 2021) (plaintiff could not rely on "built-in apportionment" for noncomparable licenses;

"Omega's fundamental problem is that it failed to show that these agreements attributed a $5.00-

per-unit royalty to the value of the [patent-in-suit]."); *Vectura Ltd. v. Glaxosmithkline LLC*, 981

F.3d 1030, 1040 (Fed. Cir. 2020).  For example, Mr. Kennedy improperly used the Qualcomm

agreements as a "check" to suggest his $506 million damages opinion was reasonable, testifying

that they show ████████████████████████████████ 8/11/21 Tr.

[Kennedy] at 180:13-17; *see id.* at 175:21-176:16, 178:10-180:12; *Uniloc*, 632 F.3d at 1321 (new

trial where patentee used billion-dollar figure "as a check" to improperly "lend[] legitimacy to the

reasonableness of [its] $565 million damages calculation").

 Further, Mr. Kennedy opined that it was appropriate to ██████████████████

██████████████████████████████████████████████

██████████████████.  8/11/21 Tr. [Kennedy] at 179:7-180:17.  His only

justification for doing so was that an Apple expert in another case had supposedly followed a

similar methodology.  *Id.*  But Mr. Kennedy provided no detail about the licensing analysis in the

other case—including whether the licenses there were ***comparable***, unlike the Qualcomm

agreements here—and thus he provided no basis on which to find his analysis of the Qualcomm

agreements in this case reliable.  *See Lucent*, 580 F.3d at 1332.

### D.  Mr. Kennedy Applied A Bargaining Power Analysis That Is Contrary to Law.

 Mr. Kennedy's opinion that the Plaintiffs would have captured ██████ of Apple's purported

profits from alleged infringement should have been excluded as not tied to the facts of this case.

██████████████████████████████████
████████████████████████

See *Uniloc*, 632 F.3d at 1318 (rejecting bargaining share analysis that "had no relation to the facts

of the case"); *VirnetX*, 767 F.3d at 1332, 1334.  Mr. Kennedy admitted that none of Plaintiffs'

licenses was comparable to the hypothetical negotiation.  *See, e.g.*, 8/11/21 Tr. [Kennedy] at 144:1-

3.  Nevertheless, he ██████████████████████████████████████

██████████████████████████████.  *See id.* at 172:25-173:19; PX-5293, PX-

5294.  But he never explained why ██████████████████████ would resemble

a negotiation with Apple.  Further, Mr. Kennedy ignored other agreements, including Plaintiffs'

license with ██████████████████████.  *See, e.g.*, 8/12/21 Tr. [Perryman]

at 158:4-161:17, 162:5-8; DTX-12; *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 2021 WL

4207442, at *3 (D. Del. Sept. 16, 2021) (excluding damages opinion using a profit split not "tied

to the facts of the case at issue" (internal quotation marks omitted)).

V.     ███████████████████████████████████████

       **SHOULD HAVE BEEN EXCLUDED.**

       In its MIL #4 (ECF 633 at 4-5), Apple ████████████████████████████

█████████████████████████████.  ECF 633 at 4-5.  The Court

denied the motion and overruled Apple's subsequent objections at trial.  ECF 651 at 76:19-21;

ECF 666 at 3-4; 8/10/21 Tr. at 105:5-106:3, 108:3-7.  Thus, at trial, Plaintiffs referred to ████████

████████████████████████████████████████████

█████.  *See, e.g.*, 8/10/21 Tr. [Pls' Opening]  at  139:15-140:3 ████████████

████████████████████████████████████████████

██████████████████████████████████; 8/10/21 Tr. [Blasius] at  177:25-181:20

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████



Plaintiffs should have been precluded from offering this evidence and testimony because

(1) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ were irrelevant to the jury's sole

task of determining a FRAND royalty based on a 2012 hypothetical negotiation (FRE 401, 402);

(2) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆ (ECF 633 at 5 (quoting DTX-15); *see* ECF 437 at 43:23-44:11, 230:1-

231:15; ECF 666 at 3).  Allowing this evidence unfairly prejudiced Apple because it had to spend

significant trial time addressing the issue—time that Apple otherwise would have devoted to

presenting its defense.  This evidence also ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆—which

apparently swayed the jury to improperly punish Apple with an outsized damages award.

*LaserDynamics*, 694 F.3d at 76; *Glaxo Grp. Ltd. v. Ranbaxy Pharms., Inc.*, 262 F.3d 1333, 1339

(Fed. Cir. 2001).

## VI.    THE COURT ERRONEOUSLY EXCLUDED RELEVANT EVIDENCE.

### A.    Prior Art Evidence Relevant To Damages Was Erroneously Excluded.

Apple sought to show the technical value of the claimed features by presenting evidence

that certain claimed features were conventional or known in the prior art.  ECF 637 at 11-12.  The

Court granted Plaintiffs' MIL #12, ruling that such evidence "invites a retrial as to invalidity."

