## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, PANOPTIS PATENT MANAGEMENT, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, | §§§§§§§§§§§§§§§§ | CIVIL ACTION NO. 2:19-CV-00066-JRG |
| *Plaintiffs*, | | |
| v. | | |
| APPLE INC., | | |
| *Defendant*. | | |

## <u>ORDER</u>

Before the Court is Defendant Apple Inc.'s ("Apple") Motion for a New Trial (the "New Trial Motion") (Dkt. No. 699) and Apple's Rule 50(b) (Motion for Judgment as a Matter of Law (the "JMOL Motion") (Dkt. No. 700). Having considered the New Trial Motion and the JMOL Motion, and for the reasons stated herein, the Court finds that both should be **DENIED**.

## I.    BACKGROUND

Plaintiffs Optis Wireless Technology, LLC, Optis Cellular Technology, LLC, PanOptis Patent Management, LLC, Unwired Planet, LLC, and Unwired Planet International Limited (collectively, "Optis") filed the above-captioned case against Apple on February 25, 2019, asserting infringement of seven patents. (Dkt. No. 1, ¶ 1.) Prior to trial, two of the asserted patents were dropped by Optis. The Court conducted a jury trial with respect to the remaining five patents (U.S. Patent Nos. 8,019,332, 8,385,284, 8,411,557, 9,001,774, and 8,102,833 (collectively, the "Asserted Patents" or "patents-in-suit")) from August 3, 2020 through August 11, 2020. (Dkt. Nos.

460, 461, 466, 474, 482, 485, 486.) On August 11, 2020, the jury returned a verdict that Apple willfully infringed certain claims of the Asserted Patents. (Dkt. No. 483.) The jury awarded $506,200,000 as a reasonable royalty for such infringement. (*Id*.) The jury also found such to be a running royalty. (*Id*.) The Court entered a Final Judgment on February 25, 2021, memorializing the jury's findings but electing not to enhance damages for willful infringement under 35 U.S.C. § 284. (Dkt. No. 544.)

Apple subsequently moved for a new trial because it alleged that the jury did not hear evidence regarding Optis's obligation to license the patents on fair, reasonable, and nondiscriminatory ("FRAND") terms. (Dkt. No. 549 at 9.) The jury's verdict, Apple argued, was thus not compliant with FRAND terms and was in violation of the FRAND limitations on reasonably royalty awards for standard essential patents. (*Id*. at 13–14.) Apple contended that at a minimum, damages should be retried, while maintaining that a new trial regarding all issues was appropriate given that the exclusion of FRAND "had prejudicial effects that went beyond damages." (*Id*. at 15.) Apple further argued that by failing to plead an affirmative FRAND counterclaim or defense, it did not waive its right to challenge the verdict as not being FRAND-compliant. (*Id*. at 15–19.)

On April 14, 2021, the Court granted a new trial as to damages in the above-captioned case, vacating the Court's previous Judgment as to damages. (Dkt. Nos. 544, 585.) The Court found that a new trial on damages was warranted as to the amount of a FRAND royalty for the use of the Asserted Patents. (Dkt. No. 585 at 9.) The Court declined, however, to grant a new trial as to other issues, including liability. (*Id*. at 10.)

In the subsequent jury trial regarding damages, the jury found that Optis proved by a preponderance of the evidence that a lump-sum (as opposed to a running royalty) of $300 million

"would compensate Optis as a FRAND royalty for the damages resulting from infringement between February 25, 2019 and August 3, 2020." (Dkt. No. 684 at 4–5.) Apple moved for Judgment as a Matter of Law ("JMOL") under Rule 50(a), arguing that Optis failed to present sufficient evidence to support a damages award. (Dkt. No. 682.) Apple filed the instant motions on October 6, 2021. (*See generally* Dkt. Nos. 699–700.)

## II.    Legal Standard

### a.    Judgment as a Matter of Law

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

### b. New Trial

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence."). Furthermore "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

### III.    Discussion

Under Federal Rule of Civil Procedure 50(b), Apple filed a JMOL Motion seeking judgment as a matter of law that Optis failed to present sufficient evidence to support the verdict. (Dkt. No. 700.) Apple also moves for a new trial on substantially the same grounds. (Dkt. No. 699.) The Court finds that substantial evidence exists supporting the jury's damages verdict on

each of the grounds raised by Apple, and none of those grounds compel setting aside the jury's verdict and granting a new trial.

Many of the grounds that Apple asserts in its New Trial Motion are identical to those asserted in Apple's JMOL Motion. (*See generally* Dkt. Nos. 699, 700.) Accordingly, where appropriate, the Court addresses those arguments together.

### *i. JMOL and New Trial: Infringement Finding in Verdict Form*

The verdict form in the first trial was not broken down by patent or claim and instead asked if Apple infringed "any" of the asserted claims. (Dkt. No. 699 at 1; Dkt. No. 700 at 1.) Based on this, Apple contends that the record does not support an assumption that the prior jury agreed that Apple infringed *any* particular claim, "much less all asserted claims." (Dkt. No. 700 at 1.) Apple also contends that, in the first trial, both parties submitted proposed verdict forms that broke the infringement question down by patent or claim, but the Court used its own language. (*Id*. at n.1.) In the damages retrial, Apple alleges that Optis presented a damages theory which assumed infringement of *every* asserted claim of *every* asserted patent. (*Id*. at 2.) Therefore, Apple argues that the jury's damages award was not attributed to particular claims and thus that Optis has "sought and been awarded damages for a scope of infringement that they have not proven and that no jury has unanimously found." (*Id*.) Apple further argued that JMOL of no damages is warranted "for the additional reason that Plaintiffs seek to obtain a FRAND royalty in concurrent litigation in the United Kingdom for the same five patents asserted in this litigation." (*Id*.)

In response, Optis contends that the Court has already rejected Apple's argument regarding the verdict form after the first jury returned "the exact amount [Optis] sought for infringement of each of the patents-in-suit." (Dkt. No. 707 at 1 (citing Dkt. No. 667 at 32–33).) Optis argues that Apple itself proposed that the jury be instructed to assume "infringement of all of the asserted

claims" and not just "one or more claims" as it now suggests, thus waiving any argument to the contrary. (Dkt. No. 706 at 1; Dkt. No. 707 at 1.) Optis contends that its experts expressly testified as to their opinions regarding which claims of which patents were infringed. (Dkt. No. 707 at 1.) According to Optis, its damages expert, Mr. Kennedy, explained his damages calculation on a patent-by-patent basis. (*Id.* at 2.) Further, Optis contends that "even if Apple infringed just the single asserted claim" of *one* of the patents, the $300 million verdict would have had substantial evidentiary support. (Dkt. No. 706 at 1.) Optis finally argues that the "double recovery" theory posited about the proceedings in the UK was waived by Apple, who did not "bring[] an affirmative defense or counterclaim at any point in this case despite the fact the UK litigation was filed on the same day as the present action." (Dkt. No. 707 at 1.)

Apple contends that it objected to the verdict form at the previous trial, in its previous post-trial briefing, before the retrial jury charge, and in its Rule 50(a) motion, arguing that the Court granted Apple a running objection on the issue but ultimately rejected Apple's objection. (Dkt. No. 710 at 1; Dkt. No. 711 at 1.) Apple further argues that Optis cannot rely on the prior jury's award of the full damages ask for infringement because that award was vacated, and the sufficiency of the damages award in this case needed to be based on an explicit liability finding for each patent. (Dkt. No. 710 at 1.) As to the issue of the UK litigation, Apple argues that there is no basis for the notion that it was required to plead double recovery as an affirmative defense, and contends that "Plaintiffs do not deny that they seek double recovery" based on the UK litigation. (Dkt. No. 711 at 1.)

Optis replies that the various objections that Apple made to the verdict form "have nothing to do with the question of whether there was evidence of infringement of the patents." (Dkt. No. 717 at 1.) Rather, Optis contends that those objections were directed at language different from

the language now in dispute. (*Id.*) Optis also argues that Apple "does not deny that its proposed jury instruction [was] substantially the same one as it now challenges." (*Id.*)

The Court finds no error in the language of the verdict form that would undermine the jury's verdict or necessitate a new trial. Apple's own proposed jury instructions stated that the jury was to "assume" that the "patents-in-suit are valid and infringed." (Dkt. No. 706 at 1 (citing Dkt. No. 677 at 11, 22).) Based on that instruction, Optis's experts opined that all asserted claims of all asserted patents were infringed and attributed damages awards to each patent. (*See, e.g.*, Dkt. No. 691 at 236:10–14, 249:14–16; *see also, e.g.*, Dkt. No. 692 at 16:5–10, 28:2–6, 35:9–12, 181:21–25.) Accordingly, the record contained sufficient evidence of infringement consistent with the jury's damages award. Moreover, the instruction the jury ultimately heard is substantially equivalent to the instruction proposed by Apple. Finally, as to Apple's argument regarding the UK FRAND litigation, the Court is not persuaded that the existence of a co-pending litigation in another country warrants JMOL or a new trial in the case at bar.

