# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OPTIS WIRELESS TECHNOLOGY, LLC, OPTIS CELLULAR TECHNOLOGY, LLC, UNWIRED PLANET, LLC, UNWIRED PLANET INTERNATIONAL LIMITED, AND PANOPTIS PATENT MANAGEMENT, LLC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 2:19-CV-0066-JRG <br><br><br> **JURY TRIAL REQUESTED** |

**PROPOSED JURY INSTRUCTIONS[1]**

---

[1]    The parties reserve their respective rights to further object or propose new instructions based on their pending motions or further development at trial.

Submissions proposed by Plaintiffs that are not agreed to by Apple are bracketed and written in green. Submissions proposed by Apple that are not agreed to by Plaintiffs are bracketed and written in blue. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

# JURY CHARGE

## INTRODUCTION

You've been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts, and as such, you will decide and determine what all the facts are in this case.

As the judge, I will give you instructions on the law. I will decide questions of law that arise during the trial. I will handle matters related to evidence and procedure. I am responsible for managing the flow of the trial and maintaining the decorum of the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer.

As I told you, this list of questions is called the verdict form. Your answers to those questions will need to be unanimous, and those unanimous answers will constitute the verdict in this case.

Now, let me briefly tell you what this case is about. As you are aware, this case involves a dispute regarding certain United States patents. And I know that you've all seen the patent video prepared by the Federal Judicial Center, but I want to give you some instructions now and on the record about a patent and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, which you will often hear referred to simply as the PTO.

A valid United States patent gives the patentholder the right for up to 20 years from the date the patent application is filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States without the patentholder's permission.

---

A patent is a form of property called intellectual property. And like other forms of property, a patent can be bought or a patent can be sold.

A violation of the patentholder's rights is called infringement. A patentholder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court.

Now, the process of obtaining a United States patent is called patent prosecution. To obtain – to obtain a patent, one must first file an application with the United States Patent and Trademark Office, the PTO. The PTO is an agency of the United States Government, and it employs trained examiners who review applications for patents.

The application filed with the PTO includes what is called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.

The specification concludes or ends with one or more numbered sentences. These numbered sentences are called the patent claims. When a patent is granted by the PTO, the claims define the boundaries of its protection, and the claims give notice to the public of those boundaries.

Patent claims may exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It's not necessary to look at any other claim to determine what an independent claim covers.

However, a dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements or limitations of that other claim or claims to which it refers, or sometimes we say from which it depends, as well as the additional elements or limitations recited within the dependent claim itself.

---

2
PROPOSED JURY INSTRUCTIONS

Accordingly, ladies and gentlemen, to determine what a dependent patent claim covers, it's necessary to look at both the dependent claim itself and the independent claim or claims from which it refers, or as we say sometimes from which it depends.

## OVERVIEW OF THE PARTIES[2]

Now, to help you follow the evidence, I'll give you a brief summary of the positions of the parties in this case.

As you know, the party or parties that bring a lawsuit is called the Plaintiff, or if there's more than one, they're called the Plaintiffs.

The Plaintiffs in this case are Optis Wireless Technology, LLC; Optis Cellular Technology, LLC; PanOptis Patent Management, LLC; Unwired Planet, LLC; and Unwired Planet International Limited.

Now, all of these Plaintiffs collectively you're going to hear referred to throughout the case simply as either the Plaintiffs or you'll hear them referred to as Optis or you may hear them referred to as PanOptis. If you hear any of those, Optis, PanOptis, or Plaintiffs, it refers to each of these identified companies that stand in the position of being a Plaintiff in this lawsuit.

And as you're all aware, the party against whom a lawsuit is filed is called the Defendant. In this case, we have one Defendant, and that is Apple Inc. And you'll hear that Defendant referred to simply as Defendant or as Apple throughout the lawsuit.

## PATENTS-IN-SUIT

---

[2] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 490, 181:5- (E.D. Tex. Aug. 3, 2020).

Now, there are five separate United States patents that have been asserted in this case.

The first patent is U.S. Patent No. 8,019,332. And, as you may know, patents are commonly referred to by the last three digits of the patent number. So this particular patent, Patent No. 8,019,332, will be referred to as the '332 or the '332 patent.  It was originally owned by LG Electronics ("LG").

The second U.S. patent at issue in this case is United States Patent No. 8,385,284, referred to as the '284 or the '284 patent.  It was originally owned by Panasonic.

The third U.S. patent at issue in this case is United States Patent No. 8,411,557, which you will hear referred to as the '557 or the '557 patent.  It was originally owned by Panasonic.

The fourth U.S. patent at issue in this case is United States Patent No. 8,102,833, which you'll hear called the '833 or the '833 patent.  It was originally owned by LG.

The fifth and final U.S. patent at issue in this case is United States Patent No. 9,001,774, which you'll hear referred to as the '774 or the '774 patent.  It was originally owned by Samsung Electronics ("Samsung").

Now, these five patents, ladies and gentlemen, collectively, you'll hear referred to at various times throughout this trial as the patents-in-suit. You may also hear them referred to collectively as the asserted patents. Both of those things mean the same thing – that is, the five patents I've just identified for you. And all five of these patents-in-suit, or these asserted patents, generally relate to cell phone technology.

Now, the Plaintiffs, Optis, contend that the Defendant, Apple, is willfully infringing certain claims of the patents-in-suit by making, importing, or selling products that include their patented technology.[3]

Optis also contends that Apple has induced [or contributed to and continues to induce or contribute to] infringement by others.[4] And Optis contends that it's entitled to money damages as a result of that infringement.

_____

[3] **Apple's Position**:  Apple objects to providing an instruction on willfulness.  The Court previously determined that enhancement was not warranted and Plaintiffs failed to appeal that ruling.  Accordingly, any further consideration of enhancement is barred by the mandate rule, and there is no reason to retry willfulness now that enhancement has been resolved.  *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999))); *see also Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("Because Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation.").  The Court has already confirmed that the "posture of the parties" remains the same from the prior trial.  See 1/22/26 Status Conference Tr. at 32:4.

**Plaintiffs' Position**: The Court has already ruled that willfulness will be part of the case.  Dkt. 804 at 2 ("The issue of infringement, which includes whether any such infringement was willful, has been designated for a new trial by the appellate court. Accordingly, willfulness remains an issue in this case.").

[4] **Apple's Position**:  Apple objects to instructing the jury on contributory infringement.  Optis did not pursue a theory of contributory infringement at the 2020 trial and thus has abandoned a claim of contributory infringement in this case.  Apple further objects to instructing the jury that Apple's alleged indirect infringement is ongoing.  Apple has discontinued the sale of the accused products.

**Plaintiffs' Position:** Plaintiffs have not abandoned or waived their right to pursue a claim of contributory infringement, and Apple cites no case law to the contrary. The Court's prior infringement verdict was vacated, and Plaintiffs are not prohibited from pursuing this theory of infringement. *See, e.g., Finisar Corp. v. DirecTV Grp., Inc.*, No. 1:05-CV-264, 2009 WL 10676783, at *7 n.11 (E.D. Tex. May 19, 2009), *aff'd*, 360 F. App'x 150 (Fed. Cir. 2010) ("The invalidity case Defendants chose to present in the first trial does not constrain their ability to craft a new strategy on remand, so long as the references were properly and timely disclosed.

[The Defendant, Apple, has made a binding commitment to license Optis's entire patent portfolio. Apple disputes, however, that it has infringed the five patents at issue in this trial][5] [The

_____

The Federal Circuit remanded this case for a new trial on the invalidity of the remaining asserted claims, and it is in the best interests of all parties involved to fully and finally litigate this issue.").

Furthermore, there is no evidence in the record that Apple's infringement has stopped. Indeed, Apple is still testing and updating the accused products today. For example, last week Apple released a security update for the iPhone 5s. https://www.gearpatrol.com/tech/iphone-software-update-iphone-5s/

[5] **Plaintiffs' Position**: Plaintiffs object to this inclusion as irrelevant and prejudicial. Furthermore, this instruction necessarily opens the door into the U.K. litigation between the parties, which the Court has already ruled should be excluded from this action. *See* Dkt. 668 at 7 (Plaintiffs' MIL No. 14). Indeed, the U.K. Court of Appeals carved out this litigation and Plaintiffs' claims against the accused products in this case specifically from the license. *See See* Dkt. 762-1 at ¶ 274 ("[T]he decisive factor in the present case is that Apple was responsible for the EDTX proceedings having proceeded to judgment (and pending appeals) prior to their change of stance on 15 September 2023. *In my judgment a willing licensee in the position of Apple would therefore recognise that it would not be fair or reasonable for the licence determined by the English courts to require Optis to consent to the EDTX judgment (or any judgment of the CAFC on appeal) being set aside*. Still less would it be fair or reasonable for it to require Optis to do so without even being reimbursed for the costs of the US proceedings down to 15 September 2023, which is Apple's position. In principle, the right answer would be for the English courts' valuation to be adjusted to take account of the EDTX judgment, but as discussed above the valuation methodologies adopted by the parties make that impractical. In those circumstances, *the least-worst solution to the problem which Apple has caused is for the US final judgment to be treated as a floor for the royalties payable by Apple under the licence determined by the English courts* in the manner proposed by Optis.") (emphasis added). *See also* Dkt. 762 at 2-4 (discussing the U.K. Court license in relationship to this case; Dkt. 762-2.

Furthermore, Apple's "state of mind" argument is meritless because they did not enter into the commitment until after sales of the accused products ceased.

**Apple's Position:** Apple's commitment to license Optis's entire patent portfolio is a fact relevant to Apple's state of mind, which the jury must consider in evaluating willfulness. *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (holding that "evidence relevant to [the defendant's] state of mind at the time of the accused infringement" should be considered by the jury in assessing willfulness).

This fact should be communicated to the jury through a preliminary instruction because Apple's commitment to license Optis's full patent portfolio was made in a parallel litigation in the United Kingdom. *See* Dkt. 763. The Court's Standing *in Limine* Order No. 13 precludes the parties from introducing evidence, testimony, or argument regarding such parallel proceedings.

Defendant, Apple denies that it is infringing any of the patents-in-suit asserted by the Plaintiffs].

Apple also contends that the '332 Patent is invalid for involving only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time the patent application was filed

Now, during the course of the trial, it's likely that you'll hear the [term] [patents-in-suit referred to as] standard essential patents, or SEPs.[6]  Standard essential patents, ladies and gentlemen, are patents that have been declared to be a part of a standard in a certain field. This standard is [often created with the assistance of] [set and maintained by] a global body [and

---

Having the Court instruct the jury on this issue at the outset of trial will help set the boundaries for presenting this fact to the jury through witness testimony and the parties' arguments without requiring discussion of any parallel proceedings.

Introducing the fact that Apple has made a binding commitment to license Optis's entire portfolio does not open the door to the UK litigation.  The details of the UK proceedings do not alter the fact that Apple has made a binding commitment to license Optis's entire portfolio.

[6] **Apple's Position**:  Apple objects to instructing the jury that the patents-in-suit are standard essential patents, which appears throughout these proposed preliminary instructions, or to the process by which standards are created.  The parties dispute whether the asserted patents are, in fact, essential to the LTE standard.  ETSI made no determination of essentiality.  Further, the process by which standards are created is a factual issue for which the parties will introduce evidence and is not appropriate for a preliminary instruction.  The Federal Circuit did not hold that the asserted patents are standard-essential.  It only noted that the asserted patents are "undisputedly FRAND-encumbered SEPs," referring to the fact that the patents were declared essential and thus undisputedly FRAND-encumbered.  *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 n.8 (Fed. Cir. 2025).

**Plaintiffs' Position**: This issue has already been decided by the Court and the Federal Circuit. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1368 (Fed. Cir. 2025) ("The asserted patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard."); Jan. 22, 2026 Hearing Tr. at 29:11-13 (The Court: "We are not going to change posture on whether these are or are not standard essential patents. That was a big issue in the prior trials.").

---

ensures] [to ensure] that [certain processes and] [different] devices [operate] [are able to interoperate and talk to each other] [and work in the same way] anywhere in the world.

For example, it would be counterproductive for your cell phone to work only in the United States such that if you got on a plane and flew to London, England, and got off the airplane, your cell phone that you use every day at your home in Texas wouldn't work in the United Kingdom or in Europe or in Asia or anywhere else on the planet.[7]

To prevent this, standard technologies are created such that telecommunication devices like your cell phones interwork across different places in the world and different brands of devices. Patents related to such a common and standard technology are recognized as impacting that standard technology and are contributed to and declared by their owner to be essential to that standard.[8]

These are called standard essential patents. In this case, the five patents-in-suit, or the asserted patents, have all been declared by their owner to be standard essential patents related to

---

[7] **Apple's Position**: Apple objects to using cell phones as an example of standardized technology given its relationship to the disputed issues that the jury will decide. To the extent that the Court provides an example, it should use a more neutral example, such as electrical outlets.
**Plaintiffs' Position**: This is pulled verbatim from the Court's opening instruction from the first trial. Dkt. 490 at 184:12-17. Providing the jury with a timely example is not prejudicial.
[8] **Apple's Position**: Apple objects to this description of the standards-setting process. The standards-setting process presents factual disputes that the jury will need to resolve and should not be described in the Court's preliminary instructions.
**Plaintiffs' Position**: This is pulled verbatim from the Court's opening instruction from the first trial. Dkt. 490 at 184:18-24. Nothing in the Court's instruction is a disputed fact.

the field of wireless communications.  [As a result of this declaration, Plaintiffs have committed to license these patents on fair, reasonable and non-discriminatory ("FRAND") terms.][9]

In this case, the declarations at issue are made to an organization called the European Telecommunications Standards Institute or ETSI. And this is simply referred to, for shorthand, ladies and gentlemen, as ETSI, E-T-S-I.