ECF 668 at 6-7.  The Court reaffirmed its ruling in Chambers on August 11, 2021, by specific

reference to DTX-171—an email in which an inventor of the asserted '332 patent (Dae Won Lee)

admitted that the invention is "nothing new really" and involved a "well-known equation" that had been "well studied over the past few decades."  ECF 673 at 1-2; 673-02 [DTX-171].  Apple was therefore improperly prevented from offering evidence that the asserted patent claims were at most a small, incremental change over the prior art, which is directly relevant to *Georgia-Pacific* factor 9 regarding "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results."  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) ("For a patent that combines 'old elements,'" a proper damages analysis evaluates "how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone.").  This ruling was especially prejudicial because Drs. Mahon and Madisetti gave extensive testimony on the patents' supposed performance benefits over available alternatives.  *See, e.g.*, 8/10/21 Tr. [Mahon] at 246:18-247:10; 8/11/21 Tr. [Madisetti] at 19:24-27:25, 31:1-35:8, 37:14-43:15.  A new trial should be ordered in which Apple may explain how minor any claimed innovations actually were.

### B.     Component Licensing Evidence Was Erroneously Excluded.

Apple was improperly barred from offering evidence that LTE SEPs are licensed at the baseband processor level, including evidence that ███████████████████████████

████████████████████████████████████████████████████████

███████████  *See* ECF 680 at 1-3; ECF 680-2, 680-3, 680-4; *see also* ECF 651 at 35:15-19; 8/10 Tr. at 105:16-106:3.  The Court wrongly assumed that the component licensing evidence related to "exhaustion."  *See* ECF 651 at 35:15-19.  But this evidence was separately relevant to show that

████████████████████████████████████████████████████████

████████████████████████.  *See id.* at 34:2-14; ECF 680 at 1-3.  Whether the baseband processor is the smallest saleable patent-practicing unit ("SSPPU") for determining the royalty base was a

key disputed issue.  8/12/21 Tr. [Perryman] at 136:2-139:16, 168:21-172:6; 8/12/21 Tr. [Blevins] at 111:6-17; 8/11/21 Tr. [Mewes] at 264:24-272:2; 8/11/21 Tr. [Kennedy] at 237:15-238:5; *Ericsson*, 773 F.3d at 1227.  Thus, the erroneous exclusion of this evidence unfairly prejudiced Apple.  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432 (5th Cir. 2006).

## VII.   PREJUDICIAL ERRORS IN THE JURY INSTRUCTIONS

### A.   The Prior Infringement Instruction Was Erroneous And Prejudicial.

Over Apple's objection, the Court told the venire and later the jury that a previous trial had determined that Apple infringed the asserted patents and that those patents were not invalid. 8/10/21 Tr. at 11:14-23, 111:6-7, 112:5-14, 115:3-6; 8/13/21 Tr. at 31:22-32:5.  The Court rejected Apple's proposal that the jury be told to assume that the asserted patents are valid and infringed. ECF 677 at 11; 8/13/21 Tr. at 6:2-21.  The Court also rejected Apple's request for a curative instruction that Plaintiffs' references to Apple's "infringement" were improper and irrelevant. ECF 677 at 7; 8/13/21 Tr. at 14:12-22.

Telling the jury that a prior trial had found infringement by Apple—and allowing Plaintiffs to repeat this point without curative instruction—risked confusing and inflaming the jury and improperly prejudicing it to punish Apple.  *See Glaxo*, 262 F.3d at 1339.  This risk was unnecessary because the jury only needed to be told, consistent with routine jury instructions regarding the hypothetical negotiation, that it should "assume[] that the asserted patent claims are valid and infringed."  *Lucent*, 580 F.3d at 1325; ECF 633 at 1-2; 8/13/21 Tr. at 6:7-19.  Thus, Apple is entitled to a new trial.

### B.   The Court Erred In Denying Apple's Comparable License Instruction.

The jury received extensive evidence on comparable licenses from Apple's witnesses.  *See, e.g.*, 8/11/21 Tr. [Mewes] at 282:15-293:12; 8/12/21 Tr. [Perryman] at 143:11-167:9.  Yet over Apple's objection, Plaintiffs introduced evidence regarding the ***noncomparable*** Qualcomm

agreements.  8/11/21 Tr. [Kennedy] at 150:5-9, 175:2-176:18, 177:1-180:17, 234:4-235:11, 238:6-16; *see supra* pp. 7-9.  Accordingly, Apple requested that the jury be instructed regarding the appropriate use of licenses to determine damages.  ECF 677 at 26-27; 8/13 Tr. at 13:23-14:3, 14:22.  The Court refused to give Apple's instruction.  8/13 Tr. at 14:22, 35:3-38:4.  This error prejudiced Apple: the jury was not instructed on how to assess comparability or use comparable licenses to determine the outcome of the hypothetical negotiation, or that a noncomparable license agreement "should not be used to determine the amount or form of any reasonable royalty award."  ECF 677 at 26-27; 8/13 Tr. at 35:3-38:4.  Thus, the jury may have given undue weight to noncomparable licenses, such as the Qualcomm agreements.