### ii.    *JMOL and New Trial: Mr. Kennedy's Infrastructure Approach*

Apple argues that Mr. Kennedy's "infrastructure approach" rested on the "unsupported assumption that Apple would pay network carriers to compensate for the inefficiencies the Apple products would allegedly suffer without using the asserted patents" and was thus speculative. (Dkt. No. 699 at 5; Dkt. No. 700 at 3.) According to Apple, Mr. Kennedy "admitted" in a prior proceeding that such an approach was "not economically feasible" and did not address the feasibility issue in this case by speaking to anyone at a network carrier to confirm that it "could compensate for degraded LTE speed in phones by adding network capacity." (Dkt. No. 700 at 3; *see also* Dkt. No. 699 at 5.) Apple also maintains that Mr. Kennedy could not point to any instance in which such a payment occurred between a phone supplier and a carrier and alleges that a

different expert showed the opposite—that investing a dollar into improving LTE infrastructure would not yield a dollar improvement in upload or download speed. (Dkt. No. 700 at 4; *see also* Dkt. No. 699 at 6.) Similarly, Apple argued that the jury did not hear about any relationship between infrastructure expenditure and network speed of mobile devices, and instead heard the contradicting testimony from a different expert. (*Id.*) Apple argues that "by relying on the price of network equipment to calculate his royalty, as opposed to the accused functionality in the accused devices, Mr. Kennedy failed to apportion his damages demand to the value of the claimed inventions." (*Id.* at 5.) Apple finally contends that Mr. Kennedy was previously barred from offering the "same" theory against Apple in the Southern District of California because it was too speculative. (*Id.*)

Optis argues that Apple's argument is an "improper attack[] on methodology" that was raised and rejected at the *Daubert* stage. (Dkt. No. 707 at 2–4; *see also* Dkt. No. 706 at 4–5.) Optis cites to testimony and exhibits that it contends "showed that investment in LTE speed-specific infrastructure assets can compensate for a degradation in speed," including testimony by Mr. Kennedy. (Dkt. No. 707 at 5.) Optis also argues that Apple provides "no support" for the argument that Mr. Kennedy needed to determine the amount of "unused US network capacity" or that he needed to speak to a network carrier. (Dkt. No. 706 at 5.) Optis alleges that Mr. Kennedy "proceeded with apportionment in percentage terms based on the LTE speed of the accused products relative to the next-best non-infringing alternatives . . . determined" by Optis's technical experts, Dr. Madisetti and Dr. Mahon. (Dkt. No. 707 at 6.) Accordingly, Optis contends that Mr. Kennedy's infrastructure approach "analyzed the incremental cost of providing the bandwidth that was otherwise saved by using the infringing technology" and that the "additional network infrastructure" was simply a means by which Apple could "offset the lost speed if it could not use"

the asserted patents, "and thus [was] a way of measuring the value of the patents to Apple." (*Id*. at 6–7.) Optis further contends that Dr. Madisetti testified that the impact of the asserted patents was "directly related to quality of service." (*Id*. at 7.) Optis also argues that the record contained evidence that the infrastructure approach is used in the real world. (*Id*.) Specifically, Optis maintains that Apple does not dispute that ███████████████████████████████ ███████████████████████████████ and noted that expert testimony showed that such payments did occur in the real world. (Dkt. No. 706 at 5.)

Apple first responds that a "challenge to sufficiency of evidence" to support a verdict is "separate from a *Daubert* challenge." (Dkt. No. 711 at 2.) Apple also argues that Optis's briefing does not address the "fundamental flaws" in Mr. Kennedy's infrastructure approach, including that he "never investigated whether additional network equipment would even be necessary" and that he relied on testimony from Dr. Mahon and Dr. Madisetti "regarding a relationship between speed and network capacity" without addressing the "need for additional capacity." (*Id*.) Apple contends that Mr. Kennedy needed to determine, for example, unused network capacity and speak to technical experts to support his "assumption that Apple would pay to build new infrastructure." (Dkt. No. 710 at 2.) Apple further argues that there is "no evidence" that Apple "views the purchase of dedicated network capacity as an alternative tool" for achieving higher network speeds, and Apple argues that the jury was not permitted to disregard allegedly "uncontradicted" testimony from an Apple employee, Mr. Blevins, that ████████████████████████ never occurred. (Dkt. No. 711 at 3.) Apple separately argues that Mr. Kennedy did not properly apportion his analysis because his baseline number for "LTE 'radio assets'" allegedly includes thousands of other LTE patents. (Dkt. No. 710 at 2.)

In response, Optis contends that Apple does not dispute that it is raising the same arguments that were rejected at the *Daubert* stage and argues that all of Apple's arguments go to whether Mr. Kennedy used an appropriate methodology, not to the sufficiency of the evidence. (Dkt. No. 716 at 1.) Optis also argues that Apple's post-trial attorney argument on the use of additional network equipment cannot overcome unrebutted testimony of Optis's experts at trial. (*Id*. at 2–3.) Optis argues that Mr. Kennedy's assumption that Apple would ███████████████████████ was "corroborated by Apple's own internal documents." (Dkt. No. 717 at 2.) Optis also points to evidence that showed ████████████████████████████████████████████ ████████████████████████████████████, thus contradicting testimony from Mr. Blevins that Apple says was "uncontested." (Dkt. No. 716 at 3.) Further, Optis contends that there was substantial evidence to show that Mr. Kennedy, relying on opinions from Dr. Mahon and Dr. Madisetti, apportioned down from his baseline to account for the "incremental benefit added by each patent," and that Apple had the opportunity to cross-examine Mr. Kennedy on the same. (Dkt. No. 717 at 2–3.)

The Court finds that Apple's attack on Mr. Kennedy's infrastructure approach was already rejected by the Court at the *Daubert* stage. (*See* Dkt. No. 438 at 27:23–28:11.) There, the Court found that Mr. Kennedy's infrastructure approach was best "addressed by cross-examination" rather than by outright exclusion. (*Id*.) The jury was tasked with "[w]eighing the conflicting evidence and the inferences to be drawn from that evidence[] and determining the relative credibility of the witness[.]" *Innovation Scis. LLC v. Amazon.com, Inc*., 2021 WL 2075677, at *2 (E.D. Tex. May 24, 2021). At trial, the jury heard evidence that Apple contends "conflicted" with Mr. Kennedy's testimony (*see, e.g.*, Dkt. No. 700 at 4–5) and they weighed such "allegedly inconsistent evidence" in accordance with the law. *i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d

831, 849 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Thus, Apple's arguments, insofar as they relate to the reliability of Mr. Kennedy's methodology, are rejected and do not warrant the relief Apple seeks. *Versata Software Inc. v. SAP America Inc*., 717 F.3d 1255, 1264 (Fed. Cir. 2013).

### *iii.  JMOL and New Trial: Mr. Kennedy's Survey Approach*

Apple contends that Mr. Kennedy's reliance on Dr. Reed-Arthurs's survey, which "theorized that a speed increase (which [was] attributed 100% to the asserted patents) would lead to a price increase," was flawed and should have been excluded because her calculation of earned profits was "divorced from the record and reality." (Dkt. No. 699 at 6; Dkt. No. 700 at 6.) Apple argues that Dr. Reed-Arthurs's underlying survey—which posited that consumers would be willing to pay for a finite increase in LTE speed—was incorrect because it conflicted with "real-world evidence" that Apple's products did not change price with changes in LTE speeds. (Dkt. No. 700 at 6–7.) Apple also argues that Dr. Reed-Arthurs's survey evaluated "hypothetical products" and relied on "flawed" testing by others. (*Id*. at 7.) Finally, Apple argues that Dr. Reed-Arthurs "admitted that she had never used the type of survey she conducted . . . to value patents outside of litigation." (*Id*.)

Optis believes Apple's argument is an attempted post-trial *Daubert* attack on Optis's methodology. (Dkt. No. 706 at 5.) Optis maintains that Mr. Kennedy's survey approach was an "independent source" of substantial evidence to support the verdict as an alternative to his infrastructure approach. (Dkt. No. 707 at 10–11.) Optis also notes that Apple has previously used the same type of survey it now criticizes. (Dkt. No. 706 at 5.) Optis states that the Court has previously held that a general verdict will be upheld if there is sufficient evidence to support *any* of the factual theories of the case. (Dkt. No. 707 at 11.) Optis contends that the evidence "demonstrates that Apple priced its faster iPhones high[er] than its slower iPhones" and that

Apple's customers place "value" on an increase in connectivity speed. (*Id*. at 11–12; *see also* Dkt. No. 706 at 6.) Optis states that Mr. Kennedy's infrastructure approach yielded an apportioned value of $7.99 per phone, and the survey approach resulted in an apportioned value of $8.49 per phone. (Dkt. No. 707 at 11–12.) Accordingly, the jury was free to credit either approach, and they were also free to credit (or not credit) Dr. Reed-Arthurs's testimony about the pricing methodology upon which Mr. Kennedy relied. (*Id*. at 11–12; *see also* Dkt. No. 706 at 5.) As with Apple's objections regarding Dr. Kennedy's infrastructure approach, Optis contends that Apple's objection to the survey approach is merely a "late *Daubert* attack against methodology that Apple has already raised and has already been rejected, or has been waived by not being brought at the proper time." (Dkt. No. 707 at 11.)