[The Asserted Patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard.[10]

Because the asserted patents here are standard essential patents, you will hear about the standard and the contribution of these patents to the standard and the work of ETSI relating to the

---

[9] **Plaintiffs' Position:** The patentees only agreed to a FRAND license to the extent that the patents "are or become, and remain ESSSENTIAL" to an LTE standard. *See, e.g.,* PX1525. This instruction should only be included if Plaintiffs' instructions on the essentiality of the Asserted Patents are adopted.
**Apple's Position:**  Apple objects to instructing the jury that the asserted patents are standard essential.  The parties dispute whether the asserted patents are, in fact, essential to the LTE standard.  ETSI made no determination of essentiality.
[10] **Apple's Position**:  Apple objects to instructing the jury that the patents-in-suit are standard essential patents, which appears throughout these proposed preliminary instructions, or to the process by which standards are created.  The parties dispute whether the asserted patents are, in fact, essential to the LTE standard.  ETSI made no determination of essentiality.  The Federal Circuit did not hold that the asserted patents are standard-essential.  It only noted that the asserted patents are "undisputedly FRAND-encumbered SEPs," referring to the fact that the patents were declared essential and thus undisputedly FRAND-encumbered.  *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 n.8 (Fed. Cir. 2025).
**Plaintiffs' Position**: This issue has already been decided by the Court and the Federal Circuit. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1368 (Fed. Cir. 2025) ("The asserted patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard."); Jan. 22, 2026 Hearing Tr. at 29:11-13 (The Court: "We are not going to change posture on whether these are or are not standard essential patents. That was a big issue in the prior trials.").

standard, all as a part of this trial.] And I'll give you more detailed instructions on these matters at the end of the trial.[11]

## OVERVIEW OF APPLICABLE LAW

Now, ladies and gentlemen, I know that there are lots of new words and new concepts that have been thrown at you since you arrived for jury duty this morning. I'm going to define a lot of these words and concepts for you as we go through these instructions. The attorneys are going to discuss them in their opening statements.

And the witnesses are going to help you by going through their testimony to help understand these words and concepts. So, please, do not feel overwhelmed at this stage. It will all come together as we go through the trial, I promise.

Now, one of your jobs in this case is to decide whether or not the asserted claims of the five asserted patents have been infringed and, in the case of the '332 Patent, whether it is invalid.

---

[11] **Apple's Position**:  Apple objects to instructing the jury that the patents-in-suit are standard essential patents, which appears throughout these proposed preliminary instructions, or to the process by which standards are created.  The parties dispute whether the asserted patents are, in fact, essential to the LTE standard.  ETSI made no determination of essentiality.  Further, the process by which standards are created is a factual issue for which the parties will introduce evidence and is not appropriate for a preliminary instruction.  The Federal Circuit did not hold that the asserted patents are standard-essential.  It only noted that the asserted patents are "undisputedly FRAND-encumbered SEPs," referring to the fact that the patents were declared essential and thus undisputedly FRAND-encumbered.  *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 n.8 (Fed. Cir. 2025).
**Plaintiffs' Position**: This issue has already been decided by the Court and the Federal Circuit. *See Optis Cellular Tech., LLC v. Apple Inc*., 139 F.4th 1363, 1368 (Fed. Cir. 2025) ("The asserted patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard."); Jan. 22, 2026 Hearing Tr. at 29:11-13 (The Court: "We are not going to change posture on whether these are or are not standard essential patents. That was a big issue in the prior trials.").

If you decide that any claim of the patents-in-suit has been infringed by the Defendant and is not invalid, then you'll need to decide whether or not the infringement by the Defendant has been willful.

You will also need to decide what amount of money damages should be awarded to the Plaintiffs as compensation for that infringement that you have found.

Now, my job in this case is to tell you what the law is, handle the rulings on evidence and procedure, and to oversee the trial effectively and efficiently.

In determining the law, ladies and gentlemen, it is specifically my job to determine the meaning of any claim language from within the asserted patents that needs interpretation.

I have already determined the meanings of the claims of the patents-in-suit, and you must accept those meanings or constructions that I give you and use those meanings when you decide whether any particular claim has or has not been infringed.

And you'll be given a document in a moment that reflects these meanings that I've already arrived at. For any claim term which I have not provided you with a specific definition, you should apply the plain and ordinary meaning. If, however, I provided you with a specific definition, you are to apply my definition to those terms throughout the case.

However, my interpretation of the language of the claims should not be taken by you as an indication that I have a personal opinion or any opinion regarding issues such as infringement and invalidity. Those, ladies and gentlemen, are your issues alone to decide.

I'll provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and reach your verdict.

---

11
PROPOSED JURY INSTRUCTIONS

In deciding the issues that are before you, you'll be asked to consider specific legal rules, and I'll give you an overview of those rules now. And then at the conclusion of the case, I'll give you much more detailed instructions.

The first issue that you're asked to decide is whether the Defendant, Apple, has infringed any of the asserted claims of the patents-in-suit. Infringement is assessed on a claim-by-claim basis. And the Plaintiffs, Optis, must show by a preponderance of the evidence that a claim has been infringed. Therefore, there may be infringement as to one claim but no infringement as to another claim.

There are also a few different ways that a patent can be infringed, and I'll explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.

But in general, ladies and gentlemen, a Defendant may infringe the asserted patent by making, using, or selling or offering for sale in the United States or importing into the United States a product meeting all the elements or requirements of a claim of the asserted patent.

And I'll provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Now, the second issue that you will be asked to decide is whether the '332 Patent is patent ineligible. Patent ineligibility is a defense to infringement. Therefore, [even though the United States Patent and Trademark Office, or PTO, has allowed the asserted claims and even though a

---

PROPOSED JURY INSTRUCTIONS

United States patent as issued by the PTO is presumed to be valid,][12] you, the jury, must decide whether those claims are invalid after hearing the evidence presented during the trial of this case.

Patents must claim certain patent eligible subject matter. In general, a patent is directed towards eligible subject matter if it claims a process, a machine, manufacturer, or composition of a matter, or any new or useful improvement thereof. [Here, the Court has already found that claims 6 and 7 of the '332 patent are directed to the abstract idea of a mathematical formula.] [However, if the Court determines that a patent is also directed toward an abstract idea, then] [You, the jury[,] must determine whether the patent covers only the activities that are well-understood, routine, and conventional at the time the patent was filed.[13]

---

[12] **Apple's Position**: Apple objects to Optis's proposed language related to the presumption of validity and Patent Office procedure as unduly prejudicial, duplicative and unnecessary, and likely to result in confusion. Invalidity is a clear and convincing standard because of the presumption that a patent is valid. *See Microsoft Corp. v.i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011). Thus, Optis's instructions on the presumption that a patent is valid is unnecessary, confusing, and duplicative of the clear and convincing standard already articulated in the jury instructions and is likely to confuse the jury. Moreover, Optis's instruction related to the Patent Office's examination process and procedure is irrelevant, argumentative, and duplicative of the video shown at the outset of trial.
**Plaintiffs' Position**: It is black letter law that a patent is presumed valid, and it is not confusing for the Court to explain this to the jury.

[13] **Apple's Position**: Apple objects to submitting patent eligibility to the jury. Patent eligibility is a legal issue for the court. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355 (Fed. Cir. 2018) ("the ultimate question of patent eligibility is one of law"). In this regard, ineligibility resembles claim construction, another issue of law that remains a court decision, even when it requires deciding factual disputes. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015). To the extent the Court submits the step two issue to the jury, it should do so on an advisory basis and reserve the ultimate decision to itself.

If the jury is to decide patent eligibility, it should be instructed that the Court has found claims 6 and 7 directed to the abstract idea of a mathematical formula, which the Federal Circuit held should be part of any jury instruction on patent eligibility in this case. *Optis Cellular Technology, LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025) (requiring that, if

---

I'll provide you with more detailed instructions on this question at the conclusion of the trial.

If you decide that any claim of the '284, '557, '774 and '833 patents has been infringed or if at least one claim of the '332 patent is infringed and is patent eligible, then you'll need to decide whether Defendant's infringement has been willful.[14]

_____

*Alice* step two is presented to the jury, "jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept").
**Plaintiffs' Position**: The Court has ruled that the question of *Alice* Step 2 will be before the jury. *See* Dkt. 802. Any relief sought by Apple is irrelevant to the question of what jury instructions are proper.

[14] **Apple's Position**:  Apple objects to providing an instruction on willfulness.  The Court previously determined that enhancement was not warranted and Plaintiffs failed to appeal that ruling.  Accordingly, any further consideration of enhancement is barred by the mandate rule, and there is no reason to retry willfulness now that enhancement has been resolved.  *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999))); *see also Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("Because Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation.").  The Court has already confirmed that the "posture of the parties" remains the same from the prior trial.  See 1/22/26 Status Conference Tr. at 32:4.
**Plaintiffs' Position**: The Court has already ruled that willfulness will be part of the case. Dkt. 804 at 2 ("The issue of infringement, which includes whether any such infringement was willful, has been designated for a new trial by the appellate court. Accordingly, willfulness remains an issue in this case.").

[14] **Apple's Position**:  Apple objects to instructing the jury on contributory infringement.  Optis did not pursue a theory of contributory infringement at the 2020 trial and thus has abandoned a claim of contributory infringement in this case.
**Plaintiffs' Position:** Plaintiffs have not abandoned or waived their right to pursue a claim of contributory infringement, and Apple cites no case law to the contrary. The Court's prior infringement verdict was vacated, and Plaintiffs are not prohibited from pursuing this theory of infringement. *See, e.g., Finisar Corp. v. DirecTV Grp., Inc.*, No. 1:05-CV-264, 2009 WL 10676783, at *7 n.11 (E.D. Tex. May 19, 2009), *aff'd*, 360 F. App'x 150 (Fed. Cir. 2010) ("The invalidity case Defendants chose to present in the first trial does not constrain their ability to

You'll also need to decide what amount of money damages should be awarded to the Plaintiffs to compensate them for such infringement.

A damages award must be adequate to compensate the patentholder for the infringement, and in no event may a damage award be less than what the patentholder would have received had it been paid a reasonable royalty for the use of its technology.

However, the damages that you award, if any, are meant to compensate the Plaintiffs, and they're not meant to punish the Defendant. You may not include in any damages award an additional amount as a fine or a penalty above what is necessary to fully compensate the Plaintiffs for the infringement.

Additionally, damages cannot be speculative, and the Plaintiffs must prove the amount of their damages for this infringement by a preponderance of the evidence.

However, please be aware that the fact I'm instructing you on damages does not mean that Optis is or is not entitled to recover damages.

### CONDUCT OF JURY

Now, you're going to be hearing from a number of witnesses in this case, and I want you to keep an open mind while you're listening to the evidence and not decide any of the facts until you've heard all of the evidence.

---

craft a new strategy on remand, so long as the references were properly and timely disclosed. The Federal Circuit remanded this case for a new trial on the invalidity of the remaining asserted claims, and it is in the best interests of all parties involved to fully and finally litigate this issue.").

---

Also, this is important. While the witnesses are testifying, remember, you, the jury, will have to decide the degree of credibility and believability to allocate to each witness and the evidence.

So while the witnesses are testifying, you should be asking yourselves things like this: does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have the opportunity and ability to observe accurately the things that they testified about? Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness's testimony differ from the testimony of any other witness? And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you're listening to the testimony of each and every witness during this trial.

I also want to talk with you briefly about expert witnesses.

When knowledge of a technical, financial, or other specialized subject may be helpful to you, the jury, a person who has special training and experience in that particular field -- we refer to them as an expert witness -- is permitted to testify to you about his or her opinions on those technical matters.

However, you're not required to accept an expert witness or any other witness's opinions at all. It's up to you to decide whether an expert witness is correct or incorrect or whether or not you want to believe what they say.

_____
16
PROPOSED JURY INSTRUCTIONS

It's also up to you to determine whether or not any other witness in the case is correct or incorrect or whether you want to believe what they have to say. Those kinds of decisions, judging the credibility and believability of each and every witness in the case, are particularly within your area of responsibility as the jury.

Now, I anticipate that over the course of this trial, there will be expert witnesses testifying on behalf of each side in the case. But it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight.

Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

Now, during the course of the trial, it's possible that there will be testimony from one or more witnesses that will be presented to you through what is called a deposition.

In trials such as this, it's difficult to get every person here physically to testify over the course of the trial. So prior to the trial, the lawyers for each side take the depositions of the witnesses.

In a deposition, a court reporter is present, the witness is present, the witness is sworn and placed under oath, just as if he or she were personally in court, and the lawyers for the parties ask those witnesses questions, and those questions and the answers are recorded and taken down.