### C.    The Court Erred in Denying Apple's SSPPU Instruction.

It was prejudicial error to deny Apple's request for a jury instruction regarding the SSPPU where the accused technology is in the products' baseband chip, Apple relied on the SSPPU for its damages theory, and Plaintiffs disputed this point.  ECF 677 at 23-25; 8/13 Tr. at 14:4-11, 14:22; 8/12/21 Tr. [Perryman] at 136:2-139:16, 168:21-172:6; 8/12/21 Tr. [Blevins] at 111:6-17; 8/11/21 Tr. [Mewes] at 264:24-272:2; 8/11/21 Tr. [Kennedy] at 167:19-170:23, 237:15-24; 8/10/21 Tr. [Mahon] at 270:1-10; *Ericsson*, 773 F.3d at 1227.  The final instructions did not properly guide the jury on the correct approach to calculating damages.  8/13 Tr. at 35:3-22; *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004); *Aero Int'l, Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983).

### D.    The Instruction Regarding Use Of Profits Was Erroneous And Prejudicial.

Over Apple's objection, the Court instructed the jury that "evidence of the actual profits of an infringer may be used to determine the anticipated profits at the time of the hypothetical negotiation."  8/13/21 Tr. at 9:7-10:10, 34:2-4.  On the other hand, the Court refused to give Apple's proposed instruction indicating that a defendant's profits are not relevant and that

14

Plaintiffs could not seek disgorgement of those profits.  8/13/21 Tr. at 9:7-10:10; ECF 677 at 32. Thus, the instructions gave the jury the mistaken impression that Apple's profits—whether "actual" or "anticipated"—were relevant to determining a FRAND royalty, ***regardless whether those profits had anything to do with the claimed inventions.***  Moreover, the instructions left open the possibility of the jury forcing Apple to disgorge a portion of those profits—wrongly treating the five ***utility*** patents in this case as equivalent to ***design*** patents.  *Compare* 35 U.S.C. § 284 (for utility patents, permitting recovery of "***damages*** adequate to compensate for the infringement"), *with* 35 U.S.C. § 289 (for design patents, permitting recovery "***to the extent of [infringer's] total profit***").  These errors compounded the prejudice from Plaintiffs' improperly admitted evidence regarding Apple's share of profits in the overall cellular market.  *See supra* pp. 2-3.

### E.    The Court Erred in Denying Apple's *Georgia-Pacific* Factor 9 Instruction.

*Georgia-Pacific* factor 9 is the "utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results."  *Georgia-Pacific*, 318 F. Supp. at 1120.  Both parties requested that the Court instruct the jury on factor 9; however, the Court declined to do so.  ECF 677 at 16, 29; 8/13/21 Tr. at 12:1-23, 36:4-37:24.  The Court's decision presumably was based on its concern over "invit[ing] a retrial as to invalidity" (ECF 668 at 6)—despite Apple's pledge that it would not use such evidence to argue invalidity, only damages (ECF 658 at 2-5; ECF 673 at 1-2).  Apple was prejudiced by the Court's refusal to give this instruction and its related refusal to allow evidence of the extent to which the claimed features were conventional or known in the art (*see supra* pp. 11-12).  *See AstraZeneca*, 782 F.3d at 1339.

## VIII.   ALTERNATIVELY, THE COURT SHOULD GRANT A REMITTITUR.

The only proper damages theory was Dr. Perryman's.  Even assuming infringement of all claims, in the absence of a new trial, damages should be remitted to $5.1 to $6.4 million.  8/12/21 Tr. [Perryman] at 172:7-13; *see Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Respectfully submitted,

Dated:  October 6, 2021

/s/ *Melissa R. Smith*
Mark D. Selwyn (*pro hac vice*)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Mindy Sooter (*pro hac vice*)
mindy.sooter@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO  80202
Telephone:  (720) 274-3135
Facsimile:  (720) 274-3133

Joseph J. Mueller (*pro hac vice*)
Timothy D. Syrett (*pro hac vice*)
joseph.mueller@wilmerhale.com
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Brittany Blueitt Amadi (*pro hac vice*)
brittany.amadi@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX  75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on October 6, 2021 on all counsel who have consented to electronic service.

*/s/ Melissa R. Smith*

17