Apple again argues that a "challenge to sufficiency of evidence" to support a verdict is "separate from a *Daubert* challenge." (Dkt. No. 711 at 2.) Apple also contends that Optis did not base its damages calculation on this approach and therefore the approach cannot support any verdict. (*Id*. at 4.) Further, Apple argues that Optis's conclusion that Apple priced fast phones higher than slower phones was erroneous because "the record shows that Apple regularly drops price of older models when introducing a new one." (*Id*.) Relatedly, Apple contends that both LTE and non-LTE phones had the same price when launched—it was only after launch of a new model that Apple would decrease the price of an older model. (Dkt. No. 710 at 3.) Finally, Apple repeats the argument that Dr. Reed-Arthurs's survey was "never used in the real-world" and was based on "hypothetical products," but contends that its own expert, Dr. Perryman, used a "widely accepted" methodology that should have been credited. (Dkt. No. 711 at 5; *see also* Dkt. No. 710 at 2–3.)

Optis first responds that Dr. Reed-Arthurs explained to the jury that the price comparisons of the LTE and non-LTE phone models must be done at the same point in time, and cannot be

based on their launch prices at different points in time. (Dkt. No. 717 at 3.) Optis argues more generally that Apple cross-examined Dr. Reed-Arthurs on the survey upon which Mr. Kennedy relied and that the jury was entitled to weigh the testimony of Dr. Reed-Arthurs, Mr. Kennedy, and all supporting documentation and competing testimony from Dr. Perryman, in evaluating the survey approach. (Dkt. No. 716 at 4–5.)

As this Court has previously held, it is improper to use a JMOL motion—or a motion for new trial—as a renewed *Daubert* challenge. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*, 2016 WL 362540, at *3–4 (E.D. Tex. Jan. 29, 2016). As with Mr. Kennedy's infrastructure approach *supra*, the Court finds that Apple's attack on Mr. Kennedy's survey approach was already rejected by the Court at the *Daubert* stage. (*See* Dkt. No. 438 at 27:23–28:11.) Accordingly, Apple's arguments related to the reliability of Mr. Kennedy's methodology are again rejected on the same grounds. *Versata,* 717 F.3d at 1264.

### iv.  JMOL and New Trial: Mr. Kennedy's Reliance on Qualcomm Agreements

Apple contends that Mr. Kennedy's reliance on Apple's agreements with Qualcomm was prejudicial and irrelevant because those agreements totaled ██████ and ████████ ███████████ in this case. (Dkt. No. 700 at 8.) Apple also argues that the agreements between Apple and Qualcomm were excluded in another case for the same reason. (Dkt. No. 699 at 7.) Apple argues that the agreements are not relevant because (1) ██████ ████████████ (compared to the five at issue here), (2) the licenses were ███████ ████████, (3) the agreements also ██████████████████, and (4) the licenses ██████ ██████████████████████████. (Dkt. No. 700 at 9–12; *see also* Dkt. No. 699 at 8.) Apple states that Mr. Kennedy merely referred to these agreements as "important" and "relevant," which did not demonstrate that they were comparable.

13

(Dkt. No. 699 at 7.) Apple also alleges that comparable licenses *did* exist, but that Mr. Kennedy did not opine on them. (Dkt. No. 700 at 13.)

Optis argues that this Court has previously held that the Qualcomm agreements are properly before the jury and already rejected this argument when it denied Apple's *Daubert* motion and a motion *in limine* ("MIL") on the same issue. (Dkt. No. 706 at 6; *see also* Dkt. No. 707 at 13 (citing Dkt. No. 455 at 7; Dkt. No. 668 at 10).) Optis clarifies that ███████████████████ ████████████████████████████████████████████ (Dkt. No. 707 at 14.) According to Optis, Mr. Kennedy relied on ███████████████████████ ██████████████████████ (2) to rebut Apple's position that ██████████ █████████████████████████████████ and (3) to "call[]" into doubt the royalty stack theory upon which Apple" based its damages case. (Dkt. No. 707 at 14; *see also* Dkt. No. 706 at 6–7.) Specifically, Optis contends that Mr. Kennedy ████████████ ████████████████████████ (Dkt. No. 707 at 15.) Optis argues that Mr. Kennedy used ████████████████████████ ██████████████████████, ████████████████████████████ ███████████ to the rate he calculated in this case. (*Id*. at 15–16.) Moreover, Optis contends that Mr. Kennedy used the same methodology that Apple's own expert used to determine a per-patent rate in another case. (*Id*. at 16.) Optis emphasizes that Mr. Kennedy did not use the ██████████ ████████████████████████ (*Id*. at 17.) Instead, he used the █████████ as a "check" on his own calculation based on the "relevance and comparability" ████████████████ which the jury was free to evaluate. (*Id*. at 18.) Optis contends that Mr. Kennedy's use of the Qualcomm agreements was justified by their ██████████ █████████████████████████████████████████████████

███████ (Dkt. No. 706 at 7.) Finally, Optis notes that Apple cross-examined Mr. Kennedy on the agreements and the jury was free to weigh that testimony. (*Id*. at 7–8.) Optis clarifies that this cross-examination did not contain any questions about the relevance of the Qualcomm agreements. (Dkt. No. 707 at 13.)

In response, Apple reiterates that the Qualcomm agreements were "wholly irrelevant and noncomparable in every aspect" for which Optis used them. (Dkt. No. 711 at 5.) Apple also argues that Mr. Kennedy "never testified ████████████████████████ ███████████████ and contends that it was not Apple's duty to cross examine Mr. Kennedy on the relevance of the agreements because it is "Plaintiffs' burden to factually establish damages" and the "comparability of licenses." (*Id*.) Apple also contends that although both parties introduced license agreements, it was only *Optis* that introduced ██████████████ ██████████████████ (Dkt. No. 710 at 3.) According to Apple, this was prejudicial because it was the "focus" of Optis's damages case. (*Id*.) Apple also argues that if Optis only ████████████████████████████████████████████ ██████████████ (*Id*.) Apple maintains that Optis's introduction of the Qualcomm agreements "skew[ed] the damages horizon ████████████████████████ even despite the fact that Apple's objection did not mention the entire market value rule. (*Id*.)

Optis contends that Apple itself introduced a "large number of ████████████" that its own expert admitted were not comparable or ████████████████ and argues that Apple "cannot credibly argue that its own behavior was justified" and move for a new trial based on the same behavior by Optis. (Dkt. No. 716 at 5; Dkt. No. 717 at 3.) Optis argues that, in contrast, the evidence shows that the ████████████████████████████████ ███████ (Dkt. No. 716 at 5.) Moreover, Optis cites Federal Circuit precedent holding that "licenses

relied on by a patentee in proving damages need only be 'sufficiently comparable.'" (*Id.* (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)).) Optis repeats that Mr. Kennedy ███████████████████████████████████████████████████ ████████████████████████████████████████████████ (Dkt. No. 716 at 6.) Indeed, Optis argues that Mr. Kennedy used the ███████████████████ ████████████ is the proper way to license SEPs." (Dkt. No. 717 at 3.)

The Court has already held that the Qualcomm agreements were properly before the jury. (*See, e.g.*, Dkt. No. 455 at 7.) Mr. Kennedy explained to the jury his reliance on the Qualcomm agreements and ███████████████████████████████████████████ (*See, e.g.*, Dkt. No. 692 at 175:21–176:3, 177:21–178:21, 179:7–180:17, 180:22–181:15, 234:4–235:11.) Apple cross-examined Mr. Kennedy on the agreements, but Optis argues that this cross-examination did not contain any questions about the relevance of the Qualcomm agreements. (Dkt. No. 707 at 7–8, 13.) Moreover, Apple's damages expert, Dr. Perryman, provided his own opinions on the Qualcomm agreements and Mr. Kennedy's testimony on the same. (*See, e.g.*, Dkt. No. 693 at 168:2–20.) The jury was entitled to weigh all the evidence presented at trial and decide which evidence it found to be most credible. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010). After such evaluation, the jury found for Optis. The Court does not find that no reasonable jury could have relied upon Mr. Kennedy's analysis of ███████████████ █████████████████████████. Where a jury is presented with two conflicting positions at trial and there is reasonable evidence and argument to support both positions, the fact that the jury ultimately sided with one party over the other does not support entry of JMOL and does not support granting a new trial. Making such decisions is, in fact, the essence of the jury trial system.