And portions of these recordings, often made as video recordings, of those questions and answers may be played back to you, the jury, as a part of this trial so you can see that witness and hear that testimony even though they're not physically present in the courtroom.

_____
17
PROPOSED JURY INSTRUCTIONS

That deposition testimony is entitled to the same consideration, insofar as possible, and is to be judged as to the credibility, weight, and otherwise considered by you, the jury, in the same way as if the witness had been present and given that testimony in person from the witness stand in open court.

Now, during the trial of the case, ladies and gentlemen, it's possible that the lawyers will make objections. And if they do, I will give rulings on those objections.

It's the duty of an attorney for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not proper under the orders of the Court or the Rules of Evidence or procedure.

Upon allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence. As I've said before, you, the jury, are the sole judges of the credibility and believability of all the witnesses and the weight and what effect to give to all the evidence.

If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if I had allowed them to answer the question.

On the other hand, if I overrule an objection addressed to a question to a witness, then you should consider the question and the witness's answer just as if no objection had ever been made.

Now, you should know, ladies and gentlemen, that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in a case, but those comments from the judge may be disregarded by the jury in their entirety because as I've told you,

it's the jury that is the sole judges of the facts in the case, the credibility of the witnesses, and the amount of weight you want to give to each witness's testimony.

And even though the law may permit me to make comments to you about the evidence in this case, as I indicated during jury selection earlier today, it's my intention to try very hard not to comment on any of the evidence or the witnesses throughout the trial because I believe strongly that that is your responsibility, and even though I have the right to comment on them, I'm going to work hard not to.

Now, you should also know that the court reporter in front of me is taking down every word that is said in the courtroom throughout the trial, but the written transcript of all of that is not going to be available to you for you to consider during your deliberations. That transcript is prepared in case there's an appeal of this case to an appellate court.

So that means you're going to have to rely on your memories of the evidence that's developed over the course of the trial.

In a moment, each of you are going to be given a juror notebook, and in the back of that notebook, you're going to find a legal pad that you can use to take notes on if you choose to throughout the course of the trial.

It will be up to each of you to decide whether or not you want to take notes about the witnesses or anything else regarding the trial and how detailed you want those notes to be if you decide to take notes.

But, remember, those notes are for your own personal use. You still have to rely on your memory of the evidence, which is why you should be paying close attention to the testimony of each and every witness.

You should not abandon your own recollection because somebody else's notes indicate something different. Your notes, if you keep them, are to refresh your recollection only, and that's the only reason you should be keeping them.

I'm now going to ask our Court Security Officer to pass out these juror notebooks to each of the members of the jury. In these notebooks, you'll see that you have witness pages for each witness that might testify in the case with a picture of the witness at the top of the page, and the remainder of the page available for note-taking there if you choose to take notes. And, as I've mentioned, in the back, you'll find a legal pad for note-taking. And in the front pocket, you should find both a highlighter and a pen that you can use for those purposes, as well.

Each of these notebooks are just the same. I would suggest that in the front cover, you write your name so you make sure that you keep yours, and don't get it confused with anybody else's, and they don't need to be passed around by you. You each need to keep your own notebook in your own possession. And, ladies and gentlemen, in that regard, you should either have that notebook with you in the jury box, just like you do now, or you should have it in the jury room with you. These are not to be left lying around where someone else can pick them up. Either have them with you in the jury box, or if you've left for the evening, leave them on the table in the jury room. You can find your notebook the next morning and have it with you when you come back into the courtroom.

Now, having said that, there may be times over the course of the trial where we take a recess or a quick break, and it may be a short recess. And if it is, I may say, ladies and gentlemen, you can simply close and leave your notebooks in your chair in the jury box. That means you're not going to be gone very long, and it's fine to leave it there rather than carry it back and forth to the jury room with you. But unless I give you those kind of specific instructions, it should be in your possession whenever you're here in court. And when you go home in the evening, it should be in the jury room on the table where you can find it the next morning.

Now, in a moment, we're going to hear opening statements from the lawyers. These opening statements are designed to give you a roadmap of what each side expects that the evidence will show in this case.

And you should remember throughout the trial, ladies and gentlemen, that what the lawyers tell you is not evidence. I want to say that again. What the lawyers tell you is not evidence.

The evidence is the sworn testimony that will be presented from the witness stand under oath and subject to cross-examination, whether it's through a live witness or through a deposition witness, as I've already described to you. And the evidence will include those exhibits which I've already considered and found are admissible under the Rules of Evidence and are an admitted exhibit in this case.

That is the totality of the evidence in this case. Again, what the lawyers tell you is not evidence. What they tell you, in fact, is their impression of what the evidence should be. And they have a duty to point out to you where they believe the evidence is. But, remember, what they tell you is not evidence.

Now, after the opening statements are given by each side, the Plaintiffs will have the opportunity to call their witnesses and put on their evidence. This is called the Plaintiffs' case-in-chief. When the Plaintiffs have finished putting on their witnesses and evidence, they will rest their case-in-chief, and then the Defendant has the opportunity to call its witnesses and put on its evidence. And that's called the Defendant's case-in-chief. After the Defendant rests its case-in-chief, then the Plaintiffs have the opportunity, if they choose, to call what are called rebuttal witnesses to address the evidence that the Defendants have put on.

After the Plaintiffs put on any rebuttal witnesses, if they choose to, then you will have heard all the evidence in this case. And when you have heard all the evidence in this case, at that point, I will give you written instructions on the law that we've talked about and that you are to apply to the evidence that you've heard, and you'll have your own individualized printed copy of those written instructions on the law that I'm going to give you. And you may take that copy from me with you back to the jury room when you retire to deliberate. These instructions that I'll give you at that point in written form, and I'll give them to you orally, as well, those are called the Court's final instructions to the jury. And it's also sometimes called by people the Court's charge to the jury.

Now, after these instructions are given by me to you, the lawyers will present their closing arguments, which are designed to point out what they believe they've proved over the course of the trial and through the evidence that's come in during the trial. And then once you've heard the lawyers' closing arguments, you'll retire to the jury room to consider the questions in the verdict

form and reach a unanimous decision as to those questions. And those unanimous answers to those questions, as I've told you, will constitute your verdict in this case.

Let me repeat my earlier instruction to you. You are not to discuss this case among yourselves or with anyone else during the trial. And when I said not discuss the case, I mean not communicate about it in any way. And that applies to anybody outside this courtroom.

And until you've heard all the evidence in this case, ladies and gentlemen, it applies to the twelve of you with each other.

During the course of the trial, at lunch breaks and recesses, you are not to discuss the evidence among yourselves. Only when you've heard all the evidence and only when I instruct you to retire to the jury room and deliberate on your verdict after I've given you my final instructions and you've heard closing arguments from the attorneys, then is the first time that you're supposed to discuss the evidence among yourselves.

And when you've heard all the evidence and when you retire at my instruction to the jury room to deliberate on the verdict, it becomes your duty to discuss the evidence that's presented over the course of the trial in your effort to reach a unanimous decision as to the questions that are presented in the verdict form.

I also want to remind you that over the course of the trial, these lawyers and their staff and the witnesses and the representatives of the competing companies that are the parties are not going to talk to you if they see you in close proximity.

If you run into one of them on the front steps coming into the courthouse one morning and they're not friendly and they don't speak, don't consider them to be rude or unfriendly. Don't hold it against them. They're simply doing what I've instructed them to do.

With these instructions, we're now going to proceed to hear opening statements from the parties.

## INSTRUCTIONS AT CLOSE OF EVIDENCE

## INTRODUCTION[15]

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed or written copy of these final jury instructions when you retire to the jury room to deliberate in a few moments.

You are welcome to take notes, if you like, but I want you to know you will have your own written copy of these instructions to review when you retire to the jury room.

It's your duty to follow the law as I give it to you. On the other hand, ladies and gentlemen, as I've previously said, you, the jury, are the sole judges of the facts in this case.

Do not consider any statement that I have made over the course of the trial or that I make during these instructions as an indication to you that I have any opinion about the facts in this case.

You're about to hear closing arguments from the attorneys. Statements and arguments of the attorneys, I remind you, are not evidence. And they are not instructions on the law. They're intended only to assist the jury in understanding the evidence and the parties' competing contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room. When you have reached a unanimous decision or agreement as to the verdict, you'll

---

[15] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 954:2-955:13 (E.D. Tex. Aug. 10, 2020).

have your foreperson fill in the blanks in the verdict form reflecting those unanimous agreements, sign it, date it, and then deliver it to the Court Security Officer.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win this case and then answer the questions to reach that result. Again, your answers and your verdict in this case, ladies and gentlemen, must be unanimous.

## CONSIDERING WITNESS TESTIMONY[16]

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them. And you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have presented or produced them.

You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to all the evidence in this case.

Now, during the course of the trial, you may have been shown documents with portions of those documents redacted. In those situations, you should not speculate about what may have been redacted or why it was redacted. Those redactions, ladies and gentlemen, were approved by the Court prior to when the trial began.

As I've previously told you, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

---

[16] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 955:14-957:3 (E.D. Tex. Aug. 10, 2020).

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer that question.

However, on the other hand, if I overruled an objection to a question addressed to a witness, then you're to treat the answer to the question and the question itself just as if no objection had been made -- that is, like any other question and answer during the trial.

At times during the trial, it was necessary for the Court to talk to the lawyers outside of your hearing and your presence. This happens during trials because there are things that sometimes come up that do not involve the jury.

You should not speculate about what was said during these discussions that took place outside your presence.

## HOW TO EXAMINE THE EVIDENCE[18]

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect, or sometimes called circumstantial evidence. That is the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.

---

[18] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 957:4-960:6 (E.D. Tex. Aug. 10, 2020).

As a general rule, you should know that the law makes no distinction between direct or circumstantial evidence but simply requires that you, the jury, find the facts based on the evidence presented during the trial, both direct and circumstantial.

Now, the parties may have stipulated or agreed to certain facts in this case. When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

Certain testimony over the course of the trial has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.

If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition.

As I told you earlier, before the trial, the attorneys representing the parties questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony.

Both sides have had the opportunity to contribute portions of that testimony to be played in open court. Deposition testimony, ladies and gentlemen, is entitled to the same consideration by you, the jury, as testimony given by a witness who appears in person physically from the witness stand.

Accordingly, you should judge the credibility and importance of deposition testimony to the best of your ability, just as if the witness had appeared in person and testified before you in open court.

Now, while you should consider only the evidence in this case, you should understand, ladies and gentlemen, that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions based on reason and common sense that leads you to draw these from the facts that have been established by the testimony and the evidence in this case. However, you should not base your decisions on any evidence not presented by the parties in open court during the course of the trial.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

When knowledge of a technical, financial, or otherwise specialized subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinions on those technical matters to the jury.

However, you're not required to accept those opinions. As with any other witness, it's solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Now, certain exhibits have been shown to you during the course of the trial that were illustrations. We call these types of exhibits demonstrative exhibits or sometimes just demonstratives for short.

Demonstrative exhibits are a party's description, picture, or model to describe something involved in the trial. If your recollection differs from the demonstratives, you should rely on your recollection.

Remember, demonstrative exhibits, which are sometimes called jury aids, are not evidence, but the witness's testimony during which a demonstrative is used is evidence.

**BURDEN OF PROOF[19]**

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiffs for some issues and on the Defendant for other issues.

Now, the Plaintiffs in this case, Optis Wireless Technology, LLC, PanOptis Patent Management, LLC, Optis Cellular Technology, LLC, Unwired Planet, LLC, and Unwired Planet International Limited, who you will hear simply referred to throughout the remainder of these instructions and counsels' arguments as the Plaintiffs.

You may hear them collectively referred to as Optis, some may refer to them jointly as PanOptis. All three of these mean the same thing. They're the Plaintiffs, and the Plaintiffs have the burden of proving patent infringement by a preponderance of the evidence. Optis also has the burden of proving willful patent infringement by a preponderance of the evidence.[20] And Optis

---

[19] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 960:7-962:17 (E.D. Tex. Aug. 10, 2020).

[20] **Apple's Position**:  Apple objects to providing an instruction on willfulness.  The Court previously determined that enhancement was not warranted and Plaintiffs failed to appeal that ruling.  Accordingly, any further consideration of enhancement is barred by the mandate rule, and there is no reason to retry willfulness now that enhancement has been resolved.  *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014)

also has the burden of proving damages for patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. And this is sometimes talked about as being the greater weight and degree of credible testimony.

Now, the Defendant in this case is Apple Inc., which you will hear referred to, and have throughout the trial, either as Defendant or as Apple. There is one issue on which Apple has the burden of proof, and it relates to the '332 patent. Apple has the burden of proving the '332 patent's subject matter ineligibility by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions are highly probable.

Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

---

("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999))); *see also Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("Because Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation."). The Court has already confirmed that the "posture of the parties" remains the same from the prior trial. See 1/22/26 Status Conference Tr. at 32:4.

**Plaintiffs' Position**: The Court has already ruled that willfulness will be part of the case. Dkt. 804 at 2 ("The issue of infringement, which includes whether any such infringement was willful, has been designated for a new trial by the appellate court. Accordingly, willfulness remains an issue in this case.").