###### v.   *JMOL and New Trial: Mr. Kennedy's Bargaining Share Analysis*

Mr. Kennedy opined that Optis would have captured ██████ of Apple's purported profits from infringement, which Apple argues was not tied to the facts of the case and should have been excluded. (Dkt. No. 699 at 9.) Apple contends that Mr. Kennedy's "bargaining share analysis" was not tied to the facts of this case because it was based on ███████████████████████ to which Apple was not a party. (Dkt. No. 700 at 14–15.) Apple also alleges that Mr. Kennedy "admitted" that none of Optis's licenses were comparable to the hypothetical negotiation, but still used those licenses to determine an agreed profit split. (Dkt. No. 699 at 9.) Apple contends that Mr. Kennedy's analysis was not "already apportion[ed]" to the value of the asserted patents because the baseline reflected "thousands of LTE patents." (Dkt. No. 710 at 3.) Apple also argues that Optis did not offer evidence that the ████████████████ would "inform a profit split with Apple" or "why ██████████ would be similarly situated to Apple." (Dkt. No. 710 at 3; Dkt. No. 711 at 7.)

Optis contends that Apple's argument "misrepresent[s] the trial record to the Court." (Dkt. No. 707 at 19.) Optis also argues that this is simply "another rehash" of Apple's *Daubert* arguments, which the Court denied. (Dkt. No. 706 at 8.) Specifically, Optis contends that "Mr. Kennedy's damages analysis already apportions down to the technical value" of the asserted patents and, "to be conservative," and without any obligation to do so, Mr. Kennedy applied a further discount based on a review of PanOptis' negotiation history with, for example, ██████ ██████. (*Id; see also* Dkt. No. 707 at 18–19.) Optis also contends that Mr. Kennedy fully explained how he reached the ████████████████████████████████████████ ████████████████████████████████ (Dkt. No. 707 at 19.) According to Optis, Mr.

Kennedy considered this as evidence of PanOptis's negotiation behavior, and not as an indication of the reasonable royalty. (*Id*.) Optis also contends that Mr. Kennedy explained to the jury why the ███████████ bargaining splits, as demonstrated by exhibits on the record, would "inform Plaintiffs' behavior in a hypothetical negotiation with Apple." (Dkt. No. 716 at 6; Dkt. No. 717 at 3.)

The Court finds that Mr. Kennedy's bargaining share conclusion is supported by substantial evidence and does not warrant a new trial. Mr. Kennedy properly explained the basis for his bargaining share analysis to the jury, including his opinion that reliance on the ███████████ ███████ "reflects PanOptis'[s] past negotiation behavior and the likely behavior in a hypothetical negotiation." (Dkt. No. 707 at 19 (citing Dkt. No. 692 at 172:22–173:19, 174:22–175:1).) Apple's post-verdict critique of Mr. Kennedy's bargaining share analysis is once again an untimely *Daubert* attack that has already been rejected by this Court. (*See* Dkt. No. 438 at 27:23–28:11.)

### vi.  JMOL and New Trial: LTE Standard

Apple argues that Optis improperly attempted to "capture the value of the whole LTE standard, notwithstanding that the value of [LTE] standardization comes from thousands of technology contributions." (Dkt. No. 700 at 16; *see also* Dkt. No. 699 at 3.) According to Apple, its expert Dr. Perryman testified that thousands of other patents have been declared essential to LTE, but that Optis did not consider those in its apportionment. (Dkt. No. 700 at 16; *see also* Dkt. No. 699 at 3.) Based on this, Apple contends that Optis did not apportion between the value of the asserted patents and the value of the standard, nor did Optis apportion the supposed contributions of the asserted patents to LTE compared to the contributions of others to LTE. (Dkt. No. 700 at

16.) Apple argues that Optis repeatedly referred to speed and price differences of Apple's LTE products over other LTE devices without attributing those differences to the asserted patents. (*Id*.)

Optis contends that this is another untimely *Daubert* attack which Apple has waived. (Dkt. No. 706 at 3.) Optis also argues that Mr. Kennedy's damages analysis was apportioned to the technical benefit of the asserted patents because it relied on Dr. Mahon's and Dr. Madisetti's analyses, which were based on "the incremental increase in network performance achieved by the patented technology when all other aspects of the network are kept the same and the next best non-infringing alternative is used instead of the patented technology," without taking into account "any value added by the standardization of that technology." (Dkt. No. 707 at 20; *see also* Dkt. No. 706 at 3.) Optis also contends that Mr. Kennedy's damages opinions "were only based on the incremental benefits of the patents-in-suit (*i.e*., increases in upload and download speed), and any references to the value of LTE were made with respect to LTE speed." (Dkt. No. 707 at 4; *see also id*. at 20.) Optis maintains that Mr. Kennedy never considered the value of standardization to the patents in any stage of the analysis. (*Id*. at 20.) Further, Optis contends that when Dr. Mahon referred to the "download speed" of the iPhone in terms of "more LTE," he was referring to the fact that Apple uses and demands higher speed data. (*Id*. at 21–22.) Optis claims that Apple did not present any contrary evidence. (*Id*. at 22.) Optis finally argues that Apple allowed this testimony to continue at trial "without objection" and thus waived any argument for a new trial on this basis. (*Id*. at 4.)

In response, Apple criticizes Optis for not considering the value of standardization to the patents, arguing that this did not excuse Optis from apportioning because the baseline from which Optis "measured performance encompasses contributes from thousands of other LTE patents that Plaintiffs' experts ignored." (Dkt. No. 711 at 7; *see also* Dkt. No. 710 at 2.) Apple also contends

19

that Optis offered "no evidence that Apple's LTE devices' speed gains over other LTE devices (all of which would use the same LTE SEPs) can be attributed to" the asserted patents. (Dkt. No. 711 at 7–8.) Apple argues that it preserved this argument by seeking to exclude such evidence in its MILs and obtaining a running objection on the topic. (Dkt. No. 710 at 2.)

Optis states that "Mr. Kennedy's analysis ensured that the damages in this case did not award to Plaintiffs any of the value associated with standardization" and thus his analysis was apportioned to the "*ex ante* technical benefit" of the asserted patents based on expert analyses of the "incremental increase in network performance achieved by the patented technology." (Dkt. No. 716 at 6–7.) Optis argues that because Mr. Kennedy never included the value of standardization in his calculation to begin with, there was no need to later apportion it out. (Dkt. No. 717 at 2.) Optis also contends that Apple was wrong to assert that Optis offered no evidence that "Apple's LTE devices' speed gains are attributed to" the asserted patents and points to testimony explaining such evidence. (Dkt. No. 716 at 7 (citing Dkt. No. 691 at 249:6–13, 254:2–12; Dkt. No. 692 at 26:25–27:7, 35:3–8, 43:10–15).)

*Ericsson* mandates that "[w]hen the accused infringing products have both patented and unpatented features, . . . [t]he essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Here, Optis contends that Dr. Madisetti and Dr. Mahon "examined the incremental value that the patented invention adds to Apple's products, *e.g.*, the improvement in speed to Apple's products, as opposed to other (non-comparable) products" and, based on such incremental value, Mr. Kennedy computed damages that did not include "any value added by the standardization of that technology." (Dkt. No. 706 at 3 (quotations omitted).) As a result, Mr. Kennedy did as *Ericsson* instructs: he calculated a "royalty

for SEPs" that "reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization." *Ericsson*, 773 F.3d at 1233.

The Court finds that the jury had sufficient evidence and explanation of Mr. Kennedy's apportionment analysis and Apple's arguments to the contrary do not warrant a new trial.

### vii.    JMOL and New Trial: References to Apple's Share of Total Cellular Profits

Apple alleges that Optis "improperly referred repeatedly—over Apple's objections—" to Apple's profits across the cellular industry, which amounted to approximately ▮ of the entire industry. (Dkt. No. 699 at 2.) Apple argues that such evidence suggested to the jury that Apple should disgorge its profits, which was not an available remedy. (*Id.*; *see also* Dkt. No. 700 at 17–18.) Apple also argues that Optis failed to establish any nexus between Apple's share of profits in the cellular industry and the LTE capabilities of its products and thus did not show that the patented features drove any industry-wide profitability. (Dkt. No. 700 at 18–19; *see also* Dkt. No. 699 at 3.) Apple argues that focusing on Apple's share of the cellular market was prejudicial because it improperly suggested that Apple should pay more because its devices are more profitable than the competition. (Dkt. No. 700 at 19.)