If the proof establishes in your mind, an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Neither of these burdens of proof are be confused with the burden of proof called beyond a reasonable doubt, which is the burden of proof we apply in criminal cases. The burden of proof, beyond a reasonable doubt, does not apply in this or any other civil case. You should not confuse clear and convincing evidence with evidence beyond a reasonable doubt. Clear and convincing evidence is not as high a burden as beyond a reasonable doubt, but it is a higher burden than the preponderance of the evidence.

Now, in determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations of the parties, if any, the testimony of all the witnesses presented during the trial, regardless of who called them, and all of the exhibits produced and admitted during the course of the trial, regardless of who produced them or introduced them to you.

## CONTENTIONS OF THE PARTIES

Now, as I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously said, this action is one for patent infringement, and this case concerns five separate United States patents. They are:

United States Patent No. 8,019,332, which you've heard referred to throughout the trial as the '332 patent;

---

United States Patent No. 8,385,284, which you've heard to referred to consistently as the '284 patent;

United States Patent No. 8,411,557, which you've heard referred to throughout the trial as the '557 patent;

United States Patent No. 8,102,833, which you've heard referred to as the '833 patent;

And United States patent 9,001,774, which you've heard referred to consistently throughout the trial as the '774 patent.

I will refer to these as the patents-in-suit or as the asserted patents, and in so doing, I'm referring to all five of them collectively.

Optis has alleged that certain iPhones, iPads, and Apple Watches directly infringe the asserted claims either literally or through the Doctrine of Equivalents.

Additionally, Optis has alleged that certain iPhones, iPads, and Apple Watches indirectly infringe the asserted claims of the asserted patents.

Sometimes in these instructions I'll refer to the products -- these products in shorthand by just calling them the accused products.

Optis contends that the accused products infringe the following claims:

Claims 6 and 7 of the '332 patent;

Claims 14 and 27 of the '284 patent;

Claim 10 of the '557 patent;

Claim 6 of the '774 patent;

And Claim 8 of the '833 patent.

_____

33

PROPOSED JURY INSTRUCTIONS

These claims are sometimes referred to as the asserted claims, and Optis also alleges that Apple's infringement is and has been willful. Optis seeks damages in the form of a reasonable royalty for Apple's alleged infringement.

[Apple has made a binding commitment to license Optis's entire patent portfolio. Apple disputes, however, that it has infringed the five patents at issue in this trial.][21] [22] [Apple denies

---

[21] **Apple's Position**: Apple's commitment to license Optis's entire patent portfolio is a fact relevant to Apple's state of mind, which the jury must consider in evaluating willfulness. *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (holding that "evidence relevant to [the defendant's] state of mind at the time of the accused infringement" should be considered by the jury in assessing willfulness).

This fact should be communicated to the jury through a jury instruction because Apple's commitment to license Optis's full patent portfolio was made in a parallel litigation in the United Kingdom. *See* Dkt. 763. The Court's Standing *in Limine* Order No. 13 precludes the parties from introducing evidence, testimony, or argument regarding such parallel proceedings. Having the Court instruct the jury on this issue would provide the jury with this fact without requiring discussion of any parallel proceedings.

Introducing the fact that Apple has made a binding commitment to license Optis's entire portfolio does not open the door to the UK litigation. The details of the UK proceedings do not alter the fact that Apple has made a binding commitment to license Optis's entire portfolio.

[22] **Plaintiffs' Position**: Plaintiffs object to this inclusion as irrelevant and prejudicial. Furthermore, this instruction necessarily opens the door into the U.K. litigation between the parties, which the Court has already ruled should be excluded from this action. *See* Dkt. 668 at 7 (Plaintiffs' MIL No. 14). Indeed, the U.K. Court of Appeals carved out this litigation and Plaintiffs' claims against the accused products in this case specifically from the license. *See* Dkt. 762-1 at ¶ 274 ("[T]he decisive factor in the present case is that Apple was responsible for the EDTX proceedings having proceeded to judgment (and pending appeals) prior to their change of stance on 15 September 2023. ***In my judgment a willing licensee in the position of Apple would therefore recognise that it would not be fair or reasonable for the licence determined by the English courts to require Optis to consent to the EDTX judgment (or any judgment of the CAFC on appeal) being set aside***. Still less would it be fair or reasonable for it to require Optis to do so without even being reimbursed for the costs of the US proceedings down to 15 September 2023, which is Apple's position. In principle, the right answer would be for the English courts' valuation to be adjusted to take account of the EDTX judgment, but as discussed above the valuation methodologies adopted by the parties make that impractical. In those circumstances, ***the least-worst solution to the problem which Apple has caused is for the US final judgment to be treated as a floor for the royalties payable by Apple under the licence***

---

that the accused products infringe the asserted claims of the asserted patents.]Apple further denies that it willfully infringed any claim of the asserted patents. Apple also contends that the asserted claims of the '332 Patent are not eligible to be patented. Apple denies that it owes Optis any damages in this case.

Now, it's your job, members of the jury, to decide whether Optis has proven that Apple has infringed any of the asserted claims of the asserted patents and whether that infringement was willful. You must also decide whether Apple has proven that any of the asserted claims of the asserted patents are invalid.

If you decide that any of the asserted claims have been infringed and are not invalid, then you will need to decide the amount of money damages to be awarded to Optis to compensate it for that infringement.

I'll now instruct you on a number of established facts, and you must take these facts as true when deciding the issues in this case.

No. 1. The '332 patent was filed for on December the 8th, 2010, and was issued on September the 13th, 2011, by the United States Patent and Trademark Office, as you've heard them called the PTO. The '332 patent has an effective filing date of March the 7th, 2008.

2. The '833 patent was filed for on September the 11th, 2008, and issued on January the 24th, 2012, by the PTO. The '833 patent has an effective filing date of November the 13th, 2007.

---

*determined by the English courts* in the manner proposed by Optis.") (emphasis added). *See also* Dkt. 762 at 2-4 (discussing the U.K. Court license in relationship to this case); Dkt. 762-2.
Furthermore, Apple's "state of mind" argument is meritless because they did not enter into the commitment until after sales of the accused products ceased.

No. 3. The '284 patent was filed for on August the 16th, 2010, and issued on February the 26th, 2013, by the PTO. The '284 patent has the effective filing date of December 20th, 2007.

No. 4. The '557 patent was filed for on December 21st, 2011, and issued on April the 2nd, 2013, by the PTO. The '557 patent has an effective filing date of March the 20th, 2006.

No. 5. The '774 patent was filed for on November the 12th, 2013, and issued on April the 7th, 2015, by the PTO. The '774 patent has an effective filing date of April the 21st of 2005.

[No. 6. The Asserted Patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard.][23]

## PATENT CLAIMS

Before you can decide the issues in this case, you'll need to understand the role of the patent claims.

The patent claims are those numbered sentences at the end of each patent, and each of you have a complete copy of the asserted patents in your juror notebooks.

---

[23] **Plaintiffs' Position**: This issue has already been decided by the Court and the Federal Circuit. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1368 (Fed. Cir. 2025) ("The asserted patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard."); Jan. 22, 2026 Hearing Tr. at 29:11-13 (The Court: "We are not going to change posture on whether these are or are not standard essential patents. That was a big issue in the prior trials.").
**Apple's Position**: The parties dispute whether the asserted patents are, in fact, essential to the LTE standard. ETSI made no determination of essentiality. The Federal Circuit did not hold that the asserted patents are standard-essential. It only noted that the asserted patents are "undisputedly FRAND-encumbered SEPs," referring to the fact that the patents were declared essential and thus undisputedly FRAND-encumbered. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 n.8 (Fed. Cir. 2025).

The claims are important because it's the words of the claims themselves that define what a patent covers.

The figures in the patent, the other text in the patent, the rest of the patent provides a description or examples or a context for the claims, but it is those claims at the end of the patent that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or may cover less than another claim. Therefore, what a patent covers collectively depends on what each of its claims covers.

You'll first need to understand what each claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid.

The first step is to understand the meaning of the words used in the patent claim.

Now, the law says that it is my role as the judge to define the terms of the claims, but it's your role as the jury to apply my definitions to the issues that you're asked to decide in this case.

So, accordingly, and as I explained at the beginning of the case, I've determined the meaning of certain claim language, and I've provided to you definitions of those claim terms in your juror notebooks.

You must accept my definitions of these words in the claims as being correct. And it's your job to take these definitions that I've supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

My interpretation of the claim terms should not be taken by you as an indication that I have any view regarding the issues of infringement or invalidity.

_____
37
PROPOSED JURY INSTRUCTIONS

The decisions regarding these issues, infringement and invalidity, are yours to make, ladies and gentlemen.

For claim limitations where I have not construed -- that is, defined or interpreted – any particular term, you're to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say in the field of technology of the patent at the time of the alleged invention.

The meaning of the words of the patent claims must be the same when deciding both the issues of infringement and validity.

I'll explain to you how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by and infringes the claim.

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as the claim elements, or they're sometimes called the claim limitations.  [Claims may describe apparatuses, devices, or products, such as machines.  I will call such claims "product" claims.  Claims may also describe processes or methods for making or using a product.  I will call such claims "method" claims.  In this case, Plaintiffs have asserted both product and method claims for the asserted patents.][24]

---

[24] **Apple's Position**:  Both product and method claims are at issue in this case, and the jury should be instructed on the unique requirements for providing infringement of each type of claim.  Apple's proposed language tracks what the Court has instructed in other cases.  *See, e.g.,*

When a product meets all of the requirements of a claim, it is said it meets all of its limitations or all of its elements, and the claim is said to cover that product, and that product is said to fall within the scope of that claim.

In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim.

[However, it doesn't mean that every word of the claim must exist identically in the accused products.][25] [With respect to product claims,] [i][I]f the product is not covered by the claim, the product does not infringe [the claim] [that product claim.  Similarly, with respect to method claims, if an entity does not perform even one required step of the process, the entity's actions are not covered by that method claim.  If the actions are not covered by the method claim, the actions do not infringe the method claim.][26]

---

Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

**Plaintiffs' Position**: Plaintiffs believe that there is no need for separate instructions for apparatus and method claims. The Court already rejected Apple's attempt to insert this language in the first trial, and there is no basis to add it in now.

[25] **Apple's Position**:  This statement is confusing and legally incorrect for literal infringement. The instructions later describe the requirements for literal infringement and infringement under the doctrine of equivalents.

**Plaintiffs' Position**: This statement is true for infringement under the doctrine of equivalents, and excluding it risks confusion that only literal infringement is at issue. Plaintiffs' proposal tracks the Court's prior instructions. Dkt. 520 at 968:23-969:3.

[26] **Apple's Position**:  Both product and method claims are at issue in this case, and the jury should be instructed on the unique requirements for providing infringement of each type of claim.

Now, this case involves two types of patent claims independent claims and dependent claims.

An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. It's not necessary to look to any other claim to determine what an independent claim covers.

On the other hand, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

The law considers a dependent claim to incorporate all the requirements of the claim or claims to which it refers, or as we sometimes say, from which it depends, as well as those additional claim terms set forth – those additional elements set forth in the dependent claim itself.

To determine what a dependent claim covers, it's necessary to look at both the dependent claim itself and any other claim or claims to which it refers or from which it depends.

A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers or from which it depends is covered by that dependent claim.

Now, certain claims in the asserted patents use the phrase "means for." This "means for" phrase has a special meaning in patent law. It's called a mean-plus-function requirement. It does not cover all of the structures that could perform the function set forth in the claim.

---

**Plaintiffs' Position**: As above, Plaintiffs believe that there is no need for separate instructions for apparatus and method claims. The Court already rejected Apple's attempt to insert this language in the first trial, and there is no basis to add it in now. Plaintiffs' proposal again tracks the Court's prior instructions. Dkt. 520 at 968:23-969:3.

Instead, it covers a structure or set of structures that performs that function and that is either identical or equivalent to the structures described in the patent for performing the function.

The issue of whether two structures are identical or equivalent is for you to decide.

Certain claims in the asserted patents use the word "comprising." Comprising means including or containing.

When the word "comprising" is used, a product that includes all the limitations or elements of the claim, as well as additional elements, is covered by the claim. Some of the claims of the patents-in-suit use the word "including." In a claim, "including" means comprising.

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs, and the nails to hold the legs and the tabletop together, the claim will cover any table that contains these structures, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.

Now, that's a simple example using the word "comprising" and what it means. In other words, ladies and gentlemen, it can have other features in addition to those that are covered by the patent.

If a product is missing even one element or limitation of a claim, it does not meet all the requirements of the claim and is not covered by the claim.

If a product is not covered by the claim, it does not infringe that claim.

## PATENT CLAIMS

I'll now instruct you on infringement in more detail.

If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

To determine whether there is infringement, you must compare the asserted claims, as I've defined each of them, to the accused products [or methods].

You should not compare the accused products with any specific example set out in the patent or with other systems, devices, methods, publications or patents that predate the patent claim at issue—known as the prior art—in reaching your decision on infringement. [As I've reminded you during the trial, the only correct comparison is between the accused product and the language of the claim itself.]