Optis contends that Apple's argument regarding Apple's share of cellular profits has been waived because Apple did not object when testimony about Apple's share of profits was presented to the jury. (Dkt. No. 707 at 4.) Optis also argues that Apple requested the retrial to calculate a FRAND rate, the non-discrimination prong of which requires that "similarly situated" companies get "similar licensing terms." (Dkt. No. 706 at 2.) Thus, Optis contends that evidence showing Apple's "huge presence in the market" and "overall size" puts them in a "different posture than other parties" for purposes of the FRAND analysis. (*Id.*) Optis also points out that Apple repeatedly introduced Samsung's position and size within the industry when cross-examining Optis's

21

witnesses to "attempt to make a false comparison between Apple and Samsung" and argue that Apple is "similarly situated" to Samsung for purposes of determining a FRAND royalty. (Dkt. No. 707 at 23.) Optis contends that "Apple's place in the market and, specifically, how Apple is situated with respect to Samsung, is directly relevant to the FRAND royalty here because Apple has repeatedly argued that it should be treated identically to Samsung." (*Id*. at 24.) Optis argues that to counter the unit sales comparisons between Apple and Samsung, Optis properly raised the profitability comparison, to which Apple did not object during trial. (Dkt. No. 706 at 2–3.) Optis essentially points out that Apple opened this door by its injection of Samsung's size and position into this trial. Finally, in response to Apple's argument that evidence regarding its share of the market is discriminatory because it implies that Apple should pay more due to the profitability of its products, Optis contends that the Fifth Circuit has rejected this argument as "transform[ing] the non-discrimination element of FRAND into a most-favored licensee approach." (Dkt. No. 707 at 24 (citing *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 486 (5th Cir. 2021).)

Apple argues that the *HTC* case is inapposite because in a patent damages case involving FRAND, the royalty "must be based on the incremental value of the invention" and not based on the relative situations of the parties. (Dkt. No. 711 at 8.) Apple also argues that even if some evidence "as to whether Apple is similarly situated to other firms" might be relevant, Optis cannot use that as a "backdoor to promote (and rely on) irrelevant, discriminatory, and unduly prejudicial revenue and/or profit numbers" that have been previously found inadmissible. (*Id*.) Apple further contends that it preserved its argument by seeking to exclude references to its profits through MILs and a running objection, thus arguing that it did not need to object to such testimony during trial. (Dkt. No. 710 at 1.) Nevertheless, Apple argues that it *did* object to certain of Mr. Kennedy's testimony on the topic when accompanied by certain slides. (*Id*.)

Optis argues that Apple does not dispute that "evidence as to whether Apple is similarly situated as to others in the industry" is relevant to a FRAND analysis. (Dkt. No. 716 at 7.) Optis contends this is especially true in light of Apple's repeated comparisons to Samsung during the trial. Optis criticizes Apple for asserting that "the number of LTE products it sells as compared to Samsung is relevant to a FRAND license, but its profitability in selling those products as compared to Samsung is somehow irrelevant to a FRAND license." (*Id.* at 8.) Optis argues that Apple's comparisons to Samsung in terms of unit sales opened the door to Optis's discussion of Apple's relative profits. (*Id.*) Thus, Optis maintains that "Apple cannot credibly argue it was prejudiced by evidence it chose to affirmatively introduce on cross-examination with Plaintiffs' first witness." (Dkt. No. 717 at 1.) Optis also argues that Apple's running objection tied to Apple's MIL 8 did not relate to Apple's comparable profitability in the industry, but only to Apple's overall pricing of, and profits from, cellular technology as a whole. (*Id.*)

The Court agrees with Optis that "Apple cannot credibly argue it was prejudiced by evidence [of relative unit sales] it chose to affirmatively introduce on cross-examination with Plaintiffs' first witness." (Dkt. No. 717 at 1.) The non-discrimination prong of FRAND, as Apple's own expert testified, requires analysis of "similarly situated, similar companies." (Dkt. No. 693 at 135:9–13.) Apple introduced relative unit sales between itself and Samsung throughout trial, both on direct and cross-examination, in an attempt to argue that Apple is "similarly situated" to Samsung. (*See, e.g.*, Dkt. No. 691 at 188:18–24, 191:2–6; Dkt. No. 692 at 185:10–14; Dkt. No. 694 at 70:2–9.) Optis was permitted to rebut this testimony with evidence of relative profits based on those relative unit sales. Moreover, as to Apple's concern that such evidence "suggested" to the jury that Apple should disgorge its profits (Dkt. No. 699 at 2; Dkt. No. 700 at 17–18), the jury was properly instructed on the applicable law and a "jury is presumed to follow the [C]ourt's

23

instructions." *Datatreasury Corp. v. Wells Fargo & Co*., 2010 U.S. Dist. LEXIS 143587, at \*15 (E.D. Tex. Sep. 27, 2010). The Court thus finds that substantial evidence exists supporting the jury's verdict Apple's and arguments regarding its share of total profits in the cellular industry do not compel setting aside the jury's verdict and granting a new trial.

### viii.    JMOL: Evidence of Actual Infringing Use of Method Claims

Apple argues that as to method claims 14 and 27 of the '284 patent, claim 10 of the '557 patent, and claim 6 of the '774 patent, Optis failed to prove the extent of actual infringing use in the United States. (Dkt. No. 700 at 20.)

In response, Optis first argues that Apple waived this argument by not seeking a jury instruction on infringing use of method claims. (Dkt. No. 707 at 25; *see also* Dkt. No. 716 at 8.) Optis also contends that the Court has already determined that Optis offered substantial evidence of infringing use of each method claim during the first trial and, since damages can be based upon sales of devices, there was no need for Optis to present its infringing use evidence again at the damages retrial. (Dkt. No. 707 at 25.)

Apple contends that the Court's prior rulings were "silent on the *extent* of infringing use." (Dkt. No. 711 at 9) (emphasis in original). Apple also argued that it did not waive this argument because it related to sufficiency of the evidence presented and was raised in Apple's Rule 50(a) motion. (*Id*.)

Apple did not seek a jury instruction regarding infringing use of method claims. (Dkt. No. 707 at 25 (citing Dkt. No. 677).) Moreover, the Court has already found that Optis offered substantial evidence of infringing use of each method claim at the first trial. (*See* Dkt. No. 667 at 8–9, 15, 20–21.) As the second trial was one for damages only, Optis was not required to rehash its infringement arguments before the jury. Despite this, Optis's experts opined on infringement

24

of each asserted claim. (*See, e.g.*, Dkt. No. 691 at 236:10–14, 240:20–241:19, 251:16–19; Dkt. No. 692 at 35:11–13, 41:16–42:6, 43:12–15.) Taken together, along with the verdict form and jury instructions, which informed the jury that the "patents-in-suit are valid and infringed," (Dkt. No. 706 at 1 (citing Dkt. No. 677 at 11, 22)), the Court finds that the jury was presented with substantial evidence of infringement sufficient to support its damages calculation.

### ix.  JMOL: Performance Benefits Analysis

Apple claims the opinions of Dr. Madisetti and Dr. Mahon regarding the performance benefits that the asserted patents provide (over the closest non-infringing alternatives) are unreliable, and it contends that on this basis, Optis's entire damages case collapses. (Dkt. No. 700 at 20–21.) Specifically, Apple contends that the testing evidence presented by Dr. Madisetti and Dr. Mahon was "based on unreliable data and analysis from Mr. Royer and TechPats, who destroyed key calibration data, . . . performed testing in one location not representative of the United States as a whole, . . . and provided data shown to be uncredible on cross examination." (*Id*. at 21.) Apple also contends that simulations performed by Dr. Virdis, on which Dr. Madisetti relied, did not reflect real-world conditions. (*Id*.) As a result, Apple contends that the jury could not credit Optis's testing and simulation evidence and therefore that any damages opinions or benefit analyses relying on those calculations should fail. (*Id*.; *see also generally id*. at 21–28.) Apple also argues that the testimony cited on this point by Optis was "conclusory" and insufficient to support the verdict in this case. (Dkt. No. 711 at 9–10.)

Optis argues that Apple chose not to call any technical experts or fact witnesses at trial to contradict any of Optis's conclusions on this topic, waiving any objections to such testimony. (Dkt. No. 707 at 25.) Further, Optis contends that "if Apple believed that it was necessary to explore data underlying those opinions, Apple had the obligation to cross-examine each expert on that

evidence." (*Id*. at 26.) Apple did not do so. (*Id*.) Optis also argues that its experts explained each of the simulations they ran, as well as similar simulations that they used as checks on their results. (*Id*. at 26–30.)