However, if an accused product practices a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product. Infringement of a standard essential patent claim can be proven by showing that an accused product practices the industry standard.[27]

---

[27] **Plaintiffs' Position**: This instruction is quoted from Federal Circuit binding precedent and has been used in this Court. *See, e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir. 2022); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123, 2018 WL 3375192, at *1 (E.D. Tex. July 11, 2018) ("*There are different ways of showing infringement of a standard essential patent.* One could indirectly prove infringement by *showing that (1) the standard necessarily meets the elements of the claim, (2) the accused product complies with the standard, and therefore (3) the accused product meets the claim.* This indirect evidence approach may not require significant analysis of the accused product. However, it relies upon a necessary inference tying the product to the standard and the standard to the claim."); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product"); *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1377 (Fed. Cir.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I'll now instruct you on the specific rules that you must follow to determine whether Optis has proven that Apple has infringed one or more of the patent claims involved in this case.

In order to prove infringement of a patent claim, Optis must show by a preponderance of the evidence that the accused product includes each requirement or limitation of the claim, either literally or under the Doctrine of Equivalents.

The issue of infringement, ladies and gentlemen, is assessed on a claim-by-claim basis within each patent. Therefore, there may be infringement of a particular patent as to one claim, even if there is no infringement as to other claims in that patent.

In this case, Optis contends that Apple literally infringes Claims 6 and 7 of the '332 patent; Claims 1, 14, and 27 of the '284 patent; and Claim 8 of the '833 patent.

In addition, Optis contends that Apple infringes Claim 10 of the '557 patent, and Claim 6 of the '774 patent, both literally and under the Doctrine of Equivalents.

---

2022) ("Infringement can be proven based on an accused product's use of an industry standard if the asserted claim is standard essential" because "If an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product").

**Apple's Position:** Apple objects to providing this instruction because Optis will not offer evidence sufficient to show that the asserted patents are, in fact, essential to the LTE standard or that the Apple accused products practice the relevant aspects of the LTE standard. The case law that Optis cites is inapplicable because Optis will not establish the factual predicates to infer infringement from practicing an industry standard.

[In order to literally infringe a patent claim, the accused product must include or perform each and every element of the claim.

Thus, in determining whether Apple infringes Optis's asserted claims, you must determine if the accused product contains or performs each and every element recited in the claim of the asserted patent.

A claim element is literally present if it exists in or is performed by the accused product as it is described in the claim language, either as I've explained it to you, or if I did not explain it, according to the plain and ordinary meaning as understood by one of ordinary skill in the art.][28]

[Claim 8 of the '833 patent and claims 6 and 7 of the '332 patent are apparatus claims. In order to prove literal infringement of an apparatus—or product—claim, the Plaintiffs must show by a preponderance of the evidence that an accused product includes each and every element of that claim exactly. In determining whether Apple infringes the Plaintiffs' asserted claims, you must compare the accused product with each and every element recited in a claim to determine whether the accused product contains each and every requirement recited in the claim. A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as

---

[28] **Plaintiffs' Position**: Plaintiffs' instructions are pulled verbatim from the Court's previous instructions on infringement. *See* Dkt. 520 at 973:2-975:15. There is no justification for Apple's lengthy alterations of these instructions, particularly when Apple's requested deviations necessarily were either already rejected by the Court or were not previously proposed by Apple. Plaintiffs incorporate this objection throughout this section.
**Apple's Position:** Optis has asserted both apparatus and method claims. The jury should be instructed on the requirements for infringement of apparatus and method claims separately so that the jury does not confuse the requirements for proving infringement of either type of claim.

44

PROPOSED JURY INSTRUCTIONS

understood by one of ordinary skill in the art. If an accused product does not possess any element recited in a claim, then you must find that that particular product does not literally infringe that claim.

In making your determination, you must consider each claim separately.  Not all the claims of a patent must be infringed for infringement to exist. For apparatus, or product, claims, if you find that each and every element of a patented apparatus or product is found in the accused product, then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.[29]  Conversely, if a product is missing even one element of a product claim, it does not meet all the requirements of the claim and is not covered by the claim.  If a product is not covered by the claim, it does not infringe the claim.[30]

Claim 6 of the '774 patent, claims 14 and 27 of the '284 patent, and claim 10 of the '557 patent are method claims.  In order to prove direct infringement of a method claim, the Plaintiffs must show by a preponderance of the evidence that Apple itself performs each and every step of the claimed method in the United States.  Conversely, if Apple itself does not perform each and every step of the claimed method in the United States, Apple does not infringe the claim.[31]][32]

---

[29] Trial Tr., *KAIST IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-1314-JRG-RSP (E.D. Tex. June 15, 2018), ECF No. 498.

[30] Trial Tr., *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-JRG (E.D. Tex. Mar. 16, 2015), ECF No. 428.

[31] *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:14-cv-33-JRG, 2016 WL 5480908, at *5 (E.D. Tex. Sept. 29, 2016); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("[A] process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country.").

[32] **Apple's Position**:  Optis has asserted both product and method claims, and the jury should be instructed on the requirements to prove infringement of both product and method claims.

For Claim 10 of the '557 patent and Claim 6 of the '774 patent, if the claims are not literally infringed, there can still be infringement if Optis proves that the claims are satisfied under the Doctrine of Equivalents.

Under the Doctrine of Equivalents, Apple, its customer, or an accused product infringes a claim if it performs steps or contains elements corresponding to each requirement of the claim that are equivalent to, even though not literally met by, the accused product.

You may find that a step or element is equivalent to a requirement of a claim that is not literally met if a person having ordinary skill in the field of the technology of the patent would have considered the differences between them to be insubstantial or would have found that the structures perform substantially the same function in substantially the same way to achieve substantially the same results as the requirements of that claim limitation. [You may not find a step or structure equivalent if doing so would eliminate the claim element entirely.[33]

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the structure or step to be considered interchangeable, the claim element must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.[34]][35]

---

**Plaintiffs' Position**: The Court previously rejected Apple's attempt to provide separate instructions for method and apparatus claims, and should do so again here to streamline the instructions as there is no need for separate instructions.

[33] *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1362 (Fed. Cir. 2005).

[34] Federal Circuit Bar Association Model Instructions § 3.1(c).

[35] **Apple's Position**:  This proposed language provides guidance on how the jury should apply the doctrine of equivalents. Optis does not dispute that Apple's proposed additions accurately

Going back to an example I gave you earlier about a patent claim that recites a table comprising as its elements, a tabletop, legs, and nails.

A table that, in fact, contained a tabletop, legs, and nails would literally infringe the patent claim.

However, a table that consisted, instead, of a tabletop, legs, and screws, instead of nails, might still infringe the same claim under the Doctrine of Equivalents if the screws, when used to perform substantially the same function as the nails in substantially the same way achieves substantially the same result.

Now, that's an example illustrating the Doctrine of Equivalents.

In order to prove that an accused product meets a limitation under the Doctrine of Equivalents, Optis, the Plaintiff, must prove the equivalency to the claim element by a preponderance of the evidence.

[A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.

A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.][36]

---

describe the standard for infringement under the doctrine of equivalents, and this additional detail will assist the jury in applying that doctrine.
**Plaintiffs' Position**: Apple did not previously raise this as necessary for an instruction on doctrine of equivalents, and the Court's prior instruction provides sufficient guidance. Furthermore, Apple's request merely adds words without being helpful or necessary to the jury.
[36] **Apple's Position**: Apple objects to Plaintiffs' proposed language and believes that it should be omitted. Instructing the jury on what is *not* needed for a finding of infringement is confusing, argumentative, and highly prejudicial. It is improper and misleading to selectively instruct the jury on particular requirements that are not necessary to establish infringement. Rather, the jury

[The asserted patents also contain dependent claims. Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of a dependent claim of any of the asserted patents, you must first determine whether any of the independent claims has been infringed. If you decide that the independent claim has not been infringed then the dependent claim cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine: (1) for product claims, whether each additional requirement of the dependent claim has also been included in the accused product; or (2) for method claims, whether Apple itself performs each additional step required by the dependent claim. If each additional product requirement has been included, or each additional method is performed, then the dependent apparatus or method claim has been infringed. Conversely, if Apple's products or conduct omits any additional requirement recited in a dependent claim, then Apple does not infringe that claim.[37]][38]

---

should be (and will be) instructed on what is required to find infringement.  Moreover, to the extent that the jury is asked to address willfulness, it would be confusing to instruct the jury that Apple's state of mind is not relevant.
**Plaintiffs' Position**: Apple does not dispute that this is a correct restatement of the law. As before, the Court should instruct the jury that knowledge of a patent is irrelevant to direct infringement. Otherwise, there is a risk of confusion that the jury will confuse notice as it relates to Section 287 and willfulness as a prerequisite for infringement.

[37] Adapted from Jury Charge in *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019), ECF No. 335.

[38] **Apple's Position**:  Because Optis has asserted infringement of independent and dependent claims, the jury should be instructed on how to assess infringement of both types of claims.
**Plaintiffs' Position**: The Court previously rejected Apple's attempt to provide separate instructions for independent and dependent claims, and should do so again here to streamline the instructions as there is no need for separate instructions.

None of this alters the fact that all of the elements of a claim must be present, either literally or under the Doctrine of Equivalents, for that claim to be infringed.

If even a single element of a claim is neither literally present in the accused product nor present under the Doctrine of Equivalents, then you must find that the accused product does not infringe that claim.

Optis also alleges in this case that Apple is liable for indirect infringement by actively inducing its users to directly infringe the asserted claims. As with direct infringement, you must determine whether there has been induced infringement on a claim-by-claim basis.

Apple is liable for induced infringement of a claim only if Optis proves by a preponderance of the evidence that:

(1) the acts have been carried out by Apple's customers and directly infringe that claim;

(2) Apple has taken action intending to cause the infringing acts by its users,

And, (3), Apple has been aware of the asserted patents and has known that the acts of its users constitute infringement of the asserted patents or was willfully blind to that infringement.

Now, to establish induced infringement, it's not sufficient that someone else directly infringes a claim, nor is it sufficient that the company accused of inducing another's direct infringement merely had knowledge or notice of an asserted patent or had been aware of the acts by another that allegedly constitute direct infringement, and the mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient.

---

Rather, in order to find inducement, you must find that Apple specifically intended [to infringe the patent] or [was willfully blind to that infringement] [that Apple believed there was a high probability of infringement, but deliberately avoided learning the nature of those infringing acts].[39]

In this case, Optis also contends that Apple willfully infringed its patents. If you decide that Apple has infringed, you must go on and separately address the additional issue of whether or not Apple's infringement was willful.

Optis must prove willfulness by a preponderance of the evidence. In other words, you must determine whether or not it is more likely than not that Apple willfully infringed.

You may not determine that the infringement was willful just because Apple knew of the asserted patents and infringed them.

However, you may find that Apple willfully infringed if you find that it acted egregiously, willfully or wantonly. You may find Apple's action were egregious, willful, or wanton if it acted in reckless or callous disregard of, or with indifference to the rights of Optis.

A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position.

---

[39] **Apple's Position**: The concept of "willful blindness" is not defined in Optis's proposed instruction.  Apple's proposal includes a definition of willful blindness to assist the jury in applying the instruction.
**Plaintiffs' Position**: Plaintiffs' instruction tracks the Court's prior instruction and Federal Circuit case law. *See* Dkt. 520 at 977:21-23; *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1348 (Fed. Cir. 2016).

Your determination, ladies and gentlemen, of willfulness should incorporate the totality of the circumstances based on all the evidence that's been presented during the trial. And willfulness can be established by circumstantial evidence.

[Knowledge of the existence of a patent or a patent family can be relevant to the question of willful infringement.

For example, if Apple knew of the existence of a patent or subjectively believed that there was a high probability that a patent existed and took deliberate actions to avoid learning of the patent, you may take this into account when considering willfulness. You may also take into account whether Apple had knowledge of a patent family.] [To prove willful infringement, Optis must prove that Apple was both aware of the asserted patent and of the infringement.][40]

[To determine whether Apple acted willfully, consider all facts. These may include, but are not limited, to:

1.    Whether or not Apple acted consistently with the standards of behavior for its industry;

---

[40] **Apple's Position**:  Apple objects to Optis's proposal to the extent that it suggests that willful infringement may be established absent knowledge of the asserted patent and knowledge of the alleged infringement, which is contrary to controlling Federal Circuit authority.  *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness.").  Optis's proposal is also legally incorrect to the extent that it states that knowledge of a patent family is sufficient to establish willfulness.  *See Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 956 (Fed. Cir. 2024).
    **Plaintiffs' Position**: Plaintiffs' instruction tracks the Court's prior instructions. Dkt. 520 at 978:25-979:9. It also is a correct statement of the law. *See, e.g., Pantech Corp. v. OnePlus Tech. (Shenzhen) Co.*, No. 5:24-CV-00038, 2025 WL 2793801, at *3 (E.D. Tex. Aug. 27, 2025) "[W]illful infringement require that the alleged infringer have knowledge (or willful blindness) of the asserted patents.")