The Court agrees with Optis that, if Apple "believed that it was necessary to explore data underlying" the opinions of Optis's experts, Apple should have cross-examined Optis's experts, or called its own technical or fact witnesses to rebut the testimony of Optis's witnesses. Also, Optis is correct that there was no order from this Court requiring either Dr. Mahon or Dr. Madisetti to "testify to all the underlying facts or data" upon which they based their opinions pursuant to Federal Rule of Evidence 705. (Dkt. No. 707 at 26.) This squarely placed the burden upon Apple to cross-examine Optis's experts on their performance and technical benefits analyses, but Apple failed to meet that burden. Thus, the testimony of Optis's experts on the topic was unrebutted, and the jury had sufficient evidence on the topic to consider. To the extent Apple's arguments are another of its renewed *Daubert* attacks on the methodologies of Optis's experts, Apple's arguments are also rejected as improper. *Rembrandt Wireless*, 2016 WL 362540, at *3–4.

### x.   JMOL: $300 Million Award

Apple argues that the $300 million damages number did not appear in the record and is not "based in reality," arguing instead that the record included ███████████████████████████ ██████████████████████████. (Dkt. No. 700 at 28.) Apple also points out that while the jury did not accept Optis's theory as to the original $506 million damages ask, their ultimate $300 million calculation was unsupported by the record. (*Id*. at 28–29.)

Optis contend that Apple's argument here has been waived because Apple did not raise it in its 50(a) motion. (Dkt. No. 707 at 5 (citing *Arsement v. Spinnaker Expl. Co*., 400 F.3d 238, 247 (5th Cir. 2005) ("If a party fails to raise an issue in its Rule 50(a)(1) motions at trial, it may not do

so in its post-trial Rule 50(b) motion.")).) Optis also argues that the jury did not have to award *either* party's damages figure but could "substitute an intermediate figure as a matter of its judgment from all of the evidence." (*Id*. at 30 (quoting *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 926 F.2d 1161, 1167–68 (Fed. Cir. 1991)).) In response to Apple's argument that the ▉▉▉▉▉▉▉ should have been used to calculate the jury's award, Optis argues that ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, rather than the "fully paid-up lump sum that the jury awarded here," and ignored the fact that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Dkt. No. 707 at 30.)

Apple counters that Optis "fail[s] to identify a single flaw" in its expert Dr. Perryman's figures, and as such *his* was the only figure supported by the evidence. (Dkt. No. 711 at 10.) Apple also argues that the jury verdict issued the day after Apple presented its Rule 50(a) motion and thus could not have been presented in such motion. (*Id*. at n.10.)

Optis argues that at the damages retrial, Apple elected not to call any experts to challenge Dr. Mahon's and Dr. Madisetti's conclusions about technical value and it has waived any argument against the weight of their testimony. (Dkt. No. 716 at 9.) Optis contends that even if Apple could not have raised the argument in their 50(a) motion, it should have been raised in its motion for a new trial. (*Id*. at 10.)

Apple's main argument against the ultimate damages award is that the "number cannot be found anywhere in the trial record," *i.e.*, in the testimony of Optis's experts, or in comparable licenses. (Dkt. No. 700 at 28.) However, in many cases, the factual determination of a reasonable royalty is not supported by the specific figures advanced by either party's damages expert and the jury is free to substitute a figure "as a matter of its judgment from all of the evidence." *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1328 (Fed. Cir. 2014) (citing *SmithKline*, 926 F.2d at 1167–68.)

27

Here, Optis asked the jury to award damages of $506 million in the form of a running royalty. (*See, e.g.*, Dkt. No. 694 at 90:24–91:5.) Apple, on the other hand, alleges that ██████████ ████████████████████████████████████████████████████████████████████████ ██████ (Dkt. No. 700 at 28 (citing Dkt. No. 692 at 203:13–206:12.) The jury ultimately awarded $300 million in damages—a number between those separately advanced by the parties. As discussed above, the Court finds that substantial evidence supports the jury's verdict. Having considered all the record evidence, the Court concludes that the jury reached a reasoned and supportable decision and declines to disturb the jury's judgment.

### *xi.   New Trial:* ████████████████████████

Apple stated that its MIL 4, which the Court rejected, sought to preclude reference to ██ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. (Dkt. No. 699 at 10.) Apple argues that such evidence and testimony should have been excluded because (1) ██ ████████████████████████████ were "irrelevant to the jury's sole task of determining a FRAND royalty based on a 2012 hypothetical negotiation," (2) ████████████████████ ████████████████████ was irrelevant, and (3) the use of such information ██████████ ████████████████████████████████. (*Id.* at 11.) Apple argues that ████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.*)

Optis responds that ████████████████████████████████████ ████████████████████████████████ (Dkt. No. 706 at 8.) Optis contends that Apple ████████████████████████████████. (*Id.* at

9.) Optis maintains that Apple "cannot seek a new trial based on evidence it sought to introduce." (*Id*.) Additionally, Optis argues that ███████████████████████████████████ █████████████████, which is relevant to the FRAND issue. (*Id*.) Optis also notes that the Court's instruction to the jury to assume that both parties were willing to enter into an agreement, as well as the Court's instruction that their damages award should not "punish" the alleged infringer, should be credited as "obviating Apple's concern for prejudice." (*Id*. at 9–10.)

Before trial, Apple stated that ██████████████████████████ ████████████████████████████████████████████████████████ ████████ (Dkt. No. 710 at 3) (quotations omitted). Apple contends that it repeatedly raised this position at the pretrial conference and before trial, where the Court granted a running objection. (*Id*. at 4.) Apple argues that it was *Optis* who opened the door to this testimony over Apple's objection. (*Id*.) In contrast, Optis maintains that Apple stated "unequivocally" that █████████ ████████████████████████████████████████████████████████ ██████████████████████. (Dkt. No. 717 at 4.)

Apple is correct that the Court denied Apple's MIL 4 which sought to ███████████ ███████████████████████████████████████. (Dkt. No. 633 at 4–5.) In doing so, the Court found that in relation to the FRAND issue, ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (Dkt. No. 651 at 75:21–76:26.) Based on the denial of its MIL 4, Apple stated that ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



(Dkt. No. 706 at 8–9 (citing Dkt. No. 691 at 217:2–12; Dkt. No. 692 at 302:15–304:25).) "[O]ne waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself." *Manderson v. Chet Morrison Contractors, Inc*., 666 F.3d 373, 380–81 (5th Cir. 2012).

This Court allowed ████████████████████████████████████████

████████████████████████████████████████████████████████████. (*See, e.g.,* Dkt. No. 706 at 8–9.) Apple's concern that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ (Dkt. No. 699 at 11) was obviated by the Court's instruction to the jury to assume that both parties were willing to enter into an agreement, as well as the Court's instruction that their damages award should not "punish" the alleged infringer. The "jury is presumed to [have] follow[ed] the [C]ourt's instructions." *Datatreasury*, 2010 U.S. Dist. LEXIS 143587, at *15. The Court finds that any reference to the parties' negotiation history was not so prejudicial as to warrant a new trial.

### *xii.   New Trial: Exclusion of Prior Art Evidence*

Apple contends that it sought to show the technical value of the claimed features by presenting evidence that the claimed features were already known, but argued that the Court's grant of Optis's MIL 12 excluded such evidence as "inviting a retrial as to invalidity." (Dkt. No. 699 at 11.) Apple argues that this ruling prohibited Apple from showing how small the

improvement was of the asserted patents, which it contends is directly relevant to *Georgia-Pacific* factor 9 regarding utility and advantages over old modes. (*Id*. at 12.)

Optis argues that whether individual elements of a claim are known in the art is irrelevant to the damages analysis. (Dkt No. 706 at 10.) Optis also notes that Apple was not excluded from introducing prior art or evidence relevant to *Georgia-Pacific* factor 9, but only theories of non-infringement or invalidity. (*Id*.) Moreover, Optis maintains that Apple chose not to bring its technical experts to trial, nor did it seek to cross-examine Dr. Madisetti on prior art. (*Id*. at 11.) Optis argues that it was Apple's decision, not the Court's, not to elicit testimony on the "purported state of the art," thus waiving any objection by Apple. (*Id*.)

Apple specifically contends that the Court improperly excluded its allegedly prior art exhibit, DX-171, in a chambers conference based on its previous grant of Optis's MIL 12. (Dkt. No. 710 at 4.) In contrast, Optis argues that the "record is clear" that the Court left the door open for Apple introduce the exhibit it contends the Court "excluded," and Optis also notes that the Court never granted Optis's written motion to exclude the same. (Dkt. No. 717 at 4.) Thus, Optis contends that it was Apple's choice not to introduce DX-171. (*Id*.)