2.      Whether or not Apple reasonably believed it did not infringe or that the patent was invalid;

3.      Whether or not Apple tried to cover up its infringement; and

4.      Whether or not Apple has made a binding commitment[41] to license Optis's

patents.[42]][43]

---

[41] **Plaintiffs' Position**:  Plaintiffs object to the reference of a "binding commitment" as irrelevant and prejudicial. Furthermore, this instruction necessarily opens the door into the U.K. litigation between the parties, which the Court has already ruled should be excluded from this action. *See* Dkt. 668 at 7 (Plaintiffs' MIL No. 14). Indeed, the U.K. Court of Appeals carved out this litigation and Plaintiffs' claims against the accused products in this case specifically from the license. *See* Dkt. 762-1 at ¶ 274 ("[T]he decisive factor in the present case is that Apple was responsible for the EDTX proceedings having proceeded to judgment (and pending appeals) prior to their change of stance on 15 September 2023. ***In my judgment a willing licensee in the position of Apple would therefore recognise that it would not be fair or reasonable for the licence determined by the English courts to require Optis to consent to the EDTX judgment (or any judgment of the CAFC on appeal) being set aside***. Still less would it be fair or reasonable for it to require Optis to do so without even being reimbursed for the costs of the US proceedings down to 15 September 2023, which is Apple's position. In principle, the right answer would be for the English courts' valuation to be adjusted to take account of the EDTX judgment, but as discussed above the valuation methodologies adopted by the parties make that impractical. In those circumstances, ***the least-worst solution to the problem which Apple has caused is for the US final judgment to be treated as a floor for the royalties payable by Apple under the licence determined by the English courts*** in the manner proposed by Optis.") (emphasis added). *See also* Dkt. 762 at 2-4 (discussing the U.K. Court license in relationship to this case; Dkt. 762-2.
    Furthermore, Apple's "state of mind" argument is meritless because they did not enter into the commitment until after sales of the accused products ceased.
**Apple's Position**:  Apple's commitment to license Optis's entire patent portfolio is a fact relevant to Apple's state of mind, which the jury must consider in evaluating willfulness.  *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (holding that "evidence relevant to [the defendant's] state of mind at the time of the accused infringement" should be considered by the jury in assessing willfulness).
    This fact should be communicated to the jury through a jury instruction because Apple's commitment to license Optis's full patent portfolio was made in a parallel litigation in the United Kingdom.  *See* Dkt. 763.  The Court's Standing *in Limine* Order No. 13 precludes the parties from introducing evidence, testimony, or argument regarding such parallel proceedings.  Having the Court instruct the jury on this issue would provide the jury with this fact without requiring discussion of any parallel proceedings.
    Introducing the fact that Apple has made a binding commitment to license Optis's entire portfolio does not open the door to the UK litigation.  The details of the UK proceedings do not alter the fact that Apple has made a binding commitment to license Optis's entire portfolio.
[42] Federal Circuit Bar Association Model Instructions § 3.10 (with modifications).

---

[43] **Apple's Position**:  Apple objects to providing an instruction on willfulness.  The Court previously determined that enhancement was not warranted and Plaintiffs failed to appeal that ruling.  Accordingly, any further consideration of enhancement is barred by the mandate rule, and there is no reason to retry willfulness now that enhancement has been resolved.  *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999))); *see also Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("Because Biomet failed to raise this issue, clearly implicated in the initial decision of the district court, our mandate in *Tronzo I* acted to prevent Biomet from raising this issue on remand or in any future proceedings in this litigation.").  The Court has already confirmed that the "posture of the parties" remains the same from the prior trial.  See 1/22/26 Status Conference Tr. at 32:4.

To the extent that the jury is instructed on willfulness, the Court should identify factors that the jury may consider that bear on Apple's state of mind.

**Plaintiffs' Position**: The Court has already ruled that willfulness will be part of the case. Dkt. 804 at 2 ("The issue of infringement, which includes whether any such infringement was willful, has been designated for a new trial by the appellate court. Accordingly, willfulness remains an issue in this case.").

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial including:

1.      the levels of education and experience of the inventors and other persons working in the field;

2.      the types of problems encountered in the field;

3.      prior art solutions to those problems;

4.      rapidity with which innovations are made; and

5.      the sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all the relevant prior art at the time of the claimed invention.[44]

## PATENTABILITY[45]

[I'll now instruct you on the rules that you must follow in deciding whether or not Apple has proven by clear and convincing evidence that the asserted claims of the '332 patent are patent ineligible.

---

[44] Trial Tr. 984:16-985:7, *Optis Wireless Tech., LLC v. Apple Inc.*, C.A. No. 2:19-cv-66-JRG, Dkt. 499.

[45] **Apple's Position**:  Patent eligibility is a legal issue for the court.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355 (Fed. Cir. 2018) ("the ultimate question of patent eligibility is one of law").  In this regard, ineligibility resembles claim construction, another issue of law that remains a court decision, even when it requires deciding factual disputes.  *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015).  To the extent the Court submits the step two issue to the jury, it should do so on an advisory basis and reserve the ultimate decision to itself.

An issued United States patent is accorded a presumption of patent eligibility based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the PTO or sometimes just the Patent Office, acted correctly in issuing the patent. This presumption of patent eligibility extends to all United States patents that are issued by the PTO.[46]

In order to overcome this presumption, Apple must establish by clear and convincing evidence that Claims 6 and 7 of the '332 Patent are patent ineligible.

The time it took the United States Patent and Trademark Office to examine and grant the patents-in-suit is not relevant to any issue in this case. Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are patent ineligible.

Like infringement, ladies and gentlemen, patent eligibility is determined on a claim-by-claim basis. Claims are construed in the same way for determining infringement as for determining invalidity.

---

**Plaintiffs' Position**: The Court has ruled that the question of *Alice* Step 2 will be before the jury. *See* Dkt. 802. Any relief sought by Apple is irrelevant to the question of what jury instructions are proper.

[46] **Plaintiffs' Position**: Plaintiffs note that Apple did not object at the first trial to the inclusion of the black letter law that a patent is presumed valid.

**Apple's Position:** Apple objects to Optis's proposed language related to the presumption of validity as unduly prejudicial, duplicative and unnecessary, and likely to result in confusion. Invalidity is a clear and convincing standard because of the presumption that a patent is valid. *See Microsoft Corp. v.i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011). Thus, Optis's instructions on the presumption that a patent is valid is unnecessary, confusing, and duplicative of the clear and convincing standard already articulated in the jury instructions and is likely to confuse the jury.

You must apply the claim language consistently and in the same manner for issues of infringement and for issues of patent eligibility. You must determine separately for each of Claim 6 and Claim 7 of the '332 Patent whether that claim is patent eligible.

As I've previously explained to you, to obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office.

The process of obtaining a patent is called patent prosecution, and the applications submitted to the PTO includes within it what is called the specification.

The specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.

In determining whether a claimed invention is patentable, you must consider the level of a hypothetical ordinary skill in the field of the invention that someone would have had at the time the invention was made or the patent was filed.

To prove the patent ineligibility of the '332 Patent, Apple is required to show by clear and convincing evidence that the elements in claims 6 and 7, considered individually and as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time the patent application was filed as of the effective filing date of the patent, which for the '332 Patent is March the 7th, 2008.

It has been determined that Claim 6 of the '332 Patent is directed to a mathematical formula and that mathematical formula by itself cannot contribute to the inventive concept. Here, the remaining components of Claims 6 and 7 after removing the mathematical formula are: a

"user equipment (UE) for decoding control information, the UE comprising: a receiver for receiving a Physical Downlink Control Channel (PDCCH) from a base station at subframe k; and a decoder for decoding a set of PDCCH candidates within a search space of the PDCCH at the subframe k, wherein each of the set of PDCCH candidates comprises 'L' control channel elements (CCEs), wherein the LCCEs corresponding to a specific PDCCH candidate among the set of PDCCH candidates of the search space at the subframe k are contiguously located from a position given by [a variable] " and "where A and D are 39827 and 65537, respectively."

It is your job to determine, for both Claim 6 and Claim 7 whether one or more remaining components alone or in an ordered combination embody an inventive concept that is not well-known, routine and conventional.][47]

---

[47] **Plaintiffs' Position**: Plaintiffs' instructions track the Court's prior instructions on patent invalidity/eligibility, except 1) the instructions relating solely to defenses no longer at issue have been removed, and 2) additional language relating to patentability has been added as instructed by the Federal Circuit. Apple's unnecessary deviations should be rejected.
**Apple's Position**:  Apple objects to Optis's proposed language related to the presumption of validity as unduly prejudicial, duplicative and unnecessary, and likely to result in confusion. Invalidity is a clear and convincing standard because of the presumption that a patent is valid. *See Microsoft Corp. v.i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011).  Thus, Optis's instructions on the presumption that a patent is valid is unnecessary, confusing, and duplicative of the clear and convincing standard already articulated in the jury instructions and is likely to confuse the jury.

Apple further objects to Optis's proposed instruction because it is inconsistent with how the Federal Circuit has defined the abstract mathematical formula of claims 6 and 7.  Indeed, on summary judgment, Optis conceded that the added limitations of claim 7 are a mathematical formula.  *See* Dkt. 777 at 1 (¶¶ 1-2).  However, Optis's proposed instruction now seeks to instruct the jury that the remaining components of claim 7 after removing the abstract idea include what Optis previously admitted was a mathematical formula (i.e., "where A and D are 39827 and 65537, respectively").

By contrast, Apple's proposed construction accurately describes abstract idea and the claim elements after removing the abstract idea, as well as the legal standard under *Alice* step two.

[Apple contends that the asserted claims of the '332 patent claim subject matter that is ineligible for patent protection.  Patent ineligibility is a defense to infringement.  Apple has the burden of proving ineligibility by clear and convincing evidence.

I will now instruct you about the rules to follow in deciding whether or not Apple has proven that the asserted claims of the '332 patent are ineligible for patent protection.

To succeed on its claim for patent ineligibility, Apple must establish two things.  The first is whether or not the claims are directed to eligible subject matter.  An abstract idea is not eligible for patent protection.  I have already determined that the asserted claims of the '332 patent are directed to the abstract idea of a mathematical formula.[48]

You, the jury, must therefore only decide the second issue related to patent eligibility, which is whether claim 6 of the '332 patent contains an additional inventive concept sufficient to transform the patent claims into something significantly more than the mathematical formula abstract idea.  You may not consider the additional elements of claim 7 of the '332 patent in your analysis because the added elements in claim 7 are abstract ideas.[49]  If you find that claim 6 lacks an additional inventive concept, you must find both claims 6 and 7 invalid.

---

[48] The Federal Circuit specifically instructed that "[i]f on remand the district court chooses to have the jury decide whether what Optis alleges is the inventive concept is well-understood, routine, and conventional, then the jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept." *Optis Cellular Technology, LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025).
[49] **Apple's Position:**  Optis has acknowledged that the added elements of claim 7 are a mathematical formula.  *See* Dkt. 777 at 1 (¶¶ 1-2).  Therefore, the analysis at *Alice* step two should focus exclusively on claim 6.  Optis's position that claim 7 presents a separate question of patent eligibility contradicts the position that Optis took on summary judgment that the added elements of claim 7 were simply a mathematical formula.

PROPOSED JURY INSTRUCTIONS

A claim is not patent eligible if, after removing the mathematical formula abstract idea, the remaining claim elements involve only the performance of activities, individually or in combination, that a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional at the time the patent application was filed.[50]  Here, the remaining elements of claim 6 after removing the abstract mathematical formula are a "user equipment (UE) for decoding control information, the UE comprising:  a receiver for receiving a Physical Downlink Control Channel (PDCCH) from a base station at subframe k; and a decoder for decoding a set of PDCCH candidates within a search space of the PDCCH at the subframe k."  In determining whether those elements were well-understood, routine, and conventional to a person of ordinary skill in the art, you may consider all the evidence presented during the trial, including the testimony of witnesses, statements made in the patent's written description, as well as evidence of the prior art.  The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional.  However, the fact that something was known in the art is relevant to determining whether it was well-understood, routine, and conventional.  In addition, implementing ineligible subject matter using conventional computing components is not sufficient to transform the claims into something

---

**Plaintiffs' Position:** Whether the Claim 7 is patent eligible is a distinct question for the jury and should be addressed as such.

[50] *Optis Cellular Technology, LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025) (requiring that, if *Alice* step two is presented to the jury, "jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept"); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1299 (Fed. Cir. 2020) ("The abstract idea itself cannot supply the inventive concept." (quoting *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019)).

significantly more than the ineligible subject matter, even if it was a new idea to do so.

Likewise, merely limiting the ineligible subject matter to a particular technological environment

is not sufficient to provide an inventive concept.[51]][52]

---

[51] *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018) (holding that limitations that "simply provide further narrowing of what are still mathematical operations" do not pass muster under *Alice* step two).

[52] **Apple's Position**:  Patent eligibility is a legal issue for the court.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1355 (Fed. Cir. 2018) ("the ultimate question of patent eligibility is one of law").  In this regard, ineligibility resembles claim construction, another issue of law that remains a court decision, even when it requires deciding factual disputes.  *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015).  To the extent the Court submits the step two issue to the jury, it should do so on an advisory basis and reserve the ultimate decision to itself.