The Court did not exclude exhibit DX-171 from the case. Rather, DX-171 was admitted in the original trial and thus pre-admitted in the damages retrial. (*See generally* Dkt. 651 at 131:14–138:5 ("DX-171 is in this trial.").) When it took up Optis's MIL 3, the Court recognized that "there are exhibits that were pre-admitted and used in the prior trial that were used for purposes that don't relate to damages" and "would relate solely to issues that have already been tried and decided and would not relate to the damages issue." (*Id*. at 136:1–22.) Optis's MIL 12, in contrast, sought to exclude "technical benefit analyses that assume non-infringement or invalidity." (Dkt. No. 634 at 10–11.) At the pretrial conference, Optis argued that Apple "convert[ed] its non-

infringement and invalidity defenses," which were "rejected" in the first trial, "into damages defenses" at retrial. (Dkt. No. 651 at 37:1–38:13.) The Court granted this MIL to prevent "a retrial as to invalidity." (*Id.* at 40:11–14.) In doing so, the Court noted that it was "not an absolute prohibition" on seeking leave to present "targeted" technical testimony or evidence on the topic. (*Id.*)

The Court's grant of Optis's MIL 12 did not exclude evidence related to prior art or *Georgia-Pacific* factor 9 which would establish the technical value of the claimed features. In fact, the Court expressly accounted for the possibility that certain testimony about prior art would be relevant and useful, and stated that the Court would grant leave if were warranted. (*Id.*) However, Apple chose not to bring technical experts to the retrial, nor did it seek leave from the Court to present any testimony regarding prior art. Apple cannot now seek a new trial based on evidence that was never excluded and regarding which Apple never sought leave from the Court to present to the jury. Apple's argument does not compel granting a new trial.

### xiii.   New Trial: Exclusion of Component Licensing Evidence

Apple contends it was improperly barred from offering evidence that LTE SEPs are licensed at the baseband processor level, including evidence that 

. (Dkt. No. 699 at 12.) Apple contends that at the MIL stage, the Court "wrongly assumed" this evidence was related to exhaustion, but argues that it was separately relevant to show

. (*Id.*; *see also* Dkt. No. 710 at 4.) This impacted a "key" disputed issue of whether the baseband processor was the smallest saleable patent-practicing unit. (Dkt. No. 699 at 12–13.)

Optis argues that exhaustion-related evidence was properly excluded, but that no component licensing evidence was excluded. (Dkt. No. 706 at 11.) Instead, Optis contends that the Court excluded ███████████████████████████████████████████████████████████ ████████████████████████████████████████ (*Id*. at 11–12.) As to the component licensing evidence, Optis argues that the "Court never ruled on this issue" and as such, no evidence was excluded. (*Id*. at 12.) Optis also contends that Apple's expert, Dr. Perryman, only discussed component licenses with respect to exhaustion in his report, and thus could not have even introduced such licenses at trial with respect to component licensing. (Dkt. No. 717 at 4.)

At the pretrial stage, the Court granted Optis's MIL 8, which precluded Apple from referencing ███████████████████████████████████████████████████████ ████████████████████████████████████████. (*See generally* Dkt. No. 634 at 7; *see also* Dkt. No. 651 at 35:15–18 ("In my view, exhaustion is a defense to liability and not a defense or a limitation on damages. This wasn't tried at the first case. I see no need to get into it in this damages retrial.").) The Court's ruling on Optis's MIL 8 did not exclude "evidence that LTE SEPs are licensed at the baseband processor level." (Dkt. No. 699 at 12.) Apple argues that ███████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ (*Id*.) The Court never ruled on evidence of component licensing separate from exhaustion issues, and thus Apple was not precluded from presenting such evidence at trial. Apple's argument does not support granting a new trial.

### xiv.   New Trial: Prior Infringement Jury Instructions

Apple contends that the Court's instruction that Apple had previously been "found" to infringe, without curative instruction that Optis's references to Apple's infringement were

improper, was prejudicial. (Dkt. No. 699 at 13.) Instead, Apple argued that the jury only needed to be instructed on a hypothetical negotiation. (*Id.*)

Optis responds that the Court's instruction was "legally and factually correct" and that the Court previously denied Apple's request that the jury be instructed to merely "assume" infringement and validity. (Dkt. No. 706 at 12–13.)

However, Apple contends that the standard jury instruction to "assume" validity and infringement was sufficient and should have been used. (Dkt. No. 710 at 4.) Apple argues that Optis did not explain why the standard instruction was inadequate. (*Id.*)

Optis contends that instructing on the previous finding of infringement was "mandated" by Federal Circuit precedent. (Dkt. No. 717 at 5 (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330–33 (Fed. Cir. 2013)).)

Damages may only be awarded upon a finding of infringement. Thus, in a retrial on damages issues only, an instruction that Apple was previously found to infringe the asserted patents is proper. Moreover, the Court previously denied Apple's proposed instruction at the pretrial stage—that the jury merely "assume" infringement. (*See generally* Dkt. No. 633 at 1; *see also* Dkt. 651 at 29:11–13.) Since Apple did not secure a new trial except on damages, it improperly argues the prior trial should be simply ignored or treated as if it did not occur. The jury instruction was legally and factually correct. Accordingly, Apple's argument does not compel granting a new trial.

### xv.    *New Trial: Comparable License Jury Instructions*

Apple argues that it presented evidence on comparable licenses, but that Optis presented only the noncomparable Qualcomm agreements. (Dkt. No. 699 at 13–14.) Apple requested that the jury be instructed regarding the "appropriate" use of licenses to determine damages but that the

34

Court "refused." (*Id*. at 14.) Apple fears the jury may have given "undue weight" to the noncomparable license. (*Id*.)

Optis argues that the jury was instructed on the evaluation of comparable licenses, but Apple's proposed instruction had no supporting authority. (Dkt. No. 706 at 13.) Optis also contends that it was *Apple* who introduced admittedly noncomparable licenses over Optis's objection, so any purported lack of instruction on evaluation of licenses harmed Optis, not Apple. (*Id*. at 14.)

Apple argues that it was error for the Court not to instruct that a comparable license needs to be "economically" similar as well as "technologically" similar. (Dkt. No. 710 at 5.) Apple contends that this omission likely caused the jury to view the Qualcomm agreements as comparable solely based on the similar technology. (*Id*.)

Optis argues that Apple cites no authority requiring an instruction on the "economic" aspects of allegedly comparable licenses. (Dkt. No. 717 at 5.) Indeed, the Court instructed the jury that in determining a reasonable royalty, the jury should consider, among other things, "[t]he rates paid by the licensee for the use of other patents comparable to the Patents-in-Suit. Comparable license agreements include those covering the use of the claimed invention or similar technology." (Dkt. No. 94 at 36:4–14.) At trial, there was abundant evidence of license agreements and testimony, both on direct and cross-examination, about their alleged "comparability" or "noncomparability." (*See, e.g*., Dkt. No. 692 at 150:59, 175:2–176:18, 177:1–180:17, 234:4–235:11, 238:6–16, 282:15–293:12; Dkt. No 693 at 143:11–167:19.) The jury was entitled to weigh the testimony of the parties' experts on comparability of license agreements in calculating a reasonable royalty without any instruction beyond the Court's standard language. Apple's argument to the contrary does not warrant granting a new trial.

### xvi.   New Trial: SSPPU Jury Instructions

Apple argues that its damages theory relied on the smallest salable patent practicing unit (the "SSPPU"), that it was prejudicial to deny Apple's request regarding a jury instruction on the same, and that the jury was therefore not correctly instructed. (Dkt. No. 699 at 14.) Apple contends that even when using a comparable license analysis, if the patented features are embodied in a component, the damages must still be apportioned to the component rather than the overall product—the SSPPU. (Dkt. No. 710 at 5.)

Optis asserts that Apple's proposed SSPPU instruction was contrary to law and properly rejected, especially given that there was no "conflicting" instruction in this case. (Dkt. No. 706 at 14.) Moreover, Optis contends that there was no evidentiary basis for Apple's SSPPU instruction because Apple's corporate representative testified that ██████████████████████████ ████████████████████ (*Id*.) Optis also contends that Apple's proposed SSPPU instruction mirrored the *per se* rule rejected in *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.* and thus was properly rejected here. (Dkt. No. 717 at 5 (citing 809 F.3d 1295, 1303 (Fed. Cir. 2015)).) Apple sought a jury instruction stating that the damages award "should [be] base[d]…on the smallest salable patent-practicing unit" where the "product includes significant non-infringing components." (Dkt. No 677 at 24.) The Federal Circuit held in *Commonwealth* that it would be "untenable" for "all damages models to begin with the smallest salable patent-practicing unit." *Commonwealth*, 809 F.3d at 1303–04. Accordingly, the Court's denial of Apple's proposed SSPPU jury instruction is consistent with Federal Circuit precedent and Apple's argument to the contrary does not compel granting a new trial.

36

### xvii.    New Trial: Use of Profits Jury Instructions

Apple argued that the Court instructed the jury, over Apple's objection, that evidence of actual profits of any infringer may be used to determine anticipated profits at the time of negotiation and the Court declined to instruct that a defendant's profits are irrelevant. (Dkt. No. 699 at 14–15.) Apple argues that the jury was thus under the mistaken impression that Apple's profits (actual or anticipated) were relevant to determining a FRAND rate regardless of whether those profits were related to the claimed inventions. (*Id*. at 15.) Apple also contends that there is no authority to indicate that Apple's profit share across the cellular industry was relevant to determining damages and the Court's "refusal" to give Apple's proposed instruction was prejudicial. (Dkt. No. 710 at 5.)