Apple objects to Optis's proposed instruction.  Optis's proposed instruction is inconsistent with the Federal Circuit's decision in this case, which requires that "[i]f on remand the district court chooses to have the jury decide whether what Optis alleges is the inventive concept is well-understood, routine, and conventional, then the jury should be instructed what the abstract idea is (i.e., a mathematical formula) and that the abstract idea cannot contribute to the inventive concept." *Optis Cellular Technology, LLC v. Apple Inc.*, 139 F.4th 1363, 1380 n.11 (Fed. Cir. 2025).  Optis's proposed instruction is also inconsistent with Optis's position that the added elements of claim 7 are mathematical formulae. *See* Dkt. 777 at 1 (¶¶ 1-2).  By contrast, Apple's proposal is fully consistent with the Federal Circuit's decision in this case and the issues that actually remain in dispute on *Alice* step two.  Apple further objects to Optis's proposed language related to the presumption of validity and Patent Office procedure as unduly prejudicial, duplicative and unnecessary, and likely to result in confusion.  Invalidity is a clear and convincing standard because of the presumption that a patent is valid.  *See Microsoft Corp. v.i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011).  Thus, Optis's instructions on the presumption that a patent is valid is unnecessary, confusing, and duplicative of the clear and convincing standard already articulated in the jury instructions and is likely to confuse the jury.  Moreover, Optis's instruction related to the Patent Office's examination process and procedure is irrelevant, argumentative, and duplicative of the video shown at the outset of trial.

**Plaintiffs' Position**: Plaintiffs' instruction on Step 2 fully complies with the Federal Circuit's order, and identifies that Claim 6 is directed to a mathematical formula. Apple's instruction, on the other hand, eliminates claim elements from the claims at issue and is incorrect. Furthermore, as stated above, accurately restating patent office procedure and the presumption of validity is undisputedly correct legally and would be helpful to the jury in understanding the burden of proof on the issue.

# DAMAGES[53]

[I'll now instruct you about the measure of damages. However, ladies and gentlemen, by instructing you on damages, I'm not suggesting which party should win this case on any issue.[54]

---

Additionally, the Court has ruled that the question of *Alice* Step 2 will be before the jury. *See* Dkt. 802. Any relief sought by Apple is irrelevant to the question of what jury instructions are proper.

[53] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 697, 32:12-39:10 (E.D. Tex. Aug. 8, 2021)

[54] **Plaintiffs' Position**: Plaintiffs have copied the Court's instructions from the damages retrial verbatim. Apple's lengthy deviations are unnecessary, confusing, and unhelpful to the jury. Furthermore, Apple's objections to the Court's prior instructions as they related to both smallest saleable infringing units and comparable licenses were rejected by the Court. *See* Dkt. 694 at 13:23-14:11, 14:22. It should reject Apple's position again as unnecessary. Furthermore, the jury will already been informed about comparable licenses in the context of *Georgia-Pacific* factor 2.
**Apple's Position:** Apple objects to Plaintiffs' proposed damages instruction because it omits an instruction on comparable license agreements in Optis's proposed damages instruction. The jury will hear evidence regarding comparable license agreements and should be instructed on how to consider that evidence in its damages analysis. Apple has proposed an alternative damages instruction that addresses comparable license agreements consistent with the Federal Circuit's holding in *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc).

Apple also objects to Plaintiffs' proposed damages instruction because it omits an instruction on the smallest saleable patent practicing unit when discussing apportionment. The accused products are multi-component devices of which only a portion is implicated by Optis's infringement allegations. The jury should be instructed to apportion to the smallest saleable patent practicing unit in assessing damages for the accused products. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (SSPPU "first arose in the Cornell case, where the district court noted that, rather than pursuing a 'royalty base claim encompassing a product with significant non-infringing components,' the patentee should have based its damages on 'the smallest salable infringing unit with close relation to the claimed invention.' 609 F.Supp.2d at 287-88 (emphasis added). In other words, the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment."); *LaserDynamics, Inc. v. Quanta Computer. Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("Patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent practicing unit, without showing that the demand for the entire product is attributable to the patented feature.").

If you find that Apple has not infringed any of the asserted claims, then Optis is not entitled to any damages. If you find that Apple has only infringed the '332 Patent but that both claims 6 and 7 are unpatentable, then Optis is not entitled to damages. But if you otherwise find infringement, then Optis is entitled to damages.

Plaintiffs in this case have the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should only award those damages that Optis establishes are more likely than not fair, reasonable, and nondiscriminatory compensation. While Optis is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Optis is not entitled to damages that are remote or only speculative.

The damages that you award in this case must be adequate to compensate for the infringement. You must not award Optis more damages than are adequate to compensate for the infringement. You also must not include any additional amount for the purposes of punishing Apple or for setting an example.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty. In this case, Optis seeks damages in the form of a reasonable royalty.

A royalty, ladies and gentlemen, is a payment made to the patentholder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patentholder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patentholder and the infringer would have been had they entered into an agreement at that time

and had they acted reasonably in their negotiations. In determining this, you must assume that both sides believe the patents were valid, patent eligible, and infringed and that both sides were willing to enter into an agreement. The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either side would have preferred.

Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Although evidence of the actual profits of an infringer may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits made.[55]

Now, in considering the evidence of a reasonable royalty, you're not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you

---

[55] **Apple's Position**:  Apple objects to instructing the jury to consider an infringer's profits. Infringer's profits are not an available remedy for utility patent infringement.  Apple has proposed an alternative instruction that only the plaintiffs' damages may be recovered, not the infringer's profits.  None of the *Georgia-Pacific* factors permit consideration of an infringer's profits in the manner that Plaintiffs' proposed instruction suggests.

**Plaintiffs' Position**: Apple's position omits the relevance of profits to numerous modified *Georgia-Pacific* factors, including: "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."; The nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used the invention"; and "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." (Numbered as Factors 6-8 in the Court's instructions).

consider to be a reasonable royalty based upon your consideration of all the evidence presented by the parties during the trial, whether that evidence is of a specific figure or a range of figures.

Now, you have heard that the asserted patents have been declared to be standard essential patents, or SEPs. That is, the LTE standard cannot be practiced without using the invention claimed in the Patents-in-Suit.[56]

The original owners of the asserted patents made a commitment to the European Telecommunications Standards Institute, ETSI, which you've also heard pronounced as E-T-S-I, to license the asserted patents on fair, reasonable, and nondiscriminatory or, as you've heard it called, FRAND terms and conditions. Optis has also committed to license the asserted patents on FRAND terms.

The FRAND commitment in this case does not require any specific licensing model to determine a FRAND royalty. You should determine a FRAND royalty in this case based on the totality of the circumstances.

---

[56] **Apple's Position**:  Apple objects to instructing the jury that the asserted patents are essential to the LTE standard, which is a disputed issue of fact.  ETSI made no determination of essentiality.  Further, the process by which standards are created is a factual issue for which the parties will introduce evidence and is not appropriate for a preliminary instruction.  The Federal Circuit did not hold that the asserted patents are standard-essential.  It only noted that the asserted patents are "undisputedly FRAND-encumbered SEPs," referring to the fact that the patents were declared essential and thus undisputedly FRAND-encumbered.  *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 n.8 (Fed. Cir. 2025).
**Plaintiffs' Position**: This issue has already been decided by the Court and the Federal Circuit. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1368 (Fed. Cir. 2025) ("The asserted patents are standard-essential patents ("SEPs") that cover technology essential to the Long-Term Evolution ("LTE") standard."); Jan. 22, 2026 Hearing Tr. at 29:11-13 (The Court: "We are not going to change posture on whether these are or are not standard essential patents. That was a big issue in the prior trials.").

Now, the law requires that any royalty awarded to the Plaintiff Optis correspond to the value of the patented invention within the accused products as distinct from other unpatented features or other market factors.

This is particularly true where the accused products have multiple features and multiple components not covered by the patents or where the accused products work in conjunction with other non-patented items. If unpatented features contribute to the accused products, ladies and gentlemen, you must apportion the value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

Now, when dealing with standard essential patents, there are two special apportionment issues that arise. First, the patented features must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented features, not any added value by the standard's adoption of the patented technology.

You may also consider any evidence of patent royalty stacking. Royalty stacking, as it's called, can arise when a standard implicates multiple patents, perhaps hundreds or thousands, which would cause a company that is forced to pay royalties for all such standard patents to pay royalties that stack on top of each other and may become excessive.

Now, in determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

66
PROPOSED JURY INSTRUCTIONS

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit. Comparable license agreements include those covering the use of the claimed invention or similar technology.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The duration of the patent and the term of the license.

5. The utility and advantages of the alternatives that could have been used instead of the infringing technology in the period before the standard was adopted;[57]

---

[57] **Apple's Position**: Apple objects to the omission of "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results," which is the standard articulation of *Georgia-Pacific* Factor 9. The jury will hear evidence on this factor, and the jury should be instructed to consider it as part of its damages analysis.

**Plaintiffs' Position**: The Court already rejected this argument before the retrial. *See* Dkt. 694 at 12:14-23 ("And I believe what's shown here as factor 5 is, in fact, the original factor 9 from the entirety of *Georgia-Pacific*, and Plaintiffs propose that the original factor as stated, unmodified pursuant to the FRAND context, be included. Defendants urge this version as well as the original version to be included as separate factors. The Court has included the modified version offered by Defendant without including the original version of this factor. In that respect, both parties' objections are overruled."). This also comports with Federal Circuit law. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) ("In this case, the district court erred by instructing the jury on multiple Georgia–Pacific factors that are not relevant, or are misleading, on the record before it, including, at least, factors 4, 5, 8, 9, and 10 of the *Georgia–Pacific* factors.").

PROPOSED JURY INSTRUCTIONS

6.  The nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used the invention

7.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

8.  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

9.  The opinion and testimony of qualified experts.

10. The amount that a licensor and a licensee would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors. No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.

You may also consider any other factors which in your minds would have increased or decreased the royalty Apple would have been willing to pay and that the patent owner would have been willing to accept, with both acting as normally prudent business people.

---

For any reasonable royalty damages you award, you must also determine the type of royalty that the patentholder and the infringer would have agreed to would have agreed to as a result of the hypothetical negotiation in 2012.

One type of royalty is a running royalty. A running royalty is a fee paid for the right to use the patents that is paid for each unit of the infringing products that have been sold or that may be sold in the future. If there are additional units sold in the future, any damages for these sales will not be addressed by you.

If you decide that a running royalty is appropriate, then the damages that you award, if any, should reflect the total amount necessary to compensate Optis for Apple's past infringement during the damages period.

Another type of royalty is a lump-sum. A lump-sum royalty is when the infringer pays a single price for a license to sales of the infringing product. A lump sum constitutes damages for both past infringement, during the damages period, and future infringement. If you decide that a lump sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate Optis for Apple's past and future infringement.

Now, with those instructions, we'll proceed to hear closing arguments from the attorneys in this case.][58]

---

[58] **Apple's Position**:  Apple objects to the omission of an instruction on comparable license agreements in Optis's proposed damages instruction.  The jury will hear evidence regarding comparable license agreements and should be instructed on how to consider that evidence in its damages analysis.  Apple has proposed an alternative damages instruction that addresses comparable license agreements consistent with the Federal Circuit's holding in *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc).

*[Damages – Introduction[59]*

I'll now instruct you about the measure of damages. However, ladies and gentlemen, by instructing you on damages, I'm not suggesting which party should win this case on any issue.

If you find that Apple has not infringed any of the asserted claims, then Optis is not entitled to any damages.  Similarly, if you find claims 6 and 7 of the '332 patent invalid, then Optis is not entitled to damages for the '332 patent.

---

Apple also objects to the omission of an instruction on the smallest saleable patent practicing unit when discussing apportionment.  The accused products are multi-component devices of which only a portion is implicated by Optis's infringement allegations.  The jury should be instructed to apportion to the smallest saleable patent practicing  unit in assessing damages for the accused products.  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (SSPPU "first arose in the Cornell case, where the district court noted that, rather than pursuing a 'royalty base claim encompassing a product with significant non-infringing components,' the patentee should have based its damages on 'the smallest salable infringing unit with close relation to the claimed invention.' 609 F.Supp.2d at 287-88 (emphasis added). In other words, the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment."); *LaserDynamics, Inc. v. Quanta Computer. Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("Patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent practicing unit, without showing that the demand for the entire product is attributable to the patented feature.").

**Plaintiffs' Position**: As noted above, Plaintiffs have copied the Court's instructions from the damages retrial verbatim. Apple's lengthy deviations are unnecessary, confusing, and unhelpful to the jury. Furthermore, Apple's objections to the Court's prior instructions as they related to both smallest saleable infringing units and comparable licenses were rejected by the Court. *See* Dkt. 694 at 13:23-14:11, 14:22. It should reject Apple's position again as unnecessary. Furthermore, the jury will already been informed about comparable licenses in the context of *Georgia-Pacific* factor 2.

[59] Trial Tr. 985:13-986:12, *Optis Wireless Tech., LLC v. Apple Inc.*, C.A. No. 2:19-cv-66-JRG, Dkt. 499.

---

If you award damages, they must be adequate to compensate Optis for any infringement of the asserted claims you may find.  You must not award Optis more damages than are adequate to compensate for the infringement nor should you include any additional amount for the purpose of punishing Apple.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.

Optis has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should only award those damages that Optis establishes that it more likely than not suffered as a result of any infringement of the asserted claims.

Now, while Optis is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Optis is not entitled to damages that are remote or speculative.

### *Damages – Reasonable Royalty*[60]

In this case, Plaintiffs seek damages in the form of a reasonable royalty. A reasonable royalty is defined as the amount of money that the patent owners and Apple would have agreed upon as a fee for use of the claimed invention at the time just prior to when any

---

[60] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 986:13-17, 987:23-988:10 (E.D. Tex. Aug. 10, 2020) (with modifications); Federal Circuit Bar Association Model Jury Instructions § B.5.1, § B.5.6 (2020) (with modifications); AIPLA Model Jury Instructions, § V.10.2.5.1 (2019) (with modifications); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Maxwell, Ltd. v. ZTE Corp.*, 5:16-cv-00179-RWS (E.D. Tex.), D.I. 223, 28-29, 2018-06-29 Instruction 7.1 (with modifications).

PROPOSED JURY INSTRUCTIONS

infringement began for a license to use the invention. It is the royalty that would have resulted from an arm's-length negotiation between a willing licensor and a willing licensee.

This is known as the hypothetical negotiation. In considering this hypothetical negotiation, you should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred.

In determining this amount, you must assume that both parties believed that the asserted claims were valid and infringed and that both parties were willing to enter into an agreement. You must also consider that both parties knew that all of the patents-in-suit had been committed to be licensed on fair, reasonable and non-discriminatory ("FRAND") terms. You must be careful to ensure that award is no more and no less than the value of the patented invention.

A reasonable royalty must reflect that both the original owners of the asserted patents and then later the Plaintiffs committed to license on FRAND terms. Both the original owners of the asserted patents and then later the Plaintiffs submitted a written commitment to the European Telecommunications Standards Institute ("ETSI") covering all asserted patents, agreeing forever to grant an irrevocable license to the asserted patents on fair, reasonable, and non-discriminatory—or FRAND—terms and conditions. Therefore, a reasonable royalty in this case cannot exceed the amount permitted under Plaintiffs' FRAND obligations.

PROPOSED JURY INSTRUCTIONS

Please also note that when I say that Plaintiffs are seeking damages that Plaintiffs contend to be a reasonable royalty, that does not mean I agree that Plaintiffs are seeking a reasonable amount. If you award damages, it will be up to you the jury to determine what a reasonable amount would be.

### *Damages – Apportionment Required*[61]

The law requires that any damages awarded to the Plaintiffs correspond to the value of the patented features within the Apple products, as distinct from other, unpatented features of the Apple products, or other factors such as marketing or advertising, or Apple's brand or market position.

This is particularly true where the products have multiple features and multiple components not covered by the patents or where the products work in conjunction with other non-patented items. Therefore, any amount you find as damages must be based on the value attributable to the patented technology alone. The process of separating the value of the patented features from the value of all other features is called apportionment. Your award must be apportioned so that it is based only on the value of the patented features, and no more. If a product includes significant non-infringing components, the patentee should base its damages on the smallest salable patent-practicing unit. "Patent-practicing" here means that the unit practices all limitations of the patent claim. For instance, if a claim is directed to

---

[61] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 986:13-17, 988:11- (E.D. Tex. Aug. 10, 2020) (with modifications); Federal Circuit Bar Association Model Jury Instructions § B.5.12 (2020) (with modifications); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

a car with a specialized steering wheel, the smallest salable patent-practicing unit would be the steering wheel, not the tires (that are turned by the wheel), and certainly not the whole car.[62]

There are two special apportionment rules that you must apply.

- First, any royalty for the patented technology must be apportioned from the value of all the other features reflected in the standard that are not covered by the patented technology.

- Second, the patent owner's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology.

These rules are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology.

_____

[62] *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (SSPPU "first arose in the Cornell case, where the district court noted that, rather than pursuing a 'royalty base claim encompassing a product with significant non-infringing components,' the patentee should have based its damages on 'the smallest salable infringing unit with close relation to the claimed invention.' 609 F.Supp.2d at 287-88 (emphasis added). In other words, the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment."); *LaserDynamics, Inc. v. Quanta Computer. Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("Patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent practicing unit, without showing that the demand for the entire product is attributable to the patented feature."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.").

*Damages – Comparable Agreements*[63]

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a particular license agreement or other transaction is comparable to the hypothetical license depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structures and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those differences into account when you make your reasonable royalty determination.  To the extent that an agreement is not comparable to the hypothetical license to the asserted patent, it should not be used to determine the amount or form of any reasonable royalty award.

If a party relies upon licenses as evidence that licensees paid a particular royalty rate for licenses to a patent, the licenses, individually or in combination, must show that licensees were paying a particular rate, agreed to pay a particular rate, or agreed that a particular rate was a reasonable royalty.

---

[63] Federal Circuit Bar Association Model Jury Instructions § B.5.9 (2020) (with modifications); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873-874 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017); *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc).

*Damages – Fair, Reasonable, and Non-Discriminatory ("FRAND")*[64]

You have heard that Optis and the prior owners of the patents-in-suit have irrevocably agreed that they must license the patents only on fair, reasonable and non-discriminatory—or "FRAND"—terms. You must ensure that any reasonable royalty that you award reflects a FRAND value.

You must take into account how this FRAND commitment would have affected the hypothetical negotiation in determining a reasonable royalty. Parties would examine the reasonableness of a royalty under the FRAND commitment based on the value of the patented technology alone—including in light of technical alternatives—not any value associated with the standard.

In considering the amount of a royalty that is fair and reasonable, you may also consider any evidence of "royalty stacking," which FRAND commitments are designed to prevent.

"Royalty stacking" can arise when a standard implicates multiple patents, perhaps hundreds or thousands of patents, which would cause a company that is forced to pay royalties for all standard-essential patents to pay royalties that "stack" on top of each other and may become excessive. Parties attempting to reach an agreement consistent with FRAND obligations would take into account the overall amount of royalties that a party

---

[64] Day 4 Trial Tr. 34:13-35:2, *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG (E.D. Tex. Aug. 12, 2021) (with modifications); Federal Circuit Bar Association Model Jury Instructions § B.5.11 (2020) (with modifications); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209, 1232-33 (Fed. Cir. 2014); *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301-1306 (Fed. Cir. 2015).

would need to pay all holders of standard-essential patents when assessing the reasonableness of the patent holder's requested royalty rate.

Finally, you should consider the "non-discrimination" requirement of FRAND, which means that similarly situated firms should receive similar terms and conditions (or have access to the same range of terms and conditions).

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

### *Damages – Relevant Factors[65]*

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. You should consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

- The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

---

[65] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 988:24-990:21 (E.D. Tex. Aug. 10, 2020) (with modifications); AIPLA Model Jury Instructions, § V.10.2.5.3 (2019) (with modifications to remove inapplicable instructions); Federal Circuit Bar Association Model Jury Instructions § B.5.11 (2020) (with modifications to remove inapplicable instructions); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231, 1233 (Fed. Cir. 2014); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

- The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

- The nature and scope of the license, as either exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

- The duration of the patent and the term of the license;

- The utility and advantages of the alternatives that could have been used instead of the technology alleged to infringe in the period before the standard was adopted;

- The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

- The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

- The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

- The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements; the manufacturing process, business risks, or significant features or improvements added by the infringer;

- The opinion testimony of qualified experts; and

- The amount that a licensor, such as Optis, and a licensee, such as Apple, would have agreed upon at the time the infringement began with the understanding that Optis was required to license its patents on FRAND terms, and the purpose of that commitment, and had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular article embodying the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been accepted or acceptable by a prudent patentee who was willing to grant a license.

As I instructed earlier, you must ensure that your damages award reflects only the value of the patented invention and not the additional value that resulted from the patent's inclusion in the LTE standard. In other words, you may not consider the success of LTE or the standard itself in determining a reasonable royalty for the patent(s)-in-suit.

No one of these factors is dispositive. You can and you should consider the evidence that's been presented to you in this case on each of these factors. You may also consider any other factors which in your minds would have increased or decreased the FRAND royalty Apple would have been willing to pay and that the patent owner, Optis, would have been willing to accept with both acting as normally prudent business people.

And as I have already told you, you must not award the Plaintiffs any additional amount for the purpose of punishing Apple or setting an example.

### *Damages – Date of Commencement of Damages*

Plaintiffs and Apple agree that the starting date from which you should calculate FRAND compensation was February 25, 2019, the date that Plaintiffs first filed this lawsuit against Apple. Plaintiffs are not allowed a royalty for any sales before that date and any such sales are irrelevant to your task.[66]

### *Damages – Lump Sum vs. Running Royalty*[67], [68]

You've heard references throughout this trial for whether Plaintiffs should be entitled to a running royalty or a lump-sum royalty.

---

[66] **Plaintiffs' Position**: Plaintiffs further object to this as contrary to fact and law. Plaintiffs have never made any such agreement, and reserve the right to seek damages for the full period allowed by law. Indeed, Plaintiffs' expert reports all analyze infringement and damages for the accused products launched since 2012. Furthermore, at the pre-trial conference in advance of the first trial, the Court denied Apple's motion for summary judgment seeking to bar pre-suit damages. Dkt. 182.

**Apple's Position:** Optis is incorrect that it may seek damages before February 25, 2019. Optis previously represented to the Court that Optis is "not seeking the damages for that period of time" from 2012 to February 2019. Pretrial Conference Tr. at 107:6-14 (July 26, 2021). Having previously agreed not to seek damages before February 25, 2019, Optis may not seek those damages now. As the Court has confirmed, the "posture of the parties" remains the same from the prior trial. *See* 1/22/26 Status Conference Tr. at 32:4.

[67] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 986:21-987:22 (E.D. Tex. Aug. 10, 2020) (with modifications); Federal Circuit Bar Association Model Jury Instructions § B.5.7 (2020) (with modifications).

[68] **Plaintiffs' Position**: A question on running royalty versus lump-sum is no longer necessary, as the accused products are no longer being sold.

**Apple's Position:** The fact that the accused products are no longer sold is immaterial to whether the parties would have agreed to a lump sum versus a running royalty. The form of the proposed royalty is based on a hypothetical negotiation at the time that the alleged infringement began, not whether the defendant is currently selling the accused products.

If you award damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up, lump-sum royalty at the time of the hypothetical negotiation in 2012.

A running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are additional units sold in the future, any damages for these sales will not be addressed by you.

If you decide that a running royalty is appropriate, then the damages that you award, if any, should reflect the total amount necessary to compensate Optis for Apple's past infringement.

However, a lump-sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales. If you decide that a lump sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate Optis for Apple's past and future infringement.

### *Damages – No Consideration of Profits*

A patent plaintiff is not allowed to recover the profits the defendant made on the accused products.  And the Plaintiffs here have not sought to recover any lost profits of the Plaintiff companies or any other entity.  The profitability of the defendant's products is not relevant to any damages you might award.][69]

---

[69] **Plaintiffs' Position**: Apple's position omits the relevance of profits to numerous modified *Georgia-Pacific* factors, including: "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."; The nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used

## DELIBERATIONS[70]

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and partially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Again, do not decide who you think should win this case and then answer the questions accordingly. I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stages in life. This is true in patent cases between corporations, partnerships, other business entities, and individuals.

A patent owner is entitled to protect its rights under the laws of the United States, and that includes bringing a lawsuit in a United States District Court for money damages based on allegations of infringement.

---

the invention"; and "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." (Numbered as Factors 6-8 in the Court's instructions).

**Apple's Position:** Infringer's profits are not an available remedy for utility patent infringement, and the jury should be instructed not to consider the profitability of Apple's products in awarding damages. None of the *Georgia-Pacific* factors permit consideration of an infringer's profits in the manner that Plaintiffs suggest.

[70] *Optis Wireless Tech., et al. v. Apple Inc.*, No. 2:19-cv-66-JRG, Dkt. 520, 1058:7-1062:8 (E.D. Tex. Aug. 10, 2020)

The law recognizes no distinction among types of parties. All corporations, partnerships, other organizations, and individuals stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

Throughout this trial, I've given you instructions many times about not discussing anything about this case among yourselves. When you retire to the jury room in a few minutes, that is going to change. At that point, not only is it proper for you to discuss this case among yourselves, it becomes your duty to discuss this case among yourselves in an effort to reach unanimous decisions to the questions in the verdict form

As I've told you, when you retire to the jury room, you'll each have your own printed copy of these jury instructions that I've given you.  If during your deliberations, you desire to review any of the exhibits, not the demonstratives, but the exhibits which the Court has admitted into evidence, then you should advise me by written note delivered to the Court Security Officer, who will bring it to me. And in that event, I will send you that exhibit or those exhibits to you.

One you retire, you should select your foreperson, and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.  After you have reached a unanimous verdict, your Foreperson is to fill out the answers to those questions in the verdict form reflecting your unanimous answers. You are not to reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

---

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence, and a juror who has not taken notes should rely on his or her own independent recollection and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer, written and signed by your foreperson. I'll then respond as promptly as possible, although, I will tell you, it almost always takes me some time to respond. And I will respond to you either in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my intended response before I answer any question you might send me.

After you've reached a verdict and I have discharged you from your duty as jurors in this case, I want you to understand you are not obligated to talk with anyone about your service in the case, but by the same token, once I have discharged you, then you are free, if you choose to, to discuss your service in this case with anyone that you might like to. That choice at that time, ladies and gentlemen, will be yours and yours alone.

I'm now going to hand printed copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to you in the jury room.

Ladies and gentlemen of the jury, you may now retire to the jury room to deliberate. We await your verdict.

PROPOSED JURY INSTRUCTIONS