Optis contends that this instruction was proper as directly relevant to the non-discrimination prong of a FRAND royalty and that the Court previously explained the same to the parties. (Dkt. No. 706 at 15 (citing Dkt. No. 692 at 148:12–14).)

This Court has already held that "the profits and the income related to the accused devices directly relate" to what a FRAND royalty would be. (Dkt. No. 692 at 148:12–14.) When instructing the jury, the Court explicitly stated that "[a]lthough evidence of the actual profits of an infringer may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited to increased based on the actual profits made." (Dkt. No. 694 at 34:2–5.) As to Apple's concern that the Court did not provide a curative instruction that Optis "could not seek disgorgement of those profits" (Dkt. No. 699 at 14–15), the jury was properly instructed on the applicable law, and a "jury is presumed to follow the [C]ourt's instructions." *Datatreasury*, 2010 U.S. Dist. LEXIS 143587, at *15. Further, the Court instructed the jury that it "must not include any additional amount [of damages] for the purposes of punishing Apple or setting an

example." (Dkt. No. 694 at 32:22–33:1.) Accordingly, Apple's proposed jury instruction regarding use of profits was properly denied and does not warrant a new trial.

### xviii.   New Trial: Georgia-Pacific Factor 9 Jury Instructions

Apple argued that both parties asked for an instruction on *Georgia-Pacific* factor 9 ("the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results") but the Court denied the same. (Dkt. No. 699 at 15.) Apple argues that this was prejudicial. (*Id*.) Apple also argues that Optis proposed the instruction that "they now suggest was improper." (Dkt. No. 710 at 5.) Optis contends that the Court modified factor 9 for the FRAND context and was thus proper and consistent with *Ericsson*. (Dkt. No. 706 at 15 (citing *Ericsson*, 773 F.3d at 1231).)

Optis's briefing does not suggest that the Court's instruction was "improper," as Apple alleges. (Dkt. No. 710 at 5.) Rather, Optis maintains that the Court's modification of the proposed instructions on *Georgia-Pacific* factor 9 was proper. (Dkt. No. 706 at 15.) Ericsson instructs that certain *Georgia-Pacific* factors "need to be adjusted for [F]RAND-encumbered patents" and for "SEP patents generally." *Ericsson*, 773 F.3d at 1231. The Court followed this precedent in instructing the jury on the *Georgia-Pacific* factors and such does not warrant a new trial.

### xix.   New Trial: Remittitur (in the Alternative)

Apple argues that the only correct damages opinion was offered by their expert, Dr. Perryman, and that damages should be remitted to his calculation of $5.1–6.4 million. (Dkt. No. 699 at 15.)

Optis argues that Apple's argument is merely a "placeholder" without explanation or supporting evidence as to why Dr. Perryman's opinion was the only "correct" opinion, and such must be rejected. (Dkt. No. 706 at 15.) Optis also maintains that Apple's disagreement with Optis

about the damages award does not render Dr. Perryman's calculation the "only proper" theory. (Dkt. No. 717 at 5.)

Apple argues that it dedicated the bulk of its post-trial motions to describing the "flawed methodology" and "evidentiary insufficiency" of Optis's damages theories, thus making it "abundantly clear why Apple viewed Dr. Perryman's as the only valid damages range." (Dkt. No. 710 at 5.) However, how Apple viewed Dr. Perryman's testimony is not the issue before the Court.

The jury heard damages evidence and testimony from both parties and was entitled to weigh such evidence in coming to its final damages decision. To the extent Apple disparages the methodology of all experts other than Dr. Perryman, such is another late *Daubert* attack which is now rejected. Moreover, the jury heard evidence from Dr. Perryman and Mr. Kennedy on the issue of damages. The fact that the jury did not award Dr. Perryman's number (or Mr. Kennedy's for that matter) cannot somehow be transformed into a conclusion that Dr. Perryman's opinion was the "only" correct opinion. Remittitur of the jury's damages award is not warranted.

## IV.    Supplemental Briefing on *Wi-LAN* (Dkt. Nos. 730, 731)

Pursuant to a Notice of Supplemental Authority filed by Apple (Dkt. No. 725) contending that the Federal Circuit's decision in *Apple Inc. v. Wi-LAN Inc*., 25 F.4th 960 (Fed. Cir. 2022) ("*Wi-LAN*") supported its argument, the Court ordered the parties to file supplemental briefing as to the impact of the *Wi-LAN* decision on Apple's pending New Trial and JMOL Motions. (Dkt. No. 785 at 1.)

Apple argues that the Federal Circuit's decision in *Wi-LAN* confirms that JMOL or a new trial is warranted based on Mr. Kennedy's "improper reliance on the Qualcomm agreements." (Dkt. No. 730 at 1.) Apple notes that it was Mr. Kennedy's opinion that was at issue in *Wi-LAN* and was challenged based on Mr. Kennedy's alleged "fail[ure] to properly apportion the

comparable licenses to reflect the value of the asserted patents." (*Id.*) In *Wi-LAN*, Apple states that it did not challenge whether the license agreements that Mr. Kennedy relied upon were "comparable" as it did with the Qualcomm agreements here. (*Id.*) Apple explains that in *Wi-LAN*, the court found that Mr. Kennedy improperly treated certain patents as "key patents," a finding which the Court determined was "untethered to the facts of the case." (*Id.* at 2.) Apple contends that the finding in *Wi-LAN* compels the same finding here because Mr. Kennedy ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████ (*Id.* at 2.) Apple argues that Mr. Kennedy did so ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ (*Id.*) In doing so, Apple contends that Mr. Kennedy ignored the ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* at 3.) As a result, Apple argues that Mr. Kennedy's opinion improperly assumed that ███████████████████████████████████████████

████████████████████████████████████████ (*Id.*) Apple further argues, as it did in its earlier briefing, that ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ (*Id.* at 4.)

     Optis contends that *Wi-LAN* "did not reject the methodological assumption that there are 'key patents' that can drive the value of a license that includes other patents," but instead "focused on the absence of substantial evidence" that the patents asserted in that case were "key" to other comparable agreements. (Dkt. No. 731 at 1.) Optis argues that unlike in *Wi-LAN*, Mr. Kennedy did not apply a comparable license approach in this case, which renders *Wi-LAN* inapplicable. (*Id.*)

Instead, Optis contends that Mr. Kennedy's analysis was based solely on the "incremental value attributable to the patented features (*i.e.*, increases in upload or download speed)" for the asserted patents based on comparisons done by Optis's technical experts. (*Id.*) Optis repeats the argument that Mr. Kennedy ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ (*Id.* at 2.) Further,

Optis contends that Mr. Kennedy's original royalty rate calculation was ████████████████

████████████████████████████████ (*Id.*) Optis

asserts that Mr. Kennedy simply ██████████████████████ on his

own calculation and contends that Apple's expert, Dr. Perryman, did the same, but with an admittedly noncomparable Samsung license. (*Id.* at 2–4.) Optis also contends that it is Dr. Perryman's analysis, *not* Mr. Kennedy's, that fails under *Wi-LAN* because Dr. Perryman did not perform a "technical analysis of any of the patents in any of the licenses" in comparing the "differences in the technologies and economic circumstances of the contracting parties." (*Id.* at 5 (citing *Wi-LAN*, 25 F.4th at 971).)

The Court does not find that the decision in *Wi-LAN* should change any of the findings reached by the jury in the second trial on damages. The damages methodology at issue in *Wi-LAN* was different from that used by Mr. Kennedy here. *See generally Wi-LAN*, 25 F.4th at 972-73 ("Mr. Kennedy first sought to establish that, in practice, only a handful of valuable patents drive the royalty rate for a license, and the rest of the portfolio is included for a marginal upcharge. . . . Mr. Kennedy treated the asserted patents as the key patents."). Here, in contrast, Mr. Kennedy used the Qualcomm license agreement █████████████████████████████████████████

███████████████████████████████████████████████████████ (Dkt. No. 731 at

2.) Mr. Kennedy ████████████████████████████████████████████████

██████████████████████████████████████ based on ██████████████████████

██████████████████████████████ (*Id.*) (emphasis added). Thus, *Wi-LAN*, under the

particular facts of this case, is not controlling on this issue, nor does it warrant an award of JMOL

or a new trial.

## V.    Conclusion

For the reasons set forth herein, Apple's Motion for a New Trial (Dkt. No. 699) and Motion

for Judgment as a Matter of Law (Dkt. No. 799) are **DENIED**.

**So ORDERED and SIGNED this 17th day of May, 2022.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE